Thomas E. Hill (SBN 100861)
thomas.hill@hklaw.com
Christina T. Tellado (SBN 298597)
christina.tellado@hklaw.com
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450

Attorneys for Defendant
TESLA, INC.

(*Additional counsel listed on next page*)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>TESLA, INC.,<br><br>          Defendant. | Case No. 3:23-cv-4984-JSC<br><br>**DEFENDANT TESLA, INC.'S NOTICE OF MOTION AND MOTION TO STAY ALL PROCEEDINGS IN LIGHT OF LONG-RUNNING, CURRENTLY PENDING AND VIRTUALLY IDENTICAL STATE COURT LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: February 1, 2024<br>Time: 10:00 AM<br>Judge: Hon. Jacqueline Scott Corey<br>Courtroom: 8<br><br>Complaint Filed: September 28, 2023<br><br>[*Declarations of Sara A. Begley, Tiffany Hart, Thomas E. Hill, and Jessica Quon-Vaili; Request for Judicial Notice; Exhibits in Support of Motion; and Proposed Order, All Filed Concurrently Herewith*] |

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Sara A. Begley (*admitted pro hac vice*)
sara.begley@hklaw.com
HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania  19103
Telephone:  (215) 252-9600
Facsimile:  (215) 867-6070

Samuel J. Stone (SBN 317013)
sam.stone@hklaw.com
Mary T. Vu (SBN 323088)
mary.vu@hklaw.com
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California  90071
Telephone:  (213) 896-2400
Facsimile:   (213) 896-2450

Raymond A. Cardozo (SBN 173263)
rcardozo@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California  94105-3659
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Tyree P. Jones Jr. (SBN 127631)
tpjones@reedsmith.com
REED SMITH LLP
1301 K Street, N.W., Suite 1000
Washington, DC  20005-3317
Telephone:  (202) 414-9200
Facsimile:  (202) 414-9299

Attorneys for Defendant TESLA, INC.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ..............................................................................................................1

GROUNDS FOR MOTION AND RELIEF SOUGHT ...........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

I.      INTRODUCTION ........................................................................................................2

II.     STATEMENT OF ISSUES TO BE DECIDED ...........................................................4

III.    STATEMENT OF RELEVANT FACTS .....................................................................4

        A.     Tesla Has Employed A Majority-Minority Workforce Of More Than 20,000
               At The Factory. ..................................................................................................4

        B.     On The Heels Of Private Lawsuits, EEOC And CRD Initiate Overlapping
               Investigations Into Alleged Race Discrimination At The Factory .....................5

        C.     Hindered By A Brewing Turf War, EEOC And CRD Fail To Coordinate
               Their Overlapping Enforcement Proceedings. ...................................................7

        D.     EEOC's Halting Pre-Suit Activity Proceeds Much More Slowly Than
               CRD's Slumber-Then-Sprint Process. ..............................................................8

        E.     After CRD Files Suit, EEOC Claims To Have Concluded Its Investigation
               Into The Very Same Allegations, Though Still Proceeding Without Any
               Urgency. ...........................................................................................................10

        F.     EEOC Slowly Proceeds Through Mediation And Then Files A Duplicative
               Suit Against Tesla. ..........................................................................................11

IV.     ARGUMENT ..............................................................................................................12

        A.     This Case Should Be Stayed Based On The *Colorado River* Doctrine. ...........12

        B.     The State Court Actions And This Case Are Substantially Similar. ................13

        C.     The *Colorado River* Factors Relevant To This Case Favor A Stay ................16

               1.     Desire To Avoid Piecemeal Litigation. ................................................16

               2.     The Order In Which The Forums Obtained Jurisdiction. .....................18

               3.     Whether Federal Or State Law Provides The Rule of Decision On
                      The Merits. ...........................................................................................18

               4.     Whether The State Court Proceeding Can Adequately Protect The
                      Rights Of The Federal Litigants. .........................................................19

               5.     Whether The State Court Proceedings Will Resolve The Issues
                      Before The Federal Court. ....................................................................20

        D.     The Failure Of EEOC To Endeavor In Good Faith To Engage Tesla In Pre-
               Suit Conciliation Also Warrants A Stay Of This Action. .................................20

V.      CONCLUSION ...........................................................................................................22

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

i

1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Remodel, Inc. v. Bodor*,
  CV 18-472-DMG (Ex), 2019 WL 856399 (C.D. Cal. Jan. 28, 2019)....................................17

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988) ...........................................................................................16

*Brito v. New United Motor Mfg., Inc.*,
  No. C 06-06424-JF, 2007 WL 1345197 (N.D. Cal. May 8, 2007) .........................................13

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)..............................................................................................1, 3, 4, 12

*Coopers & Lybrand v. Sun-Diamond Growers of CA*,
  912 F.2d 1135 (9th Cir. 1990) ............................................................................................12

*Goodin v. Vendley*,
  356 F. Supp. 3d 935 (N.D. Cal. 2018) .................................................................................13

*Goodwin v. Hunt Wesson, Inc.*,
  150 F.3d 1217 (9th Cir. 1998) ............................................................................................17

*Arizona ex rel. Horne v. Geo Grp., Inc.*,
  816 F.3d 1189 (9th Cir. 2016) ............................................................................................19

*James v. San Diego Christian College*,
  No. 14cv314 BEN (DHB), 2015 WL 915366 (S.D. Cal. Mar. 3, 2015)...........................17, 19

*Kremer v. Chemical Constr. Corp.*,
  456 U.S. 461 (1982)......................................................................................................14, 20

*Liu v. Amway Corp.*,
  347 F.3d 1125 (9th Cir. 2003) ............................................................................................17

*Mach Mining, LLC v. EEOC*,
  575 U.S. 480 (2015)......................................................................................................1, 3, 4, 21

*Montanore Minerals Corp. v. Bakie*,
  867 F.3d 1160 (9th Cir. 2017) ......................................................................................13, 17

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*,
  460 U.S. 1 (1983)......................................................................................................13, 16, 19

ii

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989) .......................................................................12, 16

*R.R. St. & Co. v. Transp. Ins. Co.*,
   656 F.3d 966, 979 (9th Cir. 2011) ...........................................................16, 19, 20

*Riley v. City of Richmond*,
   No. C-13-4752 MMC, 2014 WL 5073804 (N.D. Cal. Oct. 9, 2014)...........17, 19, 20

*RRI Assocs. LLC v. Huntington Way Assocs., LLC*,
   Case No. 2:22-cv-3273, 2023 WL 2445589 (S.D. Ohio Mar. 10, 2023)...................17

*Scottsdale Ins. Co. v. Parmerlee*,
   Case No. 19-mc-80298-JSC, 2020 WL 1332146 (N.D. Cal. Mar. 23, 2020)...............13

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*,
   862 F.3d 835 (9th Cir. 2017) ......................................................................18

*Tarin v. County of L.A.*,
   123 F.3d 1259 (9th Cir. 1997) ....................................................................14

*Thomas v. City of Beaverton*,
   379 F.3d 802 (9th Cir. 2004) ......................................................................15

