# Exhibit C

CALIFORNIA CIVIL RIGHTS LAW GROUP
Lawrence Organ (SBN 175503)
Navruz Avloni (SBN 279556)
332 San Anselmo Avenue
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415) 785-7352
Email: larry@civilrightsca.com
      navruz@civil rightsca.com

BRYAN SCHWARTZ LAW
Bryan Schwartz (SBN 209903)
Jennifer Reisch, Of Counsel (SBN 223671)
Cassidy Clark (SBN 335523)
180 Grand Ave, Suite 1380
Oakland, California 94612
Tel. (510) 444-9300
Fax (510) 444-9301
Email: bryan@bryanschwartzlaw.com
      jennifer@bryanschwartzlaw.com
      cassidy@bryanschwartzlaw.com

*Attorneys for Plaintiff Marcus Vaughn*
*and the Putative Class*

**FILED BY FAX**
ALAMEDA COUNTY

July 07, 2021

CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy

CASE NUMBER:

**RG17882082**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA – UNLIMITED JURISDICTION

MARCUS VAUGHN, MONICA CHATMAN, TITUS MCCALEB, and EVIE HALL, individually and on behalf of all others similarly situated,

        Plaintiffs,

vs.

TESLA, INC. doing business in California as TESLA MOTORS, INC.; and DOES 1 THROUGH 50, INCLUSIVE,

        Defendants.

Case No.: RG17882082

<u>CLASS ACTION</u>

**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1. **Race-Based Discrimination in Violation of FEHA;**
2. **Race-Based Harassment in Violation of FEHA; and**
3. **Failure to Prevent Discrimination and Harassment in Violation of FEHA.**

**JURY TRIAL DEMANDED**

SECOND AMENDED COMPLAINT

1
2
3

## I.  NATURE OF THIS ACTION

4    1.    Plaintiffs Marcus Vaughn, Monica Chatman, Titus McCaleb, and Evie Hall bring this

5    class action pursuant to Code of Civil Procedure § 382, against Defendants Tesla, Inc. doing business

6    in California as Tesla Motors, Inc. ("Tesla"); and Does 1 through 50, inclusive (collectively,

7    "Defendants"), alleging that Defendants have created an intimidating, hostile, and offensive work

8    environment for Black and/or African-American employees that includes a routine use of the terms

9    "N****r" and "N***a" and other racially-derogatory terms, and racist treatment and images at Tesla's

10   production facility in Fremont, California ("Tesla Factory"), by failing to take necessary steps to prevent

11   race-based harassment and failing to take appropriate corrective action once such race-based harassment

12   has occurred, in violation of the Fair Employment and Housing Act ("FEHA"), California Government

13   Code § 12940, *et seq.*

14   2.    Plaintiffs Vaughn, Chatman, McCaleb, and Hall seek to represent a class and subclasses

15   comprised of Black and/or African-American workers who are current and former employees working

16   on the production floor at the Tesla Factory, at any time from November 9, 2016 to the final disposition

17   of this action ("Class Period"), for such claims as they did not agree to arbitrate privately. These

18   employees share a community of interest and are similarly situated under California Code of Civil

19   Procedure § 382.

20   3.    During the Class Period, Plaintiffs and the putative Class Members suffered severe

21   and/or pervasive harassment at the Tesla Factory because they are Black and/or African-American.

22   Despite the repeated attempts of Plaintiffs and numerous Class Members to curtail the harassment by,

23   *inter alia*, reporting repeated instances of race-based harassment to supervisors, Human Resources and

24   Chief Executive Officer Elon Musk (including prior lawsuits based upon this conduct), Defendants have

25   failed to take appropriate corrective action and permit the hostile work environment for Black and/or

26   African-American employees to persist. Plaintiffs Vaughn, Chatman, McCaleb, and Hall are seeking,

27   on behalf of themselves, and the Class and subclasses they seek to represent, declaratory and injunctive

28

2

SECOND AMENDED COMPLAINT

1  relief; back pay; front pay; compensatory and punitive damages; and attorneys' fees, costs and expenses

2  to redress Tesla's pervasive, discriminatory employment policies, practices and/or procedures.

3  **II. JURISDICTION AND VENUE**

4      4.      This Court has jurisdiction in that the amount in controversy exceeds the jurisdictional

5  limits of this Court according to proof at trial, and pursuant to California Government Code § 12965(b).

6      5.      Venue is proper in Alameda County, California, pursuant to California Government

7  Code § 12965(b), because the unlawful practices and acts alleged herein were committed within this

8  county.

9  **III. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10     6.      On November 9, 2017, Plaintiff Vaughn timely filed a class charge of discrimination

11  with the California Department of Fair Employment and Housing ("DFEH"). The DFEH issued a Right-

12  to-Sue Notice on November 9, 2017. Accordingly, Plaintiff has timely exhausted the class's

13  administrative remedies. A true-and-correct copy of Plaintiff's Right-to-Sue Notice is attached to this

14  complaint as Exhibit A. Subsequently, Plaintiffs are informed and believe that the Director of the DFEH

15  initiated a Director's Complaint raising similar allegations, and further exhausting these race

16  discrimination and harassment and failure-to-prevent claims.

17  **IV. PARTIES**

18     7.      Plaintiff Marcus Vaughn ("Vaughn" or "Plaintiff") was employed as a General

19  Assembly Associate by Defendants from approximately April 23, 2017 through October 31, 2017.

20  Plaintiff Vaughn is, and at all relevant times herein was, an adult Black/African-American residing in

21  California.

22     8.      Plaintiff Monica Chatman was employed as a Materials Handler (Forklift Operator) from

23  approximately November 16, 2016 until approximately September 11, 2019. Plaintiff Chatman is, and

24  at all relevant times herein was, an adult Black/African-American residing in California.

