# Exhibit D

JANETTE L. WIPPER, Chief Counsel, (#275264)
ALEXIS MCKENNA, Assistant Chief Counsel, (#197120)
SIRITHON THANASOMBAT, Associate Chief Counsel, (#270201)
California Department of Fair Employment and Housing
2218 Kausen Dr, Suite 100
Elk Grove, CA 95758-7178
Telephone: (916) 478-7251
Facsimile: (888) 382-5293

Attorneys for Plaintiff,
Department of Fair Employment and Housing

**FILED**
Superior Court of California
County of Alameda

03/11/2022

Clad Finke, Executive Officer / Clerk of the Court

By: _____ Deputy
S. Pesko

(Fee Exempt, Gov. Code, § 6103)

Electronically Received 03/11/2022 02:25 PM

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| **DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**, an agency of the State of California, <br><br> Plaintiff, <br><br> vs. <br><br> **TESLA, INC.,** doing business in California as TESLA MOTORS, INC., **and DOES ONE through FIFTY, inclusive,** <br><br> Defendants. | **Case No.** 22CV006830 <br><br> **Dept: 23** <br> **Hon. Brad Seligman** <br><br> **FIRST AMENDED CIVIL RIGHTS COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF AND DAMAGES** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING ("DFEH"), an agency of the State of California, brings this action in its own name to remedy violations of the California Fair Employment and Housing Act, Government Code section 12900 *et seq*. ("FEHA") and other laws by Defendants TESLA, INC. doing business in California as TESLA MOTORS, INC. ("Tesla") and DOES ONE through FIFTY (collectively "Defendants").

## INTRODUCTION

1.     Founded in 2003 and formerly headquartered in Palo Alto, CA, Tesla, Inc. designs, develops, manufactures, and sells electric powered vehicles, and energy generation and storage programs in the United States, China, Norway, and across the world. The company operates in two segments – Automotive, and Energy Generation and Storage. Tesla is one of the world's most

-1-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

valuable automakers with a market value of around $911 billion (as of February 4, 2022).[1]

Employing over 80,000 direct workers worldwide[2] and over 36,200 workers just in California, Tesla

is the largest and highest-profile electric car company in the world.[3] In 2020, Tesla boasted an

annual revenue of $31.5 billion dollars. Its annual assets in 2020 was $52.2 billion dollars.[4]

2.     As of this filing, Tesla operates out of four manufacturing facilities. Three are in the

United States, and one is in China. The Fremont factory sits outside of San Francisco, California,

where the nation's strongest anti-harassment, anti-discrimination, and other equal employment

opportunity protections exist.[5] The Fremont factory is the original site of Tesla's electric vehicle

production.  Another Tesla factory is located in Lathrop, California.

3.     Tesla's Fremont factory is the only nonunion major American automotive plant in the

country.[6] Prior to Tesla, the Fremont facility was home to General Motors from 1962 to 1982, then

home to GM and Toyota's New United Motor Manufacturing, Inc. (NUMMI) from 1984 to 2009.

Tesla purchased the facility in 2010 and extensively remodeled it before the first Model S rolled off

the line in June 2012.[7]

---

[1] https://finance.yahoo.com/quote/TSLA?p=TSLA&.tsrc=fin-srch; Malathi Nayak & Dana Hull, *Tesla Ordered to Pay $137 Million Over Racism in Rare Verdict*, Bloomberg (Oct. 4, 2021, 4:59 PM PDT), https://www.bloomberg.com/news/articles/2021-10-04/tesla-ordered-to-pay-137-million-for-harboring-workplace-racism [as of Dec. 15, 2021].

[2] *Ibid.*

[3] U.S. Securities and Exchange Commission¸ Telsa, Inc. TSLA on Nasdaq, Forms 10-K and Forms 10-Q, https://www.sec.gov/ix?doc=/Archives/edgar/data/1318605/000095017021002253/tsla-20210930.htm [as of Dec. 15, 2021].

[4] *Ibid.*

[5] See, e.g., *State Dept. of Health Services v. Sup.Ct.* (2003) 31 Cal.4th 1026, 1040 [FEHA provides broader protection than Title VII]; Introduction, Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 13(I.1)-A ["Title VII presents serious limitations on plaintiff's recovery, including a cap on emotional distress and punitive damages. In addition, FEHA provides broader protections in a number of important respects... For these reasons, it is generally advantageous to sue under FEHA, rather than Title VII."]; Li Zhou, *Can California Prevent Wage Discrimination Against Women?* The Atlantic (Oct. 9, 2015) https://www.theatlantic.com/business/archive/2015/10/california-gender-wage-gap-fair-pay-act/409549/ [as of July 19, 2021].

[6] Sahid Fawaz, *Tesla is the Only Non-Union Major American Car Company. The UAW Hopes to Change That*, Labor 411 (May 27, 2016) https://labor411.org/411-blog/tesla-is-the-only-non-union-major-american-car-company-the-uaw-hopes-to-change-that/ [as of Dec. 15, 2021].

[7] Scooter Doll, *Tesla Factory Locations: Where They Are and Could Soon Be,* Electrek (Jul. 14, 2021, 1:44 AM PDT), https://electrek.co/2021/07/14/tesla-factory-locations-where-they-are-and-could-soon-be/ [as of Dec. 15, 2021].

4.      Built on the message of innovation, eco-futuristic ambitions, and social good, Tesla's Fremont factory has stenciled over the entrance the words: "*Our mission: to accelerate the world's transition to sustainable energy*."[8] Tesla's Chief Executive Officer Elon Musk has been celebrated as a visionary with his relentless pursuit of green energy, space travel, and self-driving cars.[9] Mr. Musk is infamous for taking positions that run counter to those of other car companies, technology companies, billionaires and workers.[10]

5.      Tesla's cars, the Model 3, Model S, Model X, and Model Y, retail for about $47,690 to $126,690.[11] Tesla markets its vehicles to the environmentally-conscious, socially responsible consumer.

6.      In the San Francisco Bay Area and elsewhere, a job at Tesla is often seen as a golden ticket. It is seen as a way for those without a technical background or a college degree to secure a job in tech, and a path to a career and a living wage.

7.      Yet Tesla's brand, purportedly highlighting a socially conscious future,[12] masks the reality of a company that profits from an army of production workers, many of whom are people of color, working under egregious conditions.[13]

8.      The Fremont factory offers 5.3 million square feet of space on 370 acres of land and

---

[8] Caroline O'Donovan, *At Tesla's Factory, Building the Car of the Future Has Painful and Permanent Consequences for Some Workers*, Buzzfeed News (Feb. 4. 2018, 1:27 PM ET), https://www.buzzfeednews.com/article/carolineodonovan/tesla-fremont-factory-injuries [as of Dec. 15, 2021].

[9] Cade Metz & Neal E. Boudette, *Inside Tesla as Elon Musk Pushed an Unflinching Vision for Self-Driving Cars*, New York Times (Dec. 6, 2021), https://www.nytimes.com/2021/12/06/technology/tesla-autopilot-elon-musk.html [as of Dec. 15, 2021]

[10] Nicholas Kulish, *Elon Musk's Latest Innovation: Troll Philanthropy*, New York Times (Dec. 10, 2021), https://www.nytimes.com/2021/12/10/business/elon-musk-philanthropy.html [as of Dec. 15, 2021]; Metz & Boudette, *supra*, https://www.nytimes.com/2021/12/06/technology/tesla-autopilot-elon-musk.html [as of Dec. 15, 2021]; Maureen Dowd, *Elon Musk, Blasting Off in Domestic Bliss*, New York Times (Jul. 25, 2020), https://www.nytimes.com/2020/07/25/style/elon-musk-maureen-dowd.html [as of Dec. 15, 2021].

[11] Kelly Lin, *How Much is a Tesla? Here's a Price Breakdown*, MotorTrend (Nov. 15, 2021), https://www.motortrend.com/features/how-much-is-a-tesla/ [as of Dec. 15, 2021].

[12] O'Donovan, *supra*, https://www.buzzfeednews.com/article/carolineodonovan/tesla-fremont-factory-injuries

[13] *Ibid.* Since Tesla opened its Fremont factory in 2010, the factory has been inspected by California's Division of Occupational Safety and Health (Cal/OSHA) seventeen (17) times.

