# Exhibit I

1

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3       WESTERN DIVISION

4       THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

5

6   US EQUAL EMPLOYMENT OPPORTUNITY      )
    COMMISSION,                          )
7                                        )
                         Plaintiff,      )
8                                        )
                                         )
9           vs.                          )   No. CV 21-7682-DSF-JEM
                                         )
10  ACTIVISION BLIZZARD, INC., et al.,   )
                                         )
11                       Defendants.     )
    _____)

12

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16

17           Los Angeles, California

18       Monday, December 13, 2021, 1:38 P.M.

19         Notice of Motion to Intervene

20
                             PAT CUNEO CSR 1600, CRR-CM
21                           Official Reporter
                             First Street Courthouse
22                           Room 4311
                             350 West First Street
23                           Los Angeles, California 90012
                             213-894-1782
24                           patcuneo1600@gmail.com
                             www.patcuneo.com
25

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:    US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
                            BY:  ANNA Y. PARK, LEGAL UNIT
 3                          AND  TAYLOR M. MARKEY, LEGAL UNIT
                            AND  NAKKISA AKHAVAN, LEGAL UNIT
 4                          255 East Temple Street
                            4th Floor
 5                          Los Angeles, California  90012
                            213-785-3080
 6                          anna.park@eeoc.gov; taylor.markey@eeoc.gov
                            nakkisa.akhavan@eeoc.gov
 7
      FOR THE DEFENDANTS:   PAUL HASTINGS LLP
 8                          BY:  ELENA R. BACA, ATTORNEY AT LAW
                            AND  FELICIA A. DAVIS, ATTORNEY AT LAW
 9                          515 South Flower Street
                            25th Floor
10                          Los Angeles, California  90071-2228
                            213-683-6000
11                          elenabaca@paulhastings.com
                            feliciadavis@paulhastings.com
12
      FOR THE INTERVENOR:   OUTTEN & GOLDEN LLP
13                          BY:  JOHAN C. SAGAFI, ATTORNEY AT LAW
                            One California Street
14                          12th Floor
                            San Francisco, California  415-638-8800
15                          jsagafi@outtengolden.com

16

17

18

19

20

21

22

23

24

25
```

**LOS ANGELES, CALIF.; MONDAY, DECEMBER 13, 2020; 1:38 P.M.**

-oOo-

1  THE CLERK:  Case No. CV 21-7682-DSF, US Equal
Employment Opportunity Commission vs. Activision Blizzard,
Inc., et al.

Please state your appearances.  Before I do that,
the person on the phone, you need to hit Star 6 to speak.

MS. PARK:  Good morning, Your Honor.  This is
Anna Park, Taylor Markey, and Nakkisa Akhavan for the EEOC,
the plaintiff.

THE COURT:  It's good afternoon.

MS. PARK:  Oh, sorry.

THE COURT:  That's all right.  I just had to check
the clock.

MS. PARK:  *(Laughing.)*

THE COURT:  All right.  And who's on the phone?

*(No response.)*

THE COURT:  No one?  Okay.

And in court?

MS. BACA:  Good morning, Your Honor.  Elena Baca
and Felicia Davis on behalf of defendant.

THE COURT:  Good afternoon.

All right.  I had issued --

MR. SAGAFI:  Good afternoon.

THE COURT:  Sorry.

```
 1              MR. SAGAFI:  Sorry, Your Honor.  Good afternoon.

 2    This is Jahan Sagafi on behalf of the DFEH.

 3              THE COURT:  Good afternoon.

 4              I did see the objection filed by CWA.  That

 5    objection is overruled.  But as the parties and the DFEH

 6    have seen from my tentative ruling, I'm inclined to deny the

 7    motion of the DFEH but allow it to file an amicus brief.

 8              When it does that, if there are any exhibits, they

 9    should make sure that those exhibits are tabbed in the paper

10    copies and filed properly.

11              I don't have time to go through 320 pages to see

12    where each of the exhibits begins and ends.

13              Did the DFEH want to address that issue?

14              MR. SAGAFI:  Yes, Your Honor.

15              Thank you for the tentative ruling and that helps

16    us focus our argument.  The DFEH also appreciates the Court

17    setting a hearing on the reasonableness of the decree and

18    providing that the parties need to justify the decree but

19    which they have not yet done.

20              The DFEH also appreciates being given an

21    opportunity to file a brief setting forth its arguments

22    although the DFEH of course believes that intervention is

23    appropriate and, in fact, required here.

24              And so I'd like to address two elements of the

25    tentative ruling if I may and then, as a housekeeping matter
```

1  at the end, talk about the schedule if I may.

2          THE COURT:  All right.  Before you do that, let me

3  tell you that --

4          MR. SAGAFI:  Yes.

5          THE COURT:  -- I am now looking at my camera.  But

6  now I can't see your faces.  So if I look this way, which is

7  the only way to see your faces, it appears on the screen

8  that I'm looking somewhere else.

9          So just so you know I'm not ignoring you and

10  looking into the distance but this is how the Zoom works in

11  court.

12                      *(Laughter.)*

13          THE COURT:  And I realized that I had not

14  necessarily intended to send that out as a tentative order

15  before the hearing.  I rarely do that.

16          But because of the questions about appearances,

17  et cetera, I thought it might be helpful for me to do that

18  and I didn't really focus on the dates which were in an

19  order that had been prepared earlier and I had considered

20  sending out without even having a hearing.

21          So at the end, yes, we can talk about -- I'm not

22  wedded to the dates that were in there.  So you can proceed

23  now, Counsel.

24          MR. SAGAFI:  Okay.  Thank you, Judge Fischer.

25          So as -- with respect to the two issues, as an

```
 1   initial matter, I want to be sure that the DFEH's basis for
 2   challenging the decree is clear because the Court describes
 3   it in the tentative as challenging the individual claims
 4   process and the destruction of evidence issue.
 5           But those are really the second and third issues
 6   on our list of three.  The main challenge, the first
 7   challenge, is to the scope of the release which attempts to
 8   cover state claims and there are really five pieces of
 9   evidence that we've presented to support that.
10           One is the --
11           THE COURT:  Have you seen a release?
12           MR. SAGAFI:  Well, there is a release in the
13   consent decree on page 5 that discusses allegations, issues,
14   and claims; and so it's called release and the very first
15   sentence says:  Allegations and issues will be released, in
16   addition to the claims that the EEOC asserts in its
17   complaint.
18           So the complaint talks about --
19           THE COURT:  Well, one of my concerns and comments
20   is going to be that all of the documents that are mentioned
21   in there are documents I want to see and I guess I'm going
22   to jump around more than I intended to because you also
23   started out by raising an issue that was one of my
24   questions.
25           And I will freely admit that this is not one of my
```

```
 1   areas of expertise and so I don't know exactly how this
 2   works.  So you mentioned reasonableness and one of my
 3   questions, which is really not for you probably but for the
 4   EEOC and the defendant here is:  What is the basis on which
 5   I'm to make this decision?
 6            I don't know if I'm really just a potted plant or
 7   whether I am supposed to be actually doing something.  If
 8   I'm supposed to be actually doing something, then there are
 9   many comments and questions that I have and the nature and
10   scope of the release is one of them.
11            But now I interrupted you.  You can go ahead.
12            MR. SAGAFI:  That's okay.  I appreciate that, Your
13   Honor.  And you're asking -- I'm happy to address the
14   tentative ruling and the intervention question; and I think
15   what you were posing just now was sort of the ultimate
16   merits question for the next hearing which is what's the
17   basis -- what's the legal framework for approving or
18   rejecting the decree.  Am I understanding your question
19   correctly?
20            THE COURT:  That's right, yeah.
21            MR. SAGAFI:  Okay.  So which one would you prefer
22   me to -- well, I can briefly address that question and get
23   back to intervention.
24            And the standard is fair, reasonable, and
25   adequate; and we put in some law and I was just looking for
```

1   it and I want to find the page on our motion and perhaps on

2   our reply where the Ninth Circuit has set forth fair,

3   reasonable, and adequate akin to a Rule 23 standard.

4          It is not from Rule 23 but it is similar for the

5   same reasons that the courts actually invented the fair,

6   reasonable, and adequate standard for class actions before

7   it became codified in Rule 23 because it's a sensible and

8   flexible framework to allow the Court to determine whether a

9   set of lawyers who are presuming to settle claims on behalf

10  of a whole host of absent parties are doing their job and

11  fulfilling their duty to those absent individuals --

12          THE COURT:  I know you haven't been here before,

13  much shorter answers.

14          MR. SAGAFI:  Okay.  Sorry.  So that's basically it

15  and we'll address that in our next brief as well but I think

16  we mentioned it in the papers but fair, reasonable, and

17  adequate.

18          THE COURT:  Thank you.

19          And did you want to address more with regard to

20  the intervention?

21          MR. SAGAFI:  Yes, Your Honor.

22          So really the primary challenge that we're raising

23  is that the EEOC is really stepping outside of its

24  jurisdictional lane.

25          It is entrusted by Congress to pursue claims,

1    federal claims.  Its complaint is a federal complaint but

2    the scope of the consent decree -- page 5, page 2, I think

3    page 15 -- say much more than just the claims from this

4    case.

5            It talks about allegations and issues.  It talks

6    about all claims based on the same factual predicate.  It

7    talks about claims to which the EEOC is not a party.

8            And so then when met and conferred with the EEOC

9    before filing this to understand what they were talking

10   about, they said, yes, this will this release FEHA claims,

11   California state law claims.

12           But they don't have the authority to do that.

13   Activision last week in the CMC in the state court case when

14   asked:  Does the consent decree contemplate dismissal of

15   this state law claim?  The state court judge asked.

16           And Activision's lawyer, Ms. Baca, said:  Not in

17   its entirety but, yes, the implication being, yeah, it will

18   release some of the claims in the state case or at least

19   it's trying to.

20           And so being the litigants who have a pending

21   lawsuit in state court, the DFEH now has a very concrete and

22   specific and particular interest in this case because

23   another government agency, without authority, without

24   jurisdiction, is attempting to compromise state law claims.

25           And so I just wanted to touch on the Court's

```
 1   tentative which mentions, well, if I allow intervention

 2   here, doesn't that provide for intervention in every single

 3   employment case and the answer is very much no.

 4         Because there are thousands of employment cases

 5   brought by plaintiffs all the time and this situation --

 6         THE COURT:  Don't I know it?

 7         MR. SAGAFI:  Right.

 8         And this situation is very different because we're

 9   saying the basis for intervention is pending DFEH case --

10   and DFEH only brings a handful of cases at a time -- and a

11   federal case that is trying to release claims or compromise

12   claims that are in that state law case.

13         So that is a unique situation.  That is a set of

14   one.  I know of no other cases where the DFEH has tried to

15   intervene in a federal case.  I know of no other cases where

16   the EEOC is trying to settle claims that brought by a state

17   agency in some other place and so this is an extremely

18   unique situation.

19         And I think one interesting point that the Court

20   makes is there's no possibility -- the Court says:  The

21   proposed decree will not and could not affect the DFEH's

22   litigation against the defendants.

23         And we very much agree but that's not what the

24   consent decree says.  It's contrary to what the EEOC has

25   said and it's contrary to what Activision said last week in
```

1    the state court CMC.

2              So I would just ask if the Court is going to make

3    that statement which we think is correct, that is directly

4    opposite from what the parties are saying; and so we'd Rick

5    the Court -- we'd ask the Court to ask the parties to

6    clarify could it -- could the consent decree compromise any

7    state claims?  And if so, which ones and how and why?

8              Because that goes to the crux of our -- of the

9    DFEH's interest if it is -- EEOC is stepping outside its

10   jurisdictional authority into state law issues, that's a

11   matter of serious federalism and the DFEH is thereby able to

12   intervene.

13             So -- and I just have one other point if I may.

14             THE COURT:  Okay.

15             MR. SAGAFI:  So the other issue from the tentative

16   that I noticed was that the Court says that the -- the

17   state's interest -- it sounded like the Court was saying

18   that the state's interest it only sort of derivative of the

19   individual interest.

20             And I just wanted to be clear as we stated in our

21   reply brief that the DFEH interest is two-fold.  It's as a

22   representative of individual victims on whose behalf it has

23   been investigating these claims for three years, litigating

24   these claims for six months, and collecting immense amounts

25   of evidence, thousands of pages of documents, hundreds of

```
 1    interviews, and analyzing reams of data, et cetera, on

 2    behalf of the individuals.

 3            But the DFEH also as a public prosecutor is

 4    asserting a public right as the California Supreme Court has

 5    said and other courts have recognized is a quintessential

 6    illustration of the police power that is left to the states

 7    and the California legislature has empowered the DFEH to

 8    pursue those claims.

 9            And so that's where the interest comes in to

10    protect these individuals who the DFEH has already

11    protecting in the state law -- in the state case and so the

12    main request from the DFEH is that if the Court could

13    confirm its statement that the EEOC's consent decree cannot

14    affect the state action, it cannot release state claims

15    because it has no authority to do that, that's really the

16    main request and so that's why we think, because of that

17    overstepping, that's why the interest prong and the

18    inadequacy prongs are satisfied and intervention as a right

19    must be granted.

20            THE COURT:  Well, I'll let the actual parties to

21    the case before me to speak.  But my impression is that the

22    distinction that you made is the distinction they're making

23    which is they're not interfering with your public

24    prosecution position but individuals have the right to

25    settle a case at any time with anyone and they don't need
```

 1     you, they don't need the EEOC.

 2              An employee can walk into Activision tomorrow

 3     without any attorney and settle a case with Activision which

 4     is certainly, in my legal experience, true.  Maybe not was

 5     but true.  They don't need a lawyer.  They don't need

 6     anything.

 7              MR. SAGAFI:  Yes, Your Honor.

 8              I'm not sure if you're posing a question to me but

 9     I would like to address it if possible.

10              THE COURT:  Go ahead.

11              MR. SAGAFI:  Yes.  I think that is their framing

12     but that is an interference with the state's effort to

13     enforce these laws on behalf of these individuals and so if

14     you take a --

15              THE COURT:  Well, and that's why I need to look

16     at -- I mean, this further discussion may be premature

17     because I may have the same concerns that you have after I

18     see what's going on here and the way things are phrased,

19     et cetera.

20              But I don't know that yet and I don't think you

21     know that yet either.  We both have the consent decree and

22     I'm guessing that's it.  Unless you have something I don't

23     have.

24              So I will turn to Ms. Park or Ms. Baca to respond

25     if you want to respond any further to the intervention and

1    my tentative order.

2             MS. PARK:  Yes, Your Honor.

3             On behalf of the EEOC, Ms. Taylor Markey will take

4    on the legal question on the motion to intervene; and I'd be

5    happy to answer questions about the decree that the Court

6    may have raised earlier if they so wish.

7             THE COURT:  Thank you.  Ms. Taylor Markey.

8             MS. MARKEY:  Good afternoon, Your Honor.

9    Taylor Markey on behalf of the plaintiff.

10            We agree with the reasoning the Court put forward

11   in its tentative ruling denying DFEH's motion to intervene

12   because they have not met their burden under Rule 24.

13            With respect to the arguments that Mr. Sagafi just

14   made, I think he's conflating the two releases.  There is a

15   release in the consent decree that releases EEOC's Title VII

16   claim brought in this action and uses standard release

17   language to do so.

18            I think they are misinterpreting that language in

19   order to try and justify having an interest to intervene in

20   this matter; and there's a second release which is the

21   release that individual claimants will be presented with.

22            And as the Court noted, DFEH does not have an

23   interest in individual's decision whether or not to release

24   their own claims.  That lies with the individuals.

25            I think the Court properly characterized all of

1    the interests that DFEH has put forward thus far to try and

2    justify its intervention under Rule 24 as really falling

3    into two categories.

4              One is its interest in its pending state court

5    litigation; and as Mr. Sagafi just said, its interest in

6    enforcing FEHA.  That interest is properly adjudicated in

7    the state forum where the case is currently pending.

8              And with respect to the other interest they put

9    forward, which is their attempt to utilize the interest of

10   the potential claimants, as the Court noted, those are the

11   claimants' rights and not DFEH's.

12             THE COURT:  All right.  Thank you.

13             Ms. Baca, anything from you or Ms. Davis?

14             MS. BACA:  Yes, Your Honor.  Your Honor, again,

15   Felicia Davis and Elena Baca on behalf of the defendants.

16             And we agree with the Court's ultimate finding

17   that the DFEH is not a proper party to these proceedings.

18   But we respectfully submit, Your Honor, that the DFEH has

19   had multiple rounds of briefing and should be heard no more

20   for two reasons.

21             First, this whole exercise has been the DFEH

22   trying to flex its muscle against the EEOC but at the

23   expense of Activision and its employees.

24             And if we talk about each in terms of the company,

25   it causes damage to Black Division Blizzard because it

1    triggers media accounts that repeat the DFEH's false and

2    exaggerated narrative about its workplace.

3           The picture the DFEH paints to further its

4    jurisdictional play is distorted.  While no employer wants

5    an employee to engage in conduct that might violate

6    harassment policies, there are more than ten thousand

7    employees at Activision Blizzard.

8           And according to Activision Blizzard's records,

9    only a small fraction of that population has ever reported

10   harassment; and the vast majority of reports did not involve

11   extreme situations and most important, when the reports were

12   made, action was taken.

13          But we know the DFEH is using the media as a lever

14   in its jurisdictional fight because not only did the lawyers

15   for the DFEH file in state court a salacious, inaccurate,

16   and impertinent complaint laced with stories that shouldn't

17   be found in a pleading and that are distorted.

18          For example, talking about really a tragic suicide

19   of an employee who was involved, as they know, in what was

20   reported as a consensual relationship.  But they portray it

21   and spin it like it's harassment.

22          Why?  What purpose did that serve?  And every time

23   they speak, they do the same thing.  And we know that

24   they're using the media because the day they filed the

25   complaint, they didn't serve the company.  They issued a

press release and they sent it out to the media.

And it shows that their true motive in all of this is to craft this outrageous narrative to suggest that the EEOC didn't do its job.

And that hurts the Activision Blizzard employees because, as the DFEH tries to delay this and by its own admission tries to kill it, the deal, the public facing actions of the DFEH are causing employee confusion, violence to the federal agency's legitimate processes, and skepticism about all of the government agencies.

That means eligible employees may not step forward to benefit from a reasonable resolution that makes potential relief immediately available to eligible employees.

And worse, the DFEH in its recent filings suggest a false alternative; that the DFEH can or will provide a more favorable recovery in state court.

We all know litigation is uncertain. They even have gone so far in the state litigation to tell employees to not talk to private lawyers, to talk to them instead.

But what they don't tell them is that unlike the EEOC that's before this Court and has the ability to resolve things on a class basis or litigate without complying with the standards of Rule 23, there is a state court that has ruled that the DFEH must show commonality.

And as we know, the odds of showing commonality in

1   a harassment case are daunting if not impossible.  But that

2   does not get put out there to the public.

3        The EEOC deal is available.  Once your questions

4   are answered, we hope that it is approved.  But it is

5   available here and now.

6        And the second reason we would suggest that

7   additional briefing won't assist is not only is their

8   collateral damage done every time they strike out against

9   the EEOC, but what more could they offer in terms of insight

10  into questions they have or the Court might have; that the

11  Court could pose that they would need to brief for the

12  court?

13       Activision Blizzard acted as an employer that was

14  responsible.  It negotiated with the agency it believed to

15  have jurisdiction over the harassment claims based on the

16  agreement between the two agencies.

17       The resolution took months.  A third-party

18  mediator was involved and we agreed to a resolution that has

19  transparency, monetary relief, nonmonetary relief, enhanced

20  psychological assistance for people who suffered from

21  harassment anywhere at any employer at any time.

22       It made a fund available that was greater than it

23  believed would be necessary and it agreed to do that for all

24  employees throughout the United States not just California.

25       And if we're realistic, the DFEH is not here

1    because there's anything deficient or improper.  Because

2    before there was ever an agreement, the DFEH was objecting

3    and fighting against the EEOC exercising its authority.

4              It would not have mattered what this agreement

5    said.  The DFEH was going to rail against it for its own

6    purposes; and the DFEH has twice prepared and submitted

7    rounds of briefing to this Court where it's identified what

8    it claims were deficiencies.

9              And the EEOC has demonstrated that there are no

10   legitimate issues and that what's before the Court is

11   actually in line with other prior EEOC consent decrees and

12   there would seem to be very little more left to say.

13             This resolution provides immediate benefit to

14   Activision Blizzard's employees, allows everyone to turn the

15   page and move forward; and thus we would ask that the Court

16   not allow further briefing.

17             If the Court has questions that the parties can

18   address in line with the normal process, obviously, we're

19   here and available because we believe that it's to the

20   benefit of the EEOC's mission and the benefit to the

21   Activision employees and the company itself for us to be

22   allowed to move forward and have the consent decree entered.

23             Thank you, Your Honor.

24             THE COURT:  Well, I have a lot of questions,

25   actually.  And let me ask first if you agree that the fair,

```
 1    reasonable, and adequate -- basically the Rule 23
 2    standard -- is the one that applies.
 3              MS. BACA:  Your Honor, the rule -- I'll defer to
 4    the EEOC but the short answer is we do not agree that
 5    Rule 23 applies.
 6              THE COURT:  Okay.  Well, then what's the standard?
 7    What am I looking at?
 8              MS. PARK:  Your Honor, this is Anna Park for the
 9    EEOC.  The rule is fair, reasonable, and adequate.  However,
10    there is case law which we can submit pursuant to briefing
11    on this; that great deference is given to agreements entered
12    into by governmental agencies and specifically the EEOC
13    since we represent the public interest.
14              The scrutiny under Rule 23, I think, as our
15    briefing indicates, really speaks to like the case before
16    this hearing involving an opt-out clause.
17              Ours is an opt-in case.  Always an opt-in case.
18    Or it's determined by the discretion of the agency how much
19    and who is allowed to recover and the full scope of what is
20    and can be to resolve any case involving the agency.
21              So we would be happy to submit authority.  It is
22    not subject to the heightened scrutiny as Mr. Sagafi is
23    attempting to argue; and, in fact, Rule 23 does not apply to
24    the EEOC and the strict standards.
25              We would be happy to submit briefing on that to
```

```
 1    the Court and the stipulation.  It will lay out the standard
 2    and for us to just proffer that the terms of the consent
 3    decree is fair, reasonable, and adequate and certainly would
 4    be happy to do that.
 5            With respect to the --
 6            THE COURT:  Well, I think --
 7            MS. PARK:  I'm sorry.
 8            THE COURT:  I think that would be helpful but very
 9    briefly because that's where I think courts always start.
10    You know, what's the standard here that I'm to apply?
11            And so fair, reasonable, and adequate makes sense.
12    Great deference to a federal agency like the EEOC makes
13    sense; and I guess where I would comment is that I can't
14    give deference to something if I don't know what it's about.
15            So that's maybe the nature of my comments.
16            I'm sorry.  Did I interrupt you?
17            MS. PARK:  Yes.  One last point to that, Your
18    Honor.  To the extent once the -- and we do submit on the
19    tentative.  We agree with the Court's ruling.
20            So with respect to the motion to intervene, we
21    believe it should be denied.  Of course, the Court, if the
22    Court has any questions, we'd be happy to submit.
23            If the Court would like the release or any other
24    documents we'd be happy to submit that for the Court's
25    approval, not to be second-guessed by a state agency that
```

 1    has no place in federal litigation here.

 2           I think that is the issue.  And just to be clear

 3    on the release issue, the decree is very clear on the scope

 4    of the release.

 5           I think DFEH makes great issue with the recital in

 6    the beginning but the actual release is very clear.  It's

 7    limited to and we have told the DFEH this well before in our

 8    meet-and-confer process -- and we've tried to resolve this

 9    before they proceeded to file here -- is that it's limited

10    to the allegations in the Complaint.  Sexual harassment,

11    pregnancy, and retaliation.

12           THE COURT:  That's not all the allegations in the

13    complaint.  There's pay mentioned in the complaint.

14           MS. PARK:  Pay is not asserted in our complaint.

15    I think Mr. Sagafi has asserted we make a pay claim or we

16    make that --

17           THE COURT:  Maybe I didn't look at it correctly

18    but I sure thought I saw the word "pay" in there.  In any

19    event --

20           MS. PARK:  That may be the remedy, the back pay.

21           THE COURT:  Well, that's how I interpreted it but

22    it's mentioned so that -- and that's what I assumed was the

23    case.  Because if you're harassed and you're constructively

24    discharged, then that would be -- that would be an issue.

25    So I understood that.

