# Exhibit O

22270650
ADR-106

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

**BY FAX**

DANIELLE OCHS (SBN 178677) | JONATHAN W. BLACK (SBN 280421)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Market Plaza | Steuart Tower, Suite 1300
San Francisco, CA  94105
TELEPHONE NO.: 415.442.4810     FAX NO. *(Optional)*: 415.442.4870
E-MAIL ADDRESS *(Optional)*: danielle.ochs@ogletree.com | jonathan.black@ogletree.com
ATTORNEY FOR *(Name)*: Defendant/Petitioner Tesla, Inc.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA  94612
BRANCH NAME:

PETITIONER: Tesla, Inc.

RESPONDENT: DeWitt Lambert

**FILED
ALAMEDA COUNTY**

MAY 2 1 2019

CLERK OF THE SUPERIOR COURT
By _____
                          Deputy

| PETITION TO   ☒ CONFIRM   ☐ CORRECT   ☐ VACATE CONTRACTUAL ARBITRATION AWARD | |
|---|---|

**Jurisdiction** *(check all that apply):*
☐ Action is a limited civil case
    Amount demanded   ☐ does not exceed $10,000
                                    ☐ exceeds $10,000, but does not exceed $25,000
☒ Action is an unlimited civil case (exceeds $25,000)

CASE NUMBER:
RG17854515

**NOTICE:** You may use this form to request that the court confirm, correct, or vacate an award in an arbitration conducted pursuant to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq. and that does not involve an attorney-client fee dispute. If you are requesting court action after an attorney-client fee arbitration award, please read Alternative Dispute Resolution form ADR-105, *Information Regarding Rights After Attorney-Client Fee Arbitration.*

1. **Petitioner and respondent.** Petitioner *(name each):*
    Tesla, Inc.

    alleges and requests relief against respondent *(name each):*
    DeWitt Lambert

2. **Contractual arbitration.** This petition requests the court to confirm, correct, or vacate an award in an arbitration conducted according to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq.

3. **Pending or new action.**
    a. ☒   A court case is already pending, and this is a petition filed in that action. *(If so, proceed to item 4.)*
    b. ☐   This petition commences a new action. *(If so, complete items 3b(1) through 3b(4).)*
        (1) **Petitioner's capacity.** Each petitioner named in item 1 is an individual,
            ☐ except petitioner *(state name and complete one or more of the following):*
            (a) ☐   is a corporation qualified to do business in California.
            (b) ☐   is an unincorporated entity *(specify):*
            (c) ☐   is a representative *(specify):*
            (d) ☐   is *(specify other capacity):*
        (2) **Respondent's capacity.** Each respondent named in item 1 is an individual,
            ☐ except respondent *(state name and complete one or more of the following):*
            (a) ☐   is a business organization, form unknown.
            (b) ☐   is a corporation.
            (c) ☐   is an unincorporated entity *(specify):*
            (d) ☐   is a representative *(specify):*
            (e) ☐   is *(specify other capacity):*

Form Approved for Optional Use
Judicial Council of California
ADR-106 [New January 1, 2004]

**PETITION TO CONFIRM, CORRECT, OR VACATE
CONTRACTUAL ARBITRATION AWARD
(Alternative Dispute Resolution)**

Code of Civil Procedure, § 1285 et seq.


American LegalNet, Inc.
www.FormsWorkFlow.com

| PETITIONER: Tesla, Inc.<br><br>RESPONDENT: DeWitt Lambert | CASE NUMBER:<br>RG17854515 |
|---|---|

3. b.  (3)  **Amount or property in dispute.** This petition involves a dispute over *(check and complete all that apply)*:

    (a) ☐  the following amount of money *(specify amount)*: $

    (b) ☐  property *(if the dispute involves property, complete both of the following)*:

        (i) consisting of *(identify property in dispute)*:

        (ii) having a value of *(specify value of property in dispute)*: $

  (4) ☐  **Venue.** This court is the proper court because *(check (a) or (b))*:

    (a) ☐  this is the court in the county in which the arbitration was held.

    (b) ☐  the arbitration was not held exclusively in any county of California, or was held outside of California, **and** *(check one or more of the following)*:

        (i) ☐  this is the court in the county where the agreement was made.

        (ii) ☐  this is the court in the county where the agreement is to be performed.

        (iii) ☐  the agreement does not specify a county where it is to be performed and was not made in any county in California, and the following party resides or has a place of business in this county *(name of party)*:

        (iv) ☐  the agreement does not specify a county where it is to be performed and was not made in any county in California, and no party to this action resides or has a place of business in California.

4. **Agreement to arbitrate.**

  a.  **Date.** Petitioner and respondent entered into a written agreement on or about *(date)*: June 24, 2015

  b.  ☒  **Attachment.** A copy of the agreement is submitted as Attachment 4(b) and incorporated herein by this reference.

  c.  **Arbitration provision.** Paragraph <u>7</u> of the agreement provides for arbitration of disputes arising out of the agreement as follows *(either copy the arbitration provision in full or summarize the provision)*:
"...[Respondent] and [Petitioner] agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and confidential arbitration[.]"