*Thompson v. Amtrak*,
   No. C 08-03280 CRB, 2009 U.S. Dist. LEXIS 147483 (N.D. Cal. Apr. 24, 2009) ..........16, 20

*Travelers Indemn. Co. v. Madonna*,
   914 F.2d 1364, 1370 (9th Cir. 1990) .............................................................19

*Vasquez v. County of L.A.*,
   349 F.3d 634 (9th Cir. 2003) ......................................................................14

*Yellow Freight Syst. v. Donnelly*,
   494 U.S. 820 (1990)...............................................................................17

**CALIFORNIA CASES**

*Acuna v. Regents of Univ. of Cal.*,
   56 Cal. App. 4th 639, 649 (1997).................................................................20

*Flait v. North Am. Watch Corp.*,
   3 Cal. App. 4th 467 (Cal. Ct. App. 1992).....................................................15, 17

*Lyle v. Warner Bros. Television Prods.*,
   38 Cal. 4th 264 (2006)...........................................................................14, 17

*Okoli v. Lockheed Tech. Operations Co.*,
   36 Cal. App. 4th 1607 (1995) .....................................................................17

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

iii

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

**FEDERAL STATUTES**

29 C.F.R. § 1626.10 ................................................................................................................7

42 U.S.C. § 1981a(b)(3) ..................................................................................................16, 20

42 U.S.C. § 2000e-3 ........................................................................................................14, 16

42 U.S.C. § 2000e-5(b) ..............................................................................................1, 3, 4, 21

42 U.S.C. § 2000e-5(e) ..........................................................................................................16

Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*) ................................. *passim*

**CALIFORNIA STATUTES**

Cal. Gov. Code § 12940(h) .....................................................................................................16

Cal. Gov. Code § 12940(j) ......................................................................................................16

Cal. Gov. Code § 12940(k) .....................................................................................................14

Cal. Gov. Code § 12965(b) ...............................................................................................16, 20

DEF. TESLA, INC.'S NOTICE & MOT. TO STAY ALL PROCEEDINGS; MEMO. OF POINTS AND
AUTHORITIES
Case No.: 3:23-cv-4984-JSC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO PLAINTIFF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 1, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley in Courtroom 8 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Tesla, Inc. ("Tesla") will and hereby does move the Court for an order staying all proceedings in this matter.

**GROUNDS FOR MOTION AND RELIEF SOUGHT**

This motion is brought on two grounds.

First, a stay is warranted based on the existence of two prior-filed, substantially-similar, and concurrently-pending state court proceedings. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Those cases are *Department of Fair Employment and Housing v. Tesla, Inc.*, Alameda County Superior Court No. 22CV006830 (the "CRD Case"),[1] and *Vaughn, et al. v. Tesla, Inc., et al.*, Alameda County Superior Court No. RG17882082 (the "Vaughn Case," and together with the CRD Case, the "State Court Actions"), both of which are now before the Honorable Evelio M. Grillo, Alameda County Superior Court Judge. The Court should stay all proceedings in this case in deference to and pending the completion of the State Court Actions.

Second, a stay is also warranted because Plaintiff failed to comply with its statutory obligation to engage in meaningful and good-faith conciliation with Tesla prior to filing this lawsuit. *See* 42 U.S.C. § 2000e-5(b); *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486–87 (2015). A stay is necessary and appropriate until such time as Plaintiff has fulfilled its pre-suit conciliation obligations.

---

[1] The California Department of Fair Employment and Housing ("DFEH") is the former state agency counterpart to EEOC. In 2022, the DFEH's name was changed to the California Civil Rights Department ("CRD"). This name change does not impact the statutory duties, responsibilities and/or authority of the agency. The parties in the CRD Case now use the name CRD when referring to the Plaintiff in that litigation.

DEF. TESLA, INC.'S NOTICE & MOT. TO STAY ALL PROCEEDINGS; MEMO. OF POINTS AND AUTHORITIES
Case No.: 3:23-cv-4984-JSC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Tesla asks the court to halt the "unseemly" toxic interagency competition between  EEOC and CRD, which has resulted in EEOC ignoring its statutory pre-suit obligations so it could rush to file duplicative litigation and repeat similar—if not identical—false allegations against Tesla that have already been made by CRD and private plaintiffs in separate state court actions.

EEOC's sprint to the courthouse, which saw the agency hastily wrap up its sham pre-suit investigation, without any meaningful disclosures to Tesla, was done at the expense of express Congressionally mandated public policy and in pursuit of headlines to show it, and not CRD, is the toughest regulator on the block.

Federal case law sets out a clear test to avoid EEOC's duplicative piling on and to protect blameless defendants from becoming collateral damage in a well-documented turf war between federal and state regulators.  EEOC fails this test and Tesla asks that the Court stay EEOC's suit.

This case is the third civil action filed against Tesla, alleging that *different* individuals have at *different* times, in *different* locations, and in a wide variety of *different* incidents (1) engaged in unlawful discrimination, harassment and retaliation against Black employees at Tesla's auto manufacturing plant in Fremont, California, and (2) thereby created a hostile work environment for those employees.  All of these actions propose to adjudicate their claims on *a class or group basis*. In its Complaint, EEOC asserts two claims for relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*: (1) Harassment/Hostile Work Environment Because of Race; and (2) Retaliation.  Dkt. No. 1 ¶¶ 44–57.  This lawsuit is substantially similar—indeed, *virtually identical*—to the CRD and Vaughn Cases now before the Alameda County Superior Court, both of which have long been active.  The Vaughn Case was filed on November 13, 2017, and the CRD Case was filed on February 2, 2022, and each case has and continues to be vigorously litigated— with more than than 55 substantive motions submitted, more than 65 orders issued, and more than 55 hearings held, collectively, in the two actions.

2

The State Court Actions and the Complaint filed in this case arise out of the same alleged conduct (*i.e.*, alleged racial discrimination, harassment and retaliation) and seek to vindicate the same legal rights on behalf of the same individuals (*i.e.*, current and former Black employees of Tesla at the Fremont factory).    EEOC is well aware of the State Court Actions, even though EEOC conspicuously fails even to mention them in its Complaint.    What has emerged in the long-running State Court Actions is that each case attempts to elevate a disparate collection of unrelated incidents involving different actors into a false narrative that ignores Tesla's track record of equal employment opportunity, and that inaccurately accuses an employer who has welcomed a majority-minority workforce into its factory of being unlawfully hostile to the very workers that Tesla invited into and promoted within its workforce.    Ironically, the unrelated incidents that form the basis of the allegations involve individuals who purportedly *violated* Tesla's clear written anti-discrimination and non-retaliation policies, and its robust procedures for enforcing those policies.

This Court can and should decline EEOC's invitation to open up a third duplicative action involving the same claims and factual allegations.    Simultaneous prosecution of the State Court Actions and this case will involve substantial duplication of effort, create a significant risk of inconsistent court rulings, and result in an inefficient and wasteful use of judicial resources.    The Court should therefore stay all proceedings in this case in deference to and pending the completion of the State Court Actions, pursuant to the *Colorado River* doctrine.    *See Colo. River*, 424 U.S. at 817.    As explained below, the eight-part test for application of the *Colorado River* doctrine is easily satisfied here.