25     9.      Plaintiff Titus McCaleb was employed on the production floor from approximately

26  October 2016 through June 2017. Plaintiff McCaleb is, and at all relevant times herein was, an adult

27  Black/African-American residing in California.

28

3

SECOND AMENDED COMPLAINT

10.     Plaintiff Evie Hall has been employed on the production floor since May 2017. Plaintiff Hall is, and at all relevant times herein was, an adult Black/African-American residing in California.

11.     Defendant Tesla, Inc., d.b.a. Tesla Motors, Inc. is a publicly-traded Delaware corporation with its principal place of business in Palo Alto, California. Tesla designs, manufactures, and sells electric vehicles. One of Tesla's vehicle manufacturing facilities, also known as the "Tesla Factory," is located at 45500 Fremont Boulevard in Fremont, California. The harassing conduct at issue in this case took place at the Tesla Factory. Due to Tesla's ownership of the facility, its day-to-day managerial role in the facility, its right to hire, fire and discipline the employees, and its control of all terms and conditions of Plaintiffs' employment, Tesla was Plaintiffs' FEHA employer, or alternatively a joint employer, which provides employment pursuant to contract.

12.     In addition to Defendant Tesla, Plaintiffs sue fictitious defendants Does 1-50, inclusive, because their names, capacities, status, or facts showing them to be liable are not presently known. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiffs' damages as herein alleged. Plaintiffs will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

13.     Plaintiffs are informed, believes, and thereon alleges that each of the Defendants herein was at all times relevant to this action the agent, employee, representative partner, and/or joint venture of the remaining Defendants and was acting within the course and scope of the relationship. Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to the remaining Defendants.

## V. FACTUAL ALLEGATIONS

**A.     Defendants Have Maintained a Pattern or Practice of Race Discrimination**

14.     Although Tesla stands out as a groundbreaking company at the forefront of the electric car revolution, its standard operating procedure at the Tesla Factory is pre-Civil Rights Era race discrimination. Race harassment has continued at the Tesla Factory, and became more widespread,

4

because despite the company's knowledge of the harassment, Defendants have done nothing that could be reasonably expected to stop it.

15.     In fact, Defendants have a policy of creating a hostile work environment at the Tesla Factory. Non-African American employees, including supervisors, made and continue to make offensive racist comments and engage in offensive racist behavior towards Plaintiffs and Class and Subclass Members in the Tesla Factory on a daily basis.

**i. Plaintiff Marcus Vaughn's Experience at the Tesla Factory**

16.     Plaintiff Marcus Vaughn began working at the Tesla Factory on April 23, 2017 through the Balance Staffing agency, on the production floor as a General Assembly Associate. He never signed an arbitration agreement. Shortly thereafter, employees and supervisors began targeting Mr. Vaughn for harassment on the basis of his race. This harassment included the use of the terms "N****r" and "N***a" on a regular basis. Mr. Vaughn also observed other Black/African-American employees, including Black/African-American co-worker Timothy Cotton, being called "N****r" and "N***a."

17.     On July 21, 2017, Plaintiff Vaughn complained in writing to Human Resources Business Partner Rose Sanson and CEO Elon Musk, on behalf of himself and other Black/African-American employees, about the hostile work environment, and the racism directed at him, Mr. Cotton, and other Black/African-American employees at the Tesla Factory, saying:

> …Things really got worse for Tim [Cotton] when we had safety day and my AM T.O and my supervisor Tim [last name unknown] was talking about Harassment and if anything is happening that you don't like speak up. So Tim [Cotton] spoke up and said he didn't like when associates Say Nigga on the line it made him and a lot of us on the line feel uncomfortable. Since that day there has been so much back lash. From him getting hit in the back of the head with the chair, to him getting called bipolar, sensitive, people say nigga around him just to get a reaction out of him…

> …All I want to happen is for things to really change…if one person doesn't care about the quality of the car and just cares about speed, or is making people feel uncomfortable to the point where they don't want to come to work, or people calling people names, saying racial slurs, making fun of people then they shouldn't be at Tesla…I just hope who ever reads this does something about it before someone on my line snaps and someone gets hurt. That's the last thing I would want to see happen but tension is very high on my line and the morale on my line is low. Something has to change!!!!

5

SECOND AMENDED COMPLAINT

18.    Defendants did not conduct an investigation into Plaintiff Vaughn's above-referenced complaint, nor was he interviewed about his serious allegations of racism at the Tesla Factory.

19.    Instead, Plaintiff Vaughn was terminated on October 31, 2017 for "not having a positive attitude."

### ii.   Plaintiff Monica Chatman's Experience at the Tesla Factory

20.    Plaintiff Monica Chatman began working as a Forklift Operator on November 16, 2016, placed by West Valley Staffing. She did not sign an arbitration agreement during the time she worked for Tesla through West Valley Staffing.

21.    On approximately March 8, 2017, she became a direct hire of Tesla, remaining in that capacity until approximately September 11, 2019. During this period, she had an arbitration agreement in her paperwork as a direct hire.

22.    Plaintiff Chatman worked on the General Assembly Line and the Model 3 Line. She heard the words "N****r" and "N***a" used frequently by coworkers in the Tesla factory throughout her time at Tesla, when working there through West Valley Staffing and as a direct hire. She was called "N****r" by her Tesla supervisor, Roger Beltran, on two occasions, and overheard Mr. Beltran use phrases like "I can't stand her Black ass," and "tell her to get her Black ass over here," when referring to her. Plaintiff Chatman also heard the terms "monkey" and "dirty" used as racial slurs toward Black/African-American workers by coworkers in the Tesla factory.