1  accommodates over 15,000 Tesla workers alone.[14] With contractors included, thousands more work

2  at the Fremont factory.[15] And, Black and/or African American workers are segregated to the lowest

3  levels. While Black and/or African American workers make up 0% of executives and about 3% of

4  professionals at the Fremont plant, about 20% of the factory operatives, such as engine and other

5  machine assemblers, are Black and/or African American.[16] Black and/or African American workers

6  were also overrepresented in Tesla's contract workforce. However, Black and/or African Americans

7  are severely under-represented as officials and managers, executives/senior officials and managers,

8  first/mid-officials and managers, and professionals.[17]

9          9.      Segregation at the Fremont factory and statewide,[18] along with the absence of Black

10  and/or African Americans in leadership roles, has left many complaints of rampant racism

11  unchecked for years. As early as 2012, Black and/or African American Tesla workers have

12  complained that Tesla production leads, supervisors, and managers constantly use the n-word and

13  other racial slurs to refer to Black workers. They have complained that swastikas, "KKK," the n-

14  word, and other racist writing are etched onto walls of restrooms, restroom stalls, lunch tables, and

15  even factory machinery. They have complained that Black and/or African American workers are

16  assigned to more physically demanding posts and the lowest-level contract roles, paid less, and more

17  often terminated from employment than other workers. They have also complained that Black and/or

18  African American workers are often denied advancement opportunities, and more often and more

19

20  [14]  Tesla, Inc., "Tesla Factory,"  https://www.tesla.com/factory [as of Dec. 14, 2021]; Tesla Inc. Pay Data Report 2021
21  for Fremont locations in California. Tesla is required to file a Pay Data Report with DFEH (Gov. Code, § 12999), which
    includes employment data for employees categorized by sex, race/ethnicity, job category and pay band.

22  [15] Lauren Hepler, *Menial Tasks, Slurs, and Swastikas: Many Black Workers at Tesla Say They Faced Racism*, New York
23  Times (Nov. 30, 2018), https://www.nytimes.com/2018/11/30/business/tesla-factory-racism.html [as of Dec. 15, 2021].

24  [16] Tesla, Inc. Pay Data Report 2021 for California, at 45500 Fremont Blvd. in Fremont, California. (Gov. Code, §
    12999).

25  [17] 2016 EEO-1 Comparison Report for Tesla, Inc. at 3500 Deer Creek Road, Palo Alto, CA 94304. Because Tesla is a
    federal contractor and employs 50 or more employees in California and the United States, Tesla is required to file an
26  Employer Information Report EEO-1, also known as the EEO-1 Report. The EEO-1 Report requires employers to report
    employment data for  employees categorized by sex, race/ethnicity, and job category. EEOC, EEO-1 Data Collection,
27  https://www.eeoc.gov/employers/eeo-1-data-collection  [as of Dec. 14, 2021]; Tesla Inc. Pay Data Report 2021 for
    California. (Gov. Code, § 12999.)

28  [18] Tesla, Inc. Pay Data Report 2021 for California (Gov. Code, § 12999); Paragraphs 43, 44, and 45, *infra*.

severely disciplined than non-Black workers.[19]

10.     More significantly, these numerous complaints by Black and/or African American workers about racial harassment, racial discrimination, and retaliation lodged over a span of almost a decade have been futile. For example, Defendants turned, and continue to turn, a blind eye to years of complaints from Black workers who protest the commonplace use of racial slurs on the assembly line. Tesla was, and continues to be, slow to clean up racist graffiti with swastikas and other hate symbols scrawled in common areas.[20]

11.     Even after years of complaints, Tesla has continued to deflect and evade responsibility. While it claims to not tolerate racial harassment or discrimination at its factories, Tesla's investigations of complaints are not compliant with law.  It limits investigations of incidents in its workplace to direct employees. Tesla also argued that staffing agencies that it contracts with are expected to train contractors on Tesla's anti-harassment and anti-discrimination policies and to investigate allegations of racial harassment when staffing agency workers were involved.[21] Tesla's CEO, Mr. Musk, has advised that Tesla workers should be "thick-skinned"[22] about race harassment.

12.     Under California law, Defendants failed to take effective remedial measures in response to complaints of discrimination and harassment. Workers were further discouraged from complaining as they were warned that complaints would be ignored, or perfunctorily acknowledged and then dismissed. Black and/or African American workers also were warned that complaints led to

---

[19] Malathi Nayak & Dana Hull, *Ex-Tesla Employee Called Racial Slurs Wins Rare $1 Million Award*, Bloomberg (Aug. 5, 2021); Ricky Riley, *Black Tesla Employees Ban Together, Exposing Company's Alleged Culture of Racism*, Blavity (Dec. 3, 2018, 9:25 AM), http://35.185.66.110/black-tesla-employees-expose-companys-alleged-culture-of-racism?category1=news [as of Dec. 15, 2021]; Timothy B. Lee, *Tesla Has a Problem with Racism – So Do Many of Its Rivals*, Ars Technica (Nov. 30, 2018), https://arstechnica.com/cars/2018/11/tesla-has-a-problem-with-racism-in-its-factory-so-do-many-of-its-rivals/ [as of Dec. 15, 2021]; Justin Westbrook, *Tesla Workers Allegedly Faced Racial Discrimination and Harassment by Coworkers and Superiors: Lawsuit*, Jalopnik (Oct. 17, 2017, 8:05 PM), https://jalopnik.com/tesla-workers-allegedly-faced-racial-discrimination-and-1819633991 [as of Dec. 15, 2021].

[20] Nayak & Hull, *supra*, https://www.bloomberg.com/news/articles/2021-10-04/tesla-ordered-to-pay-137-million-for-harboring-workplace-racism

[21] Hannah Albarazi, *Tesla Hit with $137M Verdict in Race Harassment Trial*, Law360 (Oct. 4, 2021, 8:53 PM EDT).

[22] In an email to workers in 2017, Elon Musk, Tesla's Chief Executive Officer, warned against "being a huge jerk" to members of "a historically less represented group." At the same time, he wrote, "if someone is a jerk to you, but sincerely apologizes, it is important to be thick-skinned and accept that apology." Hepler, *supra*, https://www.nytimes.com/2018/11/30/business/tesla-factory-racism.html

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

retaliatory harassment, undesirable assignments, and/or termination, especially since Defendants' human resource personnel charged with addressing the complaints were allegedly close to the harassers. In another move to avoid accountability, Tesla, during its annual shareholder's meeting in October 2021, announced plans to move its headquarters from Palo Alto, California to Austin, Texas.[23]

13.     Defendants failed to maintain and provide employment records. Defendants are ". . . required to maintain certain relevant records of personnel actions" and "make them available upon request" to DFEH. (See, e.g., Gov. Code, § 12946; Cal. Code Regs., tit. 2, § 11013; see also, Lab. Code, § 1197.5, subd. (e).)[24] Such recordkeeping laws require Defendants to maintain discrimination and harassment complaints, and records and files relevant to those complaints. Defendants did not do so.

14.     Plaintiff DFEH, an agency of the State of California, brings this enforcement action against Defendants Tesla and DOES ONE through FIFTY in its prosecutorial role, seeking relief in the public interest for the state and for Defendants' Black and/or African American workers ("the Group"). Pursuant to the authority vested in DFEH under FEHA,[25] Government Code section 12900 *et seq*. and related laws, DFEH's enforcement action seeks to remedy, prevent, and deter unlawful harassment, discrimination, and retaliation. Specifically, the violations pled herein include claims for

---

[23] Kierra Frazier, *Tesla to Move Headquarters from California to Texas*, Axios (Oct. 7, 2021), https://www.axios.com/tesla-move-headquarters-california-texas-7e4edde0-c747-4859-9cb9-366c7dcb7e05.html [as of Dec. 15, 2021].

[24] See, e.g., Gov. Code, § 12946 ["It shall be an unlawful practice for employers . . . to fail to maintain and preserve . . . records . . . ."]; Cal. Code Regs., tit. 2, § 11013 ["Employers . . . shall make [records] available upon request to . . . [the] Department. . . . [E]very employer or other covered entity shall maintain data regarding the race, sex, and national origin of each applicant and for the job for which he or she applied. . . . Any personnel or other employment records made or kept by any employer or other covered entity dealing with any employment practice and affecting any employment benefit of any applicant or employee (including all applications, personnel, membership or employment referral records or files) shall be preserved by the employer or other covered entity for a period of two years from the date of the making of the record or the date of the personnel action involved, whichever occurs later."]; Lab. Code, § 1197.5, subd. (e) ["Every employer shall maintain records of the wages and wage rates, job classifications, and other terms and conditions of employment of the persons employed by the employer. All of the records shall be kept on file for a period of three years."].

[25] FEHA prohibits employment discrimination and harassment based on race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status. (Gov. Code, § 12940, subds. (a) and (j), emphasis added; Cal. Code Regs., tit. 2, § 11027.1).

unlawful race harassment; race discrimination in terms and condition of employment (including assignment, compensation, discipline, promotion, termination, constructive discharge); retaliation; failure to prevent discrimination, harassment, and retaliation; unequal pay; waiver of rights, forums, or procedures and release of claims; and recordkeeping violations.