```
 1              I think maybe it's best for me to go through my
 2     questions and I'll decide what I want.  I am not going to
 3     allow the DFEH to intervene.  It's just not appropriate.
 4              Whether I do need more from them is another issue
 5     and at the end we can figure out where we're going from here
 6     but I might as well tell you now and there's too many of
 7     them for me to -- I'm not asking for answers now.
 8              But I do want to express my concern since I've
 9     gone over this thing several times; and to the comment in --
10     Ms. Baca made in the papers, I think both of your papers,
11     with all due respect to whichever of my colleagues here and
12     around the country that have signed consent decrees like
13     this.
14              And I'm not suggesting that I'm not one of them
15     although I don't recall.  The fact that this particular
16     decree is consistent with others doesn't necessarily mean
17     that in this case I'm going to approve it.
18              I'm certainly not going to search for those to see
19     how consistent they were or what the circumstances are.  You
20     did cite to me a couple of cases of my very esteemed
21     colleagues but you pointed only to a single provision.
22              So that's -- that kind of an argument really is
23     not persuasive authority.  I'm looking at this case and if I
24     have questions, where I have questions, I'm going to ask
25     them and they're going to have to be answered.
```

```
 1              And by the way, the commission suggested that

 2    certain provisions are standard in decrees that have been

 3    approved by this Court.

 4              It didn't appear that you were referring to me but

 5    when you address a district court and say "this Court," you

 6    mean me.  It's not like the Ninth Circuit where the panel

 7    speaks for the entire circuit.

 8              This Court is not the Central District.  This

 9    Court is only the particular judge before whom you are

10    appearing so.

11              MS. PARK:  Apologies, Your Honor.

12              THE COURT:  That's okay.  Just for future

13    reference, because when I see "this Court," then I wonder

14    whether I've issued some ruling in the case which wouldn't

15    bind me any more than the ruling of any other district

16    judge.  Sometimes the Ninth Circuit doesn't agree with me so

17    obviously I'm wrong on occasion.

18              In any event, even before I saw the DFEH's papers,

19    I was just about to set a hearing to discuss numerous

20    questions that I had about the proposed consent decree but

21    then I decided to wait for a hearing on this motion.

22              Some of the concerns actually were mentioned in

23    the CWA letter that was attached to its objections but just

24    to be absolutely clear, I'm certainly not going to order or

25    even suggest that the CWA has any role in this process; and
```

```
 1    certainly unless there's some other rule or law that
 2    requires it or unless the parties agree, I'm not suggesting
 3    that you need to provide any information to the CWA or offer
 4    it any participation in the process.
 5           Before we go any further, I think I still have a
 6    motion that relates to privileged information.  Where are
 7    you with that?  It seems to be a dispute between the DFEH
 8    and the EEOC about what should and shouldn't have been filed
 9    here.
10           MS. MARKEY:  Your Honor, DFEH filed that motion
11    just two days before this hearing and we haven't had the
12    chance to oppose it.
13           We believe that if DFEH is denied their motion to
14    intervene, that the issue will become moot.  But if it
15    becomes necessary for us to oppose that, we disagree with
16    their contention that we have placed any privileged
17    documents on the record and we will oppose that.
18           THE COURT:  Well, I'm not sure it's moot because
19    there's something you're ask -- somebody is asking to have
20    sealed or stricken or redacted or whatever.  So you need to
21    meet and confer and figure out how to deal with that in a
22    professional manner.
23           I don't really want to be dealing with accusations
24    of privilege if I don't have to and I don't want to be
25    looking at sanctioning people for filing privileged things.
```

1    So just meet and confer and try to work it out.

2          I think it's clear at this point that there's a

3    disconnect and we've talked about it here about what the

4    DFEH thinks is going on and what the EEOC and the defense

5    believe that they are doing.

6          And so that needs to be made absolutely clear in

7    the decree.  I don't think some other judge wants to be

8    trying to read my transcripts to figure out what I have and

9    have not said.

10          But, obviously, I don't want to be making any

11    rulings that I shouldn't be making and the EEOC doesn't want

12    to be doing anything it shouldn't be doing.

13          But at this point it wasn't clear to me that there

14    was any -- that the DFEH's concern was really what the EEOC

15    was trying to accomplish.

16          And so this dispute, frankly, between the agencies

17    is just a bit unseemly and I feel like I should send the two

18    of you to a mediator.  Nevermind Activision getting involved

19    in this.

20          So I don't know if there's a way to clarify this

21    and maybe at this point it's not really relevant.  Maybe

22    you're just fighting between yourselves about what

23    investigation means versus prosecution means.

24          But as I said, I need some more information about

25    a lot of things having to do with the decree before I can

1    figure out what I'm giving deference to.

2          So one of the things that I think the DFEH

3    mentioned was the language in the introduction and the

4    phrase:  All claims arising out of any of the same factual

5    predicates as those implicated by the action.

6          And I think maybe that does need to be clarified

7    either in the decree itself or somewhere else that it's

8    documented because, as I alluded to, I think it is somewhat

9    ambiguous as to the scope of the decree and it doesn't seem

10   consistent with 4A.

11         And as I said, the action refers to the EEOC's

12   investigation into -- and I think it said it was also paying

13   employees less, the female employees less than male

14   employees, and it later talks about resolving claims related

15   to pay.

16         Again, those are not necessarily wage-and-hour

17   issues but, as you go back through this, there may be some

18   things that don't change the decree substantively but just

19   tinkering with the language may make it more clear and get

20   rid of some of this concern.

21         Ms. Baca answered, I think, one of my questions

22   which is how many potential claimants there are.  The

23   beginning date of this eligibility of September 1 of 2016.

24   So does that make it more than ten thousand, Ms. Baca?

25               MS. BACA:  I think the answer is yes, it will be

1    more than ten thousand because you have people who are not

2    there constantly; right?  You have some turnover.

3          But I don't think it exceeds -- I hate to do it

4    off-the-cuff.  If you want precise numbers, Your Honor, we

5    can work with figuring out how and what --

6          THE COURT:  Well, I think ten thousand is probably

7    large enough that I can work with it; and if I understand it

8    correctly, even though this is basically gender

9    discrimination, pregnancy issues, harassment, harassment --

10   I'm not sure if that was limited to women but certainly

11   retaliation wouldn't be.  So it's not just female employees.

12   It's every employee after that date is a potential claimant;

13   correct?

14         MS. BACA:  Correct.  It not restricted to females.

15         THE COURT:  Okay.

16         MS. BACA:  Pregnancy, yes, but --

17         THE COURT:  There's a definition of *cy-près* fund

18   which I mean small points as we're going through them but I

19   think the definition should be "The *cy-près* fund consists

20   of" not *"cy-près* fund is the amounts."

21         I was trying to read later on when there are

22   references to *cy-près* and I think that's a little bit

23   clearer.

24         Section 5A -- and maybe there are some things I

25   shouldn't be concerned about; but if I'm going to be

```
1    involved in this in the future, I just want to clarify
2    things.  Says only the EEOC can enforce compliance.
3              I can understand why that may mean no other
4    agency, no other plaintiff-type person.  But is there a
5    possibility the defense would have an issue and then would
6    need to know what to do about that?
7              MS. BACA:  (Nods head up and down.)  Yes, Your
8    Honor.  I think that the -- in the drafting of it, the idea
9    was enforced compliance as though if there were ever a
10   concern by the agency that the employer was not.
11             I'm not sure that we -- if my mask were not on,
12   you would see that I'm grinning because I'm trying to
13   imagine what it is that the employer gets to enforce from
14   the federal government but --
15             THE COURT:  If there were something, you would
16   think about it.
17             MS. BACA:  Yeah, I would.  And I would want it too
18   so, yes, Your Honor.
19             THE COURT:  But I'm just thinking about what's
20   going to come back and have me say I wish I had looked at
21   that more carefully.
22             MS. BACA:  Yes, Your Honor.
23             THE COURT:  And I think there -- no matter what,
24   there probably will be.  Maybe more importantly is the
25   three-year expiration date; and just looking through this
```

1    and life experience suggests that it's going to take a while

2    to get all this stuff in place.

3          So three years seems pretty short and it also

4    seems like it has the potential for expiring just as the

5    EEOC is asking for something, copies of documents or

6    reports, et cetera; and there is an option in there for the

7    EEOC to seek to extend that time but, as I said, three years

8    seems very short.

9          MS. BACA:  Your Honor, the employer itself had

10   already and has already started making a lot of the changes.

11   It centralized Human Resources.  It's expanded its

12   investigations people.  I think they've authorized 19 more

13   positions.  They are doing a lot of work while we're still

14   waiting for these things to proceed through the Court.

15         There's the EEO person who will be hired

16   internally once the consent and if the consent decree is

17   approved by the Court.  So there'll be an EEO person who is

18   responsible.

19         The board itself has created a Workplace

20   Responsibility Committee that is overseeing this so that EEO

21   coordinator position within the company will work.  But then

22   in addition to that, there is an EEOC consultant who will be

23   retained to help facilitate to make sure that we just have

24   transparency to the agency so they can see that everything

25   that we said we are doing, we continue to do and we are

 1   doing.

 2           THE COURT:  Well, those are my concerns because

 3   once three years expires and you've mentioned several things

 4   that I was going to address as well.

 5           But I don't know how long it's going to take to

 6   put these people in place and then there's language in here

 7   about:  Well, if the person resigns or we need a new person

 8   and then the EEOC can review and it has a certain number of

 9   days to review and inevitably something doesn't work right

10   in litigation and settlements.

11           And it is just that that does not seem like enough

12   time to me if there's no requirement that court approval be

13   sought and it seems the one place where it was allowed for

14   the EEOC to seek an extension, I think that was the

15   language.

16           MS. PARK:  Your Honor, this is Anna Park from the

17   EEOC.  If I may address that and maybe part of this would be

18   helpful if we submit our briefing on this and then we can

19   have further discussion on this.

20           With respect to the three years, we believe that's

21   a sufficient amount of time based on -- we're also requiring

22   semiannual reporting and active oversight over the company

23   as Ms. Baca mentioned.

24           Some of these have based -- the company has

25   already started implementation and a lot of this will be

1    reviewing and reevaluating and further implementation of the

2    extensive review.

3          The auditing will be very aggressive in the

4    beginning and usually towards the end of the term a lot of

5    these issues are addressed.

6          But certainly if it's not effective in the first

7    two years, we would seek an extension of the decree which we

8    often have done and that would be based on the feedback from

9    the external monitor and also the internal monitor and also

10   our independent review.

11         And then if there's a problem, we would submit

12   that to the judge -- to the court here.  Usually, the courts

13   have given us deference in sort of monitoring and making

14   sure there is compliance; and that's a part of why and that

15   wouldn't require the Court's extensive energy in trying to

16   make sure they comply.

17         THE COURT:  As I said, I don't want to get into it

18   with each of these questions because I have several more

19   pages.  But I would being more comfortable if there was

20   some -- maybe there's a mechanism that I get a report after

21   the two-year mark to see how we're doing and whether I am

22   satisfied or whether I'm going to perhaps -- I don't know --

23   direct the EEOC to do something or have you give me a better

24   comfort level at that point.

25         But the way that it's worded is a pretty clear

1   three years and I did note all the reports and the

2   semiannual and then there's something else that's annual.

3   Had a little bit of an issue with that because with three

4   years, could be that the third annual would fall the day

5   before this expires which really wouldn't be very helpful.

6            MS. PARK:  Sure.

7            THE COURT:  So 8A, the EEOC review re compliance

8   refers to the EEOC asking that defendants permit an

9   interview with an employee.

10           But then say:  The defendant will comply so that's

11  a little ambiguous as to whether this is permissive or

12  mandatory when you say what the defendants will permit but

13  then you say the defendant will comply.  I don't think

14  that's clear.

15           Then there was an issue about a defense attorney

16  may be present during any member of management or any person

17  who possesses privileged information regarding the topic of

18  the interview.  I think that's clear.

19           If I were going to interpret it, I know how I

20  would interpret it.  But I think there is a possible

21  ambiguity whether these are two separate categories.

22           Anybody in management, not just management, who

23  possesses privileged information.  So maybe the "or" should

24  be an "and" or that should be clarified in some way because,

25  as I said, I think I know what you meant but it wasn't

1    entirely clear.

2          And then are we talking about attorney-client

3    privileged information?  I was trying to figure out what

4    we're talking about.

5          It doesn't sound like your -- well, maybe I

6    shouldn't speculate.  What kind of interviews are you

7    talking about?  The processes and how they're working or

8    whether there's still harassment or discrimination going on?

9          Because you don't want to -- I don't think these

10   people, if they happen to have privileged information and

11   they're claiming to be harassed and then you have a defense

12   lawyer there, it's not --

13         MS. PARK:  I think, again, this is a negotiated

14   document so obviously the defendant and I'll let them answer

15   that.  They had concerns that certain management

16   officials -- you know, ultimately, it's the monitor being

17   empowered to interview individuals within the company in

18   they're monitoring aspect.

19         So we would be happy to submit further briefing

20   and clarification.  If the Court would like more

21   clarification on that language, we would be happy to present

22   that but it was all --

23         THE COURT:  I just want to be --

24         MS. PARK:  I think it's attorney-client, yes.

25         THE COURT:  I just want to be sure that, you know,

```
 1    who you're contemplating being interviewed; and it's not
 2    somebody who now claims under all these new policies they're
 3    being harassed.
 4            And then somebody says:  Well, maybe they have
 5    attorney-client privileged information and so we're going to
 6    have the defense lawyer sitting in on your interview about
 7    harassment.  I don't think that's what it meant but it's not
 8    all that clear.
 9            MS. PARK:  Yes.  That's was never intended.
10    Obviously, a monitor is empowered to talk to anyone whoever
11    they want.  I think this is more intended for very specific
12    and narrow issues.
13            THE COURT:  Well, then, that is one thing that
14    should be clarified.
15            MS. BACA:  Yes, Your Honor.  Just so we're clear.
16    Typically, if it's a member of the management, who combined
17    with company counsel, would be present.
18            The idea of privilege is indeed attorney-client
19    privilege; and if the Court's question about if it were
20    someone who had a concern or an issue related to their own
21    issues, then they wouldn't -- I don't see how those would
22    intersect.
23            So what was intended was management if there are
24    questions about what's happening with X, Y, or Z.
25            THE COURT:  All right.  I could think that needs
```

1    some work.

2            Where did the 18 million come from?  You've made

3    some comments Ms. Baca today about the ten thousand people

4    but very few.  This seems like very few that you and the

5    EEOC are actually going to be eligible claimants.

6            But -- and you said you think this money is more

7    than going to take care of those.  I don't have any

8    information at all about this.  All I have is a $18 million

9    number.

10           MS. BACA:  Understood, Your Honor.

11           And I'll let the EEOC -- look we all disagree

12   on -- no surprise to this Court.

13           THE COURT:  Been there, yeah.

14           MS. BACA:  Right?  No surprise to this Court in

15   the slightest.  But ultimately, and what I'm struggling with

16   in part, Your Honor, is mediation privilege and what I

17   can -- and what we can disclose or not particularly in open

18   court; and so if the Court would -- well, if you would like

19   a further submission --

20           THE COURT:  If you would like to submit an

21   under-seal filing.  But I think this deference is one thing

22   and here's a number and I know nothing else about it.

23           MS. BACA:  Understood, Your Honor.

24           THE COURT:  And so --

25           MS. BACA:  If the Court would permit an under-seal

1  filing, then I'm sure we could find what we could put

2  forward and you won't be surprised that we all have

3  different views.

4         THE COURT:  No, I won't.  I'm sure there were.

5         MR. SAGAFI:  Your Honor, might I respond to that?

6         THE COURT:  You don't want an under-seal filing?

7         MR. SAGAFI:  Correct, Your Honor.  Because the

8  public --

9         THE COURT:  Well, I'll figure that out when I get

10  it.  I don't need your assistance in that regard.

11         MR. SAGAFI:  Thank you, Your Honor.

12         THE COURT:  If it's really --

13         MS. PARK:  Your Honor, this is the EEOC.  I'm

14  sorry.  I'm sorry.

15         THE COURT:  That's okay.

16         MS. PARK:  We would agree with the defendants.

17  Based on particularly -- based on our investigation and

18  claimants are reluctant to have their stories and facts and

19  circumstances revealed.

20         THE COURT:  I don't need stories and facts.  I

21  really just -- maybe as we go on, it may become more clear

22  but as I said I know nothing and nothing is not enough for

23  me to give deference.

24         MS. PARK:  We would be happy to send that in

25  camera or under seal for the Court to consider, yes.

1          THE COURT:  And if you came up with some
2   estimate -- and I don't know whether this needs to be under
3   seal or not.  I'll leave that to you until I see.
4          It but if there is some estimate of what number of
5   people and what they're likely to get, I mean --
6          MS. PARK:  Yes.
7          THE COURT:  -- and not to harp on the CWA, but
8   that letter was mentioning some kind of maximum amount or
9   minimum amount or something.  I don't know where that came
10  from.  That is beyond my knowledge so for some reason they
11  thought 60 people would max out the -- I have no idea what
12  that was about.
13         MS. PARK:  Well, they're claiming everyone is
14  entitled to -- there are caps under Title VII.  300k for
15  compensatory and their estimate is everyone is entitled to
16  caps; and we all know in these very fact specific in
17  harassment cases, that is not the case.  The value of each
18  case has to be evaluated based on the factual merits.
19         THE COURT:  Well, I had figured out something was
20  300,000 by the numbers.  But other than that, I had no idea
21  where it was coming from.  Okay.  And you're right.  I
22  obviously completely understand that.
23         Going to 9A2, here is where it gets even more
24  confusing.  It says the settlement fund will be distributed
25  to eligible claimants and the *cy-près* fund.

```
 1          But later it says some of the money might or would
 2   go to a diversity and inclusion fund and I guess I'm
 3   segueing now because my notes are not in very good order.
 4          I was wondering -- and maybe you haven't thought
 5   about this at all.  What would be the impact on someone who
 6   makes a claim and it's rejected?  Is that all going to be
 7   confidential?  Could it be used in a future lawsuit?
 8          Maybe that's really nothing I should be
 9   considering but it just occurred to me.  I wonder what
10   happens because some people may make claims and you may say
11   no.  The EEOC will say no, this is a bogus claim or you
12   haven't established your claim.
13          MS. BACA:  I think that's a question for the EEOC.
14   I think we don't know.  I think that the EEOC handles that
15   confidentially and so I'm not really able to speak to that.
16          THE COURT:  And that may relate in some way to:
17   Can they then go and make their claim to the state court?
18          MS. BACA:  Look.  If they have not entered into
19   and received an offer of money, if they get the offer and
20   they reject it, they can do whatever they want to do.  They
21   can go to a private attorney.  They can go file.  They can
22   go contact the state.  They can do whatever they want to do.
23          THE COURT:  No, that part I understand.
24          MS. BACA:  Right?  So if they submit and the EEOC
25   rejects, I don't know the byproduct.  But I would think that
```

1  they would go follow any course that they might have

2  available.

3          THE COURT:  And the other thing I have no

4  information about and no experience with is scoring claims

5  and what that even means.

6          I don't understand how this whole process is going

7  to work.  I have some vague idea that they're going to be

8  told something and they can submit claims and then the EEOC,

9  in its sole discretion based on scoring that it's developed,

10 will evaluate the claims.

11         But I don't know -- I have no knowledge what the

12 scoring is about so.

13         MS. BACA:  Your Honor, I believe that relates to

14 the severity of the allegation so that it --

15         THE COURT:  I do too but I don't know what that

16 means.

17         MS. BACA:  Understood.

18         THE COURT:  You know, inquiring minds want to know

19 what's going on here.

20         And then there's some language -- again, maybe

21 this is just me not -- and I shouldn't be nitpicking this

22 thing.  But it says the EEOC will determine whether a

23 potential claimant was employed during the relevant period,

24 could assert a claim and experienced a harm.

25         I'm perfectly comfortable with the EEOC doing

```
 1    that; but could assert a claim.  First of all, as I always

 2    tell people who ask, can you sue for that?  Anybody can

 3    assert a claim for anything.  I assume it doesn't mean that.