5. **Dispute subject to arbitration.** A dispute arose between petitioner and respondent concerning the following matter covered by the agreement to arbitrate *(summarize the dispute)*:
On March 27, 2017, Respondent filed a lawsuit in this Court, asserting eleven causes of action against Petitioner, arising from or relating to Respondent's employment with Petitioner.  All but three of his causes of action were dismissed at summary judgment or voluntarily, and three went to hearing at arbitration—where all were decided in favor of Petitioner.

6. **Arbitrator.** The following person was duly selected or appointed as arbitrator *(name of each arbitrator)*:
Hon. Lynn Duryee (Ret.) of JAMS

7. **Arbitration hearing.** The arbitration hearing was conducted as follows *(complete both of the following)*:

  a.  **Date** *(each date of arbitration)*: March 12, 14, 15, 19, and 21, 2019

  b.  **Location** *(city and state where arbitration was conducted)*: San Francisco, CA

8. **Arbitration award.**

  a.  **Date of award.** The arbitration award was made on *(date)*: May 7, 2019

  b.  **Terms of award.** The arbitration award *(check one or more of the following)*:

    (1) ☐  requires  ☐ petitioner  ☐ respondent  to pay the other party this amount: $

    (2) ☒  requires neither party to pay the other anything.

    (3) ☐  is different as to different petitioners and respondents.

    (4) ☒  provides *(specify other terms or check item 8(c) and attach a copy of the award)*:
""Because Respondent failed to prove his claims of racial harassment and retaliation by a preponderance of the evidence, [Petitioner] is entitled to an award in its favor. Thus the arbitrator renders an arbitration award in favor of [Petitioner] and against Respondent."

  c.  ☒  **Attachment of Award.** A copy of the award is submitted as Attachment 8(c).

9. **Service of award.**

  a.  The signed award or an accompanying document indicates that the award was served on petitioner on *(date)*: May 7, 2019

  b.  ☒  Petitioner alleges that a signed copy of the award was actually served on *(date)*: May 7, 2019


American LegalNet, Inc.
www.FormsWorkFlow.com

| PETITIONER: Tesla, Inc. | CASE NUMBER: |
|---|---|
| RESPONDENT: DeWitt Lambert | RG17854515 |

10. **Petitioner requests that the court** (check all that apply):
   a. ☒ **Confirm the award, and enter judgment according to it.**
   b. ☐ **Correct the award and enter judgment according to the corrected award, as follows:**
      (1) The award should be corrected because (check all that apply):
         (a) ☐ the amount of the award was not calculated correctly, or a person, thing, or property was not described correctly.
         (b) ☐ the arbitrator exceeded his or her authority.
         (c) ☐ the award is imperfect as a matter of form.
      (2) The facts supporting the grounds for correcting the award alleged in item 10b(1) are as follows (if additional space is required, check here ☐ and submit facts on an attachment labeled 10b(2)):



      (3) The award should be corrected as follows (if additional space is required, check here ☐ and describe requested correction on an attachment labeled 10b(3)):


   c. ☐ **Vacate (cancel) the award.**
      (1) The award should be vacated because (check all that apply):
         (a) ☐ the award was obtained by corruption, fraud, or other unfair means.
         (b) ☐ an arbitrator was corrupt.
         (c) ☐ the misconduct of a neutral arbitrator substantially prejudiced petitioner's rights.
         (d) ☐ the arbitrator exceeded his or her authority, and the award cannot be fairly corrected.
         (e) ☐ the arbitrator unfairly refused to postpone the hearing or to hear evidence useful to settle the dispute.
         (f) ☐ an arbitrator failed to disclose within the time for disclosure a ground for disqualification of which the arbitrator was then aware.
         (g) ☐ an arbitrator should have disqualified himself or herself after petitioner made a demand to do so.
      (2) The facts supporting the grounds for vacating the award alleged in item 10c(1) are as follows (if additional space is required, check here ☐ and submit facts on an attachment labeled 10c(2)):


      (3) Petitioner ☐ does ☐ does not request a new arbitration hearing.
   d. ☐ **Award petitioner interest from** (date):
      (1) ☐ at the statutory rate.
      (2) ☐ at rate of _____ % per year.
   e. ☐ **Award petitioner costs of suit:**
      (1) ☐ in the amount of: $
      (2) ☐ according to proof.
   f. ☐ **Award petitioner attorney fees incurred in this action** (check only if attorney fees are recoverable in this action according to statute or the parties' agreement):
      (1) ☐ in the amount of: $
      (2) ☐ according to proof.
   g. ☐ **Award petitioner the following other relief** (describe relief requested; if additional space is required, check here ☐ and describe relief on an attachment labeled 10g):



11. **Pages and attachments.** Number of pages attached: 28

Date: May 20, 2019

▶

Jonathan W. Black
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PETITIONER OR ATTORNEY)

American LegalNet, Inc.
www.FormsWorkFlow.com

38488843.1

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Lambert v. Tesla | RG17854515 |

**ATTACHMENT** *(Number):*  4(b)

*(This Attachment may be used with any Judicial Council form.)*

Respondent's offer letter containing Agreement to Arbitrate

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 9

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

Accepted offer | Dewitt  Lambert  | Esign ID: 8F9R18VC6K9-2VKYI8RRJ | Esigned Date: 6/24/15 | Page: 1 of 8