This case should also be stayed due to EEOC's complete failure to comply with its statutory obligation to engage in meaningful and good faith conciliation with Tesla prior to filing this lawsuit. 42 U.S.C. § 2000e-5(b).    Congress has directed EEOC to engage in a robust, multi-step, pre-suit process of thorough investigation and conciliation.    *Id.*    The primary goal of this process is to resolve problems without the need for litigation, and Congress confirmed the importance of this goal by authorizing litigation only if the pre-suit process is unable to resolve the matter.    *See Mach Mining*, 575 U.S. at 486.    But here, EEOC ignored the pre-suit process mandated by Congress and thwarted

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Title VII's goal of reducing the need for litigation.  Determined to grab headlines away from CRD in these agencies' continuing and unseemly turf war, EEOC conducted a one-sided investigation of Tesla in which it never heard or even solicited Tesla's side of the story.  Instead, EEOC only gestured at conciliation without providing or intending to provide Tesla any meaningful opportunity to remedy the discriminatory practices that EEOC now alleges.  EEOC's objective was never to do as directed by the statute that gives EEOC its only source of authority, but only to "check the pre-suit boxes" so it could file this lawsuit and issue its accompanying press release.  A stay is thus necessary and appropriate until such time as EEOC has fulfilled its pre-suit obligation to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." § 2000e-5(b); *see also Mach Mining*, 575 U.S. at 486–87.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether this proceeding should be stayed under the *Colorado River* doctrine pending the outcome of the substantially similar State Court Actions.  *See* 424 U.S. at 817.

2.   Whether this proceeding should be stayed until Plaintiff complies with its statutory obligation to engage in meaningful and good faith conciliation with Tesla regarding the allegations in EEOC's Complaint.  *See* 42 U.S.C. § 2000e-5(b).

## III.   STATEMENT OF RELEVANT FACTS

### A.   Tesla Has Employed A Majority-Minority Workforce Of More Than 20,000 At The Factory.

Tesla is the world's leading electric car company.  As Tesla grows, it provides ever-increasing opportunities and high-paying jobs to thousands of employees of different backgrounds, experiences and skills.  Since 2010, Tesla has heavily invested in Fremont.  The auto manufacturing plant (the "Factory") that it opened in Fremont and still operates there is the last remaining plant of its kind in the state.  *See* Decl. of Tiffany Hart ("Hart Decl.") ¶ 3.

Tesla has created more full-time manufacturing job opportunities for workers in Northern California than any other in-state manufacturer.  *Id.* ¶ 4.  Tesla attracts a diverse workforce and provides work to many employees who do not have a college degree or have only limited or no prior

4

1   job experience.  *Id.*  The opportunities created by Tesla have enabled members of its majority-

2   minority workforce to lift themselves out of poverty, buy their first home, send the first members of

3   their family to college, and/or obtain a second chance after criminal prosecution and conviction.

4       Tesla's official anti-harassment and -discrimination policies have long emphasized Tesla's

5   commitment to providing a workplace that is free from unlawful discrimination and harassment, and

6   that encourages employees to report any violations of those policies.  *Id.* ¶ 5; and Def.'s Exhibits in

7   Supp. of Mot. ("Exhibits"), Exh. E.  More than 200 Tesla workers have submitted sworn declarations

8   in the Vaughn Case attesting to what these policies have long plainly stated: Tesla welcomes all and

9   prohibits all forms of discrimination, and Black workers can and do thrive at Tesla.  *Id.*; *see also* Hill

10  Decl. ¶ 4.

11      **B.**    **On The Heels Of Private Lawsuits, EEOC And CRD Initiate Overlapping Investigations Into Alleged Race Discrimination At The Factory.**

12

13      Despite Tesla's inclusive policies, certain Northern California attorneys have targeted Tesla

14  and helped create a deliberately false narrative about the Company.  Sadly, EEOC and CRD—two

15  government agencies that obtain all their power from statutes that direct them to be neutral problem-

16  solvers first, and litigants only second—have eagerly embraced this private attorney-generated

17  narrative without adequate investigation, and then launched an inter-agency turf war to grab

18  sensational headlines.  This has resulted in an unfortunate rush to judgment in which continually

19  broadening allegations keep stockpiling without anyone—private contingency fee counsel or

20  government attorneys alike—taking the time to hear Tesla's side of the story or actually talk to the

21  workers they purport to represent.

22      In 2016, former Fremont factory worker DeWitt Lambert claimed that "he experienced racial

23  harassment" and "Tesla did nothing about it."  His case received individualized scrutiny at an

24  arbitration in which the evidence showed that Lambert "himself participated in the use of racially-

25  charged language" and "used foul language and racial epithets in the workplace."  Lambert and his

26  co-workers used the "N" word with one another, and "there was no credible evidence that its use was

27  racially harassing to—or unwelcome by"—Lambert.  Retired California Superior Court Judge Lynn

28

    *Holland & Knight LLP*
    400 South Hope Street, 8th Floor
    Los Angeles, CA  90071
    Tel: 213.896.2400
    Fax: 213.896.2450

5

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Duryee ruled Lambert did not suffer harassment or a hostile work environment, that Tesla did not retaliate against him, and that Tesla's response was "reasonable, effective and appropriate." *See* Def.'s Request for Judicial Notice ("RJN") ¶ 11; and Exh. O at 16, 17, 29.

On the heels of this decision, the Vaughn Case was filed on November 13, 2017,  alleging class-wide discrimination, harassment and retaliation by Tesla against Black employees at the Factory.  The allegations in the Vaughn Case mirror those made by EEOC in this case; *i.e.*, that Black employees at the Factory are referred to by co-workers using the "N-word", exposed to racist graffiti, and retaliated against when they report this harassment. *See* RJN ¶ 3; and Exh. C (operative Second Amended Complaint ("SAC") in the Vaughn Case ).

In May 2019, EEOC filed a charge on behalf of both itself and CRD against Tesla, alleging race discrimination at the Factory; specifically, that a racially hostile work environment exists and that Tesla routinely retaliates against Black employees (the "Commissioner's Charge"). *See* RJN ¶ 5; and Exh. F.  The Commissioner's Charge consists of one page and includes no factual details regarding its allegations. *Id.*  Just three weeks later, CRD filed its own two-page "Director's Complaint" against Tesla, alleging exactly the same misconduct in exactly the same fact-free and conclusory manner. *See* RJN ¶ 6; and Exh. G.  If a reasonable government official had credited even a fraction of the broad and incendiary allegations made in the 2017 Vaughn complaint, or in the 2019 EEOC and CRD administrative charges, that official or others from his agency would have immediately visited the Factory, sought to interview Tesla's Human Resources personnel and management, or otherwise tried to determine promptly if there was a serious problem, and if so, to promptly fix it.  Instead, both CRD and EEOC did nothing for years: they barely, if at all, engaged with Tesla, and neither accepted Tesla's invitations to visit the Factory and see for themselves whether it was "hostile," as the false allegations claimed. *See* Decl. of Jessica Quon-Vaili ("Quon-Vaili Decl.") ¶ 12.