23.    Ms. Chatman witnessed both Black/African-American and other employees referring to the Tesla Factory as "the Plantation." Her understanding is that people refer to the Tesla factory as "the Plantation" because Tesla dehumanizes its Black/African-American employees, *i.e.,* treating them like slaves.

24.    Along with racially harassing language, Ms. Chatman observed a pattern of discriminatory treatment against Black/African-American employees at the Fremont factory. Black/African-American employees, including herself, were not given raises, and were promoted far less than non-Black/African-American employees, while being reprimanded, disciplined, and written up more often than non-Black/African-American employees at Tesla.

6

SECOND AMENDED COMPLAINT

25.     Ms. Chatman further saw that Mr. Beltran segregated the Model 3 Line by race, and stationed almost all of the Black/African-American employees together at the very back of the Line, out of sight.

26.     In 2018, Ms. Chatman complained to Human Resources, including Rose Sanson, about Mr. Beltran's behavior, including his racist anti-Black behavior. Tesla did not take immediate or appropriate action to stop the racist behaviors from continuing after she complained.

27.     On approximately September 11, 2019, Ms. Chatman was terminated for hitting a sprinkler with a forklift, despite the fact that others who are not Black/African-American and who did not complain of discrimination were not terminated for similar actions.

**iii. Plaintiff Titus McCaleb's Experience at the Tesla Factory**

28.     Plaintiff McCaleb was hired to work on the production floor on approximately October 26, 2016, through a staffing agency, West Valley Staffing. He did not sign an arbitration agreement. He never became a direct hire of Tesla, and stopped working there on approximately June 2, 2017.

29.     During his employment at Tesla, he heard the words "N****r" and "N***a" used frequently in the factory also, and estimates he was directly called "N****r" and "N***a" numerous times by coworkers and/or by his supervisor at the Fremont factory. Throughout his Tesla employment, he saw racist graffiti written inside of the bathroom stalls, including such offensive writings as: "N****r;" "Fuck you n****s;" and "I love black pussy." Like Plaintiff Chatman, he heard both Black and non-Black employees refer to the Tesla Factory as "the Plantation."

30.     Mr. McCaleb witnessed supervisors being present during the use of the N-word, but they did not take action to stop it. Even after Mr. McCaleb informed the supervisors that he was offended by the use of the N-word, they did not take action to stop its use.

31.     Mr. McCaleb reported the racially harassing conduct to supervisors, managers and to Tesla's Human Resources Department, including Brandie To, numerous times, but Tesla failed to take adequate remedial measures to address the harassment and it continued after his complaints.

7

SECOND AMENDED COMPLAINT

32.     After he complained, Mr. McCaleb was told that if he kept complaining, he might be terminated.  Shortly after his last complaint in June 2017, he was terminated as further harassment and as part of Tesla's pattern of failing to prevent harassment and discrimination.

**iv. Plaintiff Evie Hall's Experience at the Tesla Factory**

33.     Plaintiff Hall was hired to work on the production floor in approximately May 2017, through a staffing agency, Balance Staffing. At that time, she did not sign an arbitration agreement. She became a direct hire Tesla worker in about August 2017 and potentially has an arbitration agreement in her paperwork to become a direct hire.

34.     During her employment at Tesla, she has experienced a toxic, hostile work environment. She has heard the N-word used frequently in the factory and has been directly called the N-word many times at the Fremont factory. Like other Plaintiffs, she heard both Black and non-Black employees refer to the Tesla Factory as "the Plantation."

35.     In 2019, Ms. Hall raised complaints to HR and supervisors, including Anna Nguyen and Damon Robertson, racist comments and language being used in her presence and/or being directed at her. One such complaint was regarding a co-worker's racist stereotyping of Black/African-Americans, including but not limited to the use of the N-word. Tesla failed to take remedial measures to address the harassment and it continued after her complaints.  Shortly thereafter, the individual who was the focus of her complaints, Flor Farias, was promoted to supervisor.

36.     Ms. Hall has known almost no Black/African-American managers at Tesla and is the only Black/African-American woman working in her area.

**5.   Other African-American Employees Shared Plaintiffs' Experience**

37.     Other African-American production floor employees have experienced the same pattern and practice of race discrimination as Plaintiffs. Melvin Berry, who worked for Defendants from 2015 through October 22, 2016, heard supervisors use the terms "N****r" and "N***a" on a regular basis – it was part of their everyday conversation, and leads and supervisors directed the term toward him when criticizing his work. Four other employees, DeWitt Lambert, Owen Diaz, Demetric Di-az and Lamar Patterson, filed lawsuits against Tesla alleging race harassment, including widespread use of the terms

"N****r" and "N***a" throughout the Tesla Factory. *See Lambert v. Tesla Inc. et al.*, case number RG-17854515, in the Superior Court for the State of California, Alameda County (March 26, 2017); *Diaz et al. v Tesla et al.*, case number 17-cv-06748-WHO in the Northern District of California, originally filed as case number RG17878854, in the Superior Court of the State of California for the County of Alameda (October 16, 2017). Mr. Berry, Mr. Cotton, and others filed similar claims in arbitration. Though numerous individual cases have been filed, none have addressed the egregious, systemic racism and racist harassment against Black/African-American workers and failure to prevent such on a class-wide basis, as this suit will do.

38.     Supervisors regularly witness employees engaging in offensive racist conduct, and also engage in race harassment themselves, therefore giving license to subordinates to do the same.

39.     As a result, while on the production lines, Class Members constantly have to worry about being called "N****r" and "N***a" by their supervisors and co-workers.