**PARTIES**

15.    Plaintiff Department of Fair Employment and Housing ("DFEH") is a state agency tasked with investigating and prosecuting civil rights actions.  (Gov. Code, § 12930, subd. (f)(1)-(5).) California's legislature exercised its police power in enacting the FEHA and in vesting authority in DFEH "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination…" (Gov. Code, § 12920; *Dept. Fair Empl. & Hous. v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 410 ["the DFEH's task is to represent the interests of the state and to effectuate the declared public policy of the state to protect and safeguard the rights and opportunities of all persons from unlawful discrimination."].) As set forth in Government Code section 12900 *et seq.*, DFEH is charged with enforcing the FEHA, including initiating and investigating complaints on behalf of itself and persons alleged to be aggrieved by discriminatory employment practices. (Gov. Code, §§ 12930, 12961.) At DFEH's discretion, DFEH may bring a civil action in the name of the department on behalf of a group or class of persons adversely affected, in a similar manner, by an unlawful practice. (Gov. Code, §12965.) The DFEH acts "as a public prosecutor" when it pursues civil litigation under the FEHA (*State Personnel Bd. v. Fair Empl. & Hous. Com.* (1985) 39 Cal.3d 422, 444), and it may seek remedies to "'vindicate' what it considers to be in 'the public interest in preventing ... discrimination.'" (*Dept. Fair Empl. & Hous. v. Law Sch. Admission Council, Inc.* (2013) 941 F.Supp.2d 1159, 1172).

16.    Defendant Tesla, Inc., ("Tesla") is now and was, at all times relevant to this complaint, a Delaware corporation operating in and under the laws of the State of California and conducting business throughout California. Up until December 1, 2021, Tesla's corporate headquarters were located at 3500 Deer Creek Rd, Palo Alto, California 94304.[26] Its Fremont

---

[26] Fred Lambert, *Tesla Announces It Has Officially Moved Its Headquarters Next to Gigafactory Texas*, Electrek (Dec. 1, 2021),  https://electrek.co/2021/12/01/tesla-officially-moved-headquarters-gigafactory-texas/ [as of Dec. 15, 2021].

factory is located at 45500 Fremont Blvd, Fremont, CA 94538. Its Lathrop factory is located at 18280 S Harlan Rd, Lathrop, CA 95330. At all times relevant to this complaint, Tesla was an "employer" subject to FEHA and all other applicable statutes.

17.     Defendants DOES ONE through FIFTY, inclusive, are sued herein pursuant to Code of Civil Procedure section 474. DFEH is ignorant of the true names or capacities of the defendants sued herein under the fictitious names DOES ONE through FIFTY, inclusive. DFEH will amend this complaint to allege their true names and capacities when the same are ascertained. DFEH is informed, believes, and alleges, that each of the fictitiously named defendants is legally responsible for the occurrences, injuries, and damages alleged herein.

18.     DFEH is informed, believes, and alleges that at all relevant times, each defendant is and was, the director, agent, employee, and/or representative of every other defendant and acted within the course and scope of their agency, service, employment, and/or representation, and that each defendant herein is jointly and severally responsible and liable to the Group for the damages hereinafter alleged. At all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of Defendants does not, and at all times herein mentioned did not, exist. All of the acts and failures to act alleged herein were duly performed by and attributed to all Defendants, each acting as the joint employer as Defendants jointly supervised and controlled workers' conditions of employment, determined assignments, rate of pay or method of payment, had authority to hire or fire workers, and maintained employment records. All actions of all Defendants were taken by workers, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

## PROCEDURAL HISTORY, JURISDICTION, AND VENUE

19.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

20.     Venue is proper in the County of Alameda under Government Code section 12965,

subdivision (a) as unlawful practices complained of in this complaint occurred in, and relevant records are maintained and administered in, the County of Alameda.

21.     DFEH's director, in their discretion, may file a complaint on behalf of a group or class. (Gov. Code, § 12961; Cal. Code Regs., tit. 2, §§ 10012 and 10013.) Pursuant to this authority, the DFEH Director filed and served a Notice of Group or Systemic Investigation and Director's Complaint for Group/Class Relief against Tesla, Inc. in 2019 (DFEH Case No. 201906-06540918) ("DFEH Director's Complaint"). The DFEH Director's Complaint alleged that Defendant Tesla engaged in discrimination and harassment against its workers on the basis of race. The DFEH Director's Complaint further alleged that Tesla retaliated against its workers for reporting or opposing race harassment. In addition, the DFEH Director's Complaint alleged that Tesla failed to take all reasonable steps necessary to prevent harassment from occurring.

22.     After approximately three years of investigation, receiving hundreds of complaints from workers and serving many to Tesla, DFEH issued a cause finding on January 3, 2022. In the course of DFEH's investigation, DFEH found evidence that Defendants subjected its Black and/or African American workers to racial harassment and discriminated against them in the terms and conditions of employment, including assignment, compensation, discipline, promotion, termination, and constructive discharge. DFEH's investigation also found that Defendants retaliated against its Black and/or African American workers when they complained or reported the harassment or discrimination. Further, DFEH's investigation found that Defendants failed to take all reasonable steps necessary to prevent unlawful discrimination, harassment, or retaliation. DFEH's investigation also found that Defendants paid Black and/or African American workers less than workers of another race or ethnicity for substantially similar work. DFEH's investigation also found that Defendants required Black and/or African American workers to waive rights, forums, and/or procedures as a condition of employment, continued employment, or the receipt of any employment-related benefit. Lastly, DFEH's investigation uncovered record-keeping violations. These claims are alleged and/or reasonably related to and like the claims originally alleged in the Director's Complaint.

23.     DFEH attempted to resolve this matter without litigation. Prior to filing this civil

action, the DFEH required all parties to participate in mandatory dispute resolution in the department's internal dispute resolution division free of charge to the parties in an effort to resolve the dispute without litigation. Specifically, DFEH invited Tesla to participate in a mediation session with the department's internal dispute resolution division on January 12 and 20, 2022, but Tesla refused to attend until February 8, 2022. One day before the mediation, on February 7, 2022, Tesla announced the DFEH investigation for the first time during the three-year investigation in its Securities and Exchange Commission Form 10-K. The parties were unable to resolve the administrative complaints at the mediation. Then in the morning of February 9, 2021, Tesla issued a post entitled "The DFEH's Misguided Lawsuit" on its public blog.[27]

24.     In the case of failure to eliminate an unlawful practice through conference, conciliation, mediation, or persuasion, or in advance thereof if circumstances warrant, DFEH may bring a civil action in the name of the department in state and federal courts. (Gov. Code, §§ 12930, subd. (h) and 12965, subd. (a).)

25.     All administrative procedures precedent to the institution of this lawsuit have been fulfilled.

26.     By operation of a signed agreement between the parties, DFEH has timely filed its complaint.

27.     The amount of damages sought by this complaint exceeds the minimum jurisdictional limits of this Court.

**GOVERNMENT ENFORCEMENT ACTION ALLEGATIONS**

28.     DFEH brings this government enforcement action for group relief on behalf of the state in the public interest and all Black and/or African American workers (the "Group") pursuant to Government Code sections 12961 and 12965.

29.     DFEH's authority to seek relief on behalf of the state in the public interest and the Group is a delegation of power by the Legislature. (*See, e.g.*, Gov. Code, §§ 12920, 12920.5, 12930,

---

[27] Tesla, *The DFEH's Misguided Lawsuit*, Tesla Blog (Feb. 9, 2022), https://www.tesla.com/blog/dfehs-misguided-lawsuit [as of Feb. 9, 2022]. In the blog post, Tesla disingenuously stated that on "almost 50 occasions …. DFEH closed its investigation without a finding of misconduct against Tesla." It is unclear which administrative complaints Tesla refers to, but many resulted in an immediate request for a right to sue.

12961, and 12965.) Section 12961 expressly authorizes the DFEH Director to file a complaint on behalf of the department seeking relief for a group of persons adversely affected, in a similar manner, by an alleged unlawful practice. "Any complaint so filed may be investigated as a group *or* class complaint, and, if in the judgment of the director circumstances warrant, *shall* be treated as such for purposes of conciliation, dispute resolution, and *civil action.*" (Gov. Code, §§ 12961 and 12965, subd. (a), italics added.)

30.    Pursuant to such statutory authorities, the DFEH filed and gave notice to Tesla of group or class complaints for purposes of investigation, mediation, and civil action. DFEH investigated the complaints, attempted to mediate the DFEH group or class complaint with Tesla and, after a failure to eliminate the unlawful practices through mediation, or in advance thereof if circumstances warrant, DFEH filed this civil action seeking to remedy the group or class violations in this Court. (Gov. Code, §§ 12930, subd. (h), 12961, 12965, subd. (a).)