 4    I mean -- I think it means could assert a viable claim?

 5              MS. BACA:  Yes.

 6              THE COURT:  If they could assert a viable claim,

 7    then it seems to me they probably have been harmed.

 8              MS. BACA:  Well, Your Honor, it could be people

 9    who signed releases or there are other things that might

10    prove to be legal impediments.

11              THE COURT:  Ah, okay.  Well, I don't know if that

12    means there would be no harm.  It's just they can't recover

13    for the harm.  So my quizzing on that was what kind of -- is

14    this process all through paperwork?

15              MS. PARK:  So just to clarify, we would be happy

16    to put that in -- we probably may need more than 15 pages

17    with these questions.

18              THE COURT:  Yeah.

19              MS. PARK:  But what will happen is we will develop

20    a questionnaire that will go out.  People will submit

21    voluntarily their claims.

22              We will assess based on those questions to

23    followup interviews if we need to; and then rank and see,

24    one, if they're even eligible.  They're timely, for example.

25    Do they meet severe pervasive.  Do they have a viable claim
```

```
 1    and then see what damages flow from that.
 2            And then that allocation, that determination, will
 3    then be communicated to the claimants.  Usually what we do,
 4    Your Honor, is tier the claimants.
 5            Top tier, severe incidents, complaint, terminated.
 6    And then there are those in the middle, possibly harassment
 7    where maybe they didn't complain, didn't have a severe
 8    pervasive; and then a third tier with sort of lesser claims.
 9            That's usually how we've ranked these kinds of
10    cases; and then from that, allocate a range of funds
11    depending on how many people come forward, what kind of
12    damage they have suffered, and then push out sort of the
13    allocation distribution.
14            And then people will determine from that whether
15    they want to take or not.  Then they'll be forwarded --
16            THE COURT:  Okay.  Stop.  Because I have some more
17    questions as we go along about that too.  I appreciate it.
18            And many of these questions may be just that I
19    don't think I've had one of these before.  If I have, it's
20    been too long ago and I have forgotten.
21            And maybe my colleagues who have evaluated these
22    and signed them without so many questions know more about
23    this area of the law or have had other matters before and I
24    just haven't so I apologize but you're stuck with me and my
25    questions.
```

1          MS. PARK:  No worries, Your Honor.  That's what
2     we're here for.  To answer questions.
3          THE COURT:  And then page 15, I or Roman
4     numeral -- no, it's not Roman numerals.  It's I.  This list
5     of providers.  Are these people that the EEOC knows will be
6     willing to consult for an hour at $450?
7          And I'm not suggesting that the defendant had to
8     agree.  This was negotiated.  I understand.  I'm not
9     suggesting that it should be more than an hour or more than
10    $450.  I'm just wondering if this is going to come as a
11    surprise to these lawyers who are going to get a call
12    saying:  By the way, I want an hour of your time for $450
13    and I have this, you know, waiver for you to look at and --
14         MS. PARK:  Well, these are plaintiffs lawyers who
15    have agreed voluntarily.  Obviously, if they don't want to
16    do it, they don't have to.  They have been asked and have
17    given advice in other cases.
18         We'll probably have to get more if more claimants
19    come forward; but -- so it's not a surprise.  And, in fact,
20    it's more than what we've put in other decrees, been from
21    250 to 300.  Considering the LA market, we upped it to 450
22    in this case.
23         THE COURT:  That's for sure.  Okay.  You don't
24    need to address that any further.  I was just wondering what
25    the intent was.

44

```
 1              MS. PARK:  Yes, Your Honor.
 2              THE COURT:  Now, as far as these information
 3     coming in and decisions being made and the scoring and
 4     stuff, is that going to be on a rolling basis?
 5              Are you going to wait to get what you think are
 6     all of the claims and then decide how the money is going to
 7     be distributed?
 8              Is this -- I guess another way is this an $18
 9     million fund that you're looking to disburse or are you
10     going to just decide if you're in category X you get X
11     dollars and if we end up with, you know, 10 million spent,
12     that's fine, and if we need 20 million, then we just don't
13     know what we're going to do?
14              MS. PARK:  It's 18 million just for the
15     distribution to the claimants; and there is timeframes set.
16     However, we have allotted for late claims because sometimes
17     people submit late claims.
18              But it will be pushed out all at one time based on
19     the time period which again is broader than -- most of these
20     individuals, just for the Court's background, haven't filed
21     a charge.
22              So this was from a commission charge which the
23     agency initiated.  So many of these individuals will be
24     untimely to pursue their individual claims.  That's why a
25     lot of discretion is left to the EEOC to decide whether they
```

 1    can even be a claimant and whether they can claim any money.

 2            Those individuals who have, for example, more

 3    recent claims can file a charge and pursue them

 4    independently with the EEOC or file with the DFEH; and they

 5    can intervene in the DFEH case, can intervene or seek their

 6    own case, do whatever they want to do.

 7            So that's a different set of circumstances for

 8    individuals with live claims.  But for the vast majority

 9    here, this was the subject of an anonymous complaint that

10    came to us in 2016 and, as a result, we opened an

11    investigation with very view complaints against this

12    particular -- these companies.

13            So as a result, many of the claimants we believe

14    which covers this time frame won't have an independent

15    claim; and so that's why it's very important that we're able

16    to process and give opportunity to those who didn't at the

17    time file a charge to give them a right to pursue this.

18            THE COURT:  No, I understand that.  But if you

19    just -- if we liken it to a Rule 23 case, which it isn't,

20    there's an amount that the defense agrees to pay; and

21    depending on the case, if all the money isn't distributed in

22    the first round, there may be a second round where more

23    money is sent out to all of the people who have responded

24    so.

25            MS. PARK:  Yes, we can distribute.

1        THE COURT:  Okay.

2        MS. PARK:  Yes.  I'm sorry.  I didn't understand

3   the question.  My misunderstanding.  Yes and it is left to

4   our discretion to redistribute if we need to.  I think

5   there's a provision in the decree that allows for subsequent

6   distribution lists to go out.

7        THE COURT:  Well --

8        MS. PARK:  And it's 18 million plus the defendants

9   also has to pay for the claims administrator separately and

10  also the FICA FUTA contributions if there's pay.

11       THE COURT:  The employers' contribution, not the

12  employees' contribution.

13       MS. PARK:  Yes.

14       THE COURT:  Well, that doesn't help the employees.

15  I'm not sure, quite frankly, why that was even going into

16  the settlement fund.  Didn't make sense to me but then I

17  don't know much about tax and I don't want to learn it.

18       But, no, I do understand that.

19       So then we have page 15J which is titled

20  "Unaccepted Eligible Claimants Shares."

21       And it says:  Eligible claimants shares deemed to

22  be rejected under this subsection will be distributed to the

23  *cy-près* fund.

24       And so that was what made me wonder whether you

25  were going to divvy all this up all together and then, if

| | |
|---|---|
| 1 | anybody -- I assume what's contemplated here is you decide |
| 2 | person X is eligible.  Person X falls into a particular |
| 3 | category, and that category gets X dollars. |
| 4 | And then when you send out the release and the |
| 5 | check for X dollars, the eligible claimant decides he or she |
| 6 | does not want it and therefore rejects it or -- |
| 7 | MS. PARK:  Yes. |
| 8 | THE COURT:  By failing to send back the paperwork |
| 9 | or affirmatively. |
| 10 | And so -- but that says it will be distributed to |
| 11 | the *cy-près*.  It doesn't say anything about being |
| 12 | redistributed. |
| 13 | MS. BACA:  Correct, Your Honor. |
| 14 | THE COURT:  Okay. |
| 15 | MS. PARK:  At this stage, yes.  I think I meant |
| 16 | earlier if, for example, people don't want to participate |
| 17 | earlier.  But once the allocation is made and they could be |
| 18 | consulted and they say no, then yes, it would be |
| 19 | redistributed to the *cy-près* fund. |
| 20 | THE COURT:  Okay.  But then we go to M at page 16, |
| 21 | that refers to returned or uncashed checks; and I'm not sure |
| 22 | if that's similar to the unaccepted shares and it doesn't |
| 23 | say specifically what happens to those. |
| 24 | I don't know if it goes to the *cy-près* or is |
| 25 | redistributed or are they excess funds which in a later |

1    section goes to *cy-près* or a diversity inclusion fund.

2          And then it says:  The claims administrator will

3    notify on a quarterly basis of remaining amount of funds.

4    So that's the reporting that you were telling me about and

5    that would make sense for redistributing.

6          But these various paragraphs which talk about

7    things that may be slightly different but sound the same --

8    unaccepted shares, returned or uncashed checks -- and then

9    under the N as in Nancy at 17, talks about undistributed

10   excess funds; and I'm not sure exactly what that is and how

11   it's distinguished from J and M.

12         But it's different in the sense that that's EEOC

13   deciding how to allocate it between the *cy-près* fund and

14   here for the first time we hear about a diversity and

15   inclusion fund.

16         There's no explanation about what that is.

17   There's no definition about what it is.  There's no

18   explanation as to why money would go back as it seems to be

19   in this case to the defense to use it for something that

20   perhaps the defense otherwise should be doing anyway.

21         So I know this isn't a class action but money

22   going back to the defense would certainly raise a red flag.

23   So those are things that seem inconsistent or at least

24   unclear to me that need to be clarified.

25         MS. PARK:  Okay.  And just for the record, Your

```
 1    Honor, on line 16 through 18, it does define the diversity

 2    inclusion fund; and usually we allow -- and this is

 3    something we would have to prove.

 4           The defendant would make a recommendation.  If

 5    they want some of it towards diversity inclusion efforts.

 6    But we define that as beyond -- above and beyond the scope

 7    of what is their obligation under the decree.

 8           So it's something above and in excess of what is

 9    required and what the employer is to do.  So it's not just

10    for -- it's not money back to the company per se but we can

11    clarify that further if the Court wish.

12           And as to the issue of returned and uncashed

13    checks, the reason we have that provision as we've done

14    in -- sometimes checks get lost in the mail.  People say:  I

15    never got it.  So this is a way for us to monitor whether

16    it's cashed or not and a process in which to make sure that

17    the checks are re-sent so this has come up in other cases

18    particularly where people have moved or something got lost.

19           THE COURT:  I'm not concerned about.

20           MS. PARK:  That's what they are.

21           THE COURT:  You have three different categories.

22    You have rejected, you have uncashed, and you have excess;

23    and there's two different explanations and one that has no

24    explanation.

25           MS. BACA:  Your Honor, we'll put it forward that
```

1  the reality is we have very different views of the potential

2  level of claims that are going to come in.

3          We believe there will be much left over.  And in

4  part of the structure, it's contemplated but why don't we --

5  we can just make a flow chart and make it very easy for the

6  Court and resubmit it to show how it moves, Your Honor.

7          THE COURT:  That would be very helpful.  I'm not

8  sure what -- what are you talking about line 16 to 18?

9          The diversity and inclusion fund to be used by the

10  defendants exclusively for diversity, inclusion, and equity

11  efforts beyond the scope and terms of this decree is not at

12  all specific or helpful.

13          MS. BACA:  Your Honor, that's again what happens

14  to the excess so we'll put that out for the Court.

15          THE COURT:  Okay.  And then I guess it's

16  interesting throughout; and I'm sure this was a topic of

17  negotiation; and you both have done a very good job is in

18  certain places the EEOC has sole discretion and certain

19  places it only has input.

20          So here the defense decides where the *cy-près*

21  funds go and the EEOC apparently only has input.  I don't

22  know what that means.  If you can't say no, that's not a

23  good place for it to go and the defense says:  Well, that

24  the too bad.  We've heard your input.  Now we're sending

25  what Ms. Baca claims will be a lot of money because there

```
 1    will be so few claims off to some place that you had input

 2    on but not a veto power for.

 3              MS. BACA:  My recollection was the input related

 4    to the charities.

 5              THE COURT:  The Cy-près, yeah.

 6              MS. BACA:  Right.  I think it was in part the idea

 7    of which charities and whether they would still exist.  But

 8    we understand and we'll clarify for the Court.

 9              THE COURT:  Okay.  10A.  I don't -- I don't think

10    it says exactly what the DFEH wanted it to say so you should

11    just talk about that.  I think it's just tweaking the

12    language, not changing a term of the decree.

13              Small typo on page 19, around line 8, referring to

14    the defendants.  Should be "their" not "its."  Another, I

15    think a typo on page 22.  I think the word "in," i-n, at the

16    end of line 20 or 21 should be deleted.

17              Somehow the -- nothing ever lines up with the

18    actual lines on the pleading papers so it's somewhere

19    between those two lines.

20              And, again, it looks like the third party

21    consultant has to be approved by the EEOC but not the

22    internal coordinator unless there's a new coordinator that

23    needs to be approved.

24              I don't understand what that means.  I assume

25    that's, again, some issue about -- that was negotiated; and
```

1   if the EEOC is comfortable with that, it just seemed a

2   little odd.

3           Is there somebody there now?  Because it sounded

4   like there was someone there in place and maybe that person

5   wouldn't be willing to do the job or able to do the job and

6   so there was a provision for a new coordinator being

7   approved.

8           Page 25 I think is another typo.  It should be

9   "documents that list."  No "s," not "lists" with an "s."

10          Page 26 at 2 says:  The defendants may follow the

11  consultant's recommendation.  This relates to widespread or

12  repeated violations and may follow or suggest good faith

13  alternative but it doesn't say what happened.

14          Doesn't say they actually had to do something,

15  just says that they can follow the suggestion or not and

16  they can make a good faith alternative.  But it suggested a

17  good faith alternative.  Doesn't say that they have to do

18  that alternative thing.

19          Page 26 at 3 is that annual audit issue I was

20  mentioning that turns out it may only happen twice during

21  the three-year period because I don't think things are going

22  to get going in this for three to six months; and by the

23  third time, this agreement might have expired.

24          Page 27, lines 8 and 9, refers to an audit of

25  disciplinary programs.  There is no real description of or

```
 1   requirement for disciplinary programs so I don't know
 2   what -- I don't even have a hint about what that is.
 3              I assume it's something.  One of these people --
 4   coordinator or internal something consultant or
 5   coordinator -- is going to do but it doesn't have any
 6   definition.
 7              And then there are a couple of references to a
 8   climate survey.  I have no idea what a climate survey is.
 9   Somebody want to help me out?
10              MS. PARK:  A climate survey is issued to the
11   workforce or, Ms. Baca, did you want to speak to that?
12              MS. BACA:  You went first.  I'll defer.
13              MS. PARK:  It's a survey that's constructed by
14   probably the monitor that will go out to the workforce to
15   get a temperature rate of what is going on, whether their
16   complaints and how it's handled and usually that's deferred
17   to the third party to construct that, to get some meaningful
18   impact feedback from the workforce itself.
19              THE COURT:  Okay.  Thanks.  That was my guess but
20   I don't like to assume that I know what's going on.
21              MS. PARK:  It's probably too much of a term of
22   art.  I guess that's sort of used too much in employment and
23   we take it for granted so our apologies on that.
24              THE COURT:  No, that's all right.  Training for
25   supervised employees.  Is that one time only?  Is that for
```

1  all new supervisory employees as they come on?  There wasn't

2  really specifics about that.

3          MS. BACA:  Your Honor, the company already has in

4  place regular training.  It's set already at the cadence and

5  schedule actually in excess of what's required by state law.

6          THE COURT:  Okay.

7          And then 12C5D, there was a concern about the

8  phrase "Confidentiality of the complaint complainant and

9  investigation and whether that prohibited any of the

10 eligible claimants, for want of a better phrase, from

11 talking about the process at all."

12         MS. BACA:  I apologize, Your Honor.  I'm at a

13 loss.  I'll put up the consent decree to see what that would

14 refer to.  I'm not sure.

15         I think it's confidential on the side of the EEOC,

16 like they can submit to the EEOC and they can go through

17 that process.  We, the defendants, would not have a view

18 into that.  I just don't know and would defer obviously to

19 the EEOC to speak to whatever its rules are.

20         THE COURT:  Well, yeah.  Take a look at that and

21 make sure that it doesn't purport to prevent a claimant from

22 talking about what has happened to him or her or how that

23 was dealt with unless there's some law that says you can.  I

24 don't know anything about that.

25         And then 12F at page 39, there's a sentence.  The

1   last sentence is not grammatically correct.  The word

2   "which" should be "that" and there shouldn't be any commas.

3        Gives it an entirely different meaning the way you

4   have it phrased; and that's -- it says "Feedback received

5   through these mechanisms, comma, which indicates the that

6   gender discrimination harassment, et cetera, may be

7   occurring will be promptly and adequately addressed by

8   defendants."

9        The way that's written it assumes that feedback

10  has already been received through the mechanisms and

11  indicate those things.  I think what you mean is feedback

12  received through the mechanisms that indicates gender

13  discrimination, et cetera, will be promptly and adequately

14  addressed.

15       And just for consistency, I think, there's going

16  to have to be some tweaking of this documents to correct at

17  least those typos.

18       Do me a favor and please be consistent in -- I

19  prefer that you use Oxford commas so I don't have to keep

20  sticking them in so be consistent in the use of Oxford

21  commas and please focus when using the word "and" and "or"

22  separately or when you're using the "and/or" in a consistent

23  way.

24       I was going back and forth trying to figure out

25  what distinction you were making and I couldn't figure it

1    out so maybe it was all what you intended but it wasn't

2    clear to me.  So I'm sure that was quite enough for you --

3              MS. PARK:  *(Laughing.)*

4              THE COURT:  -- for now.

5              So we've had some discussion about how these

6    issues should be dealt with.  Some of them in an in camera

7    filing if you think that's appropriate.  Some of them I

8    think don't need to be in an in camera filing.

9              I don't need the DFEH to repeat anything that I've

10   said.  If you have other concerns but I don't -- I do need

11   to see waivers, releases, language that's going to be on

12   websites, et cetera, because I want to be confident that --

13   I don't know quite how to frame it.

14             But I -- I've been on this Court since 2003.  I've

15   done many, many more class action reviews than I care to

16   count and I almost always find some issue with the notice or

17   the waiver or the release or something.

18             So I can't be confident unless I see those that I

19   know what's going on here.  So all of those should be

20   provided as well.  It sounded like maybe you hadn't even

21   come up with them yet.

22             Maybe you have since you filed this document, but

23   that's not something I'm willing to sign off on without

24   looking at those which are, I think, critical documents to

25   decide whether this is an appropriate consent decree.

```
1            MS. PARK:  I'll submit those, Your Honor.
2            THE COURT:  All right.  And so, as I said, the
3    timing probably especially with the holidays coming up was
4    too short that appeared in the tentative order.
5            I will consider both the DFEH's position and what
6    I've heard from Ms. Baca.  I think it's highly unlikely that
7    I would change my mind and allow the DFEH to intervene
8    especially if I allow them to provide comments.
9            I don't want a tome.  I just -- if there is -- and
10   I don't want to see this back-and-forthing with these two
11   agencies.
12           You apparently have been working well together for
13   a very long time and you will need to be working well
14   together in the future to serve both of your constituencies
15   which are pretty much the same people; and I really don't
16   like to see that.  It's not necessary.  Shouldn't be a fight
17   over who can protect whom best.
18           I know you both are doing what you think is
19   appropriate but seems like not only the defendant but also
20   some of these employees and former employees are going to
21   get caught in the middle here and that's not appropriate.
22           MS. PARK:  We agree.
23           MR. SAGAFI:  Yes, we agree.  This is a very
24   unfortunate and very unusual situation.
25           Your Honor, could we talk about the timing?
```

```
1          THE COURT:  For two minutes because I have a 3:00
2   o'clock hearing so.
3          MR. SAGAFI:  Okay.  Given that you flagged so many
4   issues and used the terms like "inconsistent" and "unclear,"
5   I think I would propose that the parties resubmit the
6   revised consent decree with the briefing justifying that
7   decree and then within 21 days the DFEH can file its
8   objection.
9          And at that point we will know what we're arguing
10  against; and if the revised decree and the explanation
11  resolves our issues, then we -- that affects very much
12  whether we have anything to file and what which would say in
13  that filing.
14         THE COURT:  Ms. Park.
15         MS. PARK:  My understanding from the tentative,
16  Your Honor, is for the DFEH to issue comments, not
17  necessarily objections, and the Court has already indicated
18  that you didn't want to DFEH to rehash what's been addressed
19  and we'll certainly go back with the defendant and address
20  some of these issues so I don't --
21         THE COURT:  Well, I don't think it matters what --
22  they can make an objection and call it a comment and vice
23  versa so I don't think it matters what they call it.
24         But I think if you and Ms. Baca work together,
25  Ms. Park, and whether you want to run some language by the
```

1   DFEH in the meantime, that's totally up to you.

2           But I think that it makes sense to have a document

3   for me to work off of; and if the DFEH by that time should

4   have, I would think very few comments if any because, as you

5   say, I don't want it rehashed, then 21 days to file that is

6   fine.

7           Do you have a comment, Ms. Baca?

8           MS. BACA:  Yes, Your Honor.

9           We would ask that -- there are really two parts to

10  this.  One is we'd like to avoid continued delaying

11  confusion and so hearing the Court and the Court's

12  preference in terms of sequencing, the Court had previously

13  indicated that January 24th the parties were to return.

14          What I would propose to the Court is that rather

15  than a 21-day turnaround and to give the Court sufficient

16  time, we could still look at that just after New Years time

17  frame for the EEOC and Activision to submit whatever

18  clarifications in a document that the Court might need.

19          I don't know that we would -- it seems to me there

20  might be some things that need to be -- commas need to be

21  moved, interlineations, things need to be clarified.  The

22  whole structure isn't changing radically so I'm not sure

23  what it is the DFEH would need 21 days to comment about.

24          But the pieces that we need to get to you; that we

25  need to get to you in camera and we need to be fair to the

```
 1    Court which I'm sure has many other things on its plate so I

 2    just would only ask that we could set something so, yes,

 3    we'll get it to you sooner rather than later and give you

 4    enough time, but I'd rather if it's at all possible and if

 5    it works for the Court's calendar not continue to move this

 6    thing out particularly beyond the 24th as this Court has

 7    already pondered that date.