*June 23, 2015*

*Dewitt jh Lambert*
*1942 47th ave. apt. 7*
*oakland, CA  94601*

*Dear Dewitt:*

*Tesla Motors, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Production Associate on the terms set forth below.  As Production Associate, you will perform the duties customarily associated with this position.  You will report to Carlos Duenas, Associate Manager Production.  Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.*

*Your rate of pay will be  $17.00 per hour, subject to standard payroll deductions and withholdings.  As a non-exempt employee, you will be entitled to overtime.  You will be eligible for vacation and sick leave according to Tesla's standard policy.  Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time to time, as it deems necessary.*

*Tesla Motors, Inc. offers a competitive benefits package described below:*

> ***Shares:**  Subject to the approval of the Compensation Committee of Tesla's Board of Directors and our standard equity policies, you will receive an equity award with a value of $6000 in the form of Shares, which you will only receive at the time of vesting, as described below.   This value is determined based on our standard equity granting policies.  The actual number of Shares that you receive will depend on the value of our stock at or around the time your grant is approved, as determined by   Tesla's Compensation Committee.  This award, which is made pursuant to Tesla's 2010 Equity Incentive Plan, shall be subject to vesting conditions.  Specifically, the Shares shall vest over a period of four years: twenty-five percent (25%) of the award shall vest on each of the first, second, third, and fourth anniversary of the date vesting begins (such date to be indicated in your Award Agreement), subject to your continuing eligibility through the applicable vesting dates.  No Shares shall vest other than on the anniversary dates.*

*Lambert*                         *Page 1 of 6*

Accepted offer | Dewitt Lambert | Esign ID: 8F9R18VC6K9-2VKYI8RRJ | Esigned Date: 6/24/16 | Page: 2 of 8

*This grant shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.*

*Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate grant agreements.*

**401K Program:** *You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.*

**Vacation Program:** *Regular full-time employees and part-time employees who work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).*

*The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.*

*We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.*

*As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.*

*In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and confidential arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:*

    *a.  Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and*

    *b.  The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and*

    *c.  The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and*

    *d.  The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and*

    *e.  Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and*

    *f.  Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.*

*Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.*

*Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.*

*You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials*

Accepted offer | Dewitt Lambert  | Esign ID: 8F9R18VC6K9-2VKYI8RRJ | Esigned Date: 6/24/15 | Page: 4 of 8

*that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.*

*In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.*

*If you accept our offer, your first day of employment will be June 25, 2015. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.*

*As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.*

*This offer of employment is contingent upon the successful completion of your reference and background checks.*

*If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to June 25, 2015 after which date this offer will expire.*

*We look forward to your favorable reply and to a productive and enjoyable work relationship.*

*Very truly yours,*
*Tesla Motors, Inc.*

*Lambert*                              Page 4 of 6

Accepted offer | Dewitt  Lambert  | Esign ID: 8F9R18VC6K9-2VKYI8RRJ | Esigned Date: 6/24/15 | Page: 5 of 8

Elon Musk
Chairman of the Board and CEO

*Accepted by:* _____

*Date:*        June 25, 2015

Accepted offer | Dewitt Lambert | Esign ID: 8F9R18VC6K9-2VKYI8RRJ | Esigned Date: 6/24/15 | Page: 6 of 8

## NOTICE TO EMPLOYEE
### Labor Code section 2810.5

#### EMPLOYEE

Employee Name: Dewitt jh Lambert

Start Date: June 25, 2015

#### EMPLOYER

Legal Name of Hiring Employer: <u>Tesla Motors, Inc.</u>

    Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?  □ Yes
    x No

Physical Address of Hiring Employer's Main Office:

<u>3500 Deer Creek Rd. Palo Alto, CA 94304</u>

Hiring Employer's Telephone Number: <u>650-681-5100</u>

#### WAGE INFORMATION

Rate(s) of Pay: $17.00           Overtime Rate(s) of Pay: <u>1.5x base pay rate or 2x</u> <u>base pay rate - see OT policy for more information</u>

Rate by (check box):  x Hour   □ Shift   □ Day   □ Week   □ Salary   □ Piece rate   □ Commission □ Other (provide specifics): _____

Does a written agreement exist providing the rate(s) of pay?  (check box)  x Yes    □ No

    If yes, are all rate(s) of pay and bases thereof contained in that written agreement?  x Yes   □ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

—
    (If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage. Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: <u>Every other Friday</u>

#### WORKERS' COMPENSATION

Accepted offer | Dewitt Lambert  | Esign ID: 8F9R18VC6K9-2VKYI8RRJ | Esigned Date: 6/24/15 | Page: 7 of 8

Insurance Carrier's Name: <u>Zurich NA</u>

Address: <u>1400 American Lane, Schaumburg, IL 60196</u>

Telephone Number: <u>1.800.987.3373</u>

Policy No.: MA: <u>WC 0172150 00</u>  All Other States <u>WC 0172149 00</u>

### ACKNOWLEDGMENT OF RECEIPT
### (Optional)

<u>Tesla Motors, Inc.</u> _____        _____

(PRINT NAME of Employer)                         (PRINT NAME of Employee)

<u>Tesla Motors, Inc.</u> _____        _____

(SIGNATURE of Employee)                          (SIGNATURE of Employee)

_____

(Date)                                            (Date)

The employee's signature on this notice merely constitutes acknowledgment of receipt.