/ / /

/ / /

/ / /

DEF. TESLA, INC.'S NOTICE & MOT. TO STAY ALL PROCEEDINGS; MEMO. OF POINTS AND AUTHORITIES
Case No.: 3:23-cv-4984-JSC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

**C.      Hindered By A Brewing Turf War, EEOC And CRD Fail To Coordinate Their Overlapping Enforcement Proceedings.**

Title VII and EEOC regulations have long recognized that federal and state fair employment regulators have overlapping jurisdictions, with Title VII and state employment laws prohibiting much of the same misconduct.  Thus, historically, EEOC has coordinated with CRD to avoid duplicative enforcement actions.  As authorized by EEOC regulations, EEOC and CRD are parties to a long-standing "Worksharing Agreement," allowing each agency to receive discrimination complaints on behalf of the other and facilitating coordination between the two of them.  *See* 29 C.F.R. § 1626.10; RJN ¶ 7; and Exh. H.[2]  Prior to 2019, EEOC and DFEH rarely, if ever, filed overlapping Director's Complaints and Commissioner's Charges covering the same alleged discrimination.  And, on at least one occasion where this *did* occur—in the agencies' recent dual investigations into gender discrimination at Activision Blizzard—EEOC and DFEH agreed to divide among themselves which types of discrimination each agency would look into, specifically to avoid duplicative investigations into the same allegations.  *See* RJN ¶ 13; and Exh. Q; *see also* Hill Decl. ¶ 16; and Exh. S (Taibbi, *The Lawyers Who Ate California*, *Part II*, TK News (May 14, 2022)) (the "Taibbi Article").

Unfortunately, an "unseemly" turf war (as one federal court judge describes it) has developed between EEOC and CRD.  *See id.*; RJN ¶ 8; and Exh. I at 26:17.  With each agency increasingly eager to file headline-grabbing complaints and report multimillion dollar settlements, their historical coordination and cooperation collapsed.  In the *Activision* case, for instance, the agencies' agreed-upon division of labor fell apart, and CRD attempted to intervene in EEOC's federal action against Activision to object to a settlement that EEOC had negotiated, which would have secured substantial relief for employees whose interests are supposed to be the sole concern of both EEOC and CRD.  *See* RJN ¶¶ 8, 13, 14; Hill Decl. ¶ 16; and Exhs. I, Q, R, and S (Taibbi Article).  United States District

---

[2] CRD is a Fair Employment Practice Agency ("FEPA") of EEOC.  As such, CRD has a contract and Worksharing Agreement with EEOC by which the two agencies contractually serve as each other's agents for the processing and drafting of charges, communicate about cases received by each agency, and through which CRD obtains federal funding for its handling of cases that could otherwise be investigated by EEOC.  Importantly, this arrangement reflects the overlapping and duplicative nature of the federal and California laws prohibiting employment discrimination, and confirms the intent of Congress that EEOC cooperate and coordinate its enforcement efforts with FEPAs such as CRD.

7

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1  Judge Dale S. Fischer (C.D. Cal.), who presided over the *Activision* case, rejected CRD's attempted

2  intervention and objection, described the brewing turf war as "unseemly," and reminded CRD that

3  discrimination claims belong to and exist for victimized employees, not CRD's own political

4  ambitions.  RJN ¶¶ 8, 14; and Exh. I at 26:17; and Exh. R.

5      Instead of learning from this debacle, EEOC and CRD escalated the unseemly competition

6  that Judge Fisher had rebuked.  Unfortunately, it was now Tesla's turn to be caught in the cross-hairs

7  of this inter-agency battle for attention-grabbing headlines, and the Company soon found itself the

8  target of two overlapping agency investigations into precisely the same factual complaints.

9      **D.    EEOC's Halting Pre-Suit Activity Proceeds Much More Slowly Than CRD's**
          **Slumber-Then-Sprint Process.**
10

11      Although EEOC alleges in its Complaint that there has been ongoing and widespread race

12  discrimination at the Factory since 2015, EEOC's own investigative inaction speaks louder than its

13  pleading.  For years, EEOC did *nothing* to try to stop or prevent what it now mischaracterizes as

14  rampant discrimination at the Factory.  EEOC only made its initial discovery requests to Tesla six

15  months after it filed the Commissioner's Charge, in January 2020.  *See* Quon-Vaili Decl. ¶ 3; and

16  Exh. J.  EEOC's limited and desultory investigation proceeded in this halting manner for the next two

17  years.  EEOC's first discovery requests sought information on Tesla's relationship with staffing

18  agencies, its categories of employee titles and positions, its fair employment policies, its systems,

19  policies, and procedures for investigating discrimination complaints, and the names of all Black

20  employees in Fremont.  *Id.*  Tesla responded to these requests the next month, in February 2020.  *Id.*

21  ¶ 4.

22      EEOC's next meaningful communication came nearly ten months later when it submitted a

23  second set of requests for information in December 2020.  *Id.* ¶¶ 5, 7; and Exh. K.  By this time it had

24  become apparent to Tesla that EEOC and CRD were investigating the exact same allegations.

25  EEOC's new requests, for instance, expressly sought documents that Tesla had provided CRD more

26  than one year earlier, regarding Black employees' race discrimination complaints.  Quon-Vaili Decl.

27  ¶ 6.  These new requests again covered other high-level topics such as the Company's policies,

28

8

procedures, and trainings for handling discrimination complaints, and the organization of Tesla's Human Resources ("HR") and Employee Relations ("ER") departments. *Id.* ¶ 7; and Exh. K.  Tesla answered these requests by March 2021, and in April it provided EEOC with personnel files and contact information for employees who had made discrimination complaints, as requested.  Quon-Vaili Decl. ¶¶ 8–9.  EEOC then went silent again for nearly a year.  Quon-Vaili Decl. ¶ 10.  During that time Tesla became aware that EEOC had asked some of its workers to complete an online survey. *Id.* ¶ 11.  But EEOC never discussed this survey with Tesla, nor did EEOC involve Tesla any further in its investigation. *Id.* ¶¶ 11–12.

After these desultory administrative proceedings plodded on for nearly a year and a half with neither agency meaningfully engaging Tesla, the conflict brewing between EEOC and CRD came to a full boil in the fall of 2021.  In the *Activision* case, EEOC announced that it had agreed with the Company to settle the sex harassment claims.  *See* Hill Decl. ¶ 16; and Exh. S (Taibbi Article).  CRD tried to intervene and stop the settlement.  In December 2021, Judge Fisher denied CRD's request and rebuked both agencies for their failure to coordinate: "[T]his dispute frankly between the agencies is a bit unseemly."  RJN ¶¶ 8, 14; and Exh. I at 26:17; and Exh. R.  The court further chastised EEOC and CRD as follows: "I don't want to see this back-and-forthing with these two agencies.  You apparently have been working well together for a very long time, and you will need to be working well together in the future to serve both of your constituencies, which are pretty much the same people[.]"  RJN ¶ 8; and Exh. I at 57:10–16.