40.     Black/African-American employees, including Plaintiffs and other Class Members, have complained to their supervisors, Human Resources and upper management about the racist behavior in the workplace, both verbally and in writing. As early as fall 2015, Mr. Lambert complained to his Supervisor Charles Lambert about the frequent use of the N-words, and a year later showed Human Resources Business Partner Rose Sanson hateful, violent and racist videos created on his phone by an employee and a supervisor at the Tesla Factory. However, Tesla took no action, either to investigate or reprimand the harassers.[1] Similarly, Mr. Berry, in 2016, complained of racial harassment and the use of the terms "N****r" and "N***a" to Tesla's Human Resources Business Partner Maggie Crosby, and subsequently to Ms. Crosby's supervisor. However, no action was taken against the harassers, and the harassment continued.

41.     Tesla's Vice President of Production Peter Hochholdinger sent an email on March 11, 2017 to employees at the Tesla Factory about the "Production Work Environment," stating, "I heard

---

[1] Defendant Tesla claims it investigated Mr. Lambert's allegations and terminated the harassers but only *after* Mr. Lambert filed his lawsuit in March 2017, or over a year and a half after his initial complaint to the company. Based on information and belief, after terminating their employment, Defendants informed the harassers that they were eligible to reapply to work at the Tesla Factory after a six-months period.

9

SECOND AMENDED COMPLAINT

some concerns about our work environment this week and I want to address them head on…Anyone who is found in violation of [the harassment] policy will be subject to discipline up to and including immediate termination."

42.     Unfortunately, like the promises made by management and Human Resources, Mr. Hochholdinger's statement about disciplining harassers turned out to be an empty promise. To illustrate, Mr. Cotton, who worked on the production line with Plaintiff, was called "N****r" and "N***a" by Leads Christian Coronas, Sergio Cruz, Richard Hilario and Lou Saephan in fall 2017, complained about the harassing conduct, yet no disciplinary action was taken against the harassers as promised by Mr. Hochholdinger a few months prior.

43.     When supervisors, Human Resources, and the Chief Executive Officer – essentially everyone at Tesla with the responsibility and ability to stop race harassment – have actual knowledge of the illegal conduct, because they are present and able to hear the comments, which are openly made in common areas, or because the comments are repeated, reliably reported, and contained in lawsuits, backed by evidence, over a period of years, it is a reasonable inference that Defendants intentionally choose not to address the illegality, and therefore intentionally seek the result of its indifference.

**B.     Defendants' Ineffective Anti-Discrimination Efforts**

44.     Plaintiffs are informed and believe, and thereupon allege that Defendants maintain a pattern or practice of ignoring and/or failing to act promptly to investigate harassment complaints; conduct inadequate investigations; maintain inadequate anti-harassment policies and practices; fail to adequately train leads, supervisors and managers about their policies and procedures, and about how to prevent harassment from occurring; fail to implement an adequate complaint mechanism for receiving and addressing complaints of harassment; and refuse to discipline identified harassers, allowing employees against whom harassment complaints have been made to continue working at the Tesla Factory, earning money, unaffected by the complaint.

45.     Plaintiffs are further informed and believe, and thereupon allege, that Defendants have a pattern or practice of permitting employees who have engaged in harassment to remain with the company, and rehiring known harassers to the company, even with the foreseeable consequence that they racially harass additional Black/African-American employees day-in and day-out.

46.     This behavior is in line with Tesla's Chief Executive Officer's belief of what "Doing the right thing" entails when it comes to race harassment. On May 31, 2017, CEO Elon Musk wrote an email to Tesla Factory employees stating:

> …Part of not being a huge jerk is considering how someone might feel who is part of [a] historically less represented group…Sometimes these things happen unintentionally, in which case you should apologize. In fairness, if someone is a jerk to you, but sincerely apologizes, it is important to be thick-skinned and accept that apology.

47.     In light of CEO Musk's message to employees that racist epithets can be directed "unintentionally" and that it is "important to be thick-skinned," it is not surprising that the Tesla Factory has become a hotbed for racist behavior.

## VI. CLASS ALLEGATIONS

### A.    Class Definition

48.     Plaintiffs bring this action pursuant to California Code of Civil Procedure § 382 on behalf of themselves and on behalf of a class of Black and/or African-Americans who were employed on the production floor at the Tesla Factory at any time from November 9, 2016 to the final disposition of this action ("Class Members"), who were not subject to an arbitration agreement for all relief sought for the entire period of their employment at Tesla.

49.     Plaintiffs (or one or more of them) bring this action on behalf of the following subclasses:

    a.   as to Plaintiffs Vaughn and McCaleb, on behalf of those who have not signed a Tesla arbitration agreement or an arbitration agreement with a staffing agency before or after starting work at the Tesla factory;

    b.   as to all Plaintiffs, as to those who signed a Tesla arbitration agreement after starting work at the Tesla factory, but previously worked on the production floor at the factory without an arbitration agreement, with respect to the time periods worked without an arbitration agreement;

    c.   as to all Plaintiffs, seeking injunctive relief for current and future employees, noting that injunctive relief claims may be brought in court

SECOND AMENDED COMPLAINT

1                even under Tesla's arbitration agreement; and

2           d.   seeking a "public injunction," primarily for the benefit of the general

3                public, which, as described in *McGill v. Citibank, N.A.* (2017) 2 Cal.5th

4                945, 961, 965, cannot be waived in pre-dispute arbitration agreements as

5                a matter of California public policy. (*McGill*, 2 Cal. 5th at 961-66.) *See*

6                *also Blair v. Rent-A-Center, Inc.* (9th Cir. 2019) 928 F.3d 819. It is a

7                matter of public concern that Tesla, which was the fifth-most valuable

8                company in America in 2021, and one of Alameda County's biggest

9                employers, flagrantly abuses its Black/African-American workers,

10               flouting FEHA, setting a horrific example for other employers and

11               precluding countless Black/African-American workers from pursuing

12               careers in what might otherwise be a desirable place to work.