31.    DFEH brought this government enforcement action in its own name pursuant to express statutory authority from the Legislature. (Gov. Code, § 12900 *et seq*.; Cal Const., Art III, § 3.) The Legislature authorized DFEH to proceed on a group or class basis in a civil action. (Gov. Code, §§ 12961 and 12965, subd. (a).)

32.    DFEH's government enforcement action seeks to remedy, prevent, and deter the pattern or practice of unlawful racial harassment, racial discrimination and other violations, disparate impact violations, continuing violations and other unlawful practices that Defendants engaged in against aggrieved Black and/or African American workers. (*See, e.g.*, Gov. Code, §§ 12920, 12920.5, 12930, 12961, and 12965.)

33.    DFEH brings this representative enforcement action in its capacity as a state agency and the authority vested in DFEH by the FEHA, which does not require class certification under Code of Civil Procedure sections 378 and 382. (Gov. Code, § 12961; *People v. Pacific Land Res. Co.* (1977) 20 Cal.3d 10, 17 ["[a]n action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties"]; *Dept. Fair Empl. & Hous. v. Law School Admission Council, Inc.*, *supra*, 941 F.Supp.2d at 1168-1170 [holding that DFEH action is not subject to class certification requirements

-11-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

1   under Rule 23 of Federal Rules of Civil Procedure as "nothing in § 12961 requires that the

2   complaint be filed as a class action."]; *Washington v. Chimei Innolux Corp.* (9th Cir. 2011) 659 F.3d

3   842, 848 ["class actions are always representative actions, but representative actions are not

4   necessarily class actions."].) Thus, DFEH brings this government enforcement action on behalf of

5   the state and a group of Black and/or African American workers.

### FACTUAL ALLEGATIONS

7        34.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

### Racial Harassment

9        35.     Throughout the day, every day, Black and/or African American workers heard

10   Defendants' workers, leads, supervisors, and managers make racial slurs and comments about Black

11   workers.[28] Examples of the racist language include the n-word, "porch monkey," "monkey toes,"

12   "boy," "hood rats," and "horse hair." Defendants' workers, including production leads and

13   supervisors, made references to Black and/or African Americans in racist comments and racist jokes

14   such as "N[   ] word out of the hood," "from the ghetto," "Tesla [was] hiring lazy coons," and "go

15   back to Africa."

16        36.     Because the factory was racially segregated, Defendants' workers referred to the

17   areas where many Black and/or African Americans worked as the "porch monkey station."

18   Defendants' workers with tattoos of the Confederate flag made their racially incendiary tattoos

19   visible to intimidate Black and/or African American workers. Racial slurs were also dispensed in

20   Spanish and included "mayate" and "negrita." Additionally, Defendants' workers referred to the

21   Tesla factory as the "slaveship" or "the plantation," where Defendants' production leads "crack[ed]

22   the whip." Many Black and/or African American workers understood these terms to be references to

23   how Defendants treated its Black and/or African American workers. One Black worker heard these

24   racial slurs as often as 50-100 times a day.

25        37.     These Black and/or African American workers also had racial slurs directed at them.

26

27   [28] Contrary to claims made in Tesla's public blog one day after the mediation that DFEH "has never once raised any concern about current workplace practices at Tesla," DFEH and Tesla's own workers throughout the state – not just production associates from the Fremont factory from 2015-2019 – have raised concerns about race harassment, discrimination, and retaliation for years. They still do, as complaints were filed as recently as 2022.

28

These workers were subjected to Defendants' production associates, leads, and supervisors directly calling them the n-word throughout the day. One worker heard Defendants' production associates and leads tell her to "Shut the fuck up, N[    ]," and "All blacks look alike." Another Black worker reported that at least twice Defendants' workers mocked him for eating watermelon during lunch. They accused him of being lazy, saying, "You're eating watermelon, that's why you're lazy." These co-workers also speculated about his genitals and referred to him as "Mandingo" or "big black guy." Another worker heard Defendants' production lead and production associate crack racist jokes loud enough for others to hear. When he raised the jokes with them, the production associate slapped his shoulder and said it was just a joke. When another Black worker protested to being called a racial slur and asked Defendants' production associates, leads, and supervisor to refer to him by his name, they retorted, "This N[    ] is crazy" or "This N[    ] is tripping." They called him a snitch for complaining.

38.    Notably, Defendants' leads, supervisors, and managers were active participants and/or witnesses to these racist comments. Black and/or African American workers reported that Defendants' leads and supervisors on the production line often said, "That stupid N[    ] over there" or "That fucking N[    ], I can't stand them." Regarding a group of Black production associates, Defendants' supervisor said that "there [was] too many of them in there. They are not Tesla material." Defendants' supervisors complained about where Black and/or African American workers were assigned, saying, "Monkeys work outside," and "Monkeys need a coat in cold weather." A supervisor pointedly asked one African American worker, "Do most Africans have bones through their noses?" Another African American worker reported that a group of Defendants' production leads often laughed at her whenever she walked by them. These leads muttered "N[    ]" or "Shut up, N[    ]" to her at first. When she started getting awards for her work performance, these leads openly called her these racial slurs.

39.    On a daily basis, Black and/or African American workers were confronted with racist writing while working at Tesla. They saw racist graffiti – including "N[    ]," "KKK," swastikas, the Confederate flag, a white supremist skull, "go back to Africa," and "mayate" –  written on the restroom walls, restroom stalls, lockers, workplace benches, workstations, lunch tables, and the

break room. These slurs were even etched onto Defendants' machinery. One Black worker observed "hang N[    ]" penned next to a drawing of a noose in the breakroom restroom. This worker also saw "all monkeys work outside" and "fuck N[    ]" on the breakroom walls. These racial slurs and racial comments, apparent to all who walked by, were left up for months, without Defendants bothering to remove them.

40.     A common narrative was Black and/or African American workers being taunted by racial slurs and then baited into verbal and physical confrontations, where they, in turn, were the ones disciplined for being purportedly "aggressive" or "threatening." These written warnings in their personnel files had consequences for later promotional and professional opportunities. Some Black and/or African American workers even resigned during investigations because they did not have confidence that Defendants' human resources department would be fair and unbiased.

## Racial Discrimination - Assignment, Compensation, Discipline, Promotion, Termination, and Constructive Discharge

41.     The hostility against Black and/or African American workers bled into Defendants' employment actions, where Black and/or African American workers were subjected to discriminatory terms and conditions of employment. Black and/or African American workers reported being assigned to the most physically demanding posts in the Tesla factories, compared to non-Black workers who were given more technical, less physical jobs. One worker witnessed **only** Black and/or African American workers cleaning the factory floor on their hands and knees. No other groups of workers had to do the same. Another worker heard Defendants' workers complain about the heavy workload and how they "need[ed] to get some [B]lacks on this line," suggesting that Black and/or African American workers can and should be doing the difficult menial jobs. One Black worker started as a production lead when he came through a staffing agency, but after he introduced himself to his white manager, he was demoted on the same day to a production associate. His supervisor told him that Defendants' manager thought he was "better suited" in the more labor-intensive position. This worker also applied for a transfer to Tesla's Lathrop factory, only to be told by his manager not to "get [his] hopes up." However, a white co-worker was granted the same transfer. Many Black and/or African American workers reported that the Fremont factory was

racially segregated where areas of the factory staffed by Black workers were referred to as "the dark side."

42.     Even compared to industry competitors, Black and/or African American Tesla workers are overrepresented in physically demanding positions. For example, compared to the general population and the workforce at Tesla's competitors, Black and/or African American Tesla workers were overrepresented as "operatives," which include engine and other machine assemblers. However, Black and/or African American Tesla workers were severely underrepresented as officials and managers, executives/senior officials and managers, first/ mid-officials and managers, professionals, and administrative support staff. [29]

43.     Statewide, based on Tesla 2017 EEO-1 data, Black and/or African American Tesla workers were severely underrepresented in Tesla's management and professional jobs, compared to non-Black workers, but overrepresented in factory-based operative positions throughout the state.[30] This job segregation continues today. In 2020, Black and/or African American Tesla workers were still overrepresented as factory operatives statewide, but underrepresented in most other jobs at Tesla. For example, Black workers make up only 2% of Tesla's professional workforce, but approximately 20% of all Tesla operatives throughout California.[31]

44.     Tesla's Black and/or African American workers are also overrepresented in lower pay bands, and under-represented in higher pay bands statewide, compared to non-Black workers.[32]

45.     In 2020, Black and/or African American workers were underrepresented in professional positions at five of the largest Tesla locations in California. Specifically, Black and/or

---

[29] 2016 EEO-1 Comparison Report for Tesla, Inc., *supra*.