 8         THE COURT:  Well, I was pondering that date

 9    because I didn't want to make you work over the holidays.

10    So if you want to get it to me sooner, then we can say any

11    comments, objections, whatever you want to call them, are

12    due 14 days after whatever you submit.

13         Then I'll leave the timing of submitting it to the

14    two of you.  I think from my comments -- or I hope from my

15    comments that you have a comfort level that something very

16    close to what you've proposed is going to be what I approve.

17         So looking for or interviewing coordinators or

18    consultants or whatever is not going to be wasted time

19    because that's going to be part of this.

20         So anything that your client wants to start

21    working on that you want to advise them to start working on

22    so that they can hit the ground running with this process,

23    that's totally up to you and fine with me.

24         MS. BACA:  Understood, Your Honor, and we have

25    moved forward.  So would we keep that date of the 10th but
```

1  no later than the 10th.  We'll submit the in camera

2  materials as well as whether proposed revisions to the

3  Court?

4          THE COURT:  That's fine.

5          MS. BACA:  Thank you, Your Honor.

6          MR. SAGAFI:  And, Your Honor -- sorry.  14 days

7  after the 10th would put our brief due on the 24th; is

8  that correct?

9          THE COURT:  Correct.

10          MR. SAGAFI:  So when would you like to have the

11  hearing?  At the beginning of February?

12          THE COURT:  I may have a hearing or I may not.  If

13  I like the way the consent decree looks and I want to sign

14  it, then I'm going to sign it.

15          And if I think there's something in what you've

16  said that the parties should address, I may simply send out

17  something saying the parties should address it but we can

18  use --

19          MS. BACA:  Your Honor, I have not checked with

20  Ms. Park and I can look at her on the screen and perhaps

21  Ms. Markey will shake her head no.  But we can get something

22  in by the -- is the 3rd a Monday?

23          THE COURT:  Yes.

24          MS. BACA:  We can get it in by the 3rd if that is

25  amenable to the EEOC.  I'm looking to see who makes the

1    dirty look at me on the screen.

2          THE COURT:  Well, get it in when you get it in and

3    it will be 14 days from that, that the DFEH has to file

4    something and then --

5          MS. BACA:  We go from there?

6          THE COURT:  Then I'll set a date that's, you know,

7    a week or probably two weeks after that and just try to give

8    this priority so I -- with all the other things that I have

9    to do.

10         MS. BACA:  We appreciate and understand, Your

11   Honor?

12         MR. SAGAFI:  And, Your Honor, just in light of the

13   holidays can we just make sure that we don't -- if they

14   submit something, you know, on Christmas Eve or something

15   like that, we just want to make sure that we have adequate

16   time so could we just say the earliest date that we would

17   have would be January 24th regardless of when they file.

18         THE COURT:  Well, there's no sense of them

19   rushing.  When they're ready --

20         MR. SAGAFI:  Yeah, I don't think so either.

21         THE COURT:  Stop it.

22         MR. SAGAFI:  Sorry.

23         THE COURT:  When they're -- you didn't let me

24   finish because your comment didn't make any sense with what

25   I was going to say.

1    There is no sense in them rushing if you're still

2  going to take to the 24th and they want to move it along.

3  So when they are about to file it, they can communicate with

4  you; and recognizing that I don't like to ruin people's

5  holidays -- because other people don't work as much as I do

6  and so I only ruin my own holidays -- that you can pick a

7  date by which your papers will be due; and then two weeks

8  from that on the Monday will be the hearing date if I decide

9  I need a hearing.

10            MS. BACA:  Thank you, Your Honor.

11            THE COURT:  All right.  Anything else?

12            MS. PARK:  Thank you, Your Honor.

13            THE COURT:  Okay.  Thank you.

14            MR. SAGAFI:  Thank you, Your Honor.

15            (At 3:08 p.m. proceedings were concluded.)

16

17                           -oOo-

18

19

20

21

22

23

24

25

1              CERTIFICATE

2

3         I, PAT CUNEO, CSR 1600, hereby certify that

4    pursuant to Section 753, Title 28, United States Code, the

5    foregoing is a true and correct transcript of the

6    stenographically reported proceedings held in the

7    above-entitled matter and that the transcript page format is

8    in conformance with the regulations of the Judicial

9    Conference of the United States.

10
     Date:  December 13, 2021
11

12

13

14

15                        /s/

16                        PAT CUNEO, OFFICIAL REPORTER
                          CSR NO. 1600
17

18

19

20

21

22

23

24

25

{PLAINTIFF} v.

{DEFENDANT}

{WITNESSNAME}

{DATE}

**MR. SAGAFI: [25]**
3/24 4/1 4/14 5/4 5/24
6/12 7/12 7/21 8/14
8/21 10/7 11/15 13/7
13/11 37/5 37/7 37/11
57/23 58/3 61/6 61/10
62/12 62/20 62/22
63/14
**MS. BACA: [38]** 3/20
15/14 20/3 27/25 28/14
28/16 29/7 29/17 29/22
30/9 35/15 36/10 36/14
36/23 36/25 39/13
39/18 39/24 40/13
40/17 41/5 41/8 47/13
49/25 50/13 51/3 51/6
53/12 54/3 54/12 59/8
60/24 61/5 61/19 61/24
62/5 62/10 63/10
**MS. MARKEY: [2]**
14/8 25/10
**MS. PARK: [42]** 3/8
3/12 3/15 14/2 20/8
21/7 21/17 22/14 22/20
24/11 31/16 33/6 34/13
34/24 35/9 37/13 37/16
37/24 38/6 38/13 41/15
41/19 43/1 43/14 44/1
44/14 45/25 46/2 46/8
46/13 47/7 47/15 48/25
49/20 53/10 53/13
53/21 56/3 57/1 57/22
58/15 63/12
**THE CLERK: [1]** 3/3
**THE COURT: [103]**

---

**$**

**$18 [2]** 36/8 44/8
**$18 million [1]** 36/8
**$450 [3]** 43/6 43/10
43/12

---

**-**

**-oOo [2]** 3/2 63/17

---

**/**

**/s [1]** 64/15

---

**1**

**10 million [1]** 44/11
**10A [1]** 51/9
**10th [3]** 60/25 61/1
61/7
**12C5D [1]** 54/7
**12F [1]** 54/25
**12th [1]** 2/14
**13 [3]** 1/18 3/1 64/10
**14 [3]** 60/12 61/6 62/3
**15 [3]** 9/3 41/16 43/3
**15J [1]** 46/19
**16 [3]** 47/20 49/1 50/8
**1600 [3]** 1/20 64/3
64/16

**17 [1]** 48/9
**1782 [1]** 1/23
**18 [2]** 49/1 50/8
**18 million [3]** 36/2
44/14 46/8
**19 [2]** 30/12 51/13
**1:38 [2]** 1/18 3/1

---

**2**

**20 [1]** 51/16
**20 million [1]** 44/12
**2003 [1]** 56/14
**2016 [2]** 27/23 45/10
**2020 [1]** 3/1
**2021 [2]** 1/18 64/10
**21 [4]** 51/16 58/7 59/5
59/23
**21-7682-DSF-JEM [1]**
1/9
**21-day [1]** 59/15
**213-683-6000 [1]** 2/10
**213-785-3080 [1]** 2/5
**213-894-1782 [1]** 1/23
**22 [1]** 51/15
**2228 [1]** 2/10
**23 [9]** 8/3 8/4 8/7 17/23
20/1 20/5 20/14 20/23
45/19
**24 [2]** 14/12 15/2
**24th [5]** 59/13 60/6
61/7 62/17 63/2
**25 [1]** 52/8
**250 [1]** 43/21
**255 [1]** 2/4
**25th [1]** 2/9
**26 [2]** 52/10 52/19
**27 [1]** 52/24
**28 [1]** 64/4

---

**3**

**300 [1]** 43/21
**300,000 [1]** 38/20
**300k [1]** 38/14
**3080 [1]** 2/5
**320 [1]** 4/11
**350 [1]** 1/22
**39 [1]** 54/25
**3:00 [1]** 58/1
**3:08 [1]** 63/15
**3rd [2]** 61/22 61/24

---

**4**

**415-638-8800 [1]** 2/14
**4311 [1]** 1/22
**450 [1]** 43/21
**4A [1]** 27/10
**4th [1]** 2/4

---

**5**

**515 [1]** 2/9
**5A [1]** 28/24

---

**6**

**60 [1]** 38/11

**6000 [1]** 2/10

---

**7**

**753 [1]** 64/4

---

**8**

**8800 [1]** 2/14
**8A [1]** 33/7

---

**9**

**90012 [2]** 1/23 2/5
**90071-2228 [1]** 2/10
**9A2 [1]** 38/23

---

**A**

**ability [1]** 17/21
**able [4]** 11/11 39/15
45/15 52/5
**about [65]**
**above [3]** 49/6 49/8
64/7
**above-entitled [1]** 64/7
**absent [2]** 8/10 8/11
**absolutely [2]** 24/24
26/6
**accomplish [1]** 26/15
**according [1]** 16/8
**accounts [1]** 16/1
**accusations [1]** 25/23
**acted [1]** 18/13
**action [7]** 12/14 14/16
16/12 27/5 27/11 48/21
56/15
**actions [2]** 8/6 17/8
**active [1]** 31/22
**ACTIVISION [15]** 1/10
3/4 9/13 10/25 13/2
13/3 15/23 16/7 16/8
17/5 18/13 19/14 19/21
26/18 59/17
**Activision's [1]** 9/16
**actual [3]** 12/20 22/6
51/18
**actually [9]** 7/7 7/8 8/5
19/11 19/25 24/22 36/5
52/14 54/5
**addition [2]** 6/16 30/22
**additional [1]** 58/1
**address [15]** 4/13 4/24
7/13 7/22 8/15 8/19
13/9 19/18 24/5 31/4
31/17 43/24 58/19
61/16 61/17
**addressed [4]** 32/5
55/7 55/14 58/18
**adequate [9]** 7/25 8/3
8/6 8/17 20/1 20/9 21/3
21/11 62/15
**adequately [2]** 55/7
55/13
**adjudicated [1]** 15/6
**administrator [2]** 46/9
48/2
**admission [1]** 17/7

**admit [1]** 6/25
**advice [1]** 43/17
**advise [1]** 60/21
**affect [2]** 10/21 12/14
**affects [1]** 58/11
**affirmatively [1]** 47/9
**after [7]** 13/17 28/12
32/20 59/16 60/12 61/7
62/7
**afternoon [6]** 3/11 3/22
3/24 4/1 4/3 14/8
**again [8]** 15/14 27/16
34/13 40/20 44/19
50/13 51/20 51/25
**against [7]** 10/22 15/22
18/8 19/3 19/5 45/11
58/10
**agencies [5]** 17/10
18/16 20/12 26/16
57/11
**agency [11]** 9/23 10/17
18/14 20/18 20/20
21/12 21/25 29/4 29/10
30/24 44/23
**agency's [1]** 17/9
**aggressive [1]** 32/3
**ago [1]** 42/20
**agree [12]** 10/23 14/10
15/16 19/25 20/4 21/19
24/16 25/2 37/16 43/8
57/22 57/23
**agreed [2]** 18/18 18/23
43/15
**agreement [4]** 18/16
19/2 19/4 52/23
**agreements [1]** 20/11
**agrees [1]** 45/20
**Ah [1]** 41/11
**ahead [2]** 7/11 13/10
**AKHAVAN [2]** 2/3 3/9
**akin [1]** 8/3
**al [2]** 1/10 3/5
**all [47]** 3/13 3/16 3/23
5/2 6/20 9/6 10/5 14/25
15/12 17/2 17/10 17/17
18/23 22/12 23/11 27/4
30/2 33/1 34/22 35/2
35/8 35/25 36/8 36/8
36/11 37/2 38/16 39/5
39/6 41/1 41/14 44/6
44/18 45/21 45/23
46/25 46/25 50/12
53/24 54/1 54/11 56/1
56/19 57/2 60/4 62/8
63/11
**allegation [1]** 40/19
**allegations [5]** 6/13
6/15 9/5 22/10 22/12
**allocate [2]** 42/10
48/13
**allocation [3]** 42/2
42/13 47/17
**allotted [1]** 44/16
**allow [8]** 4/7 8/8 10/1

**19/16 23/3 49/2 57/7
57/8
**allowed [3]** 19/22
20/19 31/13
**allows [2]** 19/14 46/5
**alluded [1]** 27/8
**almost [1]** 56/16
**along [2]** 12/17 63/2
**already [9]** 12/10 30/10
30/10 31/25 54/3 54/4
55/10 58/17 60/7
**also [12]** 4/16 4/20
6/22 12/3 27/12 30/3
31/21 32/9 32/9 46/9
46/10 57/19
**alternative [5]** 17/15
52/13 52/16 52/17
52/18
**although [2]** 4/22
23/15
**always [4]** 20/17 21/9
41/1 56/16
**am [6]** 5/5 7/7 7/18
20/23 22/3 22/21
**ambiguity [1]** 33/21
**ambiguous [2]** 27/9
33/11
**amenable [1]** 61/25
**amicus [1]** 4/7
**amount [5]** 31/21 38/8
38/9 45/20 48/3
**amounts [1]** 11/24
28/20
**analyzing [1]** 12/1
**Angeles [5]** 1/17 1/23
2/5 2/10 3/1
**ANNA [2]** 2/2 3/9 20/8
31/16
**Anna Park [3]** 3/9 20/8
31/16
**anna.park [1]** 2/6
**annual [3]** 33/2 33/4
52/19
**anonymous [1]** 45/9
**another [5]** 9/23 23/4
44/8 51/14 52/8
**answer [6]** 10/3 14/5
20/4 27/25 34/14 43/2
**answered [3]** 18/4
23/25 27/21
**answers [2]** 8/13 23/7
**any [34]** 4/8 11/6 12/25
13/3 13/25 18/21 18/21
20/20 21/22 21/23
22/18 24/15 24/15
24/18 24/25 25/3 25/4
25/5 25/16 26/10 26/14
27/4 33/16 33/16 36/7
40/1 43/24 45/1 53/5
54/9 55/2 59/4 60/10
62/24
**anybody [3]** 33/22 41/2
47/1
**anyone [2]** 12/25 35/10

---

{PLAINTIFF} v.

{DEFENDANT}

{WITNESSNAME}

{DATE}

**A**

**anything [11]** 13/6
15/13 19/1 26/12 41/3
47/11 54/24 56/9 58/12
60/20 63/11
**anyway [1]** 48/20
**anywhere [1]** 18/21
**apologies [2]** 24/11
53/23
**apologize [2]** 42/24
54/12
**apparently [2]** 50/21
57/12
**appear [1]** 24/4
**appearances [3]** 2/1
3/6 5/16
**appeared [1]** 57/4
**appearing [1]** 24/10
**appears [1]** 5/7
**applies [2]** 20/2 20/5
**apply [2]** 20/23 21/10
**appreciate [3]** 7/12
42/17 62/10
**appreciates [2]** 4/16
4/20
**appropriate [6]** 4/23
23/5 56/7 56/25 57/19
57/21
**approval [2]** 21/25
31/12
**approve [2]** 23/17
60/16
**approved [6]** 18/4 24/3
30/17 51/21 51/23 52/7
**approving [1]** 7/17
**are [69]**
**area [1]** 42/23
**areas [1]** 7/1
**argue [1]** 20/23
**arguing [1]** 58/9
**argument [2]** 4/16
23/22
**arguments [1]** 4/21
14/13
**arising [1]** 27/4
**around [3]** 6/22 23/12
51/13
**art [1]** 53/22
**as [64]** 4/5 4/25 5/14
5/25 5/25 6/3 8/15
11/20 11/21 12/3 12/4
12/18 14/22 15/2 15/5
15/10 16/13 16/19
16/20 17/6 17/25 18/13
20/14 20/22 23/6 26/24
27/5 27/8 27/9 27/11
27/17 28/18 29/9 30/4
30/7 31/4 31/23 32/17
33/11 33/25 37/21
37/22 41/1 42/17 43/10
44/2 44/2 45/10 45/13
48/9 48/18 48/18 49/6
49/12 49/13 54/1 56/20

**asked [3]** 9/14 9/15
43/16
**asking [5]** 7/13 23/7
25/19 30/5 33/8
**aspect [1]** 34/18
**assert [5]** 40/24 41/1
41/3 41/4 41/6
**asserted [2]** 22/14
22/15
**asserting [1]** 12/4
**asserts [1]** 6/16
**assess [1]** 41/22
**assist [1]** 18/7
**assistance [2]** 18/20
37/10
**assume [5]** 41/3 47/1
51/24 53/3 53/20
**assumed [1]** 22/22
**assumes [1]** 55/9
**at [52]** 2/8 2/8 2/13 5/1
5/5 5/21 9/18 10/10
12/25 13/16 15/22 16/7
18/21 18/21 20/7 22/17
23/5 23/23 25/25 26/2
26/13 26/21 29/20
32/24 36/8 39/5 43/6
43/13 44/18 45/16
47/15 47/20 48/9 48/23
50/11 51/15 52/10
52/19 54/4 54/11 54/12
54/20 54/25 55/16
56/24 58/9 59/16 60/4
61/11 61/20 62/1 63/15
**attached [1]** 24/23
**attempt [1]** 15/9
**attempting [2]** 9/24
20/23
**attempts [1]** 6/7
**attorney [10]** 2/8 2/8
2/13 13/3 33/15 34/2
34/24 35/5 35/18 39/21
**attorney-client [4]** 34/2
34/24 35/5 35/18
**audit [2]** 52/19 52/24
**auditing [1]** 32/3
**authority [7]** 9/12 9/23
11/10 12/15 19/3 20/21
23/23
**authorized [1]** 30/12
**available [6]** 17/13
18/3 18/5 18/22 19/19
40/2
**avoid [1]** 59/10

**B**

**BACA [16]** 2/8 3/20
9/16 13/24 15/13 15/15
23/10 27/21 27/24
31/23 36/3 50/25 53/11

57/2 59/4 60/6 61/2
61/2 63/5 63/5
**back [11]** 7/23 22/20
27/17 29/20 47/8 48/18
48/22 49/10 55/24
57/10 58/19
**background [1]** 44/20
**bad [1]** 50/24
**based [11]** 9/6 18/15
31/21 31/24 32/8 37/17
37/17 38/18 40/9 41/22
44/18
**basically [3]** 8/14 20/1
28/8
**basis [7]** 6/1 7/4 7/17
10/9 17/22 44/4 48/3
**be [143]**
**became [46]** 8/7
**because [46]** 5/16 6/2
6/22 8/7 9/22 10/4 10/8
11/8 12/15 12/16 13/17
14/12 15/25 16/14
16/24 17/6 19/1 19/1
19/19 21/9 22/23 24/13
25/18 27/8 28/1 29/12
31/2 32/18 33/3 33/24
34/9 37/7 39/3 39/10
42/16 44/16 50/25 52/3
52/21 56/12 58/1 59/4
60/9 60/19 62/24 63/5
**become [2]** 25/14
37/21
**becomes [1]** 25/15
**been [15]** 5/19 8/12
11/23 15/21 24/2 25/8
36/13 41/7 42/20 43/16
43/20 55/10 56/14
57/12 58/18
**before [21]** 3/6 5/2
5/15 8/6 8/12 9/9 12/21
17/21 19/2 19/10 20/15
22/7 22/9 24/9 24/18
25/5 25/11 26/25 33/5
42/19 42/23
**beginning [4]** 22/6
27/23 32/4 61/11
**begins [1]** 4/12
**behalf [9]** 3/21 4/2 8/9
11/22 12/13 13/13 14/3