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

## Electronic Signature

Page: 8 of 8

Filling in the following information will constitute your eSignature and will have the same legal impact as signing a printed version of this document.

 **Password Verified** 

Name: *Dewitt Lambert*
Date: 6/24/15 (m/d/yy)
Signature ID: 8F9R18VC6K9-2VKYI8RRJ

Powered by **Taleo** ※

MC-025

| SHORT TITLE:<br>Lambert v. Tesla, Inc. | CASE NUMBER:<br>RG17854515 |
|---|---|

**ATTACHMENT** *(Number):* <u>8(c)</u>

*(This Attachment may be used with any Judicial Council form.)*

Final Arbitration Award

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

**Page** <u>1</u> **of** <u>19</u>

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

Lynn Duryee
JAMS
Two Embarcadero Center
Suite 1500
San Francisco CA 94111
Arbitrator

JAMS

SAN FRANCISCO

| | |
|---|---|
| DeWitt Lambert, . | JAMS Ref. No. 1100088312<br>Alameda Superior Court #<br>RG17854515 |
| Claimant | **Final Arbitration Award** |
| v. | |
| Tesla Motors, Inc., | |
| Respondent | |

The within case was ordered to Arbitration by Hon. Sandra K. Bean, Alameda County Superior Court, on July 19, 2017. The undersigned arbitrator was designated in accordance with the JAMS Appointment of Arbitrator on October 13, 2017. The Arbitration occurred on March 12, 14, 15, 19, 21, 2019, at the JAMS Resolution Center in San Francisco, California. After the presentation of evidence and argument by counsel, the matter was submitted. The following is the ruling of the arbitrator:

## 1. The parties and their counsel

Claimant DeWitt Lambert is represented by Lawrence A. Organ and Navruz Avloni of the California Civil Rights Law Group.

1

Respondent Tesla Motors, Inc. is represented by Danielle Ochs and Roshni C. Kapoor of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

## 2. Procedural History

The arbitrator convened a scheduling Conference on November 14, 2018. Both sides appeared. The arbitration was set for March 12, 2019 at the JAMS Resolution Center in San Francisco. Written notice of the arbitration was provided to the parties.

The arbitration commenced at 9:30 a.m. on March 12, 2019, and the testimony concluded on March 21, 2019. The following witnesses offered testimony at the arbitration: Amy Oppenheimer (Attorney, HR practices), Alaynna Elliot (Tesla HR), Jose Jimenez (Tesla, production), Crispin Rodriguez (Tesla, production), Fernando Seguro (Tesla, production), Rose Sanson (Tesla HR), Ricky Gecewich (Tesla HR, via depo), Liza Lipson (Tesla HR manager), Dimitriz Harrison (former Tesla employee), LaToya Grinston (Friend of Claimant), Charles Lambert (former Tesla employee, manager), Christian Kremer (former Tesla employee, production lead), Nigel Jones (former Tesla employee), Orlando Javier Morales (current Tesla employee), May Doan Cong (former Tesla employee, HR investigator), Carl Ruppert Jr. (Tesla employee, production associate), David Lee (former Tesla employee, production). In addition, the parties offered, and the arbitrator received, depositions excerpts from other witnesses plus extensive documentary evidence. After the presentation of evidence, argument was presented. Thereafter, the matter was submitted.

2

### 3.  Issues Presented

This is a claim for racial harassment, retaliation, and failure to prevent racial harassment and retaliation. Claimant seeks damages for lost wages, emotional distress, and punitive damages.

The key issues in this case are (1) whether Mr. Lambert was a victim of unlawful racial harassment; (2) whether Mr. Lambert was terminated because of his assertion of his legal rights, and (3) whether Tesla failed to take reasonable steps to prevent harassment or retaliation.

### 4.  *Summary of Findings*

The arbitrator finds that Mr. Lambert failed to prove his claims by a preponderance of the evidence, as follows:

(1) <u>Unlawful racial harassment:</u> The evidence shows that Claimant himself participated in the use of racially-charged language and encouraged his co-worker to create racially-charged rap music. Similarly, Claimant participated in the horseplay that occurred on the assembly line and was not, as he claimed, singled out by his co-workers. Claimant used foul language and racial epithets in the workplace. Although there was ample evidence that the diverse workers of Chassis 2 used the term "nigga" with Claimant with one another, there was no credible evidence that its use was racially harassing to – or unwelcome by – Claimant.

(2) <u>Termination:</u> Mr. Lambert's termination from Tesla was not based on the assertion of his legal rights but rather on Lambert's sworn testimony that he had committed multiple counts of misconduct. Mr. Lambert was terminated after his deposition in the within matter occurred. In his deposition, Claimant admitted to

lying on his resume; using the word "nigga" and other race-related terms on many occasions; referring to co-workers in crass terms, and engaging in inappropriate horseplay, such as pushing a drill gun into a co-worker's back. He also admitted to various infractions, such as using his cell phone, listening to music, eating food, and drinking on the factory floor.[1]

(3) <u>Failure to prevent:</u> This question of failure to prevent need not be answered in light of the findings on the first two questions.