After Judge Fisher blocked CRD's intervention in *Activision*, and so as not to be outflanked again, CRD rushed to file a lawsuit against Tesla—despite not investigating its allegations or attempting to conciliate with Tesla—before EEOC could bring such a case or negotiate a settlement with Tesla.  In January 2022, and notwithstanding CRD having never visited the Factory nor spoken to any Tesla managers or HR representatives about its investigation, CRD abruptly informed Tesla that it had completed its administrative investigation. Quon-Vaili Decl. ¶ 12; Decl. of Sara A. Begley ("Begley Decl.") ¶ 11.  CRD then pushed for a statutorily-mandated mediation within a few weeks, and only on condition that Tesla agree not to have any settlement discussions with EEOC prior to the

DEF. TESLA, INC.'S NOTICE & MOT. TO STAY ALL PROCEEDINGS; MEMO. OF POINTS AND AUTHORITIES
Case No.: 3:23-cv-4984-JSC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

mediation.  *Id.*; and Exh. L.  Given that Tesla had not heard from EEOC in nine months, there was little risk of immediate settlement on that front, but CRD plainly was afraid EEOC would steal the headlines.  On February 9, 2022, the day after a sham mediation, CRD filed the CRD Case and ensured that broad media coverage followed—such that Tesla first learned of the lawsuit, not through service of CRD's complaint, but from the media.  Begley Decl. ¶ 11.  Through its Complaint, as amended, CRD asserts claims under the California Fair Employment and Housing Act ("FEHA"), alleging unlawful discrimination, harassment and retaliation by Tesla against Black employees at the Factory, and the creation and maintenance of a hostile work environment—precisely the same allegations of misconduct alleged by EEOC in this case, and by the named Plaintiffs in the Vaughn Case.  *See generally* RJN ¶¶ 3, 4; Exhs. C (*Vaughn* SAC) and D (operative First Amended Complaint ("FAC") in the CRD Case); and Dkt. No. 1.

## E.     After CRD Files Suit, EEOC Claims To Have Concluded Its Investigation Into The Very Same Allegations, Though Still Proceeding Without Any Urgency.

Just a few weeks after CRD filed the CRD Case, EEOC re-appeared to inform Tesla that it too had completed its "investigation."  Begley Decl. ¶ 4.  In the ensuing pre-Determination meeting with Tesla, EEOC claimed that it had evidence of a facility-wide hostile work environment at the Factory for Black workers going back to 2015.  *Id.* ¶ 5.  Again, these allegations were duplicative of CRD's in the CRD Case.  In oral and written communications, Tesla entreated EEOC to more earnestly investigate the reality on the ground at the Factory, which bore no resemblance to EEOC's (or CRD's) claims.  *Id.* ¶ 6.  Tesla even provided an in-depth live presentation regarding Tesla's fair employment culture and systems.  *Id.* ¶ 7.  Tesla also pointed out that in the nearly three years since EEOC had filed the Commissioner's Charge, EEOC (1) did not visit the Factory even once despite having received multiple invitations to do so, (2) did not inquire at all about Tesla's graffiti-remediation processes, and (3) did not request to interview a single member of Tesla's management, HR or ER teams, despite claiming that these personnel systemically failed to properly address workers' complaints of racial discrimination, and despite Tesla's ardent requests that EEOC meet with its leadership team.  *Id.*  Despite all this, EEOC issued an administrative  Determination in June

2022, finding cause to conclude that "ongoing" and "pervasive" discrimination against Black employees exists at the Factory, while failing entirely to identify any facts to support that finding. *Id.* ¶ 8; RJN ¶ 9; and Exh. M.

Faced with this Determination, Tesla asked EEOC to share further information regarding what departments, managers, or teams were most responsible for the alleged hostile work environment. *See* Begley Decl. ¶ 6. Tesla even proposed that EEOC could anonymize the requested information, if it would alleviate any (unfounded) concerns about retaliation. *Id.* But—contrary to the allegation in paragraph 12 of its Complaint—EEOC refused to provide any such facts. *Id.* ¶¶ 6, 9; *cf.* Dkt. No. 1 ¶ 12 ("The Commission engaged in communications with Tesla to provide Tesla the opportunity to remedy the discriminatory practices described in the Letter of Determination."). Apparently, the "ongoing" and "pervasive" discrimination that EEOC decried did not warrant the agency providing Tesla information that Tesla could actually use to address the agency's concerns and rectify any problems. Suffice it to say, at no point throughout EEOC's three-year "investigation" did the agency proceed with any sense of urgency regarding the serious workplace issues it purported to have identified. Begley Decl. ¶ 9.

## F.     EEOC Slowly Proceeds Through Mediation And Then Files A Duplicative Suit Against Tesla.

It was not until June 2023 that EEOC and Tesla finally met for their statutorily-mandated conciliation, which EEOC soon declared had failed. *See id.* ¶ 10. Three months then went by with more silence from EEOC. Then, at the end of September 2023, EEOC filed its Complaint in this case and issued a splashy press release. *Id.*; and Exh. N.

As previously noted, EEOC's Title VII claims are duplicative of the claims of discrimination, harassment, retaliation and hostile work environment alleged in the Vaughn and CRD Cases. EEOC alleges that since 2015 (1) Tesla has created a hostile work environment for Black workers at the Factory by failing to address and prevent uses of the N-word and racist graffiti; and (2) Tesla managers have retaliated against Black workers who complained of such harassment. (Dkt. No. 1 ¶¶ 16–57.) Spanning just three pages of the Complaint, EEOC's factual allegations include a handful of

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

11

quotes of unknown provenance and state in conclusory fashion that the alleged harassment was "pervasive." (*Id.* ¶¶ 16–43.)   The Complaint does not identify any specific aggrieved workers or groups thereof, and, just like the named Plaintiffs in the Vaughn Case and CRD in the CRD Case, EEOC apparently brings this action on behalf of the thousands of Black employees who have worked at the Factory since 2015.[3]

## IV.   ARGUMENT

### A.   This Case Should Be Stayed Based On The *Colorado River* Doctrine.

Although federal courts are generally obliged to exercise their jurisdiction, an exception to this rule exists under the *Colorado River* doctrine.  *See Colo. River*, 424 U.S. at 817–18; *Nakash v. Marciano*, 882 F.2d 1411, 1415–16 (9th Cir. 1989).[4]  Under that doctrine, a federal court may stay a case over which it has jurisdiction in deference to an ongoing and parallel state court proceeding, if such deference will promote "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Colo. River*, 424 U.S. at 817 (alteration in original).

The threshold question in applying the *Colorado River* doctrine is whether the concurrent state court proceeding is "substantially similar" to the federal court case.  *Nakash*, 882 F.2d at 1416. If the cases are substantially similar, then district courts within the Ninth Circuit apply an eight-factor test to determine whether a stay should be entered.  Those eight factors include the following:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

---

[3] A motion for class certification now pending in the Vaughn Case seeks to certify a class of more than 6,000 former and current Black workers at the Factory.  Hill Decl. ¶ 4.