13      50.    This action is brought, and may properly be maintained, as a class action under § 382

14 because there is a well-defined community of interest in the litigation, and the proposed class is easily

15 ascertainable.

16 **B.**     **Numerosity and Impracticability of Joinder**

17      51.    The proposed Class Members are sufficiently numerous that joinder of all members is

18 impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class and

19 each of the subclasses consists of more than 100 Black and/or African-Americans.

20 **C.**     **Community of Interest**

21      52.    There is a well-defined community of interest, because common questions of law and

22 fact exist as to all members of the Class and predominate over any questions solely affecting individual

23 members of the Class.

24      53.    The common questions of law include, *inter alia:* (a) whether permitting pervasive use

25 of the terms "N****r" and "N***a" and other racially-derogatory terms and racist treatment and images

26 on the production floor constitutes unlawful harassment under FEHA; (b) whether Defendants engaged

27 in a pattern or practice of unlawful, systemic race harassment of its Black and/or African-American

28

12

SECOND AMENDED COMPLAINT

employees; (c) whether Defendants are liable for a pattern or practice of violating FEHA by failing to stop and prevent unlawful conduct - specifically, the prolific use of the terms "N****r" and "N***a" on the production floor and associated race harassment against Blacks or African-Americans; and (d) a determination of the proper standards for proving a pattern and/or practice of discrimination by Defendants against the African-American employees on the production floor at the Tesla Factory. As to those who worked at Tesla through staffing agencies, like Plaintiffs, another common question of law is whether Tesla is a FEHA employer or joint employer with those staffing agencies.

54.    The common questions of fact would include, *inter alia:* whether, through its policies, practices and/or procedures: (a) Defendants created and sustained a hostile work environment among its Black or African-American employees at the Tesla Factory by permitting and failing to prevent pervasive use of the terms "N****r" and "N***a" and other racially derogatory terms, treatment and images on the production floor; (b) Human Resources personnel and/or management were aware of the race discrimination and harassment; (c) Defendants engaged in a pattern or practice of failing to take prompt and effective action to remedy the pervasive race harassment of Black and/or African-American employees, including failing to: conduct prompt and adequate investigations; maintain adequate anti-harassment policies, practices and training; implement adequate complaint mechanisms for receiving and addressing complaints of harassment; communicate to employees that harassing conduct will not be tolerated; and discipline employees; and (d) whether injunctive relief and punitive damages are warranted.  As to those who signed Tesla's standard arbitration agreement after they began at Tesla, like Plaintiffs Chatman and Hall, another common question of fact is whether the agreement on its face is limited to the period after the date individuals became direct-hire Tesla employees, as the Court has found. As to those who worked at Tesla through staffing agencies, like Plaintiffs, other common questions of fact are whether Tesla maintained the right to supervise, direct, and control their day-to-day work, provided supervision, directed what hours to work and when to take breaks, instructed them on how to perform job duties, and provided the equipment necessary to perform their duties.

**D.     Typicality of Claims and Relief Sought**

13

SECOND AMENDED COMPLAINT

55.    The claims of Plaintiffs Vaughn, Chatman, McCaleb, and Hall are typical of the claims of the proposed class and subclasses. The relief sought by the Plaintiffs for race discrimination and harassment complained of herein is also typical of the relief sought on behalf of the proposed class.

56.    Plaintiffs are, like the members of the proposed class and subclasses, Black and/or African-American and worked on the production floor at the Tesla Factory during the Class Period, and were not subject to arbitration agreements for all or part of their time at Tesla.

57.    Plaintiffs and members of the class have complained about race harassment, including by informal and formal complaints to supervisors and managers up to and including Elon Musk, Chief Executive Officer of Tesla. Defendants' investigations into these complaints have been inadequate, and Plaintiffs and Class Members have been injured by Defendants' failure to take adequate remedial measures to correct this pattern or practice of race discrimination.

58.    Defendants failed to discipline its supervisors, managers and production employees adequately when they violated the anti-discrimination laws, which has affected Plaintiffs and the Class Members in similar ways.

59.    Consequently, the claims alleged by the Plaintiffs are typical of the claims of the class. Plaintiffs have worked at the Tesla Factory during the Class Period, during times they were not subject to arbitration agreements, and have been subjected to the discriminatory policies or practices alleged herein. The relief sought by the Plaintiffs for race discrimination and harassment is also typical of the relief which is sought on behalf of the proposed class.

**E.    Adequacy of Representation**

60.    Plaintiffs' interests are co-extensive with those of the members of the proposed class and subclasses they seek to represent, and Plaintiffs will fairly and adequately represent and protect the interests of the class and subclasses they seek to represent, with no interests that conflict with those of the Class Members. Plaintiffs seek to remedy Defendants' discriminatory employment policies, practices and/or procedures so that Blacks and/or African-Americans working at the Tesla Factory will not be subjected to a hostile environment. Plaintiffs are willing and able to represent the proposed class fairly and vigorously, and have retained counsel experienced in class and race discrimination litigation.