[30] Tesla's 2017 EEO-1 Report indicates that Black workers made up about 3% of Tesla's managers and 2% of its professional staff. However, Black and/or African American workers consisted of about 19% of Tesla's operatives throughout the state.

[31] Tesla, Inc. Pay Data Report 2021 for California. (Gov. Code, § 12999.)

[32] *Id.*

-15-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

African American workers made up 0% of the professionals at the Hawthorne location, 1% at the Palo Alto location, 3% at the Fremont and San Diego locations, and 4% at the Lathrop location. In contrast, Black and/or African American Tesla workers made up close to 13% of the operatives at the Lathrop location, and 19% of the operatives in Fremont. Although Black workers were generally underrepresented in Lathrop, close to 80% of the Black workers there were doing physically demanding work as operatives.[33]

46.    Defendants also more frequently subjected Black and/or African American workers to more severe treatment and discipline than non-Black workers. Black and/or African American workers were more quickly written up or fired for minor infractions. One Black worker was fired for allegedly being late, while non-Black workers were not similarly terminated for the same infraction. Another Black worker stated that his supervisor constantly tried to intimidate him, staring him down and using an aggressive tone with him. When this worker reported safety issues to his supervisor, Defendants' supervisor either ignored him or did not believe him. Although this supervisor had only started managing the Black worker, Defendants' supervisor gave the worker an unjustified negative performance review without consulting the worker's prior supervisor. Another Black worker missed several opportunities to "level up" and obtain a salary increase because she was written up for using profanity or purportedly "being aggressive." Non-Black workers were not similarly disciplined for the same.

47.    Similarly, Defendants denied promotions to Black and/or African American workers much more frequently than other workers. Defendants relied on informal and opaque decision-making processes to promote and level up their workers. As a result of this and other practices and policies, Black and/or African American workers were rarely promoted to lead or supervisor, much less managers. Black and/or African American workers reported that they were passed over for professional opportunities, denied the same bonuses, equity, and raises as non-Black workers, and were even demoted. One Black worker attested that when he asked his supervisor about a promotional position, the supervisor never responded to his email and later falsely claimed to not

[33] Id.

-16-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

have gotten the job posting. By the time the worker learned about the job application process, the position was already filled.

48.     For many Black and/or African American workers, the stress from the severe and pervasive racial harassment, the risk of a physical altercation and escalation with harassers, the blatant discrimination, the disproportionately severe discipline, and the futility of complaining, made the working conditions so intolerable that they resigned.

## Retaliation and Defendants' Failure to Prevent

## Discrimination, Harassment, and Retaliation

49.     The problems of race harassment and discrimination were widely known by Defendants' management, representatives, and human resources department because workers complained. As early as 2012, Black and/or African American workers frequently complained to the alleged harassers, Defendants' leads, supervisors, managers, staffing agency representatives, and Defendants' human resources department. They complained about the daily pervasive use of the n-word and other racial slurs, the racist graffiti in the shared spaces, the racially segregated work areas, the more physically strenuous assignments, the dangerous work conditions, and the refusal of management to rotate them off these physically demanding posts as required. They also spoke about how they have been taunted with racist comments and baited into verbal and physical confrontations, where they were the only ones subjected to discipline or were more harshly disciplined. They also complained about the unjustified negative reviews, the over-scrutiny, the disproportionately severe discipline, the denial of promotions and other professional opportunities, and even the futility of complaining.

50.     Worse, Defendants' management retaliated against Black and/or African American workers for complaining. Complainants were denied bonuses, promotions, and other professional opportunities. They were falsely accused of being late, unjustifiably written up, denied transfers, assigned to physically strenuous posts or undesirable locations, constructively discharged, or terminated. For those who needed a reasonable accommodation, their requests for a reasonable accommodation were denied in retaliation. As a consequence, many Black and/or African American workers aggravated their injuries or disabilities. Co-workers who were associated with the

complainants were similarly targeted.

51.     In some cases, Defendants' human resources staff gave advance notice of the race complaints to the alleged harassers before the investigation began. One Black worker stated that immediately after she complained about race harassment, Defendants' human resources official texted her harasser, who was also her supervisor, about her complaint against him. The supervisor then retaliated against the Black worker, accosting her, writing her up, and then calling security on her for being purportedly "belligerent." Even after Black and/or African American workers were transferred to a different area, retaliation by Defendants' management still persisted because management had the ability to simply walk over to the new post and harass the complainants.

52.     With their under-staffed and inadequately trained human resources department, [34] Defendants failed to take reasonable action in response to these complaints. DFEH's investigation revealed that in 2016, before Tesla established its employee relations department, Tesla had only 33 human resources professionals and managers to serve 19,916 workers in California. That is a ratio of about one human resources officer to 604 workers. In 2020, that ratio rose to about one human resource member to 740 workers.

53.     Not surprisingly, Defendants ignored, immediately dismissed, or perfunctorily investigated and then dismissed workers' complaints. Investigations were inconsistently completed, with different investigators asking vastly varying questions, with different levels of detail and analysis, and sometimes coming to opposite conclusions. Investigations took months to complete. For example, an investigation of a race complaint, where only one witness was interviewed, took close to six (6) months to complete. Defendants' human resources staff were also not well-trained in analyzing race complaints. For example, one human resources investigator concluded that "banana boy" was simply a "nickname," not a racial slur, even though the Black complainant perceived it to

---

[34] Over recent weeks, Tesla has had two deaths occur at its Fremont factory, which have raised further concerns by its workers about workplace safety and protections. One was a murder committed by a Tesla worker after an employment altercation. Another was a death on the Tesla production line. Melissa Colorado, *Man Accused of Killing Co-Worker at Fremont Tesla Factory Charged with Murder*, NBC Bay Area (Dec. 16, 2021), https://www.nbcbayarea.com/news/local/man-accused-of-killing-co-worker-at-fremont-tesla-factory-charged-with-murder/2757939/; Joseph Geha, *Tesla Fremont Factory Employee Dies While Working on Production Line*, *The Mercury News* (Jan. 20, 2022, 1:23 PM), https://www.mercurynews.com/2022/01/20/tesla-fremont-factory-employee-dies-working-production-line/ [as of Feb. 9, 2022].

be racist and the harasser had been coached previously on his condescending communication style. In another case, Defendants' human resources investigators determined that a claim of harassment was unsubstantiated because there was no witness corroboration, even though the harasser had admitted to saying a racial slur. Workers, whom Defendants concluded had indeed harassed Black workers and were previously disciplined for similar offenses, remained employed and even were promoted because they were "good performers."

54.     As early as 2012, Tesla began employing workers through numerous staffing agencies. Tesla progressively reduced the number of employees it hired directly and increased the number of workers it hired through staffing agencies. Tesla also mandated the staffing agencies it contracted with to require all workers to sign arbitration agreements before being assigned to Tesla. In 2021, Tesla contracted with at least fourteen staffing agencies, some of which subcontracted out with other staffing firms. Tesla did this to avoid responsibility over its workers. If the complainant and/or alleged harasser were from a staffing agency, then the staffing agency itself had to investigate the complaint. Tesla human resources administrator Annalisa Heisen, testifying as the person most knowledgeable about the internal complaints and investigation procedures at the Fremont factory, affirmed that Tesla expected staffing agencies to train subcontractors – the term Tesla used for workers who were assigned from a staffing agency – on Tesla's anti-harassment policies and to investigate allegations of racial harassment when subcontractors were involved.[35] Tesla had no written procedures for coordinating investigations into racial harassment involving workers from staffing agencies and did not provide standardized training to supervisors on how to conduct investigations into racial harassment.[36]

55.     Defendants' under-staffed human resources department and their flawed complaint and investigation policies and procedures with regard to staffing agencies allowed and continue to allow race harassment, discrimination, and retaliation to occur at Tesla. Black and/or African American workers have suffered and will continue to suffer harm from Defendants' ongoing

---

[35] Albarazi, *supra.*

[36] *Ibid.*

1  unlawful policies and practices unless they are enjoined by this Court.

2  **<u>Recordkeeping Violations and</u>**

3  **<u>Failure to Maintain and Produce Relevant Records</u>**

4  56.    During its 32-month investigation, DFEH requested employment records from

5  Defendants relevant to its determination of whether Defendants had violated FEHA and related

6  authorities.