14/9 15/15
**being [10]** 4/20 9/17
9/20 32/19 34/16 35/1
35/3 44/3 47/11 52/6
**believe [8]** 19/19 21/21
25/13 26/5 31/20 40/13
45/13 50/3
**believed [2]** 18/14
18/23
**believes [1]** 4/22
**benefit [4]** 17/12 19/13
19/20 19/20
**best [2]** 21/1 57/17
**better [2]** 32/23 54/10
**between [6]** 18/16 25/7
26/16 26/22 48/13

51/19
**beyond [5]** 38/10 49/6
49/6 50/11 60/6
**bind [1]** 24/15
**bit [3]** 26/17 28/22 33/3
**Black [1]** 15/25
**BLIZZARD [6]** 1/10 3/4
15/25 16/7 17/5 18/13
**Blizzard's [2]** 16/8
19/14
**board [1]** 30/19
**bogus [1]** 39/11
**both [6]** 13/21 23/10
50/17 57/5 57/14 57/18
**brief [6]** 4/7 4/21 8/15
11/21 18/11 61/7
**briefing [10]** 15/19
18/7 19/7 19/16 20/10
20/15 20/25 31/18
34/19 58/6
**briefly [2]** 7/22 21/9
**brings [1]** 10/10
**broader [1]** 44/19
**brought [3]** 10/5 10/16
14/16
**burden [1]** 14/12
**but [121]**
**byproduct [1]** 39/25

**C**

**cadence [1]** 54/4
**calendar [1]** 60/5
**CALIF [1]** 3/1
**CALIFORNIA [11]** 1/2
1/17 1/23 2/5 2/10 2/13
2/14 9/11 12/4 12/7
18/24
**call [2]** 43/11 58/22
58/23 60/11
**called [1]** 6/14
**came [3]** 38/1 38/9
45/10
**camera [2]** 5/5 37/25
56/6 56/8 59/25 61/1
**can [54]** 5/21 5/22 7/11
7/22 13/2 17/15 19/17
20/10 20/20 23/5 26/25
28/5 28/7 29/2 29/3
30/24 31/8 31/18 36/17
36/17 39/17 39/20
39/21 39/21 39/22
39/22 40/8 41/2 41/2
45/1 45/1 45/3 45/5
45/5 45/25 49/10 50/5
52/15 52/16 54/16
54/16 54/23 57/17 58/7
58/22 60/10 60/22
61/17 61/20 61/21
61/24 62/13 63/3 63/6
**can't [5]** 5/6 21/13
41/12 50/22 56/18
**cannot [2]** 12/13 12/14
**caps [3]** 38/14 38/16
**care [2]** 36/7 56/15

**carefully [1]** 29/21
**case [33]** 3/3 9/4 9/13
9/18 9/22 10/2 10/9
10/11 10/12 10/15
12/11 12/21 12/25 13/3
15/7 18/1 20/10 20/15
20/17 20/17 20/20
22/23 23/17 23/23
24/14 38/17 38/18
43/22 45/5 45/6 45/19
45/21 48/19
**Case No. CV
21-7682-DSF [1]** 3/3
**cases [9]** 10/4 10/10
10/14 10/15 23/20
38/17 42/10 43/17
49/17
**cashed [1]** 49/16
**categories [3]** 15/3
33/21 49/21
**category [3]** 44/10 47/3
47/3
**caught [1]** 57/21
**causes [1]** 15/25
**causing [1]** 17/8
**CENTRAL [2]** 1/2 24/8
**centralized [1]** 30/11
**certain [5]** 24/2 31/8
34/15 50/18 50/18
**certainly [9]** 13/4 21/3
23/18 24/24 25/1 28/10
32/6 48/22 58/19
**CERTIFICATE [1]** 64/1
**certify [1]** 64/3
**cetera [7]** 5/17 12/1
13/19 30/6 55/6 55/13
56/12
**challenge [3]** 6/6 6/7
8/22
**challenging [2]** 6/2 6/3
**chance [1]** 25/12
**change [2]** 27/18 57/7
**changes [1]** 30/10
**changing [2]** 51/12
59/22
**characterized [1]**
14/25
**charge [4]** 44/21 44/22
45/3 45/17
**charities [2]** 51/4 51/7
**chart [1]** 50/5
**check [2]** 3/13 47/5
**checked [1]** 61/19
**checks [5]** 47/21 48/8
49/13 49/14 49/17
**Christmas [1]** 62/14
**circuit [4]** 8/2 24/6 24/7
24/16
**circumstances [3]**
23/19 37/19 45/7
**cite [1]** 23/20
**claim [15]** 9/15 14/16
22/15 39/6 39/11 39/12
39/17 40/24 41/1 41/3

## C

**claim... [5]** 41/4 41/6
41/25 45/1 45/15
**claimant [5]** 28/12
40/23 45/1 47/5 54/21
**claimants [14]** 14/21
15/10 27/22 36/5 37/18
38/25 42/3 42/4 43/18
44/15 45/13 46/20
46/21 54/10
**claimants' [1]** 15/11
**claiming [2]** 34/11
38/13
**claims [45]** 6/3 6/8
6/14 6/16 8/9 8/25 9/1
9/3 9/6 9/7 9/10 9/11
9/18 9/24 10/11 10/12
10/16 11/7 11/23 11/24
12/8 12/14 14/24 18/15
19/8 27/4 27/14 35/2
39/10 40/4 40/8 40/10
41/21 42/8 44/6 44/16
44/17 44/24 45/3 45/8
46/9 48/2 50/2 50/25
51/1
**clarification [2]** 34/20
34/21
**clarifications [1]** 59/18
**clarified [5]** 27/6 33/24
35/14 48/24 59/21
**clarify [6]** 11/6 26/20
29/1 41/15 49/11 51/8
**class [4]** 8/6 17/22
48/21 56/15
**clause [1]** 20/16
**clear [18]** 6/2 11/20
22/2 22/3 22/6 24/24
26/2 26/6 26/13 27/19
32/25 33/14 33/18 34/1
35/8 35/15 37/21 56/2
**clearer [1]** 28/23
**client [5]** 34/2 34/24
35/5 35/18 60/20
**climate [3]** 53/8 53/8
53/10
**clock [1]** 3/14
**close [1]** 60/16
**CM [1]** 1/20
**CMC [2]** 9/13 11/1
**Code [1]** 64/4
**codified [1]** 8/7
**collateral [1]** 18/8
**colleagues [3]** 23/11
23/21 42/21
**collecting [1]** 11/24
**combined [1]** 35/16
**come [9]** 29/20 36/2
42/11 43/10 43/19
49/17 50/2 54/1 56/21
**comes [1]** 12/9
**comfort [2]** 32/24
60/15
**comfortable [3]** 32/19

40/25 52/1
**coming [3]** 38/21 44/3
57/3
**comma [1]** 55/5
**commas [4]** 55/2 55/19
55/21 59/20
**comment [6]** 21/13
23/9 58/22 59/7 59/23
62/24
**comments [10]** 6/19
7/9 21/15 36/3 57/8
58/16 59/4 60/11 60/14
60/15
**commission [5]** 1/6
2/2 3/4 24/1 44/22
**commission**
**suggested [1]** 24/1
**Committee [1]** 30/20
**commonality [2]** 17/24
17/25
**communicate [1]** 63/3
**communicated [1]**
42/3
**companies [1]** 45/12
**company [10]** 15/24
16/25 19/21 30/21
31/22 31/24 34/17
35/17 49/10 54/3
**compensatory [1]**
38/15
**complain [1]** 42/7
**complainant [1]** 54/8
**complaint [13]** 6/17
6/18 9/1 9/1 16/16
16/25 22/10 22/13
22/13 22/14 42/5 45/9
54/8
**complaints [2]** 45/11
53/16
**completely [1]** 38/22
**compliance [4]** 29/2
29/9 32/14 33/7
**comply [3]** 32/16 33/10
33/13
**complying [1]** 17/22
**compromise [3]** 9/24
10/11 11/6
**concern [6]** 23/8 26/14
27/20 29/10 35/20 54/7
**concerned [2]** 28/25
49/19
**concerns [6]** 6/19
13/17 24/22 31/2 34/15
56/10
**concluded [1]** 63/15
**concrete [1]** 9/21
**conduct [1]** 16/5
**confer [3]** 22/8 25/21
26/1
**Conference [1]** 64/9
**conferred [1]** 9/8
**confident [2]** 56/12
56/18
**confidential [2]** 39/7

54/15
**Confidentiality [1]**
54/8
**confidentially [1]**
39/15
**confirm [1]** 12/13
**conflating [1]** 14/14
**conformance [1]** 64/8
**confusing [1]** 38/24
**confusion [2]** 17/8
59/11
**Congress [1]** 8/25
**consensual [1]** 16/20
**consent [19]** 6/13 9/2
9/14 10/24 11/6 12/13
13/21 14/15 19/11
19/22 21/2 23/12 24/20
30/16 30/16 54/13
56/25 58/6 61/13
**consider [2]** 37/25
57/5
**considered [1]** 5/19
**considering [2]** 39/9
43/21
**consistency [1]** 55/15
**consistent [6]** 23/16
23/19 27/10 55/18
55/20 55/22
**consists [1]** 28/19
**constantly [1]** 28/2
**constituencies [1]**
57/14
**construct [1]** 53/17
**constructed [1]** 53/13
**constructively [1]**
22/23
**consult [1]** 43/6
**consultant [3]** 30/22
51/21 53/4
**consultant's [1]** 52/11
**consultants [1]** 60/18
**consulted [1]** 47/18
**contact [1]** 39/22
**contemplate [1]** 9/14
**contemplated [2]** 47/1
50/4
**contemplating [1]** 35/1
**contention [1]** 25/16
**continue [2]** 30/25
60/5
**continued [1]** 10/24
10/25
**contrary [2]** 10/24
10/25
**contribution [2]** 46/11
46/12
**contributions [1]**
46/10
**coordinator [6]** 30/21
51/22 51/22 52/6 53/4
53/5
**coordinators [1]** 60/17
**copies [2]** 4/10 30/5
**correct [10]** 11/3 28/13
28/14 37/7 47/13 55/1

55/16 61/8 61/9 64/5
**correctly [3]** 7/19
22/17 28/8
**could [21]** 10/21 11/6
11/6 12/12 18/9 18/11
33/4 35/25 37/1 37/1
39/7 40/24 41/1 41/4
41/6 41/8 47/17 57/25
59/16 60/2 62/16
**couldn't [1]** 55/25
**counsel [3]** 2/1 5/23
35/17
**count [1]** 56/16
**country [1]** 23/12
**couple [2]** 23/20 53/7
**course [3]** 4/22 21/21
40/1
**court [72]**
**Court's [9]** 9/25 15/16
21/19 21/24 32/15
35/19 44/20 59/11 60/5
**Courthouse [1]** 1/21
**courts [4]** 8/5 12/5
21/9 32/12
**cover [1]** 6/8
**covers [1]** 45/14
**craft [1]** 17/3
**created [1]** 30/19
**critical [1]** 56/24
**CRR [1]** 1/20
**CRR-CM [1]** 1/20
**crux [1]** 11/8
**CSR [3]** 1/20 63/3
64/16
**cuff [1]** 28/4
**CUNEO [3]** 1/20 64/3
64/16
**currently [1]** 15/7
**CV [2]** 1/9 3/3
**CWA [5]** 4/4 24/23
24/25 25/3 38/7
**cy [13]** 28/17 28/19
28/20 28/22 38/25
46/23 47/11 47/19
47/24 48/1 48/13 50/20
51/5
**cy-près [13]** 28/17
28/19 28/20 28/22
38/25 46/23 47/11
47/19 47/24 48/1 48/13
50/20 51/5

## D

**DALE [1]** 1/4
**damage [3]** 15/25 18/8
42/12
**damages [1]** 42/1
**data [1]** 12/1
**date [11]** 27/23 28/12
29/25 60/7 60/8 60/25
62/6 62/16 63/7 63/8
64/10
**dates [2]** 5/18 5/22
**daunting [1]** 18/1

**DAVIS [4]** 2/8 3/21
15/13 15/15
**day [3]** 16/24 33/4
59/15
**days [8]** 25/11 31/9
58/7 59/5 59/23 60/12
61/6 62/3
**deal [3]** 17/7 18/3
25/21
**dealing [1]** 25/23
**dealt [2]** 54/23 56/6
**December [3]** 1/18 3/1
64/10
**decide [7]** 23/2 44/6
44/10 44/25 47/1 56/25
63/8
**decided [1]** 24/21
**decides [2]** 47/5 50/20
**deciding [1]** 48/13
**decision [2]** 7/5 14/23
**decisions [1]** 44/3
**decree [36]** 4/17 4/18
6/2 6/13 7/18 9/2 9/14
10/21 10/24 11/6 12/13
13/21 14/5 14/15 19/22
21/3 22/23 23/16 24/20
26/7 26/25 27/7 27/9
27/18 30/16 32/7 46/5
49/7 50/11 51/12 54/13
56/25 58/6 58/7 58/10
61/13
**decrees [4]** 19/11
23/12 24/2 43/20
**deemed [1]** 46/21
**defendant [9]** 3/21 7/4
33/10 33/13 34/14 43/7
49/4 57/19 58/19
**defendants [13]** 1/11
2/7 10/22 15/15 33/8
33/12 37/16 46/8 50/10
51/14 52/10 54/17 55/8
**defense [11]** 26/4 29/5
33/15 34/11 35/6 45/20
48/19 48/20 48/22
50/20 50/23
**defer [3]** 20/3 53/12
54/18
**deference [7]** 20/11
21/12 21/14 27/1 32/13
36/21 37/23
**deferred [1]** 53/16
**deficiencies [1]** 19/8
**deficient [1]** 19/1
**define [2]** 49/1 49/6
**definition [4]** 28/17
28/19 48/17 53/6
**delay [1]** 17/6
**delaying [1]** 59/10
**deleted [1]** 51/16
**demonstrated [1]** 19/9
**denied [2]** 21/21 25/13
**deny [1]** 4/6
**denying [1]** 14/11
**depending [2]** 42/11

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**D**

depending... [1] 45/21
derivative [1] 11/18
describes [1] 6/2
description [1] 52/25
destruction [1] 6/4
determination [1] 42/2
determine [3] 8/8
40/22 42/14
determined [1] 20/18
develop [1] 41/19
developed [1] 40/9
DFEH [54] 4/2 4/5 4/7
4/13 4/16 4/20 4/22
9/21 10/9 10/10 10/14
11/11 11/21 12/3 12/7
12/10 12/12 14/22 15/1
15/17 15/18 15/21 16/3
16/13 16/15 17/6 17/8
17/14 17/15 17/24
18/25 19/2 19/5 19/6
22/5 22/7 23/3 25/7
25/10 25/13 26/4 27/2
45/4 45/5 51/10 56/9
57/7 58/7 58/16 58/18
59/1 59/3 59/23 62/3
DFEH's [9] 6/1 10/21
11/9 14/11 15/11 16/1
24/18 26/14 57/5
did [11] 4/4 4/13 8/19
16/10 16/14 16/22
21/16 23/20 33/1 36/2
53/11
didn't [14] 5/18 16/25
17/4 22/17 24/4 42/7
42/7 45/16 46/2 46/16
58/18 60/9 62/23 62/24
different [9] 10/8 37/3
45/7 48/7 48/12 49/21
49/23 50/1 55/3
direct [1] 32/23
directly [1] 11/3
dirty [1] 62/1
disagree [2] 25/15
36/11
disburse [1] 44/9
discharged [1] 22/24
disciplinary [2] 52/25
53/1
disclose [1] 36/17
disconnect [1] 26/3
discretion [5] 20/18
40/9 44/25 46/4 50/18
discrimination [4] 28/9
34/8 55/6 55/13
discuss [1] 24/19
discusses [1] 6/13
discussion [3] 13/16
31/19 56/5
dismissal [1] 9/14
dispute [2] 25/7 26/16
distance [1] 5/10
distinction [1] 12/22

12/22 55/25
distinguished [1]
48/11
distorted [2] 16/4
16/17
distribute [1] 45/25
distributed [5] 38/24
44/7 45/21 46/22 47/17
distribution [3] 42/13
44/15 46/6
district [5] 1/1 1/2 24/5
24/8 24/15
diversity [7] 39/2 48/1
48/14 49/1 49/5 50/9
50/10
DIVISION [2] 1/3 15/25
divvy [1] 46/25
do [44] 3/6 5/2 5/15
5/17 9/12 12/15 14/17
16/23 17/4 18/23 20/4
21/4 21/18 23/4 23/8
26/25 28/3 29/6 30/25
32/23 39/20 39/20
39/22 39/22 40/15
41/25 41/25 42/3 43/16
44/13 45/6 45/6 46/18
49/9 52/5 52/5 52/14
52/17 53/5 55/18 56/10
59/7 62/9 63/5
document [4] 34/14
56/22 59/2 59/18
documented [1] 27/8
documents [9] 6/20
6/21 11/25 21/24 25/17
30/5 52/9 55/16 56/24
does [10] 4/8 9/14
14/22 18/2 20/23 27/6
27/24 31/11 47/6 49/1
doesn't [16] 10/2 23/16
24/16 26/11 27/9 31/9
34/5 41/3 46/14 47/11
47/22 52/13 52/14
52/17 53/5 54/21
doing [13] 7/7 7/8 8/10
26/5 26/12 26/12 30/13
30/25 31/1 32/21 40/25
48/20 57/18
dollars [3] 44/11 47/3
47/5
don't [80]
done [6] 4/19 18/8 32/8
49/13 50/17 56/15
down [1] 29/7
drafting [1] 29/8
DSF [2] 1/9 3/3
due [4] 23/11 60/12
61/7 63/7
during [3] 33/16 40/23
52/20
duty [1] 8/11

**E**

each [4] 4/12 15/24
32/18 38/17

earlier [4] 5/19 14/6
47/16 47/17
earliest [1] 62/16
East [1] 2/4
easy [1] 51/5
EEO [3] 30/15 30/17
30/20
EEOC [61] 3/9 6/16 7/4
8/23 9/7 9/8 10/16
10/24 11/9 13/1 14/3
15/22 17/4 17/21 18/3
18/9 19/3 19/9 19/11
20/4 20/9 20/12 20/24
21/12 25/8 26/4 26/11
26/14 29/2 30/5 30/7
30/22 31/8 31/14 31/17
32/23 33/7 33/8 36/5
36/11 37/13 39/11
39/13 39/14 39/24 40/8
40/22 40/25 43/5 44/25
45/4 48/12 50/18 50/21
51/21 52/1 54/15 54/16
54/19 59/17 61/25
EEOC's [4] 12/13
14/15 19/20 27/11
eeoc.gov [3] 2/6 2/6
2/6
effective [1] 32/6
effort [1] 13/12
efforts [2] 49/5 50/11
either [3] 13/21 27/7
62/20
elements [1] 4/24
ELENA [3] 2/8 3/20
15/15
Elena Baca [2] 3/20
15/15
elenabaca [1] 2/11
eligibility [1] 27/23
eligible [10] 17/11
17/13 36/5 38/25 41/24
46/20 46/21 47/2 47/5
54/10
else [5] 5/8 27/7 33/2
36/22 63/11
employed [1] 40/23
employee [6] 13/2 16/5
16/19 17/8 28/12 33/9
employees [18] 15/23
16/7 17/5 17/11 17/13
17/18 18/24 19/14
19/21 27/13 27/13
27/14 28/11 46/14
53/25 54/1 57/20 57/20
employees' [1] 46/12
employer [7] 16/4
18/13 18/21 29/10
29/13 30/9 49/9
employers' [1] 46/11
employment [6] 1/6
2/2 3/4 10/3 10/4 53/22
empowered [1] 12/7
34/17 35/10
end [6] 5/1 5/21 23/5

32/4 44/11 51/16
ends [1] 4/12
energy [1] 32/15
enforce [3] 13/13 29/2
29/13
enforced [1] 29/9
enforcing [1] 15/6
engage [1] 16/5
enhanced [1] 18/19
enough [5] 28/7 31/11
37/22 56/2 60/4
entered [3] 19/22
20/11 39/18
entire [1] 24/7
entirely [2] 34/1 55/3
entirety [1] 9/17
entitled [3] 38/14 38/15
64/7
entrusted [1] 8/25
EQUAL [3] 1/6 2/2 3/3
equity [1] 50/10
especially [2] 57/3
57/8
established [1] 39/12
esteemed [1] 23/20
estimate [3] 38/2 38/4
38/15
et [9] 1/10 3/5 5/17
12/1 13/19 30/6 55/6
55/13 56/12
et cetera [6] 5/17 12/1
30/6 55/6 55/13 56/12
evaluate [1] 40/10
evaluated [2] 38/18
42/21
Eve [1] 62/14
even [12] 5/20 17/17
24/18 24/25 28/8 38/23
40/5 41/24 45/1 46/15
53/2 56/20
event [2] 22/19 24/18
ever [4] 16/9 19/2 29/9
51/17
every [4] 10/2 16/22
18/8 28/12
everyone [3] 19/14
38/13 38/15
everything [1] 30/24
evidence [3] 6/4 6/9
11/25
exactly [5] 7/1 48/10
51/10
exaggerated [1] 16/2
example [4] 16/18
41/24 45/2 47/16
exceeds [1] 28/3
excess [6] 47/25 48/10
49/8 49/22 50/14 54/5
exclusively [1] 50/10
exercise [1] 15/21
exercising [1] 19/3
exhibits [3] 4/8 4/9
4/12
exist [1] 51/7

expanded [1] 30/11
expense [1] 15/23
experience [3] 13/4
30/1 40/4
experienced [1] 40/24
expertise [1] 7/1
expiration [1] 29/25
expired [1] 52/23
expires [2] 31/3 33/5
expiring [1] 30/1
explanation [4] 48/16
48/18 49/24 58/10
explanations [1] 49/23
express [1] 23/8
extend [1] 30/7
extension [2] 31/14
32/7
extensive [2] 32/2
32/15
extent [1] 21/18
external [1] 32/9
extreme [1] 16/11
extremely [1] 10/17

**F**

faces [2] 5/6 5/7
facilitate [1] 30/23
facing [1] 17/7
fact [5] 4/23 20/23
23/15 38/16 43/19
facts [2] 37/18 37/20
factual [3] 9/6 27/4
38/18
failing [1] 47/8
fair [9] 7/24 8/2 8/5
8/16 19/25 20/9 21/3
21/11 59/25
faith [3] 52/12 52/16
52/17
fall [1] 33/4
falling [1] 15/2