## 5. Facts

Claimant worked at the Tesla plant for fewer than two years. He alleges that he experienced racial harassment during his first 10 months and that Tesla did nothing about it.[2] When in April 2016 he first alerted HR of the purported harassment, he was immediately transferred from the line, placed elsewhere, and never again worked with his alleged harassers.

In 2017, nearly a year after the transfer, he reported to HR that two of his former harassers were staring at him. He explained then that in 2015 these same people bullied him, called him names, and filmed him on his phone without his consent. HR launched an investigation. This investigation ultimately led to the

---

[1] In this regard, it is worth noting that two other Tesla employees were terminated as a result of the investigation instigated by Claimant. Production Lead Christian Kremer was terminated for permitting race-based words to be used regularly and for allowing horseplay to occur on the line.

[2] Claimant's case is based only on the alleged harassment he experienced during his first 10 months at Tesla. During that time period, he was close friends with his supposed harassers and made no complaints to HR about racial harassment. He did complain about "overuse of the n-word" to his supervisor, Charles Lambert, who took immediate and effective steps to address his complaint.

discovery of the racially-charged rap song on Claimant's phone, the termination of two of Claimant's former co-workers and, ultimately, the termination of Claimant.

The pertinent events and dates are as follows:

7/26/15: Claimant started work at Tesla. Assigned to Chassis 2.

6/15 – 12/15: Claimant was friendly with co-workers Kremer, Jimenez, Doan, and was especially close with Crispin Rodriguez. The crew engaged in horseplay to lighten up long workdays. The horseplay included placing stickers on one another's backs and fooling around with the drill guns. Claimant and Rodriguez were known by all in the group for their use of the term "nigga" as well as the use of profanity. The group considered "nigga" to mean "bro" or "dude," and might greet one another with expressions such as, "How you doing, my nigga?" and "Hey Nigga, where you going for lunch?" They believed the use of the term among friends expressed care, not contempt. The group got together after work several times a week at the club City Beach. They watched football games together, including the Superbowl. Claimant gave Crispin Rodriguez a ride to work from time to time. He spent Thanksgiving with his supervisor Charles Lambert (no relation) and spent the day after Thanksgiving at the home of Kremer. He referred to Rodriguez as "my son." The Chassis 2 group encouraged Rodriguez, an amateur rapper, to "freestyle rap" at work. At Claimant's request, Rodriguez recorded a freestyle rap song on Claimant's phone (x. 100). The song is rife with violent images and profanity but is

nevertheless consistent with lyrics and images commonly found in rap songs and freestyle rap competitions.[3]

12/2015: Claimant complained to Supervisor Charles Lambert of the widespread use of the term "nigga." He denied ever using the word himself.[4] Charles Lambert chastised the Chassis 2 workers, and he never heard another complaint from Claimant nor any evidence that the use of the word continued.

4/22/16: Claimant and co-worker Rodriguez fought when Rodriguez took Claimant's phone. Claimant complained to HR about harassment and was transferred that day to Trim .5. Significantly, Claimant made no complaints to HR about racial harassment.[5]

6/28/16: Following an anonymous complaint and the investigation thereof, Claimant was issued a written warning for a violation of the social media policy (posting a picture on Facebook of himself on the Tesla factory floor). He complained

---

[3] See e.g., "Title of Battle Rap Freestyle Featured Battle Rap" by Insanity at genius.com: "I hear you talkin shit, bro you think you're the heat/Please bow down to defeat you're barely mince meat/Stop with the street talk, and start to do the street, walk/Lock yourself in and tell me this, how you gonna battle with this sick shit that I spit bitch/See you still flappin your jaws, prepare to be thrown in the ocean/In the middle with jaws/Or prefer to be served and severed with claws, knock on the doors/Of absolute death you may/But please be ready for the automatic failures you may make/So take this and wait for another dismembering remembering...Now get the fuck back home and call your mom/Continue to rap please, just leave me alone/I'm done hearing wack disses like this/I'm sick of this, listening to this petty ass shit/Bitch."

[4] During the Tesla investigations, Claimant repeatedly denied or minimized his use of the word "nigga." For example, he said to HR Investigator My Doan Cong, "I have never ever used the n-word to [my co-workers'] faces." At arbitration, all of Claimant's co-workers testified that he used the word openly and often.

[5] HR conducted an investigation and found that Claimant's 4/22/16 allegations were not substantiated.

6

to HR of disparate treatment, saying that others had committed the same violations but were not issued warnings.

6/29/16 – 3/1/17: No complaints. No problems.

3/2/17: Claimant, still working at Trim .5, complained to HR that two of his former co-workers from Chassis 2 were staring at him, and that he felt harassed. During this investigation, HR saw the rap video, filmed at the Tesla factory. Claimant reported that he felt threatened by it.

3/14 – 3/20/17: HR investigated Claimant's complaint. While the "staring" complaint was not supported by the evidence, HR determined that impermissible horseplay had occurred on the Chassis 2 line 18 months earlier in 2015. Two employees were terminated and a third was disciplined. As the investigation continued, HR received evidence that Claimant himself was participating in the same misconduct he complained of.