[4] Although the *Colorado River* doctrine is at times analogized to a form of abstention, the Ninth Circuit has held that the doctrine is in fact "a form of deference to state court jurisdiction," rather than abstention.  *See Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1137 (9th Cir. 1990); *see also Nakash*, 882 F.2d at 1415 n.5.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

DEF. TESLA, INC.'S NOTICE & MOT. TO STAY ALL PROCEEDINGS; MEMO. OF POINTS AND AUTHORITIES
Case No.: 3:23-cv-4984-JSC

*Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017).  Courts should apply these factors in a "pragmatic, flexible manner," recognizing that one or more of the factors may not apply or be relevant in a particular case.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16 (1983); *Montanore Minerals Corp.*, 867 F.3d at 1166.

As discussed below, the *Colorado River* factors relevant to this motion weigh heavily in favor of a stay of all proceedings in this case pending completion of the State Court Actions.[5]

## B.     The State Court Actions And This Case Are Substantially Similar.

"[S]tate and federal proceedings are substantially similar if they arise out of the same alleged conduct and seek to vindicate the same rights."  *Goodin v. Vendley*, 356 F. Supp. 3d 935, 944 (N.D. Cal. 2018); *Brito v. New United Motor Mfg., Inc.*, No. C 06-06424-JF, 2007 WL 1345197, at *3 (N.D. Cal. May 8, 2007) ("Courts of this district have held state and federal proceedings to be 'substantially similar' when they arise out of the same alleged conduct[.]").

"Exact parallelism is not required."  *Scottsdale Ins. Co. v. Parmerlee*, Case No. 19-mc-80298-JSC, 2020 WL 1332146, at *4 (N.D. Cal. Mar. 23, 2020) (internal alterations and quotation marks omitted).  The *Colorado River* doctrine may be invoked even if federal claims and relief are being pursued in one case, and state law claims and relief are being pursued in the concurrent case.  *Goodin*, 365 F. Supp. 3d at 944 ("Plaintiffs nonetheless insist that the claims are not substantially similar because in this action [unlike the concurrent state court case] they are seeking to vindicate their rights under federal law and they would be entitled to different remedies under federal law. *But this is not the rule* – state and federal proceedings are substantially similar if they arise out of the same alleged conduct and seek to vindicate the same rights" (emphasis added)).

Here, this case and the State Court Actions are substantially similar.  Like the aggrieved group alleged in EEOC's Complaint—namely, all African American and/or Black employees at the Factory within the statutory period (Dkt. No. 1 ¶ 16)—the putative class in the Vaughn Case and the alleged aggrieved group in the CRD Case include all African American workers at the Factory within the

---

[5] The first *Colorado River* factor is irrelevant here because there is no property or *res* at stake in the subject cases.  The second factor is neutral because the State Court Actions and this case are pending in one of two San Francisco Bay Area courts, and neither forum has a convenience advantage over the other.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

statutory periods.  *See* Dkt. No. 1 ¶ 16; RJN ¶¶ 3, 4 ; Exh. C (*Vaughn* SAC) ¶ 48 and Exh. D (*CRD* FAC) ¶ 14.  Moreover, the two claims for relief asserted in EEOC's Complaint are based on the same factual allegations, and seek to vindicate what are essentially the same legal rights, as certain of the claims for relief alleged in the State Court Actions.  *Compare* Dkt. No. 1 ¶¶ 44–57, *with* Exh. C (*Vaughn* SAC) ¶¶ 73–82, and Exh. D (*CRD* FAC) ¶¶ 59–68, 141–149; *see* RJN ¶¶ 3, 4.  And, again, it is of no consequence that the claims in this case are asserted under Title VII and the claims in the State Court Actions are asserted under the FEHA.  "California courts have determined that, because FEHA embodies the same anti-discrimination and public-policy objectives as Title VII, the test for determining whether there is discrimination under Title VII applies to FEHA claims as well."  *Tarin v. County of L.A.*, 123 F.3d 1259, 1263 at n.2 (9th Cir. 1997), *supers. by statute on other grounds as stated in Lisek v. Brightwood*, 278 F.3d 895, 899 n.2 (9th Cir. 2002).  Indeed, a federal court considering a Title VII discrimination claim is required to give preclusive effect to a state court judgment on a similar state discrimination claim.  *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 484–85 (1982).

Hostile work environment claims brought under Title VII and the FEHA both require a plaintiff to show "(1) that he [or she] was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."  *See Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003) (elements of Title VII hostile work environment claim); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006) ("California courts have adopted the [Title VII] standard for hostile work environment sexual harassment claims under the FEHA."); *see also* 42 U.S.C. § 2000e-3; Cal. Gov. Code, § 12940.  Here, both the State Court Actions and EEOC in this case assert claims of hostile work environment based on allegations of racial slurs and insults, racial stereotyping, and racist graffiti.  Consider the following parallel allegations in these cases:

- Frequent use of the N-word and racial slurs by non-Black employees (RJN ¶¶ 3, 4; and Exh. C ¶¶ 15, 16, 35; Exh. D ¶¶ 35–37; and Dkt. No. 1 ¶¶ 17–23)

14

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- Use of the N-word by supervisors, leads, and managers (RJN ¶¶ 3, 4; and Exh. C ¶¶ 15, 16, 22, 35;  Exh. D ¶¶ 35, 38; and Dkt. No. 1 ¶¶ 18, 21, 22)

- Use of racial slurs witnessed by supervisors, leads, and managers (RJN ¶¶ 3, 4; and Exh. C ¶ 30; Exh.  D ¶ 38; and Dkt. No. 1 ¶ 34)

- Use of racial insults (RJN ¶¶ 3, 4; and Exh. C ¶ 22; Exh. D ¶ 35; and Dkt. No. 1 ¶ 24)

- Racial stereotyping, such as lazy (RJN ¶¶ 3, 4; and Exh. C ¶ 35; Exh. D ¶¶ 35, 37; and Dkt. No. 1 ¶ 42)

- Racist graffiti in restrooms (RJN ¶¶ 3, 4; and Exh. C ¶ 29; Exh. D ¶ 39; and Dkt. No. 1 ¶ 29)

- Racist graffiti on equipment and machinery (RJN ¶ 4; Exh. D ¶ 39; and Dkt. No. 1 ¶ 26)

- Racial epithets (RJN ¶¶ 3, 4; and  Exh. C ¶ 29; Exh. D ¶ 39; and Dkt. No. 1 ¶¶ 28–29)

The operative Complaints in this case, the CRD Case, and the Vaughn Case all allege (inaccurately) that Black employees informed Telsa supervisors and HR of the racial slurs and graffiti, but that Tesla failed to take preventative or corrective action, such as adopting anti-harassment policies, investigating complaints, or removing the graffiti. *See, e.g.*, RJN, ¶¶ 3, 4; and Exh. C ¶¶ 18, 26, 30–31, 40–47; Exh. D ¶¶ 49, 51; and Dkt. No. 1 ¶¶ 37–39.