14

**F.      Efficiency of Class Prosecution of Common Claims**

61.     Certification of a class and/or subclasses of Black and/or African-American employees similarly situated to Plaintiffs is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of Plaintiff and the proposed class and subclasses. The individual claims of Plaintiffs require the resolution of the common question of whether Defendants engaged in a systemic pattern and/or practice of race discrimination and harassment and failing to prevent such against Black and/or African-American employees not subject to arbitration. Plaintiffs seek remedies to eliminate the adverse effects of such discrimination and harassment in their own lives, careers and working conditions, and in the lives, careers and working conditions of the proposed Class Members, and to prevent continued race discrimination and harassment in the future. Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination and harassment has had on them individually and on Black and/or African-American employees at the Tesla Factory in general. To gain such relief for themselves, as well as for the proposed Class Members, Plaintiffs will first establish the existence of systemic race discrimination and harassment, pervasive use of the terms "N****r" and "N***a" and other racially-derogatory terms, and racist images and treatment on the production floor, and a failure to take immediate and appropriate corrective action in response, or to prevent its frequent recurrence, as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits without ever addressing the systemic racism that infects Tesla's Fremont Factory. Certification of the proposed class and subclasses of Blacks and/or African-Americans who have been affected by these common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the proposed class and subclasses, and Defendants. Additionally, individual employees may lack the financial resources to vigorously prosecute separate lawsuits in court against large corporate defendants, and fear retaliation and blackballing in their industry.

**G.      Nature of Notice to the Proposed Class**

62.     Plaintiffs intend to send notice to all Class Members to the extent required by California

SECOND AMENDED COMPLAINT

1  Code of Civil Procedure § 382. Plaintiffs are informed and believe that Tesla's records and/or those of

2  staffing agencies contain a last known address, email address, and/or phone number for Class Members.

3  Plaintiff contemplates that individual notice be given to Class Members at such last known address by

4  first-class mail, email, and text, informing them of the following:

5       1.  The pendency of the class action, and the issues common to the class;

6       2.  The nature of the action;

7       3.  Their right to "opt out" of the action within a given time, in which event they will

8          not be bound by a decision rendered in the class action;

9       4.  Their right, if they do not "opt out," to be represented by their own counsel and enter

10          an appearance in the case; otherwise, they will be represented by Plaintiffs and their

11          counsel;

12       5.  Which claims are covered by the class action, and examples of claims not covered

13          by the class action (*e.g.,* individual wrongful termination claims);

14       6.  The extent to which arbitration agreements may limit the scope of their claims to be

15          litigated in the class action; and

16       7.  Their right, if they do not "opt out," to share in any recovery in favor of the class,

17          and conversely to be bound by any judgment on the common issues, adverse to the

18          class.

19  **VII. CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**

20  **Race-Based Discrimination in Violation of FEHA**
**(California Government Code § 12940, *et seq.*)**

21  **(Against All Defendants; On Behalf of Plaintiffs and the Class and Subclasses)**

22

23      63.    Plaintiffs, on behalf of themselves and the proposed class and subclasses, allege and

24  incorporate by reference the allegations in the preceding paragraphs.

25      64.    In relevant part, California Government Code section 12940(a) provides that it shall be

26  unlawful for an employer to discriminate against employees in the terms and conditions of their

27  employment because of their race.

28

16

SECOND AMENDED COMPLAINT

65.     Plaintiffs and the Class Members are Black and/or African-American and are thus members of a protected class.

66.     FEHA defines "employer" broadly to encompass "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly." California Government Code § 12926(d). Here, all Defendants were employers of Plaintiff and the Class Members as defined by FEHA because they regularly employed five or more persons. Furthermore, due to Defendant Tesla's ownership of the facility, its day-to-day managerial role in the facility, its right to hire, fire and discipline the employees, and its control of all terms and conditions of Plaintiff and Class Members' employment, Defendant Tesla is Plaintiff and Class Members' FEHA employer, or alternatively a joint employer, which provides employment pursuant to contract. *See Vernon v. State* (2004) 116 Cal.App.4th 114, 124;

67.     As set forth above, Defendants discriminated against Plaintiffs and the Class Members because of their race. Defendants engaged in illegal, intentional discrimination on the basis of race, by creating a hostile work environment based on race. Plaintiffs have regularly complained to Defendants regarding discrimination and harassment, but Defendants allowed the discrimination and harassment to continue.

68.     As a direct, legal and proximate result of the discrimination, Plaintiffs and the proposed Class Members have suffered damages, including emotional distress, lost wages and other economic damages, in an amount to be proven at trial.

69.     By reason of the conduct of Defendants, Plaintiffs have necessarily retained attorneys to prosecute the action on behalf of themselves and the class and subclasses. Pursuant to California Government Code § 12965(b), as a result of Defendants' discrimination, Plaintiffs and the class and subclasses are entitled to recover damages for economic harm and emotional distress, attorneys' fees, costs, and expert witness fees. Plaintiffs and the class and subclasses are also entitled to attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

70.     Defendants' actions were ratified by managing agents, and were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs and the Class

17

SECOND AMENDED COMPLAINT

1    Members in conscious disregard of their rights. Plaintiffs and the Class Members are therefore entitled
2    to recover punitive damages from Defendants in an amount according to proof at trial.

3          71.    Plaintiff Vaughn timely exhausted administrative remedies on behalf of the other
4    Plaintiffs and the entire Class, and the DFEH Director's Complaint further exhausted such.

5          72.    By reason of the foregoing violations, Plaintiffs are entitled to an injunction for current
6    and future employees, and a public injunction, enjoining Defendants from committing further violations
7    of the FEHA with respect to race discrimination and harassment against Black and/or African-American
8    workers, and failure to prevent such.