7  57.    California law and regulations require employers like Defendants to maintain

8  applicant, personnel, and employment records and supply such records to DFEH upon request.[37]

9  (See Gov. Code, §§ 12946, 12976; Cal. Code Regs., tit. 2, § 11013; see also Lab. Code, § 1197.5,

10  subd. (e).) These obligations include records and files related to complaints. Despite their

11  obligations, Defendants failed to maintain or produce required records. Specifically, Defendants

12  refused to produce complete and accurate records such as: applicant and hiring records; personnel

13  records related to compensation, assignment, and promotion decisions; and complaints and

14  investigation information. Tesla also failed to produce complete and accurate records related to

15  complaints and complaint investigation information.

16  58.    Defendants' failure to maintain and produce the records, despite being required to

17  preserve and produce this information, constitutes a violation of Government Code section 12946

18  and related authorities.

19  **FIRST CAUSE OF ACTION**

20  **Employment Discrimination Because of Race - Harassment**

21  **(Gov. Code, § 12940, subd. (a) and (j))**

22  59.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

23  60.    Government Code section 12940 subdivision (j) states that it is an unlawful

24  _____

25  [37] Effective January 1, 2022, Government Code section 12946 now requires that employers preserve employment
   records for at least four years. Specifically, it provides: "(a) It shall be an unlawful practice for employers, labor

26  organizations, and employment agencies subject to the provisions of this part to fail to maintain and preserve any and all
   applications, personnel, membership, or employment referral records and files for a minimum period of four years after

27  the records and files are initially created or received, or for employers to fail to retain personnel files of applicants or
   terminated employees for a minimum period of four years after the date of the employment action taken." However,

28  DFEH references Government Code section 12946 as it existed at the time of the DFEH investigation, which required
   employers maintain employment records for a minimum of two years.

employment practice for an employer "or any other person" "to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract," because of that person's race.

61.     Defendants' Black and/or African American workers were routinely subjected to offensive racial harassing conduct so severe and/or pervasive that it created a hostile work environment.

62.     The harassment was perpetrated by Defendants' production associates, leads, supervisors, managers, representatives, and human resources departments, and in the cases of non-supervisors, Defendants knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

63.     As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer harm, including but not limited to emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, as well as economic damages, in an amount to be determined at trial.

64.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Black and/or African American workers and in conscious disregard of their rights. By engaging in the conduct set forth above, Defendants acted in violation of California Civil Code section 3294.

65.     Defendants engaged in and, by their refusal to comply with the law, continue to engage in, unlawful employment harassment based on race, including a pattern or practice of unlawful conduct and unlawful disparate impact discrimination, unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5, from failing or refusing to comply with the mandates of the FEHA, Government Code section 12900 *et seq*.

66.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful harassment, discrimination, and retaliation will continue to be violated.

67.     By reason of the continuous nature of all Defendants' unlawful conduct, the

-21-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

1    continuing violations doctrine is applicable to all violations alleged herein.

2        68.    Plaintiff DFEH requests relief as described herein.

3                        **SECOND CAUSE OF ACTION**

4        **Employment Discrimination Because of Race - Assignment**

5                        **(Gov. Code, § 12940, subd. (a))**

6        69.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

7        70.    Government Code section 12940 subdivision (a) states that it is an unlawful

8    employment practice for an employer "to discriminate against the person in compensation or in

9    terms, conditions, or privileges of employment," because of that person's race.

10       71.    Defendants discriminated against Black and/or African American workers by

11   segregating them to undesirable work areas and/or locations, assigning them to more physically

12   demanding jobs, lower level roles, or contract positions with lower pay and more limited growth

13   opportunities, and affording them fewer advancement and other professional opportunities than their

14   non-Black counterparts because of race in violation of Government Code section 12940, subdivision

15   (a).

16       72.    Defendants intentionally discriminated against Black and/or African Americans in

17   assignment. For example, Defendants segregated Black and/or African American workers to

18   undesirable work areas and/or locations, assigned them to more physically demanding jobs, lower

19   level roles, or contract positions with lower pay and more limited growth opportunities, and afforded

20   them fewer advancement and other professional opportunities than their non-Black counterparts.

21       73.    Defendants' policies, practices, and/or procedures have resulted in unlawful disparate

22   impact discrimination against African American workers with respect to assignments. For example,

23   Defendants segregated Black and/or African American workers to undesirable work areas and/or

24   locations, assigned Black and/or African American workers to contract or other positions with lower

25   pay and limited growth opportunities, and afforded them fewer advancement and other professional

26   opportunities than their non-Black counterparts.

27       74.    As a result of Defendants' unlawful employment practices, Black and/or African

28   American workers suffered and continue to suffer harm, including but not limited to increased risk

of injury, actual work injuries, lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

75.     As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer non-economic harm, including but not limited to emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an amount to be determined at trial.

76.     Defendants' actions demonstrate that they will continue to engage in the pattern or practice of unlawful employment discrimination and unlawful disparate impact discrimination prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA, Government Code section 12900 *et seq.*

77.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Black and/or African American workers in conscious disregard of their rights. By engaging in the conduct set forth above, Defendants acted in violation of California Civil Code section 3294.

78.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination will continue to be violated.

79.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

80.     Plaintiff DFEH requests relief as described herein.

### THIRD CAUSE OF ACTION

### Employment Discrimination Because of Race - Compensation

### (Gov. Code, § 12940, subd. (a))

81.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

82.     Government Code section 12940 subdivision (a) states that it is an unlawful employment practice for an employer "to discriminate against the person in compensation or in

1    terms, conditions, or privileges of employment," because of that person's race.

2        83.    Defendants discriminated against Black and/or African American workers by paying

3    them less than non-Black workers because of race in violation of Government Code section 12940,

4    subdivision (a).

5        84.    Defendants intentionally discriminate against Black and/or African American

6    workers in compensation. For example, Defendants assigned them to contract or other positions with

7    lower pay and limited growth opportunities, awarded them lower or no bonuses or equity, more

8    frequently denied them promotions and levelling opportunities, and afforded them fewer

9    advancement and other professional opportunities than their non-Black counterparts.

10       85.    Defendants' policies, practices, and/or procedures have resulted in unlawful

11   employment discrimination and unlawful disparate impact discrimination against Black and/or

12   African American workers with respect to compensation opportunities. For example, Defendants

13   assigned African Americans to contract or other positions with lower pay and limited growth

14   opportunities, awarded them lower or no bonuses or equity, denied them promotions and levelling

15   opportunities more frequently, and afforded them fewer advancement and other professional

16   opportunities than their non-Black counterparts.

17       86.    As a result of Defendants' unlawful employment practices, Black and/or African

18   American workers suffered and continue to suffer harm, including but not limited to lost earnings,

19   lost benefits, lost future employment opportunities, and other financial loss.

20       87.    As a result of Defendants' unlawful employment practices, Black and/or African

21   American workers suffered and continue to suffer non-economic harm, including but not limited to

22   emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an

23   amount to be determined at trial.

24       88.    Defendants' actions demonstrate that they will continue to engage in the pattern or

25   practice of unlawful employment discrimination and unlawful disparate impact discrimination

26   prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government

27   Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA,

28   Government Code section 12900 *et seq*.

-24-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

89.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Black and/or African American workers in conscious disregard of their rights.  By engaging in the conduct set forth above, Defendants acted in violation of California Civil Code section 3294.

90.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination will continue to be violated.

91.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

92.     Plaintiff DFEH requests relief as described herein.

### FOURTH CAUSE OF ACTION

### Employment Discrimination Because of Race - Discipline

### (Gov. Code, § 12940, subd. (a))

93.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

94.     Government Code section 12940 subdivision (a) states that it is an unlawful employment practice for an employer "to discriminate against the person in compensation or in terms, conditions, or privileges of employment," because of that person's race.

95.     Defendants discriminated against Black and/or African American workers by disciplining them, including but not limited to issuing written warnings and reprimands, denying levelling opportunities, and terminating the employment of Black and/or African American workers, more frequently and more severely than non-Black workers because of race in violation of Government Code section 12940, subdivision (a).

96.     Defendants intentionally discriminated against Black and/or African Americans in issuing discipline.  For example, Defendants more frequently and more severely disciplined Black and/or African American workers than non-Black workers, including but not limited to more frequently issuing written warnings and reprimands, denying levelling opportunities, and terminating the employment of Black and/or African American workers.

-25-

97.     Defendants' policies, practices, and/or procedures have resulted in unlawful disparate impact discrimination against Black and/or African American workers with respect to discipline. For example, Defendants more frequently and more severely disciplined Black and/or African American workers than non-Black workers, including but not limited to more frequently issuing written warnings and reprimands, denying levelling opportunities, and terminating the employment of Black and/or African American workers.