falls [1] 47/2
false [2] 16/1 17/15
far [3] 15/1 17/18 44/2
favor [1] 55/18
favorable [1] 11/8
February [1] 61/11
federal [8] 9/1 9/1
10/11 10/15 17/9 21/12
22/1 29/14
federalism [1] 11/11
feedback [5] 32/8
53/18 55/4 55/9 55/11
feel [1] 26/17
FEHA [2] 9/10 15/6
FELICIA [3] 2/8 3/21
15/15
Felicia Davis [2] 3/21
15/15
feliciadavis [1] 2/11
female [2] 27/13 28/11
females [1] 28/14
few [4] 36/4 36/4 51/1
59/4

**F**

**FICA [1]** 46/10
**fight [2]** 16/14 57/16
**fighting [2]** 19/3 26/22
**figure [8]** 23/5 25/21 26/8 27/1 34/3 37/9 55/24 55/25
**figured [1]** 38/19
**figuring [1]** 28/5
**file [14]** 4/7 4/21 16/15 22/9 39/21 45/3 45/4 45/17 58/7 58/12 59/5 62/3 62/17 63/3
**filed [7]** 4/4 4/10 16/24 25/8 25/10 44/20 56/22
**filing [8]** 9/9 25/25 36/21 37/1 37/6 56/7 56/8 58/13
**filings [1]** 17/14
**find [3]** 8/1 37/1 56/16
**finding [1]** 15/16
**fine [4]** 44/12 59/6 60/23 61/4
**finish [1]** 62/24
**first [11]** 1/21 1/22 6/6 6/14 15/21 19/25 32/6 41/1 45/22 48/14 53/12
**FISCHER [2]** 1/4 5/24
**five [1]** 6/8
**flag [1]** 48/22
**flagged [1]** 58/3
**flex [1]** 15/22
**flexible [1]** 8/8
**Floor [3]** 2/4 2/9 2/14
**flow [2]** 42/1 50/5
**Flower [1]** 2/9
**focus [3]** 4/16 5/18 55/21
**fold [1]** 11/21
**follow [4]** 40/1 52/10 52/12 52/15
**followup [1]** 41/23
**foregoing [1]** 64/5
**forgotten [1]** 42/20
**format [1]** 64/7
**former [1]** 57/20
**forth [3]** 4/21 8/2 55/24
**forthing [1]** 57/10
**forum [1]** 15/7
**forward [11]** 14/10 15/1 15/9 17/11 19/15 19/22 37/2 42/11 43/19 49/25 60/25
**forwarded [1]** 42/15
**found [1]** 16/17
**fraction [1]** 16/9
**frame [3]** 45/14 56/13 59/17
**framework [2]** 7/17 8/8
**framing [1]** 13/11
**Francisco [1]** 2/14
**frankly [2]** 26/16 46/15
**freely [1]** 6/25

**fulfilling [1]** 8/11
**full [1]** 20/19
**fund [16]** 18/22 28/17 28/19 28/20 38/24 38/25 39/2 44/9 46/16 46/23 47/19 48/1 48/13 48/15 49/2 50/9
**funds [5]** 42/10 47/25 48/3 48/10 50/21
**further [11]** 13/16 13/25 16/19 16/19 25/5 31/19 32/1 34/19 36/19 43/24 49/11
**FUTA [1]** 46/10
**future [4]** 24/12 29/1 39/7 57/14

**G**

**gender [3]** 28/8 55/6 55/12
**get [26]** 7/22 18/2 27/19 30/2 32/17 32/20 37/9 38/5 39/19 43/11 43/18 44/5 44/10 49/14 52/22 53/15 53/17 57/21 59/24 59/25 60/3 60/10 61/21 61/24 62/2 62/2
**gets [3]** 29/13 38/23 47/3
**getting [1]** 26/18
**give [8]** 21/14 32/23 37/23 45/16 45/17 59/15 60/3 62/7
**given [5]** 4/20 20/11 32/13 43/17 58/3
**Gives [1]** 55/3
**giving [1]** 27/1
**gmail.com [1]** 1/24
**go [24]** 4/11 7/11 13/10 23/1 25/5 27/17 37/21 39/2 39/17 39/21 39/21 39/22 40/1 41/20 42/17 46/6 47/20 48/18 50/21 50/23 53/14 54/16 58/19 62/5
**go and [1]** 39/17
**goes [3]** 11/8 47/24 48/1
**going [57]** 6/20 6/21 11/2 13/18 19/5 23/2 23/5 23/17 23/18 23/24 23/25 24/24 26/4 28/18 28/25 29/20 30/1 31/4 31/5 32/22 33/19 34/8 35/5 36/5 36/7 38/23 39/6 40/6 40/7 40/19 43/10 43/11 44/4 44/5 44/6 44/10 44/13 46/15 46/25 48/22 50/2 52/21 52/22 53/5 53/15 53/20 55/15 55/24 56/11 56/19 57/20 60/16 60/18 60/19 61/14

**62/25 63/2**

**GOLDEN [1]** 2/12
**gone [2]** 17/18 23/9
**good [14]** 3/8 3/11 3/20 3/22 3/24 4/1 4/3 14/8 39/3 50/17 50/23 52/12 52/16 52/17
**got [2]** 49/15 49/18
**government [3]** 9/23 17/10 29/14
**governmental [1]** 20/12
**grammatically [1]** 55/1
**granted [2]** 12/19 53/23
**great [3]** 20/11 21/12 22/5
**greater [1]** 18/22
**grinning [1]** 29/12
**ground [1]** 60/22
**guess [7]** 6/21 21/13 39/2 44/8 50/15 53/19 53/22
**guessed [1]** 21/25
**guessing [1]** 13/22

**H**

**had [22]** 3/13 3/23 5/13 5/19 5/19 15/19 24/20 25/11 29/20 30/9 33/3 34/15 35/20 38/9 38/20 42/19 42/23 43/7 51/1 52/14 56/5 59/12
**hadn't [1]** 56/20
**handful [1]** 10/10
**handled [1]** 53/16
**handles [1]** 39/14
**happen [3]** 34/10 41/19 52/20
**happened [2]** 52/13 54/22
**happening [1]** 35/24
**happens [1]** 39/10 47/23 50/13
**happy [11]** 7/13 14/5 20/21 20/25 21/4 21/22 21/24 34/19 34/21 37/24 41/15
**harassed [3]** 22/23 34/11 35/3
**harassment [14]** 16/6 16/10 16/21 18/1 18/15 18/21 22/10 28/9 28/9 34/8 35/7 38/17 42/6 55/6
**harm [3]** 40/24 41/12 41/13
**harmed [1]** 41/7
**harp [1]** 38/7
**has [43]** 8/2 9/21 10/14 10/24 11/22 12/4 12/7 12/10 12/15 15/1 15/18 15/21 16/9 17/21 17/23 18/18 19/6 19/9 19/17

**21/22 22/1 22/15 24/25 30/4 30/10 30/19 31/8 31/24 38/18 46/9 49/17 49/23 50/18 50/19 50/21 51/21 54/3 54/22 55/10 58/17 60/1 60/6 62/3**
**HASTINGS [1]** 2/7
**hate [1]** 28/3
**have [117]**
**haven't [6]** 8/12 25/11 39/4 39/12 42/24 44/20
**having [3]** 5/20 14/19 26/25
**he [1]** 47/5
**he's [1]** 14/14
**head [2]** 29/7 61/21
**hear [1]** 48/14
**heard [3]** 15/19 50/24 57/6
**hearing [14]** 4/17 5/15 5/20 7/16 20/16 24/19 24/21 25/11 58/2 59/11 61/11 61/12 63/8 63/9
**heightened [1]** 20/22
**held [1]** 64/6
**help [3]** 30/23 46/14 53/9
**helpful [6]** 5/17 21/8 31/18 33/5 50/7 50/12
**helps [1]** 4/15
**her [3]** 54/22 61/20 61/21
**here [26]** 4/23 7/4 8/12 10/2 13/18 18/5 18/25 19/19 21/10 22/1 22/9 23/5 23/11 25/9 26/3 31/6 32/12 38/23 40/19 43/2 45/9 47/1 48/14 50/20 56/19 57/21
**here's [1]** 36/22
**hereby [1]** 64/3
**highly [1]** 57/6
**him [1]** 54/22
**hint [1]** 53/2
**hired [1]** 30/15
**hit [2]** 3/7 60/22
**holidays [5]** 57/3 60/9 62/13 63/5 63/6
**Honor [57]** 3/8 3/20 4/1 4/14 7/13 8/21 13/7 14/2 14/8 15/14 15/14 15/18 19/23 20/3 20/8 21/18 24/11 25/10 28/4 29/8 29/18 29/22 30/9 31/16 35/15 36/10 36/16 36/23 37/5 37/7 37/11 37/13 40/13 41/8 42/4 43/1 44/1 47/13 49/1 49/25 50/6 50/13 54/3 54/12 57/1 57/25 58/16 59/8 60/24 61/5 61/6 61/19 62/11 62/12 63/10 63/12 63/14

**HONORABLE [1]** 1/4
**hope [2]** 18/4 60/14
**host [1]** 8/10
**hour [4]** 27/16 43/6 43/9 43/12
**housekeeping [1]** 4/25
**how [25]** 5/10 7/1 11/7 20/18 22/21 23/19 25/21 27/22 28/5 31/5 32/21 33/19 34/7 35/21 40/6 42/9 42/11 44/6 48/10 48/13 50/6 53/16 54/22 56/5 56/13
**However [2]** 20/9 44/16
**Human [1]** 30/11
**hundreds [1]** 11/25
**hurts [1]** 17/5

**I**

**I'd [3]** 4/24 14/4 60/4
**I'll [12]** 12/20 20/3 23/2 34/14 36/11 37/9 38/3 53/12 54/13 57/1 60/13 62/6
**I'm [59]** 4/6 5/8 5/9 5/21 6/21 7/5 7/6 7/8 7/13 13/8 13/22 21/7 21/10 21/16 23/2 23/7 23/14 23/17 23/18 23/23 23/24 24/17 24/24 25/2 25/16 27/1 28/10 28/25 29/11 29/12 29/12 29/19 32/22 36/15 37/1 37/4 37/13 37/14 39/2 39/15 40/25 43/7 43/8 43/10 46/2 46/15 47/21 48/10 49/19 50/7 50/16 54/12 54/14 56/2 56/23 59/22 60/1 61/14 61/25
**I've [7]** 23/8 24/14 42/19 56/9 56/14 56/14 57/6
**i-n [1]** 51/15
**idea [7]** 29/8 35/18 38/11 38/20 40/7 51/6 53/8
**identified [1]** 19/7
**if [104]**
**ignoring [1]** 5/9
**illustration [1]** 12/6
**imagine [1]** 29/13
**immediate [1]** 19/13
**immediately [1]** 17/13
**immense [1]** 13/24
**impact [2]** 39/5 53/18
**impediments [1]** 41/10
**impertinent [1]** 16/16
**implementation [2]** 31/25 32/1
**implicated [1]** 27/5
**implication [1]** 9/17
**important [2]** 16/11

**I**

important... [1] 45/15
importantly [1] 29/24
impossible [1] 18/1
impression [1] 12/21
improper [1] 19/1
inaccurate [1] 16/15
inadequacy [1] 12/18
INC [2] 1/10 3/5
incidents [1] 42/5
inclined [1] 4/6
inclusion [7] 39/2 48/1
48/15 49/2 49/5 50/9
50/10
inconsistent [2] 48/23
58/4
indeed [1] 35/18
independent [2] 32/10
45/14
independently [1] 45/4
indicate [1] 55/11
indicated [2] 58/17
59/13
indicates [3] 20/15
55/5 55/12
individual [5] 6/3 11/19
11/22 14/21 44/24
individual's [1] 14/23
individuals [11] 8/11
12/2 12/10 12/24 13/13
14/24 34/17 44/20
44/23 45/2 45/8
inevitably [1] 31/9
information [11] 25/3
25/6 26/24 33/17 33/23
34/3 34/10 35/5 36/8
40/4 44/2
initial [1] 6/1
initiated [1] 44/23
input [5] 50/19 50/21
50/24 51/1 51/3
inquiring [1] 40/18
insight [1] 18/9
instead [1] 17/19
intended [6] 5/14 6/22
35/9 35/11 35/23 56/1
intent [1] 43/25
interest [16] 9/22 11/9
11/17 11/18 11/19
11/21 12/9 12/17 14/9
14/23 15/4 15/5 15/6
15/8 15/9 20/13
interesting [2] 10/19
50/16
interests [1] 15/1
interference [1] 13/12
interfering [1] 12/23
interlineations [1]
59/21
internal [3] 32/9 51/22
53/4
internally [1] 30/16
interpret [1] 33/19

33/20
interpreted [1] 22/21
interrupt [1] 21/16
interrupted [1] 7/11
intersect [1] 35/22
intervene [12] 1/19
10/15 11/12 14/4 14/11
14/19 21/20 23/3 25/14
45/5 45/5 57/7
INTERVENOR [1] 2/12
intervention [10] 4/22
7/14 7/23 8/20 10/1
10/2 10/9 12/18 13/25
15/2
interview [4] 33/9
33/18 34/17 35/6
interviewed [1] 35/1
interviewing [1] 60/17
interviews [3] 12/1
34/6 41/23
introduction [1] 27/3
invented [1] 8/5
investigating [1] 11/23
investigation [5] 26/23
27/12 37/17 45/11 54/9
investigations [1]
30/12
involve [1] 16/10
involved [4] 16/19
18/18 26/18 29/1
involving [2] 20/16
20/20
is [205]
isn't [4] 45/19 45/21
48/21 59/22
issue [19] 4/13 6/4
6/23 11/15 22/2 22/3
22/5 22/24 23/4 25/14
29/5 33/3 33/15 35/20
49/12 51/25 52/19
56/16 58/16
issued [4] 3/23 16/25
24/14 53/10
issues [16] 5/25 6/5
6/13 6/15 9/5 11/10
19/10 27/17 28/9 32/5
35/12 35/21 56/6 58/4
58/11 58/20
it [183]
it's [66]
its [29] 4/21 6/16 8/23
9/1 9/17 11/9 12/13
14/11 15/2 15/4 15/4
15/5 15/22 15/23 16/2
16/3 16/14 17/4 17/6
17/14 19/3 19/5 24/23
30/11 40/9 51/14 54/19
58/7 60/1
itself [5] 19/21 27/7
30/9 30/19 53/18

**J**

Jahan [1] 4/2
Jahan Sagafi [1] 4/2

January [2] 59/13
62/17
January 24th [2] 59/13
62/17
JEM [1] 1/1
job [5] 8/10 17/4 50/17
52/5 52/5
JOHAN [1] 2/13
jsagafi [1] 2/15
judge [7] 1/4 5/24 9/15
24/9 24/16 26/7 32/12
Judicial [1] 64/8
jump [1] 6/22
jurisdiction [2] 9/24
18/15
jurisdictional [4] 8/24
11/10 16/4 16/14
just [66]
justify [3] 4/18 14/19
15/2
justifying [1] 58/6

**K**

keep [2] 55/19 60/25
kill [1] 17/7
kind [5] 23/22 34/6
38/8 41/13 42/11
kinds [1] 42/9
know [55] 5/9 7/1 7/6
8/12 10/6 10/14 10/15
13/20 13/21 16/13
16/19 16/23 17/17
17/25 21/10 21/14
26/20 29/6 31/5 32/22
33/19 33/25 34/16
34/25 36/22 37/22 38/2
38/9 38/16 39/14 39/25
40/11 40/15 40/18
40/18 41/11 42/22
43/13 44/11 44/13
46/17 47/24 48/21
50/22 53/1 53/20 54/18
54/24 56/13 56/19
57/18 58/9 59/19 62/6
62/14
knowledge [2] 38/10
40/11
knows [1] 43/5

**L**

LA [1] 43/21
laced [1] 16/16
lane [1] 8/24
language [11] 14/17
14/18 27/3 27/19 31/6
31/15 34/21 40/20
51/12 56/11 58/25
large [1] 28/7
last [4] 9/13 10/25
21/17 55/1
late [2] 44/16 44/17
later [6] 27/14 28/21
39/1 47/25 60/3 61/1
Laughing [2] 3/15 56/3

Laughter [1] 5/12
law [15] 2/8 2/8 2/13
7/25 9/11 9/15 9/24
10/12 11/10 12/11
20/10 25/1 42/23 54/5
54/23
laws [1] 13/13
lawsuit [2] 9/21 39/7
lawyer [4] 9/16 13/5
34/12 35/6
lawyers [5] 8/9 16/14
17/19 43/11 43/14
lay [1] 21/1
learn [1] 46/17
least [3] 9/18 48/23
55/17
leave [2] 38/3 60/13
left [5] 12/6 19/12
44/25 46/3 50/3
legal [7] 2/2 2/3 2/3
7/17 13/4 14/4 41/10
legislature [1] 12/7
legitimate [2] 17/9
19/10
less [2] 27/13 27/13
lesser [1] 42/8
let [6] 5/2 12/20 19/25
34/14 36/11 62/23
letter [2] 24/23 38/8
level [3] 32/24 50/2
60/15
lever [1] 16/13
lies [1] 14/24
life [1] 30/1
light [1] 62/12
like [30] 4/24 11/17
13/9 16/21 20/15 21/12
21/23 23/12 24/6 26/17
30/4 31/11 34/5 34/20
36/4 36/18 36/20 51/20
52/4 53/20 54/16 56/20
57/16 57/19 58/4 59/10
61/10 61/13 62/15 63/4
likely [1] 38/5
liken [1] 45/19
limited [3] 22/7 22/9
28/10
line [6] 19/11 19/18
49/1 50/8 51/13 51/16
lines [4] 51/17 51/18
51/19 52/24
list [3] 6/6 43/4 52/9
lists [2] 46/6 52/9
litigants [1] 9/22
litigate [1] 17/22
litigating [1] 11/23
litigation [6] 10/22
15/5 17/17 17/18 22/1
31/10
little [5] 19/12 28/22
33/3 33/11 52/2
live [1] 45/8
LLP [2] 2/7 2/12
long [3] 31/5 42/20

57/13
look [10] 5/6 13/15
22/17 36/11 39/18
43/13 54/20 59/16
61/20 62/1
looked [1] 29/20
looking [12] 5/5 5/8
5/10 7/25 20/7 23/23
25/25 29/25 44/9 56/24
60/17 61/25
looks [1] 51/20 61/13
Los [5] 1/17 1/23 2/5
2/10 2/20
loss [1] 54/13
lost [2] 49/14 49/18
lot [8] 19/24 26/25
30/10 30/13 31/25 32/4
44/25 50/25

**M**

made [10] 12/22 14/14
16/12 18/22 23/10 26/6
36/2 44/3 46/24 47/17
mail [1] 49/14
main [3] 6/6 12/12
12/16
majority [2] 16/10 45/8
make [24] 4/9 7/5 11/2
22/15 22/16 27/19
27/24 30/23 32/16
39/10 39/17 46/16 48/5
49/4 49/16 50/5 50/5
52/16 54/21 58/22 60/9
62/13 62/15 62/24
makes [8] 10/20 17/12
21/11 21/12 22/5 39/6
59/2 61/25
making [6] 12/22 26/10
26/11 30/10 32/13
55/25
male [1] 27/13
management [6] 33/16
33/22 33/22 34/15
35/16 35/23
mandatory [1] 33/12
manner [1] 25/3
many [12] 7/9 23/6
27/22 42/11 42/18
42/22 44/23 45/13
56/15 56/15 58/3 60/1
mark [1] 32/21
market [1] 43/21
MARKEY [6] 2/3 3/9
14/3 14/7 14/9 61/21
mask [1] 29/11
materials [1] 61/2
matter [6] 4/25 6/1
11/11 14/20 29/23 64/7
mattered [1] 19/4
matters [3] 42/23 58/21
58/23
max [1] 38/11
maximum [1] 38/8
may [28] 4/25 5/1