3/27/17: Claimant was placed on paid administrative leave. Claimant filed a lawsuit in Alameda County Superior Court for racial harassment.

7/2/18: Claimant was terminated for misconduct after giving sworn deposition testimony in the within case.

6. **Analysis**

In order to prevail on his claim for racial harassment, retaliation, and failure to prevent harassment, Claimant must prove that he was a victim of unlawful racial harassment; that he was terminated because of an assertion of his legal rights; and that Tesla failed to take reasonable steps to prevent harassment. Each will be addressed in turn. *See* CACI 2521A, 2505, 2507.

**(1) Was Mr. Lambert a victim of unlawful racial harassment?**

In order to prevail on the claim for hostile work environment harassment, Claimant must prove all of the following:

    a.  That DeWitt Lambert was an employee of Tesla, Inc.;

    b.  That DeWitt Lambert was subject to unwanted harassing conduct because he was Black or African American;

    c.  That the harassing conduct was severe or pervasive;

    d.  That a reasonable black man in DeWitt Lambert's circumstances would have considered the work environment to be hostile or abusive;

    e.  That a supervisor engaged in the conduct or that Tesla or its agents knew or should have known of the conduct and failed to take immediate and corrective action;

    f.  That DeWitt Lambert was harmed; and

    g.  That the conduct was a substantial factor in causing DeWitt Lambert's harm.

Here, Claimant has not proven that he was subjected to "unwanted harassing conduct." Rather, the evidence shows that the conduct complained of was welcomed and friendly; that a reasonable person in Claimant's shoes would not have considered the work environment to be hostile; and that Claimant himself did not consider his work environment to be hostile.

The heart of Lambert's harassment claim is that (a) the use of the word "nigga" at work was common and offensive, and (b) Lambert's co-worker recorded a threatening and racist video on his cell phone.

(a) *The use of "nigga" at work.*

Lambert as well as his co-workers testified at the arbitration that the word "nigga" was used on the assembly line as a term of endearment. Its meaning was synonymous with "dude," "homie," or "bro" [*See* e.g., Testimony of Jimenez, Rodriguez, Seguro, Kremer]. Lambert's co-workers uniformly testified that while they heard the word regularly, they never heard it used in a derogatory way. Not all Lambert's co-workers used the word "nigga," but all understood that it was a term used among friends to express friendship or endearment.

Lambert himself was a frequent and vocal user of the word at work, and, by his own admission, never told his co-workers that he was offended by its use. Lambert testified that he has since childhood used the term "nigga" to express affection to friends and family.[6] Claimant freely used the term with friends and with those he most loves. He never told co-workers or friends that he objected to the use of the term nor did he ever appear to be offended by the use of the term. [*See* Testimony of Rodriguez (Claimant "did not seem bothered by the word"); Fernando Seguro (Claimant "did not look offended" by use of word); Kremer ("Dewitt never brought anything up to me about being uncomfortable"); Andre McMorris Jr.

---

[6] Consistent with that usage, Lambert posted a note on April 9, 2016, next to his teenage son's handsome prom picture stating, "My babies are growing up, that nigga think he hot, ain't fuck nobody that night." Exh. B. He posted a picture of his infant son on April 17, 2016 with this note: "Had to go see my nigga Phamous, despite the drama with his mom. I gotta be here for him, nigga getting big." Exh. C.

9

("There were never any complaints about the use of the word 'nigga.' DeWitt did not seem to be offended").

A reasonable person in Claimant's shoes under these circumstances would not feel harassed by the use of the word, nor did Claimant appear to feel harassed by the use of the word.

### (b)The freestyle rap video.

The centerpiece of Claimant's case is Exhibit 100, Crispin Rodriguez's freestyle rap video. It is an expletive-laden rap song – apparently released to the media and widely available on the Internet – created at the Tesla factory and stored on Claimant's cell phone. The song is full of profanity, racial and otherwise, as well as violent images.

According to Claimant, his co-worker and former friend Crispin Rodriguez recorded the song on his phone without his permission, and there the song sat unnoticed for many months until Claimant made a complaint to HR. Then, in the presence of Maggie, the HR investigator, Maggie "discovered" the video and asked to view it. He testified that he felt threatened and hurt by the song. During the arbitration, Claimant was brought to tears remembering the moment of discovering the video on his phone with HR Investigator Maggie.

By contrast, Crispin Rodriguez and Christian Kremer both testified that Lambert *asked* his then-friend Rodriguez to make the rap song and record it on his phone so Claimant could send it to his friends in Alabama. According to Rodriguez and Kremer, Lambert *knew* of the video at the time it was created and thought it was

10

funny.[7] Rodriguez and Kremer were both credible witnesses, and their description of how this song came to be on Lambert's phone is both believable and consistent with the evidence. Other co-workers testified that Rodriguez often sang rap songs, and that the group would huddle and request him to sing.[8] As a group, they testified that his singing was terrible but that they all got a kick out of it.