EEOC's retaliation claim relies on factual allegations and legal standards that are identical to those asserted in the State Court actions.  The anti-retaliation provisions of both Title VII and the FEHA protect employees who (1) engaged in a protected activity, and (2) suffered an adverse employment action, if (3) there was a causal link between the employee's protected activity and the adverse employment action.  *See Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (elements of Title VII retaliation); *Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 475–76 (Cal. Ct. App. 1992) (stating that FEHA retaliation claims "are evaluated under federal law interpreting [T]itle VII cases"); *see also* 42 U.S.C. § 2000e-3; Cal. Gov. Code § 12940(h).  EEOC alleges that

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

15

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Black employees at Tesla were retaliated against for reporting or opposing racial harassment by "schedule changes, less desirable duties, reassignments, unjustified write-ups, and discharge."  Dkt. No. 1 ¶ 42.  CRD alleges the exact same retaliatory conduct.  *See* RJN ¶ 4; Exh. D ¶ 143 (alleging employees were retaliated against through "disciplinary write-ups; forced transfers to less desirable assignments or locations; constructive discharge; and termination").

It also bears noting that the State Court Actions are "more comprehensive" lawsuits than EEOC's case—a fact that further weighs in favor of *Colorado River* deference to the state court proceedings.  *See Nakash*, 882 F.2d at 1416–17.  For example, CRD has pled far more causes of action than EEOC, including claims for unequal pay and discriminatory job assignments, promotions, terminations, discipline and promotions, as well as a failure by Tesla to prevent discrimination and harassment.  *Compare* Dkt. No. 1 ¶¶ 16–43, *with* Exh. D ¶¶ 35–55; *see* RJN ¶ 4.  In addition, the FEHA provides broader protections to victims of discrimination and harassment than does Title VII, as the FEHA applies to more categories of workers, has a longer statute of limitations, and provides greater remedies than does Title VII.  *Compare* Cal. Gov. Code §§ 12940(j), 12965(c), 12965(e), *with* 42 U.S.C. §§ 2000e-3, 2000e-5(e), 1981a(b)(3); *see Thompson v. Amtrak*, No. C 08-03280 CRB, 2009 U.S. Dist. LEXIS 147483, at *8 (N.D. Cal. Apr. 24, 2009) (FEHA remedies include "unlimited compensatory damages").

In sum, the State Court Actions and this case are substantially similar for *Colorado River* purposes.

### C.     The *Colorado River* Factors Relevant To This Case Favor A Stay.

#### 1.     Desire To Avoid Piecemeal Litigation.

The danger of piecemeal litigation is the "paramount" consideration in applying the *Colorado River* doctrine.  *See Moses H. Cone*, 460 U.S. at 19.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011) (quoting *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)); *RRI Assocs. LLC v. Huntington Way Assocs., LLC*,  Case No. 2:22-cv-3273, 2023 WL 2445589, at *5 (S.D. Ohio

Mar. 10, 2023) ("Piecemeal litigation occurs when parallel cases with overlapping claims are litigated at the same time with the possibility of inconsistent results."); *Montanore Minerals Corp.*, 867 F.3d at 1171 (reversing and remanding to district court to stay the federal proceedings, in part, because "[t]he state court first obtained jurisdiction . . . and the parallel proceedings presented the risk of inconsistent dispositions").  There is significant risk of piecemeal litigation here, inasmuch as the claims and defenses in this case and the State Court Actions substantially overlap, and Judge Grillo has already issued many rulings on issues relevant to those claims and defenses.  *See James v. San Diego Christian College*, No. 14cv314 BEN (DHB), 2015 WL 915366, at *1, 3 (S.D. Cal. Mar. 3, 2015) (district court orders stay of Title VII lawsuit until conclusion of concurrent FEHA case filed in state court to "avoid piecemeal litigation."); *Riley v. City of Richmond*, No. C-13-4752 MMC, 2014 WL 5073804, at *4 (N.D. Cal. Oct. 9, 2014) (same); *1-800 Remodel, Inc. v. Bodor*, CV 18-472-DMG (Ex), 2019 WL 856399, at *3 (C.D. Cal. Jan. 28, 2019) (same).

It is important to reiterate and further emphasize that California courts consistently apply Title VII principles and case law when considering analogous FEHA provisions.  *See Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998); *Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1614 n.3 (1995) ("Since the antidiscrimination objectives and public policy purposes of [FEHA and Title VII] are the same, we may rely on federal decisions to interpret analogous parts of the state statute." (quoting *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal. App. 4th 846, 851 (1994))); *see also, e.g.*, *Lyle*, 38 Cal. 4th at 279 ("California courts have adopted the [Title VII] standard for hostile work environment sexual harassment claims under FEHA."); *Flait*, 3 Cal. App. 4th at 475–76 (stating that FEHA retaliation claims "are evaluated under federal law interpreting Title VII cases").  Moreover, California courts have concurrent jurisdiction over Title VII claims and thus must remain up-to-date on Title VII developments.  *See Yellow Freight Syst. v. Donnelly*, 494 U.S. 820, 826 (1990).  In sum, because Title VII and FEHA claims are subject to and decided under "the same guiding principles," *Liu v. Amway Corp.*, 347 F.3d 1125, 1139 n.1 (9th Cir. 2003), there is a significant risk of duplicative motions, discovery requests and court rulings here, the very essence of

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

17

1   piecemeal litigation.  Indeed, Judge Grillo has already invoked and relied upon Title VII case law in

2   making rulings in the State Court Actions.  *See, e.g.*, RJN ¶ 12; Exh. P.

### 2.   The Order In Which The Forums Obtained Jurisdiction.

4   This factor strongly weighs in favor of a stay.  "In determining the order in which the state

5   and federal courts obtained jurisdiction, district courts are instructed not simply to compare filings

6   dates, but to analyze the progress made in each case in a pragmatic, flexible manner with a view to

7   the realities of the case at hand."  *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 843 (9th

8   Cir. 2017) (internal citation and quotation marks omitted).  Accordingly, federal courts consider the

9   respective filing dates of the actions and the advancement of litigation in each forum, *i.e*., how

10  much progress has occurred comparatively in the subject actions.

11  The Vaughn Case was filed on November 13, 2017, and the CRD Case was filed on February

12  9, 2022.  In both cases, the parties have advanced well past the early pleading stage in which the

13  instant case still finds itself.  In the State Court Actions, Judge Grillo has collectively decided 57

14  motions, issued 68 orders, and held more than 57 case management and informal discovery

15  conferences and other hearings.  In addition, an enormous amount of discovery has occurred in the

16  State Court Actions, including 63 depositions (with more scheduled) and the exchange of more than

17  83,000 pages of documents.  Multiple appellate proceedings have taken place in the Vaughn Case,

18  and CRD has also sought appellate relief in the CRD Case.  In sum, there is no question that the State

19  Court Actions are far more advanced than is this case.  Hill Decl. ¶¶ 3, 4, 6, 7; RJN ¶¶ 1, 2; and Exh.

20  A (a copy of the court docket in the Vaughn Case), Exh. B (a copy of the court docket in the CRD

21  Case).

### 3.   Whether Federal Or State Law Provides The Rule of Decision On The Merits.

24  Although federal law provides the rule of decision as to EEOC's Title VII claims, and state

25  law provides the rule of decision as to the FEHA claims asserted in the State Court Actions, this factor

26  has little significance because federal and state law is "essentially the same" with regard to these like

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

claims.  *See Riley*, 2014 WL 5073804, at *3, 8 (granting stay of Title VII case in deference to concurrent FEHA case); *James*, 2015 WL 915366, at *3 (same).