9

10                           **SECOND CAUSE OF ACTION**
11                        **Race-Based Harassment in Violation of FEHA**
                         **(California Government Code § 12940, *et seq.*)**
12       **(Against All Defendants; On Behalf Plaintiffs and the Class and Subclasses)**

13         73.    Plaintiffs, on behalf of themselves and the proposed class and subclasses, allege and
14    incorporate by reference the allegations in the preceding paragraphs.

15         74.    In relevant part, California Government Code section 12940 states that it shall be
16    unlawful for an employer or for any other person to harass an employee because of race.

17         75.    Plaintiffs and the Class Members are Black and/or African-American and are thus
18    members of a protected class.

19         76.    FEHA defines "employer" broadly to encompass "any person regularly employing five
20    or more persons, or any person acting as an agent of an employer, directly or indirectly." California
21    Government Code § 12926(d).  Here, all Defendants were employers of Plaintiffs and the Class
22    Members as defined by FEHA because they regularly employed five or more persons. Furthermore, due
23    to Defendant Tesla's ownership of the facility, its day-to-day managerial role in the facility, its right to
24    hire, fire and discipline the employees, and its control of all terms and conditions of Plaintiffs and Class
25    Members' employment, Defendant Tesla is the Plaintiffs' and Class Members' FEHA employer, or
26    alternatively a joint employer, which provides employment pursuant to contract. *See Vernon v. State*

27                                      18
28    _____
                  SECOND AMENDED COMPLAINT

1  (2004) 116 Cal.App.4th 114, 124.

2      77.    Defendants created a hostile work environment based on race with respect to

3  Black/African-American employees. The harassment Plaintiffs and the Class Members experienced

4  while employed by Defendants was sufficiently severe or pervasive to alter the terms and conditions of

5  Plaintiffs and the Class Members' work environment and was thus unlawful under FEHA.

6      78.    As a direct, legal and proximate result of the discrimination, Plaintiffs and the proposed

7  Class Members have suffered damages, including emotional distress, lost wages and other economic

8  damages, in an amount to be proven at trial.

9      79.    By reason of the conduct of Defendants, Plaintiffs have necessarily retained attorneys to

10  prosecute the action on behalf of themselves and the class and subclasses. Pursuant to California

11  Government Code § 12965(b), as a result of Defendants' harassment, Plaintiffs and the class and

12  subclasses are entitled to recover damages for emotional distress and economic harm, attorneys' fees,

13  costs, and expert witness fees. Plaintiffs and the class and subclasses are also entitled to attorneys' fees

14  pursuant to California Code of Civil Procedure § 1021.5.

15      80.    Defendants' actions were ratified by managing agents, and were willful, malicious,

16  fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiff and the Class

17  Members in conscious disregard of their rights. Plaintiff and the Class Members are therefore entitled

18  to recover punitive damages from Defendants in an amount according to proof at trial.

19      81.    Plaintiff Vaughn timely exhausted administrative remedies on behalf of the other

20  Plaintiffs and the entire Class, and the DFEH Director's Complaint further exhausted such.

21      82.    By reason of the foregoing violations, Plaintiffs are entitled to an injunction for current

22  and future employees, and a public injunction, enjoining Defendants from committing further violations

23  of the FEHA with respect to race discrimination and harassment against Black and/or African-American

24  workers, and failure to prevent such.

25

26

27

28

19

SECOND AMENDED COMPLAINT

**THIRD CAUSE OF ACTION**
**Failure to Prevent Race-Based Discrimination and Harassment in Violation of FEHA**
**(California Government Code § 12940(k))**
**(Against All Defendants; On Behalf of Plaintiffs and the Class and Subclasses)**

83.     Plaintiffs, on behalf of themselves and the proposed class and subclasses, allege and incorporate by reference the allegations in the preceding paragraphs.

84.     California Government Code § 12940(k) provides that it shall be an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring in the workplace.

85.     Plaintiffs and the Class Members are Black and/or African-American and are thus members of a protected class.

86.     FEHA defines "employer" broadly to encompass "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly." California Government Code § 12926(d).  Here, all Defendants were employers of the Plaintiffs and the Class Members as defined by FEHA because they regularly employed five or more persons. Furthermore, due to Defendant Tesla's ownership of the facility, its day-to-day managerial role in the facility, its right to hire, fire and discipline the employees, and its control of all terms and conditions of Plaintiffs' and Class Members' employment, Defendant Tesla is Plaintiffs' and Class Members' FEHA employer, or alternatively a joint employer, which provides employment pursuant to contract. *See Vernon v. State* (2004) 116 Cal.App.4th 114, 124.

87.     Defendants failed to provide Plaintiffs and the Class Members with protections required under California Government Code § 12940(k) by not taking immediate and sufficient action to correct the discriminatory and harassing conduct directed at Black/African-American employees.

88.     As a direct, legal and proximate result of the discrimination, Plaintiffs and the proposed Class Members have suffered damages, including emotional distress, lost wages and other economic damages, in an amount to be proven at trial.

89.     By reason of the conduct of Defendants, Plaintiffs have necessarily retained attorneys to

1    prosecute the action on behalf of himself and the class and subclasses. Pursuant to California

2    Government Code § 12965(b), as a result of Defendants' discrimination and harassment, Plaintiffs and

3    the class and subclasses are entitled to recover damages for economic harm and emotional distress,

4    attorneys' fees, costs, and expert witness fees. Plaintiffs and the class and subclasses are also entitled

5    to attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

6        90.     Defendants' actions were ratified by managing agents and were willful, malicious,

7    fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs and the Class

8    Members in conscious disregard of their rights. Plaintiffs and the Class Members are therefore entitled

9    to recover punitive damages from Defendants in an amount according to proof at trial.