98.     As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

99.     As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer non-economic harm, including but not limited to emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an amount to be determined at trial.

100.     Defendants' actions demonstrate that they will continue to engage in the pattern or practice of unlawful employment discrimination and unlawful disparate impact discrimination prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA, Government Code section 12900 *et seq.*

101.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Black and/or African American workers in conscious disregard of their rights. By engaging in the conduct set forth above, Defendants acted in violation of California Civil Code section 3294.

102.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination will continue to be violated.

103.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

104.     Plaintiff DFEH requests relief as described herein.

## FIFTH CAUSE OF ACTION

### Employment Discrimination Because of Race - Promotion

### (Gov. Code, § 12940, subd. (a))

105.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

106.     Government Code section 12940 subdivision (a) states that it is an unlawful employment practice for an employer "to discriminate against the person in compensation or in terms, conditions, or privileges of employment," because of that person's race.

107.     Defendants discriminated against Black and/or African American workers by denying them promotional opportunities because of race in violation of Government Code section 12940, subdivision (a).

108.     Defendants intentionally discriminated against Black and/or African American workers in promotion and advancement opportunities. For example, Defendants assigned them to contract or other positions with lower pay and limited growth opportunities, delayed their career development, more frequently denied them promotions and levelling opportunities, and afforded them fewer advancement and other professional opportunities than their non-Black counterparts.

109.     Defendants' policies, practices, and/or procedures have resulted in unlawful employment discrimination and unlawful disparate impact discrimination against Black and/or African American workers with respect to promotion opportunities. Among other practices, Defendants' lack of an application process for promotional and levelling opportunities, reliance on Tesla's management to recommend promotional and levelling opportunities, Defendants' policy that prohibits levelling up when an employee has a write-up in the last six months, and their informal and opaque decision-making process resulted in Black and/or African American workers being promoted at lower rates than their non-Black counterparts.

110.     As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

111.     As a result of Defendants' unlawful employment practices, Black and/or African

1  American workers suffered and continue to suffer non-economic harm, including but not limited to

2  emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an

3  amount to be determined at trial.

4      112.    Defendants' actions demonstrate that they will continue to engage in the pattern or

5  practice of unlawful employment discrimination and unlawful disparate impact discrimination

6  prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government

7  Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA,

8  Government Code section 12900 *et seq*.

9      113.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were

10  committed with the wrongful intent to injure Black and/or African American workers in conscious

11  disregard of their rights. By engaging in the conduct set forth above, Defendants acted in violation

12  of California Civil Code section 3294.

13      114.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c),

14  from failing or refusing to comply with the mandates of the FEHA, Black and/or African American

15  workers' right to seek or hold employment free of unlawful discrimination will continue to be

16  violated.

17      115.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing

18  violations doctrine is applicable to all violations alleged herein.

19      116.    Plaintiff DFEH requests relief as described herein.

20  **SIXTH CAUSE OF ACTION**

21  **Employment Discrimination Because of Race - Termination**

22  **(Gov. Code, § 12940, subd. (a))**

23      117.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

24      118.    Government Code section 12940 subdivision (a) states that it is an unlawful

25  employment practice for an employer "to discriminate against the person in compensation or in

26  terms, conditions, or privileges of employment," because of that person's race.

27      119.    Defendants discriminated against Black and/or African American workers by

28  terminating their employment because of race in violation of Government Code section 12940,

-28-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

subdivision (a).

120.     Defendants intentionally discriminated against Black and/or African American workers in terminations.

121.     Defendants' policies, practices, and/or procedures have resulted in unlawful disparate impact discrimination against Black and/or African Americans with regards to termination.

122.     As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

123.     As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer non-economic harm, including but not limited to emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an amount to be determined at trial.

124.     Defendants' actions demonstrate that they will continue to engage in the pattern or practice of unlawful employment discrimination and unlawful disparate impact discrimination prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA, Government Code section 12900 *et seq.*

125.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Black and/or African American workers in conscious disregard of their rights. By engaging in the conduct set forth above, Defendants acted in violation of California Civil Code section 3294.

126.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination will continue to be violated.

127.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

128.     Plaintiff DFEH requests relief as described herein.

-29-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

### SEVENTH CAUSE OF ACTION

### Employment Discrimination Because of Race - Constructive Discharge

### (Gov. Code, § 12940, subd. (a))

129.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

130.    Government Code section 12940 subdivision (a) states that it is an unlawful employment practice for an employer "to discriminate against the person in compensation or in terms, conditions, or privileges of employment," because of that person's race.

131.    Defendants constructively discharged Black and/or African American workers in violation of Government Code section 12940, subdivision (a). Defendants intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in their position would have had no reasonable alternative, except to resign. Black and/or African American workers resigned as a result of these conditions. For example, the stress, fear, and frustration from the severe and pervasive racial harassment, the risk of a physical or verbal altercation and escalation with harassers, the blatant discrimination of the workplace, the disproportionately severe discipline doled out by Defendants' management, and the futility of complaining to Defendants' management, representatives, and human resources department, all of which were known to Defendants, made the working conditions so intolerable that many Black and/or African American workers resigned.

132.    Defendants intentionally discriminated against Black and/or African Americans with regard to constructive discharge.

133.    Defendants' policies, practices, and/or procedures have resulted in unlawful disparate impact discrimination against Black and/or African Americans with regard to constructive discharge.

134.    As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

135.    As a result of Defendants' unlawful employment practices, Black and/or African American workers suffered and continue to suffer non-economic harm, including but not limited to

-30-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an amount to be determined at trial.

136.    Defendants' actions demonstrate that they will continue to engage in the pattern or practice of unlawful employment discrimination and unlawful disparate impact discrimination prohibited by FEHA unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5 from failing or refusing to comply with the mandates of FEHA, Government Code section 12900 *et seq.*

137.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Black and/or African American workers in conscious disregard of their rights. By engaging in the conduct set forth above, Defendants acted in violation of California Civil Code section 3294.

138.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination will continue to be violated.

139.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

140.    Plaintiff DFEH requests relief as described herein.

**EIGHTH CAUSE OF ACTION**

**Retaliation**

**(Gov. Code, § 12940, subd. (h))**

141.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

142.    Government Code section 12940 (h) states that it is an unlawful employment practice for "any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

143.    After Black and/or African American workers engaged in protected activities, such as

complaining to Defendants' production associates, leads, supervisors, managers, staffing agency representatives, and human resources department, Defendants took adverse employment actions against these workers. Such adverse employment actions included but were not limited to denial of bonuses, promotions, and other professional opportunities; denial of a reasonable accommodation; negative performance reviews; disciplinary write-ups; forced transfers to less desirable assignments or locations; constructive discharge; and termination.

144.    As a result of Defendants' unlawful employment practices, aggrieved Black and/or African American workers suffered and continue to suffer increased risk of injury, actual work injuries, lost earnings, lost benefits, lost future employment opportunities, and other financial loss as well as non-economic damages, including but not limited to, emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an amount to be determined at trial.

145.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Black and/or African Americans and in conscious disregard of their rights. By engaging in the conduct set forth above, Defendants acted in violation of California Civil Code section 3294.

146.    Defendants engaged in, and by their refusal to comply with the law, continue to engage in, unlawful retaliation, including a pattern or practice of unlawful conduct and disparate impact of the same, unless they are enjoined pursuant to the police power granted by Government Code sections 12920 and 12920.5, from failing or refusing to comply with the mandates of the FEHA, Government Code section 12900 *et seq.*

147.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, African American workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

148.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

149.    Plaintiff DFEH requests relief as described herein.

//

**NINTH CAUSE OF ACTION**

**Failure to Prevent Discrimination and Harassment (On Behalf of the Group)**

**(Gov. Code, § 12940, subd. (k))**

150.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

151.    Government Code section 12940 subsection (k) states that it is an unlawful employment practice for employers to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

152.    Defendants violated Government Code section 12940 subsection (k), by failing to take all reasonable steps necessary to prevent discrimination and harassment of workers. Defendants' failure to have and/or enforce adequate and consistent anti-discrimination and anti-harassment policies caused harm to the Group. Defendants failed to have an effective racial harassment policy, failed to adequately train all leads, supervisors, managers, staffing agency representatives, and human resources staff on the prevention of discrimination and harassment based on race, and/or failed to timely discipline or stop discriminatory or harassing behavior from occurring in the workplace.

153.    By engaging in the conduct set forth above, Defendants acted in conscious disregard of the rights or safety of others and acted in an oppressive, fraudulent, or malicious manner in violation of California Civil Code section 3294.

154.    As a further result of the unlawful employment practices of Defendants, the Group suffered lost earnings, lost benefits, lost future employment opportunities, and other financial loss as well as non-economic damages, including but not limited to, emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an amount to be determined at trial.