**M**

**may... [26]** 11/13 13/16 13/17 14/6 17/11 22/20 27/17 27/19 29/3 31/17 33/16 37/21 39/10 39/10 39/16 41/16 42/18 45/22 48/7 52/10 52/12 52/20 55/6 61/12 61/12 61/16

**maybe [24]** 13/4 21/15 22/17 23/11 26/21 26/21 27/6 28/24 29/24 31/17 32/20 33/23 34/5 35/4 37/21 39/4 39/8 40/20 42/7 42/21 52/4 56/1 56/20 56/22

**me [35]** 5/2 5/17 7/22 12/21 13/8 19/25 23/1 23/7 23/20 24/4 24/6 24/15 24/16 26/13 29/20 31/12 32/23 37/23 39/9 40/21 41/7 42/24 46/16 46/24 48/4 48/24 53/9 55/18 56/2 59/3 59/19 60/10 60/23 62/1 62/23

**mean [9]** 13/16 23/16 24/6 28/18 29/3 38/5 41/3 41/4 55/11

**meaning [1]** 55/3

**meaningful [1]** 53/17

**means [9]** 17/11 26/23 26/23 40/5 40/16 41/4 41/12 50/22 51/24

**meant [3]** 33/25 35/7 47/15

**meantime [1]** 59/1

**mechanism [1]** 32/20

**mechanisms [3]** 55/5 55/10 55/12

**media [4]** 16/1 16/13 16/24 17/1

**mediation [1]** 36/16

**mediator [2]** 18/18 26/18

**meet [4]** 22/8 25/21 26/1 41/25

**member [2]** 33/16 35/16

**mentioned [9]** 6/20 7/2 8/16 22/13 22/22 24/22 27/3 31/3 31/23

**mentioning [2]** 38/8 52/20

**mentions [1]** 10/1

**merits [2]** 7/16 38/18

**met [2]** 9/8 14/12

**middle [2]** 42/6 57/21

**might [11]** 5/17 16/5 18/10 23/6 37/5 39/1 40/1 41/9 52/23 59/18 59/20

**million [7]** 36/2 36/8

**Ms. Park [4]** 13/24 58/14 58/25 61/20

**Ms. Taylor Markey [2]** 14/3 14/7

**much [12]** 8/13 9/3 10/3 10/23 20/18 46/17 50/3 53/21 53/22 57/15 58/11 63/5

**multiple [1]** 15/19

**muscle [1]** 15/22

**must [2]** 12/19 17/24

**my [31]** 4/6 5/5 6/19 6/23 6/25 7/2 12/21 13/4 14/1 21/15 23/1 23/8 23/11 23/20 26/8 27/21 29/11 31/2 38/10 39/3 41/13 42/21 42/24 46/3 51/3 53/19 57/7 58/15 60/14 60/14 63/6

**N**

**NAKKISA [2]** 2/3 3/9

**Nakkisa Akhavan [1]** 3/9

**nakkisa.akhavan [1]** 2/6

**Nancy [1]** 48/9

**narrative [2]** 16/2 17/3

**narrow [1]** 35/12

**nature [2]** 7/9 21/15

**necessarily [4]** 5/14 23/16 27/16 58/17

**necessary [3]** 18/23 25/15 57/16

**need [36]** 3/7 4/18 12/25 13/1 13/5 13/5 13/15 18/11 23/4 25/3 25/20 26/24 27/6 29/6 31/7 37/10 37/20 41/16 41/23 43/24 44/12 46/4 48/24 56/8 56/9 56/10 57/13 59/18 59/20 59/20 59/21 59/23 59/24 59/25 59/25 63/9

**needs [4]** 26/6 35/25 38/2 51/23

**negotiated [4]** 18/14 34/13 43/8 51/25

**negotiation [1]** 50/17

**never [2]** 35/9 49/15

**Nevermind [1]** 26/18

**new [6]** 31/7 35/2 51/22 52/6 54/1 59/16

**next [2]** 7/16 8/15

**Ninth [3]** 8/2 24/6 24/16

**nitpicking [1]** 40/21

**no [47]** 1/9 3/17 3/18 10/3 10/14 10/15 10/20 12/15 15/19 16/4 19/9 22/1 29/3 29/4 29/23 31/12 36/12 36/14 37/4 38/11 38/20 39/11 39/11 39/23 40/3 40/4

**Ms. Baca [13]** 9/16 13/24 15/13 23/10 27/21 27/24 31/23 36/3 50/25 53/11 57/6 58/24 59/7

**Ms. Davis [1]** 15/13

**Ms. Markey [1]** 61/21

**40/11 41/12 43/1 43/4 45/18 46/18 47/18 48/16 48/17 48/17 49/23 50/22 52/9 52/25 53/8 53/24 61/1 61/21 62/18 63/1 64/16

**No. [1]** 3/3

**Nods [1]** 29/7

**nonmonetary [1]** 18/19

**normal [1]** 19/18

**not [111]**

**note [1]** 33/1

**noted [2]** 14/22 15/10

**notes [1]** 39/3

**nothing [5]** 36/22 37/22 37/22 39/8 51/17

**notice [2]** 1/19 56/16

**noticed [1]** 11/16

**notify [1]** 48/3

**now [15]** 5/5 5/6 5/23 7/11 7/15 9/21 18/5 23/6 23/7 35/2 39/3 44/2 50/24 52/3 56/4

**number [4]** 31/8 36/9 36/22 38/4

**numbers [2]** 28/4 38/20

**numeral [1]** 43/4

**numerals [1]** 43/4

**numerous [1]** 24/19

**O**

**o'clock [1]** 58/2

**objecting [1]** 19/2

**objection [4]** 4/4 4/5 58/8 58/22

**objections [3]** 24/23 58/17 60/11

**obligation [1]** 49/7

**obviously [8]** 19/18 24/17 26/10 34/14 35/10 38/22 43/15 54/18

**occasion [1]** 24/17

**occurred [1]** 39/9

**occurring [1]** 55/7

**odd [1]** 52/2

**odds [1]** 17/25

**off [4]** 28/4 51/1 56/23 59/3

**offer [4]** 18/9 25/3 39/19 39/19

**Official [2]** 1/21 64/16

**officials [1]** 34/16

**often [1]** 32/8

**Oh [1]** 3/12

**okay [24]** 3/18 5/24 7/12 7/21 8/14 11/14 20/6 24/12 28/15 37/15 38/21 41/11 42/16 42/23 46/1 47/14 47/20 48/25 50/15 51/9 53/19 54/6 58/3 63/13

**on [82]**

**once [5]** 18/3 21/18 30/16 31/3 47/17

**one [28]** 2/13 3/18 6/10 6/19 6/23 6/25 7/2 7/10 7/21 10/14 10/19 11/13 15/4 20/2 21/17 23/14 27/2 27/21 31/13 35/13 36/21 41/24 42/19 44/18 49/23 53/3 53/25 59/10

**ones [1]** 11/7

**only [16]** 5/7 10/10 11/18 16/9 16/14 18/7 23/21 24/9 29/2 50/19 50/21 52/20 53/25 57/19 60/2 63/6

**oOo [2]** 3/2 63/17

**open [1]** 36/17

**opened [1]** 45/10

**opportunity [5]** 1/6 2/2 3/4 4/21 45/16

**oppose [2]** 25/12 25/15 25/17

**opposite [1]** 11/4

**opt [3]** 20/16 20/17 20/17

**opt-in [2]** 20/17 20/17

**opt-out [1]** 20/16

**option [1]** 30/6

**or [86]**

**order [7]** 5/14 5/19 14/1 14/19 24/24 39/3 57/4

**other [25]** 10/14 10/15 10/17 11/13 11/15 12/5 15/8 19/11 21/23 24/15 25/1 26/7 29/3 29/4 38/20 40/3 41/9 42/23 43/17 43/20 49/17 56/10 60/1 62/8 63/5

**others [1]** 23/16

**otherwise [1]** 48/20

**our [17]** 4/16 6/6 8/1 8/2 8/15 11/8 11/20 20/14 22/7 22/14 31/8 32/10 37/17 46/4 53/23 58/11 61/7

**Ours [1]** 20/17

**out [33]** 5/14 5/20 6/23 17/1 18/2 18/8 20/16 21/1 23/5 25/21 26/1 26/8 27/1 27/4 28/5 34/3 37/9 38/11 38/19 41/20 42/12 44/18 45/23 46/6 47/4 50/14 52/20 53/9 53/14 55/24 56/1 60/6 61/16

**outrageous [1]** 17/3

**outside [2]** 8/23 11/9

**OUTTEN [1]** 2/12

**outtengolden.com [1]** 2/15

**over [6]** 18/15 23/9 31/22 50/3 57/17 60/9

**44/9 44/11 44/12 44/14 46/8

**mind [1]** 57/7

**minds [1]** 40/18

**minimum [1]** 38/9

**minutes [1]** 58/1

**misinterpreting [1]** 14/18

**mission [1]** 19/20

**misunderstanding [1]** 46/3

**Monday [4]** 1/18 3/1 61/22 63/8

**monetary [1]** 18/19

**money [11]** 36/6 39/1 39/19 44/6 45/1 45/21 45/23 48/18 48/21 49/10 50/25

**monitor [6]** 32/9 32/9 34/16 35/10 49/15 53/14

**monitoring [2]** 32/13 34/18

**months [3]** 11/24 18/17 52/22

**moot [2]** 25/14 25/18

**more [35]** 6/22 8/19 9/3 15/19 16/6 17/16 18/9 19/12 23/4 24/15 26/24 27/19 27/24 28/1 29/21 29/24 30/12 32/18 32/19 34/20 35/11 36/6 37/21 38/23 41/16 42/16 42/22 43/9 43/9 43/18 43/18 43/20 45/2 45/22 56/15

**morning [2]** 3/8 3/20

**most [2]** 16/11 44/19

**motion [1]** 1/19 4/7 8/1 14/4 14/11 21/20 24/21 25/6 25/10 25/13

**motive [1]** 17/2

**move [4]** 19/15 19/22 60/5 63/2

**moved [3]** 49/18 59/21 60/25

**moves [1]** 50/6

**Mr. [4]** 14/13 15/5 20/22 22/15

**Mr. Sagafi [4]** 14/13 15/5 20/22 22/15

**Ms. [21]** 9/16 13/24 13/24 14/3 14/7 15/13 15/13 23/10 27/21 27/24 31/23 36/3 50/25 53/11 57/6 58/14 58/24 58/25 59/7 61/20 61/21

**Pat Cuneo CSR 1600, Official Reporter**

(7) may... - over

**O**

**overruled [1]** 4/5
**overseeing [1]** 30/20
**oversight [1]** 31/22
**overstepping [1]** 12/17
**own [6]** 14/24 17/6
19/5 35/20 45/6 63/6
**Oxford [2]** 55/19 55/20

**P**

**p.m [3]** 1/18 3/1 63/15
**page [17]** 6/13 8/1 9/2
9/2 9/3 19/15 43/3
46/19 47/20 51/13
51/15 52/8 52/10 52/19
52/24 54/25 64/7
**pages [4]** 4/11 11/25
32/19 41/16
**paints [1]** 16/3
**panel [1]** 24/6
**paper [1]** 4/9
**papers [6]** 8/16 23/10
23/10 24/18 51/18 63/7
**paperwork [1]** 41/14
47/8
**paragraphs [1]** 48/6
**PARK [8]** 2/2 3/9 13/24
20/8 31/16 58/14 58/25
61/20
**part [7]** 31/17 32/14
36/16 39/23 50/4 51/6
60/19
**participate [1]** 47/16
**participation [1]** 25/4
**particular [5]** 9/22
23/15 24/9 45/12 47/2
**particularly [4]** 36/17
37/17 49/18 60/6
**parties [12]** 4/5 4/18
8/10 11/4 11/5 12/20
19/17 25/2 58/5 59/13
61/16 61/17
**parts [1]** 59/9
**party [5]** 9/7 15/17
18/17 51/20 53/17
**PAT [3]** 1/20 64/3
64/16
**patcuneo1600 [1]** 1/24
**PAUL [1]** 2/7
**paulhastings.com [2]**
2/11 2/11
**pay [9]** 22/13 22/14
22/15 22/18 22/20
27/15 45/20 46/9 46/10
**paying [1]** 27/12
**pending [4]** 9/20 10/9
15/4 15/7
**people [24]** 18/20
25/25 28/1 30/12 31/6
34/10 36/3 38/5 38/11
39/10 41/2 41/8 41/20
42/11 42/14 43/5 44/17
45/23 47/16 49/14
49/18 53/3 57/15 63/5

**people's [1]** 63/4
**per [1]** 49/10
**per se [1]** 49/10
**perfectly [1]** 40/25
**perhaps [4]** 8/1 32/22
48/20 61/20
**period [3]** 40/23 44/19
52/21
**permissive [1]** 33/11
**permit [1]** 33/8 33/12
36/25
**person [10]** 3/7 29/4
30/15 30/17 31/7 31/7
33/16 47/2 47/2 52/4
**persuasive [1]** 23/23
**pervasive [2]** 41/25
42/8
**phone [2]** 3/7 3/16
**phrase [3]** 27/4 54/8
54/10
**phrased [2]** 13/18 55/4
**pick [1]** 63/6
**picture [1]** 16/3
**pieces [2]** 6/8 59/24
**place [9]** 10/17 22/1
30/2 31/6 31/13 50/23
51/1 52/4 54/4
**placed [1]** 25/16
**places [2]** 50/18 50/19
**plaintiff [5]** 1/7 2/2
3/10 14/9 29/4
**plaintiff-type [1]** 29/4
**plaintiffs [2]** 10/5
43/14
**plant [1]** 7/6
**plate [1]** 60/1
**play [1]** 16/4
**pleading [2]** 16/17
51/18
**please [3]** 3/6 55/18
55/21
**plus [1]** 46/8
**point [8]** 10/19 11/13
21/17 26/2 26/13 26/1
32/24 58/9
**pointed [1]** 23/21
**points [1]** 28/18
**police [1]** 12/6
**policies [2]** 16/6 35/2
**pondered [1]** 60/7
**pondering [1]** 60/8
**population [1]** 16/9
**portray [1]** 16/20
**pose [1]** 18/11
**posing [2]** 7/15 13/8
**position [3]** 12/24
30/21 57/5
**positions [1]** 30/13
**possesses [2]** 33/17
33/23
**possibility [2]** 10/20
29/5
**possible [3]** 13/9 33/20
60/4

**possibly [1]** 42/6
**potential [7]** 15/10
17/12 27/22 28/12 30/4
40/23 50/1
**potted [1]** 7/6
**power [2]** 12/6 51/2
**precise [1]** 28/4
**predicate [1]** 9/6
**predicates [1]** 27/5
**prefer [2]** 7/21 55/19
**preference [1]** 59/12
**pregnancy [3]** 22/11
28/9 28/16
**premature [1]** 13/16
**prepared [2]** 5/19 19/6
**present [3]** 33/16
34/21 35/17
**presented [2]** 6/9
14/21
**PRESIDING [1]** 1/4
**press [1]** 17/1
**presuming [1]** 8/9
**pretty [3]** 30/3 32/25
57/15
**prevent [1]** 54/21
**previously [1]** 59/12
**primary [1]** 8/22
**prior [1]** 19/11
**priority [1]** 62/8
**private [2]** 17/19 39/21
**privilege [4]** 25/24
35/18 35/19 36/16
**privileged [8]** 25/6
25/16 25/25 33/17
33/23 34/3 34/10 35/5
**probably [10]** 7/3 28/6
29/24 41/7 41/16 43/18
53/14 53/21 57/3 62/7
**problem [1]** 32/11
**proceed [2]** 5/22 30/14
**proceeded [1]** 22/9
**proceedings [1]** 1/15
15/17 63/15 64/6
**process [12]** 6/4 19/18
22/8 24/25 25/4 40/6
41/14 45/16 49/16
54/11 54/17 60/22
**processes [2]** 17/9
34/7
**professional [1]** 25/22
**proffer [1]** 21/2
**programs [2]** 52/25
53/1
**prohibited [1]** 54/9
**promptly [2]** 55/7
55/13
**prong [1]** 12/17
**prongs [1]** 12/18
**proper [1]** 15/17
**properly [4]** 4/10 14/25
15/6
**propose [2]** 58/5 59/14
**proposed [4]** 10/21
24/20 60/16 61/2

**prosecution [2]** 12/24
26/23
**prosecutor [1]** 12/3
**protect [2]** 12/10 57/17
**protecting [1]** 12/11
**prove [2]** 41/10 49/3
**provide [4]** 10/2 17/15
25/3 57/8
**provided [1]** 56/20
**providers [1]** 43/5
**provides [1]** 19/13
**providing [1]** 4/18
**provision [4]** 23/21
46/5 49/13 52/6
**provisions [1]** 24/2
**près [13]** 28/17 28/19
28/20 28/22 38/25
46/23 47/11 47/19
47/24 48/1 48/13 50/20
51/5
**psychological [1]**
18/20
**public [7]** 12/3 12/4
12/23 17/7 18/2 20/13
37/8
**purport [1]** 54/21
**purpose [1]** 16/22
**purposes [1]** 19/14
**pursuant [2]** 20/10
64/4
**pursue [5]** 8/25 12/8
44/24 45/3 45/17
**push [1]** 42/12
**pushed [1]** 44/18
**put [13]** 7/25 14/10
15/1 15/8 18/2 31/6
37/1 41/16 43/20 49/25
50/14 54/13 61/7

**Q**

**quarterly [1]** 48/3
**question [9]** 7/14 7/16
7/18 7/22 13/8 14/4
35/19 39/13 46/3
**questionnaire [1]**
41/20
**questions [24]** 5/16
6/24 7/3 7/9 14/5 18/3
18/10 19/17 19/24
21/22 23/2 23/24 23/24
24/20 27/21 32/18
35/24 41/17 41/22
42/17 42/18 42/22
42/25 43/2
**quintessential [1]** 12/5
**quite [3]** 46/15 56/2
56/13
**quizzing [1]** 41/13

**R**

**radically [1]** 59/22
**rail [1]** 19/5
**raise [1]** 48/22
**raised [1]** 14/6

**raising [2]** 6/23 8/22
**range [1]** 42/10
**rank [1]** 41/23
**ranked [1]** 42/9
**rarely [1]** 5/15
**rate [1]** 53/15
**rather [3]** 59/14 60/3
60/4
**re [2]** 33/7 49/17
**re-sent [1]** 49/17
**read [2]** 26/8 28/21
**ready [1]** 62/19
**real [1]** 52/25
**realistic [1]** 18/25
**reality [1]** 50/1
**realized [1]** 5/13
**really [23]** 5/18 6/5 6/8
7/3 7/6 8/22 8/23 12/15
15/2 16/18 20/15 23/22
25/23 26/14 26/21 33/5
37/12 37/21 39/8 39/15
54/2 57/15 59/9
**reams [1]** 12/1
**reason [3]** 18/6 38/10
49/13
**reasonable [9]** 7/24
8/3 8/6 8/16 17/12 20/1
20/9 21/3 21/11
**reasonableness [2]**
4/17 7/2
**reasoning [1]** 14/10
**reasons [2]** 8/5 15/20
**recall [1]** 23/15
**received [4]** 39/19 55/4
55/10 55/12
**recent [2]** 17/14 45/3
**recital [1]** 22/5
**recognized [1]** 12/5
**recognizing [1]** 63/4
**recollection [1]** 51/3
**recommendation [2]**
49/4 52/11
**record [2]** 25/17 48/25
**records [1]** 16/8
**recover [2]** 20/19 41/12
**recovery [1]** 17/16
**red [1]** 48/22
**redacted [1]** 25/20
**redistribute [1]** 46/4
**redistributed [3]** 47/12
47/19 47/25
**redistributing [1]** 48/5
**reevaluating [1]** 32/1
**refer [1]** 54/14
**reference [1]** 24/13
**references [2]** 28/22
53/7
**referring [2]** 24/4 51/13
**refers [4]** 27/11 33/8
47/21 52/24
**regard [2]** 8/19 37/10
**regarding [1]** 33/17
**regardless [1]** 62/17
**regular [1]** 54/4

**R**

regulations [1] 64/8
rehash [1] 58/18
rehashed [1] 59/5
reject [1] 39/20
rejected [3] 39/6 46/22 49/22
rejecting [1] 7/18
rejects [2] 39/25 47/6
relate [1] 39/16
related [3] 27/14 35/20 51/3
relates [3] 25/6 40/13 52/11
relationship [1] 16/20
release [21] 6/7 6/11 6/12 6/14 7/10 9/10 9/18 10/11 12/14 14/15 14/16 14/20 14/21 14/23 17/1 21/23 22/3 22/4 22/6 47/4 56/17
released [1] 6/15
releases [4] 14/14 14/15 41/9 56/11
relevant [2] 26/21 40/23
relief [3] 17/13 18/19 18/19
reluctant [1] 37/18
remaining [1] 48/3
remedy [1] 22/20
repeat [2] 16/1 56/9
repeated [1] 52/12
reply [2] 8/2 11/21
report [1] 32/20
reported [3] 16/9 16/20 64/6
Reporter [2] 1/21 64/16
REPORTER'S [1] 1/15
reporting [2] 31/22 48/4
reports [4] 16/10 16/11 30/6 33/1
represent [1] 20/13
representative [1] 11/22
request [2] 12/12 12/16
require [1] 32/15
required [3] 4/23 49/9 54/5
requirement [2] 31/12 53/1
requires [1] 25/2
requiring [1] 31/21
resigns [1] 31/7
resolution [4] 17/12 18/17 18/18 19/13
resolve [3] 17/21 20/20 22/8
resolves [1] 58/11
resolving [1] 27/14

Resources [1] 30/11
respect [7] 5/25 14/13 15/8 21/5 21/20 23/11 31/20
respectfully [1] 15/18
respond [2] 13/24 13/25 37/5
responded [1] 45/23
response [1] 3/17
Responsibility [1] 30/20
responsible [2] 18/14 30/18
restricted [1] 28/14
resubmit [2] 50/6 58/5
result [2] 45/10 45/13
retained [1] 30/23
retaliation [2] 22/11 28/11
return [1] 59/13
returned [3] 47/21 48/8 49/12
revealed [1] 37/19
review [5] 31/8 31/9 32/2 32/10 33/7
reviewing [1] 32/1
reviews [1] 56/15
revised [2] 58/6 58/10
revisions [1] 61/2
Rick [1] 11/4
rid [1] 27/20
right [21] 3/13 3/16 3/23 5/2 7/20 10/7 12/4 12/18 12/24 15/12 28/2 31/9 35/25 36/14 38/21 39/24 45/17 51/6 53/24 57/2 63/11
rights [1] 15/11
role [1] 24/25
rolling [1] 44/4
Roman [2] 43/3 43/4
Room [1] 1/22
round [2] 45/22 45/22
rounds [2] 15/19 19/7
ruin [2] 63/4 63/6
rule [14] 8/3 8/4 8/7 14/12 15/2 17/23 20/1 20/3 20/5 20/9 20/14 20/23 25/1 45/19
Rule 23 [9] 8/3 8/4 8/7 17/23 20/1 20/5 20/14 20/23 45/19
ruled [1] 17/24
rules [1] 54/19
ruling [8] 4/6 4/15 4/25 7/14 14/11 21/19 24/14 24/15
rulings [1] 26/11
run [1] 58/25
running [1] 60/22
rushing [1] 62/19 63/1

**S**

SAGAFI [6] 2/13 4/2

14/13 15/5 20/22 22/15
said [20] 9/10 9/16 10/25 10/25 12/5 15/5 19/5 26/9 26/24 27/11 27/12 30/7 30/25 32/17 33/25 36/6 37/22 56/10 57/2 61/16
salacious [1] 16/15
same [7] 8/5 9/6 13/17 16/23 27/4 48/7 57/15
San [1] 2/14
sanctioning [1] 25/25
satisfied [2] 12/18 32/22
saw [2] 22/18 24/18
say [23] 9/3 19/12 24/5 29/20 33/10 33/12 33/13 39/10 39/11 47/11 47/18 47/23 49/14 50/22 51/10 52/13 52/14 52/17 58/12 59/5 60/10 62/16 62/25
saying [5] 10/9 11/4 11/17 43/12 61/17
says [18] 6/15 10/20 10/24 11/16 29/2 35/4 38/24 39/1 40/22 46/21 47/10 48/2 50/23 51/10 52/10 52/15 54/23 55/4
schedule [2] 5/1 54/5
scope [8] 6/7 7/10 9/2 20/19 22/3 27/9 49/6 50/11
scoring [1] 40/4 40/9 40/12 44/3
screen [1] 5/7 61/20 62/1
scrutiny [2] 20/14 20/22
se [1] 49/10
seal [5] 36/21 36/25 37/6 37/25 38/3
sealed [1] 35/20
search [1] 23/18
second [5] 6/5 14/20 18/6 21/25 45/22
second-guessed [1] 21/25
section [3] 28/24 48/1 64/4
Section 5A [1] 28/24
see [21] 4/4 4/11 5/6 5/7 6/21 13/18 23/18 24/13 29/12 30/24 32/21 35/21 38/3 41/23 42/1 54/13 56/11 56/18 57/10 57/16 61/25
seek [4] 30/7 31/14 32/7 45/5
seem [4] 19/12 27/9 31/11 48/23
seemed [1] 52/1
seems [10] 25/7 30/3

30/4 30/8 31/13 36/4 41/7 48/18 57/19 59/19
seen [2] 4/6 6/11
segueing [1] 39/3
semiannual [2] 31/22 32/2
send [6] 5/14 26/17 37/24 47/4 47/8 61/16
sending [2] 5/20 50/24
sense [9] 21/11 21/13 46/16 48/5 48/12 59/2 62/18 62/24 63/1