Finally, it seems highly unlikely that Claimant – an active participant in social media – would not know about a video stored on his phone for 5-9 months. It also seems unlikely that the HR representative would be the one to notice the video on his phone, as Claimant testified, and equally unlikely that Maggie, at the start of an HR investigation, would notice the video and ask him, "Hey, what's that video?"

Moreover, Claimant's close friend, LaToya Grinston, impeached Lambert's story about discovering the video with HR. She testified that it was she who was with Lambert when he discovered the video. She said that they watched the offensive video together. She testified that he started crying while they watched it. After viewing it together, Ms. Grinston urged him to report the video to HR, and it was on her urging that Claimant showed the video to HR.

---

[7] According to Christian Kremer, Claimant liked to encourage Crispin Rodriguez to sing and was often heard to say, "Rap for me, Junior."

[8] Andre McMorris, an employee with Tesla since 2015, worked with Lambert during the relevant time period. His testimony was entirely credible. He said that Claimant and Crispin Rodriguez were very close, that the group used the term "nigga" in a friendly way, and that Claimant gave no evidence ever of being offended by its use. He confirmed that the group would "egg on" Crispin to rap, and that the subject video, x100, is exactly the kind of rap he regularly did for everyone's entertainment. To him, the video was not racist.

11

Finally, it must be noted that Claimant himself was guilty on at least one occasion of posting an offensive video of a man with facial deformities on a Facebook wall and tagging it with Kremer's name. Lambert admitted to posting and tagging the video of the deformed face, but said it was "a joke."

Because the video was created at the request of Claimant, it cannot be said to be unwelcome.

Because Claimant participated in the use of the term "nigga" and in the creation of the freestyle rap video, Claimant has not shown by a preponderance of the evidence this conduct was unwelcome. Thus, his racial harassment claim fails.

(2) <u>Was Mr. Lambert terminated because of an assertion of his legal rights?</u>

To establish a claim of retaliation, Claimant must prove the following:

a. That Claimant participated in a protected activity – here, filing a lawsuit against his employer for harassment;

b. That Claimant was discharged as a result of filing a lawsuit;

c. That Claimant's lawsuit was a motivating reason for Tesla's decision to terminate Claimant's employment;

d. That Claimant was harmed;

e. That Tesla's conduct was a substantial factor in causing Claimant's harm.

[CACI 2505]

Claimant failed to prove by a preponderance of the evidence that his termination was due to the exercise of a protected activity. Rather, the evidence supports a finding that he was terminated because of his admitted violations of misconduct described during his deposition in the within case. As the California

12

Supreme Court explained, "[once] an employer learns about an employee wrongdoing that would lead to a legitimate discharge, we cannot require that employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." *Salas v. Sierra Chem. Co.*, 59 Cal.4th 407, 429 (2014).

Here, Lambert complained to HR in March, 2017 that two of his former co-workers were staring at him and that he felt harassed. He then related that he was bullied in 2015, that he was called names, and that his phone was taken without his permission. Because his old harassers were staring at him now, he felt he needed to bring in HR. During the course of this investigation, the rap video was discovered. He complained about the video – calling it a death threat – as well as the overuse of the word "nigga" and horseplay.

Based on the video as well as Claimant's other complaints, HR launched an extensive investigation. *Ex.* 21. As more interviews were taken and information gathered, it became clear that Lambert had not been honest with HR, and that there was much more to the story than originally thought. As a result, Lambert was placed on paid administrative leave on March 27, 2017. That same day, he filed his lawsuit in Alameda County Superior Court.

During the course of the lawsuit, Lambert's deposition was taken. In his deposition, Lambert admitted under oath to many acts of misconduct during his time with Tesla, including the following:

- Multiple misrepresentations in the two resumes submitted to Tesla (e.g., stating that he still worked at Gimbal's when he had been terminated;

representing that he had done dock work when instead he was doing time in prison; claiming he was doing forklift work at Tesla when he was not).

- Using the word "nigga" numerous times at work.
- Using his cell phone, listening to music, eating food, and drinking on the factory floor.
- Calling male and female coworkers "bitches," "hoes," and "pussy."
- Calling two Latino coworkers "light-skinned Mexicans."[9]
- Calling an Asian coworker "Bruce Lee."
- Participating in physical misconduct, including slapping coworkers on the buttocks, pushing a drill gun into a coworker's back, and throwing a drill gun at a coworker. *See*: Ex. 36

After the completion of Lambert's deposition, Tesla asked Employee Relations Investigator, Ricky Gecewich, to evaluate the testimony. Gecewich had not been involved in any prior investigation involving Claimant. He prepared a report and found that, "Dewitt's sworn testimony revealed that he was a willing participant and instigator of such inappropriate language, including the use of the 'n-word' and other inappropriate conduct. Dewitt also admitted to continuing to engage in these activities even after the time he claims he brought concerns about similar language and conduct by other Tesla employees to the attention of his supervisors."

Gecewich made the following recommendation:

---

[9] Co-worker Orlando Javier Morales testified credibly that Claimant was often on the phone and holding up the line. He said that Claimant and Crispin were good friends and both used the n-word regularly. "I don't use it, but you hear it. For me, the n-word is not acceptable. But it is used in a friendly manner." He said Claimant also used other racial slurs, memorably saying to Morales, "You Mexicans are lazy."