### 4.   Whether The State Court Proceeding Can Adequately Protect The Rights Of The Federal Litigants.

Whether the state court proceedings can adequately protect the rights of the federal litigants is sometime referred to as the "adequacy" factor.  *See R.R. St.*, 656 F.3d at 978–79, 981.  In truth, the adequacy factor only examines whether the state court might be *unable* to enforce federal rights.  *See, e.g.*, *Moses H. Cone*, 460 U.S. at 26–27 (finding state proceedings might be inadequate to enforce federal rights because it was unclear whether state courts would compel arbitration under the Federal Arbitration Act).  To be clear, "[t]his factor involves the *state* court's adequacy to protect *federal* rights, not the federal court's adequacy to protect state rights."  *Travelers Indemn. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (citing *Moses H. Cone*, 460 U.S. at 26).  Thus, here again, this factor weighs decidedly in favor of a stay.

For example, CRD is litigating claims of hostile work environment and retaliation on behalf of all Black workers at Tesla's California facilities within the statutory period, which is June 2018 through the present.  *See* RJN ¶¶ 4, 12; Exh. D ¶¶ 59–68, 141–49; Exh. P at 5–6 (order in CRD Case finding 1-year statutory period for FEHA discrimination claims, and defining scope of CRD's claims to include all California employees).  EEOC asserts two identical claims, but does so on behalf of a *subset* of CRD's aggrieved group (*i.e.*, only Tesla's Factory employees), and for only a portion of the liability period applicable to CRD's claims (*i.e.*, 300 days before the Commissioner's Charge was filed in late May 2019 to the present). Dkt. No. 1 ¶¶ 44–57; RJN ¶ 5; Exh. F (EEOC Commissioner's Charge, issued May 30, 2019).  *See Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1203 (9th Cir. 2016) (recognizing that EEOC may bring claims under Title VII for discrimination that occurred up to 300 days before the Commissioner or Complainant filed their charge).  Moreover, for each aggrieved worker, the FEHA authorizes CRD to seek unlimited compensatory and punitive damages, whereas under Title VII, EEOC can only request damages up to $300,000 per employee.

19

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

*Compare* Cal. Gov. Code § 12965, *with* 42 U.S.C. § 1981a(b)(3)(D); *see Thompson*, 2009 U.S. Dist. LEXIS 147483, at *8.

Thus, not only do the State Court Actions provide adequate protections for the rights of the aggrieved employees on whose behalf EEOC has filed this case, the State Court Actions present those employees with rights and potential recoveries that far exceed those available through this action.

**5.     Whether The State Court Proceedings Will Resolve The Issues Before The Federal Court.**

The final relevant *Colorado River* factor is "whether the state court proceedings will resolve all issues before the federal court." This is the so-called "parallelism" factor. *See R.R. St*., 656 F.3d at 978–79, 982. As previously discussed, EEOC's claims for relief are duplicative of claims pled in the State Court Actions. Moreover, the principles relevant to the disposition of those federal and state claims are "essentially the same." *Riley*, 2014 WL 5073804, at *3. Indeed, federal and California courts have repeatedly held that the resolution of a claim under Title VII or the FEHA may preclude re-litigating that same claim under the other statute. *See Kremer,* 456 U.S. at 484–85 (holding that resolution of a state law discrimination claim serves to bar a federal discrimination claim based on same facts). As the California Court of Appeal held in *Acuna v. Regents of University of California*: "Here the race and ethnicity claims, whether brought under Title VII or the FEHA, arise from the same primary right: the right to be free of invidious employment discrimination." 56 Cal. App. 4th 639, 649 (1997) (holding that prior federal court proceeding precluded later state court action based on same alleged discrimination).

For all these reasons, this case and the State Court Actions are substantially similar, and the *Colorado River* factors weigh heavily in favor of a stay of all proceedings.

**D.     The Failure Of EEOC To Endeavor In Good Faith To Engage Tesla In Pre-Suit Conciliation Also Warrants A Stay Of This Action.**

EEOC's "foremost" purpose, according to its mission statement, is to "[p]revent and remedy unlawful employment discrimination." (*See* EEOC Strategic Plan 2022-2026, https://www.eeoc.gov/eeoc-strategic-plan-2022-2026 (emphasis added).) Consistent with that

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

purpose, Title VII mandates that before EEOC files a lawsuit, it "*shall* endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b) (emphasis added).  As the Supreme Court has recognized, this obligation to conciliate "is mandatory, not precatory," and "serves as a necessary precondition to filing a lawsuit." *Mach Mining,* 575 U.S. at 486.  This is because, in crafting Title VII, "Congress chose '[c]ooperation and voluntary compliance' as its 'preferred means.'" *Id.* (alteration in original) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 228 (1982)).  EEOC's compliance with its pre-suit conciliation obligation is subject to judicial review and enforcement. *Id.* at 488–89.  "EEOC must try to engage the employer in some form of discussion . . . so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* at 494.  If EEOC fails to do so, the appropriate remedy is to stay the action and "order the EEOC to undertake the mandated efforts to obtain voluntary compliance." *Id.* at 495 (citing 42 U.S.C. § 2000e-5(f)(1) as authorizing a stay of a Title VII action for this purpose)).

Here, EEOC failed to comply with Title VII's conciliation mandate.  EEOC consistently refused to provide Tesla any specific facts or evidence from its investigation that might give Tesla "an opportunity to remedy the allegedly discriminatory practice." *Id.* at 494; Begley Decl. ¶¶ 6–9.  If EEOC earnestly believed that racist harassment was "ongoing" and "pervasive" at the Factory— where graffiti purportedly urged workers to "kill black people"—it is unconscionable that the agency intentionally failed to provide Tesla the means to voluntarily address the issue.  Again, EEOC's foremost purpose is to "prevent and remedy" discrimination.  But even after EEOC finally concluded its intermittent and unhurried investigation, issued a Determination, and then filed this lawsuit, Tesla still has no clue as to which managers, teams, or departments in the Factory EEOC considers to be sources of ongoing discrimination and racial harassment and retaliation.  It is thus clear that EEOC's goal was never to conciliate with Tesla and "endeavor" to obtain Tesla's "voluntary compliance" so as to "remedy [an] allegedly discriminatory practice." *Mach Mining*, 575 U.S. at 494–95.  Rather, EEOC's goal was always to file a headline-grabbing complaint at some politically expedient time.

For this additional reason, the Court should stay this action until EEOC engages Tesla in an

21

1   earnest effort to remedy the discrimination it has purportedly found to exist at the Factory.

2   **V.     CONCLUSION**

3          For all the foregoing reasons, Tesla's motion to stay all proceedings in this case should be

4   granted.

5                                               Respectfully submitted,

6   Dated:  December 18, 2023                   HOLLAND & KNIGHT LLP

7

8                                               By:_____/s/ Thomas E. Hill_____
                                                     Thomas E. Hill
9                                                    *Attorneys for Defendant*
                                                     TESLA, INC.
10

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

DEF. TESLA, INC.'S NOTICE & MOT. TO STAY ALL PROCEEDINGS; MEMO. OF POINTS AND
AUTHORITIES
Case No.: 3:23-cv-4984-JSC