10       91.     Plaintiff Vaughn timely exhausted administrative remedies on behalf of the other

11   Plaintiffs and the entire Class, and the DFEH Director's Complaint further exhausted such.

12       92.     By reason of the foregoing violations, Plaintiffs are entitled to an injunction for current

13   and future employees, and a public injunction, enjoining Defendants from committing further violations

14   of the FEHA with respect to race discrimination and harassment against Black and/or African-American

15   workers, and failure to prevent such.

16                              **VIII. PRAYER FOR RELIEF**

17   WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class and subclasses, requests

18   judgment and the following specific relief against Defendants:

19       A. Certification of the Class as a class action, and of the class and subclasses, under Code of

20          Civil Procedure § 382, and designation of Plaintiffs as representatives of the Class and their

21          counsel of record as Class Counsel;

22       B. All damages which the Plaintiffs and the class and subclasses have sustained as a result of

23          Defendants' conduct, including general damages for pain, suffering, emotional distress, and

24          economic damages caused by the discriminatory practices of Defendants;

25       C. For an award of exemplary and punitive damages in an amount commensurate with

26          Defendants' ability to pay and to deter future conduct;

27

28

SECOND AMENDED COMPLAINT

D. A preliminary and permanent injunction, and a public injunction, against Defendants and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from maintaining a hostile work environment on the basis of race, and failing to prevent such an environment. Such relief at minimum should include implementation of effective policies to prevent and correct race harassment, implementation of mandatory training regarding harassment for all of Defendants' managerial and non-managerial employees, and a public declaration that Tesla's widely-known racist practices contravene California law and will not continue and will not be tolerated.

E. Declaratory relief against Defendants finding their employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Plaintiff and members of the Class under California Government Code § 12940;

F. For an award of reasonable attorneys' fees, expert witness fees, litigation expenses and costs incurred in the filing and prosecution of this action, pursuant to California Government Code § 12965(b);

G. For pre-judgment and post-judgment interest, as provided by law;

H. For such other and further relief, in law or in equity, as this Court may deem proper and just.

//

//

//

//

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Code of Civil Procedure section 631, Plaintiff, individually, and on behalf of others similarly situated, demands a trial by jury.

DATED: July 6, 2021                 **CALIFORNIA CIVIL RIGHTS LAW GROUP
                                    BRYAN SCHWARTZ LAW**

By:   */s/ Bryan Schwartz*
      Lawrence Organ (SBN 175503)
      Bryan Schwartz (SBN 209903)
      Jennifer Reisch, Of Counsel (SBN 223671)
      Navruz Avloni (SBN 279556)
      Cassidy Clark (SBN 335523)

      *Attorneys for Plaintiff and the Putative Class*

SECOND AMENDED COMPLAINT

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                           GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                   DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

November 09, 2017

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 971821-322021
Right to Sue: Vaughn / Tesla, Inc. DBA Tesla Motors, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

Enclosures

cc: Balance Staffing Workforce LLC

1

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

2

**BEFORE THE STATE OF CALIFORNIA**

3

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**

4

**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

5

6

In the Matter of the Complaint of                          DFEH No. 971821-322021
Marcus Vaughn, Complainant.

7

8

9

vs.

10

Tesla, Inc. DBA Tesla Motors, Inc.,
Respondent.

11

818 West 7th Street, Suite 930
Los Angeles, California 90017

12

13

14

Complainant alleges:

15

1. Respondent **Tesla, Inc. DBA Tesla Motors, Inc.** is a subject to suit under the
California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).
Complainant believes respondent is subject to the FEHA.

16

17

2. On or around **October 31, 2017**, complainant alleges that respondent took the
following adverse actions against complainant: **Discrimination, Harassment
Denied a work environment free of discrimination and/or retaliation,** .
Complainant believes respondent committed these actions because of their: **Color,
Race, Other Failure to prevent harassment and discrimination**.

18

19

20

21

3. Complainant **Marcus Vaughn** resides in the City of **Tracy**, State of **California**. If
complaint includes co-respondents please see below.

22

DFEH 902-1

-5-

*Complaint ±DFEH No. 971821-322021*

Date Filed: November 09, 2017

1

2    **Co-Respondents:**
     Balance Staffing Workforce LLC
3
4    2800 North Cherryland Ave.
     Stockton  California 95215
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DFEH 902-1

-6-

*Complaint ±DFEH No. 971821-322021*

Date Filed: November 09, 2017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**Additional Complaint Details:**

Marcus Vaughn and similarly-situated African American employees at Tesla`s Fremont Factory were subjected to the pervasive use of the "N word" in the workplace, and other harassment based upon their race--African American. Complainant makes these allegations and asserts these claims on behalf of himself and others similarly situated. On information and belief, Respondents are engaging in class-wide pattern and/or practice of discrimination and harassment by failing to take prompt and effective action to remedy the pervasive race harassment in the workplace, by failing to prevent this pattern of conduct from occurring and continuing, despite repeated complaints to Human Resources and other Respondent supervisors and managers, by failing to have and/or implement appropriate anti-harassment policies, by failing to discipline those accused of harassment, and by failing to implement an adequate complaint mechanism for receiving and addressing complaints of race harassment. The harassment and Respondents` failure to prevent and correct it altered the terms and conditions of Complainant and similarly-situated African American employees` working environment, making it a hostile and abusive environment.

DFEH 902-1

-7-

*Complaint ±DFEH No. 971821-322021*

Date Filed: November 09, 2017

1

VERIFICATION

2

I, **Navruz Avloni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

3

4

On November 09, 2017, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

5

6

**San Anselmo, California**
**Navruz Avloni**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DFEH 902-1

-8-

*Complaint ±DFEH No. 971821-322021*

Date Filed: November 09, 2017