155.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

156.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

157.     Plaintiff DFEH requests relief as herein described.

## TENTH CAUSE OF ACTION

### Failure to Prevent Discrimination and Harassment (On Behalf of DFEH)

### (Gov. Code, § 12940, subd. (k); Cal. Code Regs., tit. 2, § 11023, subd. (a)(3))

158.     DFEH incorporates and realleges all previous allegations as if fully set forth herein.

159.     Government Code section 12940 subdivision (k) requires employers to take all reasonable steps necessary to prevent discrimination and racial harassment from occurring.

160.     Defendants violated Government Code section 12940 subdivision (k), by failing to take all reasonable steps necessary to prevent discrimination and harassment of workers. Defendants' failure to have and/or enforce adequate and consistent anti-discrimination and anti-harassment policies were substantial motivating factors in causing harm to the Group. Defendants failed to have an effective racial harassment policy, failed to adequately train all leads, supervisors, managers, staffing agency representatives, and human resources staff on the prevention of discrimination and harassment based on race, and/or failed to timely discipline or stop discriminatory or harassing behavior from occurring in the workplace.

161.     Defendants' actions were willful, malicious, fraudulent, and oppressive and were committed with the wrongful intent to injure Black and/or African American workers in conscious disregard of their rights.

162.     Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

163.     By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

164.     DFEH requests relief as herein described.

///

///

///

## ELEVENTH CAUSE OF ACTION

### Unequal Pay

### (Labor Code, § 1197.5; Gov. Code, § 12930, subd. (f)(5))

165.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

166.    Labor Code 1197.5 subsection (b) states that "[a]n employer shall not pay any of its employees at wage rates less than the rates paid to employees of another race or ethnicity for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions."

167.    Defendants' Black and/or African American workers received less total compensation than their non-Black counterparts while performing substantially similar work as each other, considering their combination of skill, effort, and responsibilities, as well as their similar working conditions.

168.    Defendants' Black and/or African American workers received less hourly pay or less base pay than their non-Black counterparts while performing substantially similar work as each other, considering their combination of skill, effort, and responsibilities, as well as their similar working conditions.

169.    Defendants' Black and/or African American workers received less incentive pay, bonuses, equity and/or benefits compared to their non-Black counterparts while performing substantially similar work as each other, considering their combination of skill, effort, and responsibilities, as well as their similar working conditions.

170.    As a result of Defendants' conduct, Black and/or African American workers suffered and continue to suffer lost earnings, and DFEH is entitled to recover unpaid wages and liquidated damages in addition to costs of suit.

171.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

172.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing

-35-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

violations doctrine is applicable to all violations alleged herein.

173.   Plaintiff DFEH requests relief as herein described.

## TWELFTH CAUSE OF ACTION

### Waiver of Rights, Forums, or Procedures and Release of Claims

### (Gov. Code, §§ 12953 and 12964.5 and Labor Code § 432.6)

174.   DFEH incorporates and realleges all previous allegations as if fully set forth herein.

175.   Government Code Section 12953 defines an unlawful practice as an employer's violation of Section 432.6 of the Labor Code.

176.   Section 432.6 of the Labor Code states inter alia that "[a] person shall not, as a condition of employment, continued employment, or the receipt of any employment-related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act…or this code, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity of any alleged violation."

177.   Based on information and belief, DFEH alleges that Defendants required Black and/or African American workers to waive rights, forums, and/or procedures as a condition of employment, continued employment, or the receipt of any employment-related benefit in violation of Labor Code Section 432.6 and Government Code Section 12953.

178.   Government Code Section 12964.5 subsection (a)(1)(A) prohibits "an employer, in exchange for a raise or bonus, or as a condition of employment or continued employment…to require an employee to sign a release of a claim or right under this part."

179.   Based on information and belief, DFEH alleges that Defendants' Black and/or African American workers were required to sign a release of claims and/or rights as a mandatory condition of employment. Tesla also required its contracted staffing agencies to waive rights as a mandatory condition of employment for any worker assigned to Tesla. These actions violate Government Code Section 12964.5.

180.   By engaging in the conduct set forth above, Defendants acted in conscious disregard

-36-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

of the rights or safety of others and acted in an oppressive, fraudulent, or malicious manner in violation of California Civil Code section 3294.

181.    As a further result of the unlawful employment practices of Defendants, the Group suffered lost earnings, lost benefits, lost future employment opportunities, and other financial loss as well as non-economic damages, including but not limited to, emotional pain, humiliation, embarrassment, belittlement, frustration, and mental anguish, in an amount to be determined at trial.

182.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

183.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

184.    Plaintiff DFEH requests relief as herein described.

## THIRTEENTH CAUSE OF ACTION

### Failure to Retain and Produce Records (on Behalf of DFEH Only)

### (Gov. Code, § 12946; Cal. Code Regs., tit. 2, § 11013)

185.    DFEH incorporates and realleges all previous allegations as if fully set forth herein.

186.    Government Code section 12946[38] declares it an unlawful employment practice for an employer to "fail to maintain and preserve any and all applications, personnel, membership, or employment referral records and files for a minimum period of two years after the records and files are initially created or received, or for employers to fail to retain personnel files of applicants or terminated employees for a minimum period of two years after the date of the employment action taken." State and federal law, including the California Labor Code, Equal Pay Act, and Unemployment Insurance Code (Lab. Code, §§ 226, 1197.5; Unemp. Ins. Code, § 1085; Cal. Code

---

[38] Effective January 1, 2022, Government Code section 12946 now requires that employers preserve employment records for at least four years. As mentioned before, however, DFEH references Government Code section 12946 as it existed at the time of the DFEH investigation, which required employers maintain employment records for a minimum of two years.

-37-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

Regs., tit. 22, § 1085-2), the Federal Fair Labor Standards Act and Equal Pay Act (29 C.F.R. § 516 et seq.; 29 U.S.C. § 211), and Title VII of the Civil Rights Act of 1964 (29 C.F.R. § 1602 et seq.), require employers to create and maintain various personnel records, including compensation records.

187.    Upon the filing of the DFEH Director's Complaint against Tesla, DFEH sent a Document Retention Notice to Tesla which gave Tesla notice not to destroy, conceal, or alter any documents or data relevant to the Director's Complaint, including data stored with third-party agents and information related to complaints of discrimination and/or unfair terms and conditions of employment.

188.    During DFEH's administrative investigation, DFEH requested Defendants' personnel records, including complaints and investigation information. Defendants' investigative discovery production was incomplete. Personnel files were missing for numerous workers throughout the covered time period. Complaints and information about investigations also were not provided for multiple workers. Defendants failed to supplement their production with complete records.

189.    Defendants failed to maintain employment records that they were required to make and maintain under state and federal law during the relevant time period in violation of Government Code section 12946 and California Code of Regulations, Title 2, section 11013.

190.    Unless Defendants are enjoined, pursuant to Government Code section 12965(c), from failing or refusing to comply with the mandates of the FEHA, Black and/or African American workers' right to seek or hold employment free of unlawful discrimination, harassment, and retaliation will continue to be violated.

191.    By reason of the continuous nature of Defendants' unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

192.    Plaintiff DFEH requests relief as herein described.

## **PRAYER FOR RELIEF**

**WHEREFORE**, DFEH prays that this Court issue judgment in favor of DFEH, and against Defendants, ordering:

1.    Compensatory and punitive damages;

2.    Economic damages and equitable relief, including but not limited to reinstatement

-38-

*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*
First Amended Civil Rights Complaint for Injunctive and Monetary Relief, and Damages

First Amended Civil Rights Complaint for Injunctive and Monetary Relief and Damages
*Dept. Fair Empl. & Hous. v. Tesla, Inc., et al.*

-39-

1  and/or front pay, pay adjustments, backpay, lost wages and benefits (including base pay, incentive

2  pay, pension benefits and awards), in an amount to be proven at trial;

3        3.    Liquidated damages and penalties, as required by law;

4        4.    Injunctive relief;

5        5.    Declaratory relief;

6        6.    Prejudgment interest, as required by law;

7        7.    Attorneys' fees and costs to the Department of Fair Employment and Housing; and

8        8.    Other relief the Court deems to be just and proper.

10  DATED:  March 11, 2022          DEPARTMENT OF FAIR EMPLOYMENT

11                                AND HOUSING

14              By: SIRI THANASOMBAT

15                  Attorneys for the Department

DEMAND FOR JURY TRIAL

Plaintiff DFEH hereby demands a trial by jury on all claims.

Dated: March 11, 2022

DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

By: SIRI THANASOMBAT
Attorneys for the Department