sensible [1] 8/7
sent [3] 17/1 45/23 49/17
sentence [3] 6/15 54/25 55/1
separate [1] 33/21
separately [2] 46/9 55/22
September [1] 27/23
September 1 [1] 27/23
sequencing [1] 59/12
serious [1] 11/11
serve [3] 16/22 16/25 57/14
set [9] 8/2 8/9 10/13 24/19 44/15 45/7 54/4 60/2 62/6
setting [2] 4/17 4/21
settle [4] 8/9 10/16 12/25 13/3
settlement [2] 38/24 46/16
settlements [1] 31/10
several [3] 23/9 31/3 32/18
severe [3] 41/25 42/5 42/7
severity [1] 40/14
Sexual [1] 22/10
shake [1] 61/21
shares [4] 46/20 46/21 47/22 48/8
she [1] 47/5
short [4] 20/4 30/3 30/8 57/4
shorter [1] 8/13
should [22] 4/9 15/19 21/21 25/8 26/17 28/19 33/23 33/24 35/14 39/8 43/9 48/20 51/10 51/14 51/16 52/8 55/2 56/6 56/19 59/3 61/16 61/17
shouldn't [9] 16/16 25/8 26/11 26/12 28/25 34/6 40/21 55/2 57/16
show [2] 17/24 50/6
showing [1] 17/25
shows [1] 17/2
side [1] 54/15
sign [3] 56/23 61/13 61/14
signed [3] 23/12 41/9

42/22
similar [2] 8/4 47/22
simply [1] 61/16
since [4] 20/13 23/8 56/14 56/22
single [1] 10/2 23/21
sitting [1] 35/6
situation [5] 10/5 10/8 10/13 10/18 57/24
situations [1] 16/11
six [3] 11/24 52/22
skepticism [1] 17/9
slightest [1] 36/15
slightly [1] 48/7
small [3] 16/9 28/18 51/13
so [125]
sole [2] 40/9 50/18
some [41] 7/25 9/18 10/17 24/14 24/22 25/1 26/7 26/24 27/17 27/20 28/2 28/24 31/24 32/20 33/24 36/1 36/3 38/1 38/4 38/8 38/10 39/1 39/10 39/16 40/7 40/20 42/16 49/5 51/1 51/25 53/17 54/23 55/16 56/5 56/6 56/7 56/16 57/20 58/20 58/25 59/20
somebody [5] 25/19 35/2 35/4 52/3 53/9
Somehow [1] 51/17
someone [3] 35/20 39/5 52/4
something [30] 7/7 7/8 13/22 21/14 25/19 29/15 30/5 31/9 32/23 33/2 38/9 38/19 40/8 48/19 49/3 49/8 49/18 52/14 53/3 53/4 56/17 56/23 60/2 60/15 61/15 61/17 61/21 62/4 62/14 62/14
sometimes [3] 24/16 44/16 49/14
somewhat [1] 27/8
somewhere [3] 5/8 27/7 51/18
sooner [2] 60/3 60/10
sorry [11] 3/12 3/25 4/1 8/14 21/7 21/16 37/14 37/14 46/2 61/6 62/22
sort [6] 7/15 11/18 32/13 42/8 42/12 53/22
sought [1] 31/13
sound [2] 34/5 48/7
sounded [3] 11/17 52/3 56/20
South [1] 2/9
speak [6] 3/7 12/21 16/23 39/15 53/11 54/19
speaks [2] 20/15 24/7
specific [4] 9/22 35/11

| S | | | |
|---|---|---|---|

**specific... [2]** 38/16 50/12
**specifically [2]** 20/12 47/23
**specifics [1]** 54/2
**speculate [1]** 34/6
**spent [1]** 44/11
**spin [1]** 16/21
**stage [1]** 47/15
**standard [9]** 7/24 8/3 8/6 14/16 20/2 20/6 21/1 21/10 24/2
**standards [2]** 17/23 20/24
**Star [1]** 3/7
**start [3]** 21/9 60/20 60/21
**started [3]** 6/23 30/10 31/25
**state [28]** 3/6 6/8 9/11 9/13 9/15 9/15 9/18 9/21 9/24 10/12 10/16 11/1 11/7 11/10 12/11 12/11 12/14 12/14 15/4 15/7 16/15 17/16 17/18 17/23 21/25 39/17 39/22 54/5
**state's [3]** 11/17 11/18 13/12
**stated [1]** 11/20
**statement [2]** 11/3 12/13
**states [5]** 1/1 12/6 18/24 64/4 64/9
**stenographically [1]** 64/6
**step [1]** 17/11
**stepping [2]** 8/23 11/9
**sticking [1]** 55/20
**still [6]** 25/5 30/13 34/8 51/7 59/16 63/1
**stipulation [1]** 21/1
**Stop [2]** 42/16 62/21
**stories [3]** 16/16 37/18 37/20
**Street [5]** 1/21 1/22 2/4 2/9 2/13
**stricken [1]** 25/20
**strict [1]** 20/24
**strike [1]** 18/8
**structure [2]** 50/4 59/22
**struggling [1]** 36/15
**stuck [1]** 42/24
**stuff [2]** 30/2 44/4
**subject [2]** 20/22 45/9
**submission [1]** 36/19
**submit [21]** 15/18 20/10 20/21 20/25 21/18 21/22 21/24 31/18 32/11 34/19 36/20 39/24 40/8 41/20

**submitted [1]** 19/6
**submitting [1]** 60/13
**subsection [1]** 46/22
**subsequent [1]** 46/5
**substantively [1]** 27/18
**sue [1]** 41/2
**suffered [2]** 18/20 42/12
**sufficient [2]** 31/21 59/15
**suggest [5]** 17/3 17/14 18/6 24/25 52/12
**suggested [2]** 24/1 52/16
**suggesting [4]** 23/14 25/2 43/7 43/9
**suggestion [1]** 52/15
**suggests [1]** 30/1
**suicide [1]** 16/18
**supervised [1]** 53/25
**supervisory [1]** 54/1
**support [1]** 6/9
**supposed [2]** 7/7 7/8
**Supreme [1]** 12/4
**sure [28]** 4/9 6/1 13/8 22/18 25/18 28/10 29/11 30/23 32/14 32/16 33/6 34/25 37/1 37/4 43/23 46/15 47/21 48/10 49/16 50/8 50/16 54/14 54/21 56/2 59/22 60/1 62/13 62/15
**surprise [4]** 36/12 36/14 43/11 43/19
**surprised [1]** 37/2
**survey [4]** 53/8 53/8 53/10 53/13

| T | | | |
|---|---|---|---|

**tabbed [1]** 4/9
**take [9]** 13/14 14/3 30/1 31/5 36/7 42/15 53/23 54/20 63/2
**taken [1]** 16/12
**talk [9]** 5/1 5/21 15/24 17/19 17/19 35/10 48/6 51/11 57/25
**talked [1]** 26/3
**talking [8]** 9/9 16/18 34/2 34/4 34/7 50/8 54/11 54/22
**talks [6]** 6/18 9/5 9/5 9/7 27/14 48/9
**tax [1]** 46/17
**TAYLOR [5]** 2/3 3/9 14/3 14/7 14/9
**Taylor Markey [2]** 3/9 14/9
**taylor.markey [1]** 2/6
**tell [5]** 5/3 17/18 17/20 23/6 41/2
**telling [1]** 48/4

**temperature [1]** 53/15
**Temple [1]** 2/4
**ten [5]** 16/6 27/24 28/1 28/6 36/3
**tentative [13]** 4/6 4/15 4/25 5/14 6/3 7/14 10/1 11/15 14/1 14/11 21/19 57/4 58/15
**term [3]** 32/4 51/12 53/21
**terminated [1]** 42/5
**terms [6]** 15/24 18/9 21/2 50/11 58/4 59/12
**than [19]** 6/22 9/3 16/6 18/22 24/15 27/13 27/24 28/1 36/7 38/20 41/16 43/9 43/9 43/20 44/19 56/15 59/15 60/3 61/1
**Thank [12]** 4/15 5/24 8/18 14/7 15/12 19/23 37/11 61/5 63/10 63/12 63/13 63/14
**Thanks [1]** 53/19
**that [369]**
**that's [61]** 3/13 7/12 7/20 8/14 10/23 11/10 12/9 12/15 12/16 12/17 13/15 13/22 17/21 21/9 21/15 22/12 22/21 22/22 23/22 24/12 28/22 31/20 32/14 33/2 33/10 33/14 33/18 35/7 35/9 37/15 39/8 39/13 42/9 43/1 43/23 44/12 44/24 45/7 45/15 47/22 48/4 48/12 49/20 50/13 50/22 51/25 53/13 53/16 53/22 53/24 55/4 57/21 59/1 60/19 60/23 61/4 62/6
**that'll [1]** 30/17
**there's [31]** 10/20 14/20 19/1 22/13 23/6 25/1 25/19 26/2 26/20 28/17 30/15 31/6 31/12 32/11 32/20 33/2 34/8 40/20 45/20 46/5 46/10 48/16 48/17 48/17 49/23 51/22 54/23 54/25 55/15 61/15 62/18
**thereby [1]** 11/11
**therefore [1]** 47/6
**these [34]** 11/23 11/24 12/10 13/13 13/13 15/17 30/14 31/6 31/24 32/5 32/18 33/21 34/9 35/2 38/16 41/17 42/9 42/18 42/19 42/21 43/5 43/11 43/14 44/2 44/19 44/23 45/12 48/6 53/3 55/5 56/5 57/10 57/20 58/20
**they [90]**
**they'll [1]** 42/15
**they're [15]** 12/22 12/23 16/24 23/25 34/7 34/11 34/18 35/2 38/5 38/13 40/7 41/24 41/24 62/19 62/23
**they've [1]** 30/12
**thing [8]** 16/23 23/9 35/13 36/21 40/3 40/22 52/18 60/6
**things [19]** 13/18 17/22 25/25 26/25 27/18 27/18 28/24 29/2 30/14 31/3 41/9 48/7 48/23 52/21 55/11 59/20 59/21 60/1 62/8
**think [83]**

**thinking [1]** 29/19
**thinks [1]** 26/4
**third [7]** 6/5 18/17 33/4 42/8 51/20 52/23 53/17
**third-party [1]** 18/17
**this [120]**
**those [24]** 4/9 6/5 8/11 12/8 15/10 23/18 27/5 27/16 31/2 35/21 36/7 41/22 42/6 45/2 45/16 47/23 48/23 51/19 55/11 55/17 56/18 56/19 56/24 57/1
**though [2]** 28/8 29/9
**thought [4]** 5/17 22/18 38/11 39/4
**thousand [5]** 16/6 27/24 28/1 28/6 36/3
**thousands [2]** 10/4 11/25
**three [12]** 6/6 11/23 29/25 30/3 30/7 31/3 31/20 33/1 33/3 49/21 52/21 52/22
**three-year [2]** 29/25 52/21
**through [12]** 4/11 23/1 27/17 28/18 29/25 30/14 41/14 49/1 54/16 55/5 55/10 55/12
**throughout [2]** 18/24 50/16
**thus [2]** 15/1 19/15
**tier [3]** 42/4 42/5 42/8
**time [25]** 4/11 10/5 10/10 12/25 16/22 18/8 18/21 30/7 31/12 31/21 43/12 44/18 44/19 45/14 45/17 48/14 52/23 53/25 57/13 59/3 59/16 59/16 60/4 60/18 62/16
**timeframes [1]** 44/15
**timely [1]** 41/24
**times [1]** 23/9
**timing [2]** 57/3 57/25 60/13
**tinkering [1]** 27/19
**Title [3]** 14/15 38/14 64/4
**Title VII [1]** 38/14
**titled [1]** 46/19
**today [1]** 36/3
**together [4]** 46/25 57/12 57/14 58/24
**told [2]** 22/7 40/8
**tome [1]** 57/9
**tomorrow [1]** 13/2
**too [9]** 23/6 29/17 40/15 42/17 42/20 50/24 53/21 53/22 57/4
**took [1]** 18/17
**Top [1]** 42/5
**topic [2]** 33/17 50/16

44/12 46/16 46/19 46/25 47/4 47/18 47/20 48/2 48/8 50/15 53/7 54/7 54/25 58/7 58/11 59/5 60/10 60/13 61/14 62/4 62/6 63/7
**there [62]** 4/8 5/22 6/8 6/12 6/21 7/8 10/4 14/14 16/6 17/23 18/2 19/2 19/9 19/12 20/10 22/18 26/13 27/17 27/22 28/2 28/21 28/24 29/4 29/9 29/15 29/23 29/24 30/6 30/6 30/22 32/14 32/19 33/15 33/20 34/12 35/23 36/13 37/4 38/4 38/14 41/9 41/12 42/6 44/15 45/22 50/3 50/25 52/3 52/3 52/4 52/4 52/6 52/25 53/7 54/1 54/7 55/2 57/9 59/9 59/19 62/5 63/1

**T**

totally [2]  59/1 60/23
touch [1]  9/25
towards [2]  32/4 49/5
tragic [1]  16/18
training [2]  53/24 54/4
transcript [3]  1/15 64/5 64/7
transcripts [1]  26/8
transparency [2]  18/19 30/24
tried [2]  10/14 22/8
tries [2]  17/6 17/7
triggers [1]  16/1
true [4]  13/4 13/5 17/2 64/5
try [4]  14/19 15/1 26/1 62/7
trying [11]  9/19 10/11 10/16 15/22 26/8 26/15 28/21 29/12 32/15 34/3 55/24
turn [2]  13/24 19/14
turnaround [1]  59/15
turnover [1]  28/2
turns [1]  52/20
tweaking [2]  51/11 55/16
twice [2]  19/6 52/20
two [20]  4/24 5/25 11/21 14/14 15/3 15/20 18/16 25/11 26/17 32/7 32/21 33/21 49/23 51/19 57/10 58/1 59/9 60/14 62/7 63/7
two-fold [1]  11/21
two-year [1]  32/21
type [1]  29/4
Typically [1]  35/16
typo [3]  51/13 51/15 52/8
typos [1]  55/17

**U**

ultimate [2]  7/15 15/16
ultimately [2]  34/16 36/15
unaccepted [3]  46/20 47/22 48/8
uncashed [4]  47/21 48/8 49/12 49/22
uncertain [1]  17/17
unclear [2]  48/24 58/4
under [13]  14/12 15/2 20/14 35/2 36/21 36/25 37/6 37/25 38/2 38/14 46/22 48/9 49/7
under-seal [3]  36/21 36/25 37/6
understand [13]  9/9 28/7 29/3 38/22 39/23 40/6 43/8 45/18 46/2 46/18 51/8 51/24 62/10
understanding [2]

7/18 58/15
understood [5]  22/25 36/10 36/23 40/17 60/24
undistributed [1]  48/9
unfortunate [1]  57/24
unique [2]  10/13 10/18
UNIT [3]  2/2 2/3 2/3
UNITED [4]  1/1 18/24 64/4 64/9
unless [6]  13/22 25/1 25/2 51/22 54/23 56/18
unlike [1]  17/20
unlikely [1]  57/6
unseemly [1]  26/17
until [1]  38/3
untimely [1]  44/24
unusual [1]  57/24
up [11]  29/7 38/1 44/11 46/25 49/17 51/17 54/13 56/21 57/3 59/1 60/23
upped [1]  43/21
us [10]  1/6 2/2 3/3 4/16 19/21 21/2 25/15 32/13 45/10 49/15
use [4]  48/19 55/19 55/20 61/18
used [4]  39/7 50/9 53/22 58/4
uses [1]  14/16
using [4]  16/13 16/24 55/21 55/22
usually [6]  32/4 32/12 42/3 42/9 49/2 53/16
utilize [1]  15/9

**V**

vague [1]  40/7
value [1]  38/17
various [1]  48/6
vast [2]  16/10 45/8
versa [1]  58/23
versus [1]  26/23
very [30]  6/14 9/21 10/3 10/8 10/23 19/12 21/8 22/3 22/6 23/20 30/8 32/3 33/5 35/11 36/4 36/4 38/16 39/3 45/11 45/15 50/1 50/5 50/7 50/17 57/13 57/23 57/24 58/11 59/4 60/15
veto [1]  51/2
viable [3]  41/4 41/6 41/25
vice [1]  58/22
victims [1]  11/22
view [2]  45/11 54/17
views [2]  37/3 50/1
VII [2]  14/15 38/14
violate [1]  16/5
violations [1]  52/12
violence [1]  17/8
voluntarily [2]  41/21

43/15

**W**

wage [1]  27/16
wait [2]  24/21 44/5
waiting [1]  30/14
waiver [2]  43/13 56/17
waivers [1]  56/11
walk [1]  13/2
want [48]  4/13 6/1 6/21 8/1 8/19 13/25 23/2 23/8 25/23 25/24 26/10 26/11 28/4 29/1 29/17 32/17 34/9 34/23 34/25 35/11 37/6 39/20 39/22 40/18 42/15 43/12 43/15 45/6 46/17 47/6 47/16 49/5 53/9 53/11 54/10 56/12 57/9 57/10 58/18 58/25 59/5 60/9 60/10 60/11 60/21 61/13 62/15 63/2
wanted [3]  9/25 11/20 51/10
wants [3]  16/4 26/7 60/20
was [67]
wasn't [4]  26/13 33/25 54/1 56/1
wasted [1]  60/18
way [5]  5/6 5/7 13/18 24/1 26/20 32/25 33/24 39/16 43/12 44/8 49/15 55/3 55/9 55/23 61/13
we [125]
we'd [5]  11/4 11/5 21/22 21/24 59/10
we'll [8]  8/15 43/18 49/25 50/14 51/8 58/19 60/3 61/1
we're [17]  8/22 10/8 18/25 19/18 23/5 28/18 30/13 31/21 32/21 34/4 35/5 35/15 42/3 44/13 45/15 50/24 58/9
we've [8]  6/9 22/8 26/3 42/9 43/20 49/13 50/24 56/5
websites [1]  56/12
wedded [1]  5/22
week [3]  9/13 10/25 62/7
weeks [2]  62/7 63/7
well [40]  6/12 6/19 7/22 8/15 10/1 12/20 13/15 19/24 20/6 21/6 22/7 22/21 23/6 25/18 28/6 31/2 31/4 31/7 34/5 35/4 35/13 36/18 37/9 38/13 38/19 41/8 41/11 43/14 44/6 47/16 46/14 50/23 54/20 56/20 57/12 57/13 58/21 60/8 61/2 62/2 62/18

went [1]  53/12
were [20]  5/18 5/22 7/15 9/9 16/11 19/8 23/19 24/4 24/22 29/9 29/11 29/15 33/19 35/19 37/4 46/25 48/4 55/25 59/13 63/15
West [1]  1/22
WESTERN [1]  1/3
what [96]
what's [14]  7/16 7/17 13/18 19/10 20/6 21/10 29/19 35/24 40/19 47/1 53/20 54/5 56/19 58/18
whatever [9]  25/20 39/20 39/22 45/6 54/19 59/17 60/11 60/12 60/18
when [18]  4/8 9/8 9/13 16/11 24/5 24/13 28/21 33/12 37/9 47/4 55/21 55/22 61/10 62/2 62/17 62/19 62/23 63/3
where [22]  4/12 8/2 10/14 10/15 12/9 15/7 19/7 21/9 21/13 23/5 23/24 24/6 25/6 31/13 36/2 38/9 38/21 38/23 42/7 45/22 49/18 50/20
whether [24]  7/7 8/8 14/23 23/4 24/14 32/21 32/22 33/11 33/21 34/8 38/2 40/22 42/14 44/25 45/1 46/24 49/15 51/7 53/15 54/9 56/25 58/12 58/25 61/2
which [38]  4/19 5/6 5/18 6/7 7/3 7/4 7/19 7/21 9/7 10/1 11/3 11/7 12/23 13/3 14/20 15/9 20/10 24/14 27/22 28/18 32/7 33/5 44/19 44/22 45/14 45/19 46/19 47/25 48/6 49/16 51/7 55/2 55/5 56/24 57/15 58/12 60/1 63/7
whichever [1]  23/11
while [3]  16/4 30/1 30/13
who [27]  8/9 9/20 12/10 16/19 18/20 20/19 28/1 30/15 30/17 30/22 33/17 33/22 35/1 35/2 35/16 35/9 41/2 41/9 42/21 43/11 43/14 45/2 45/16 45/23 57/17 61/25
who's [1]  3/16
whoever [1]  35/10
whole [4]  8/10 15/21 40/6 59/22
whom [2]  24/9 57/17
whose [1]  11/22
why [12]  11/7 12/16

12/17 13/15 16/22 29/3 32/14 44/24 45/15 46/15 48/18 50/4
widespread [1]  52/11
will [52]  6/15 6/25 9/10 9/17 10/21 13/24 14/3 14/21 17/15 21/1 25/14 25/17 27/25 29/24 30/15 30/21 30/22 31/25 32/3 33/10 33/12 33/13 38/24 39/11 40/10 40/22 41/19 41/19 41/20 41/20 41/22 42/2 42/14 43/5 44/18 44/23 46/22 47/10 48/2 50/3 50/25 51/1 53/14 55/7 55/13 57/5 57/13 58/9 61/21 62/3 63/7 63/8
willing [3]  43/6 52/5 56/23
wish [3]  14/6 29/20 49/11
within [3]  30/21 34/17 58/7
without [7]  5/20 9/23 9/23 13/3 17/22 42/22 56/23
women [1]  28/10
won't [4]  18/7 37/2 37/4 45/14
wonder [3]  24/13 39/9 46/24
wondering [3]  39/4 43/10 43/24
word [4]  22/18 51/15 55/1 55/21
worded [1]  33/20
work [12]  26/1 28/5 28/7 30/13 30/21 31/9 36/1 40/7 58/24 59/3 60/9 63/5
workforce [3]  53/11 53/14 53/18
working [5]  34/7 57/12 57/13 60/21 60/21
workplace [2]  16/2 30/19
works [3]  5/10 7/2 60/5
worries [1]  43/1
worse [1]  17/14
would [73]
wouldn't [6]  24/14 28/11 32/15 33/5 35/21 52/5
written [1]  55/19
wrong [1]  24/17
www.patcuneo.com [1]  1/24

**Y**

yeah [8]  7/20 9/17 29/17 36/13 41/18 51/5 54/20 62/20

**Y**

**year [3]** 29/25 32/21
52/21
**years [9]** 11/23 30/3
30/7 31/3 31/20 32/7
33/1 33/4 59/16
**yes [34]** 4/14 5/4 5/21
8/21 9/10 9/17 13/7
13/11 14/2 15/14 21/17
27/25 28/16 29/7 29/18
29/22 34/24 35/9 35/15
37/25 38/6 41/5 44/1
45/25 46/2 46/3 46/13
47/7 47/15 47/18 57/23
59/6 60/2 61/23
**yet [4]** 4/19 13/20
13/21 56/21
**you [145]**
**you're [13]** 7/13 13/8
22/23 22/23 25/19
26/22 35/1 38/21 42/24
44/9 44/10 55/22 63/1
**you've [4]** 31/3 36/2
60/16 61/15
**your [74]**
**yourselves [1]** 26/22

**Z**

**Zoom [1]** 5/10