14

Based on the findings of this review, considering Dewitt's multiple admissions of misconduct in his sworn deposition, also considering a final written warning issued to Dewitt on June 28, 2016, for horseplay, ER recommends termination of Dewitt's employment with Tesla.
*Ex.* 36.

On June 29, 2018, Tesla informed Claimant of his termination by letter from HR Manager Liza Lipson. This letter sets forth Tesla's legitimate and evidence-based reasons for terminating Claimant:

As you know, Tesla placed you on a paid leave of absence pending an investigation into your workplace behavior...

Shortly after your initial deposition on April 26, 2018, our Employee Relations (ER) team received your deposition transcript, which revealed inappropriate behavior that violated our policies and our values as a company. Based on your admissions of misconduct, including misrepresenting your work history when applying to Tesla with an erroneous resume, using and instigating use of the 'n-word' on multiple occasions, calling male and female coworkers [sic] 'b*****s,' 'h**s,' and 'p***y' on multiple occasions, making other racially charged comments towards co-workers and admitting to physical misconduct, including slapping co-workers on the buttocks, pushing a drill gun into a co-workers' [sic] back and throwing a drill gun at a co-worker, the Company elected to terminate your employment...

As a result of your misconduct and offensive actions, to which you admitted under oath, we are terminating your employment, effective July 2, 2018. *Ex.* 37.

Mr. Lambert had the legal right to institute a lawsuit. He was not fired for doing so. Rather, he was fired based on his sworn admissions of multiple acts of serious misconduct.

(3) <u>Did Tesla fail to take reasonable steps to prevent harassment or retaliation</u>?

Given the findings that there was no harassment or retaliation, this question is moot. Nevertheless it should be noted that when Claimant complained in 2015 to his supervisor, Charles Lambert, regarding the use of "nigga" on the line, Charles Lambert took immediate and effective action.[10] When Claimant – immediately after fighting with his friend Crispin Rodriguez – complained to HR in March 2016 of his co-worker attempting to video him and of alleged favoritism by his boss, he was transferred that day and never again worked with his alleged harassers. These responses were reasonable, effective and appropriate.

In sum, Tesla took reasonable steps to respond to Lambert's complaints.

## 7. Award

Because Claimant failed to prove his claims of racial harassment and retaliation by a preponderance of the evidence, Respondent is entitled to an award in its favor. Thus the arbitrator renders an arbitration award in favor of Respondent and against Claimant.

---

[10] Charles Lambert testified that when Claimant complained to him about the use of "the n-word," he walked the line and talked to each of the guys, making a special point to address Crispin. He said he felt he did everything in his power to correct the problem and to address Claimant's concern. After that, he monitored the problem for months, and that as far as he knew, the problem did not come up again.

16

## 8. Further findings.

The Interim Arbitration Award was issued on April 1, 2019. It stated that the Interim Award would become the Final Arbitration Award unless, within 30 days, either side requested the arbitrator for any further findings or other relief. Neither side requested additional findings or other relief. Thus, this is the final award of the arbitrator.


Dated: May 7, 2019

_____
Hon. Lynn Duryee (Ret.)
Arbitrator

17

**PROOF OF SERVICE BY EMAIL & U.S. MAIL**

Re: Lambert, DeWitt vs. Tesla Motors, Inc.
Reference No. 1100088312

    I, Rosalinda Ortega, not a party to the within action, hereby declare that on  May 07, 2019, I served the

attached Final Award on the parties in the within action by Email and by depositing true copies thereof enclosed

in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco,

CALIFORNIA, addressed as follows:

Danielle Ochs Esq.
Jonathan W. Black Esq.
Ms. Roshni Kapoor
Ogletree Deakins
One Market Plaza
Suite 1300
San Francisco, CA  94105
Phone: 415-442-4810
danielle.ochs@ogletreedeakins.com
jonathan.black@ogletree.com
roshni.kapoor@ogletree.com
    Parties Represented:
    Tesla Motors, Inc.

Lawrence A. Organ Esq.
Navruz Avloni Esq.
California Civil Rights Law Group
332 San Anselmo Ave.
San Anselmo, CA  94960
Phone: 415-453-4740
larry@civilrightsca.com
navruz@civilrightsca.com
    Parties Represented:
    DeWitt Lambert

    I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco,

CALIFORNIA on  May 07, 2019.

Rosalinda Ortega
ROrtega@jamsadr.com

**PROOF OF SERVICE**
*Lambert vs. Tesla, Inc. et al.*
Alameda County Superior Court Case No. RG17854515

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of San Francisco in the office of a member of the bar of this court at whose direction the service was made.  My business address is Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105.

On May 20, 2019, I served the following document(s):

**PETITIONER TESLA, INC.'S PETITION TO CONFIRM CONTRACTUAL ARBITRATION AWARD**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed to:

Lawrence A. Organ, Esq.
Navruz Avloni, Esq.
Sabrina Grislis
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960

☒   **BY MAIL:**  I caused such envelope to be placed for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐   **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒   **(State)**   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐   **(Federal)**   I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on May 20, 2019, at San Francisco, CA.

Mayra Padilla

38594580.1

Case No. RG17854515