# Exhibit P

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

Rene C. Davidson Courthouse

| | |
|---|---|
| Department of Fair Employment and Housing, an agency of the State of California<br>　　　　Plaintiff/Petitioner(s)<br>　　　　　　VS.<br>Tesla, Inc.<br>　　　　Defendant/Respondent(s) | No.　　22CV006830<br>Date:　11/18/2022<br>Time:　3:49 PM<br>Dept:　21<br>Judge:　Evelio Grillo<br><br>ORDER re: Ruling on Submitted Matter |

The Court, having taken the matter under submission on 11/15/2022, now rules as follows: The Motion of Tesla for protective order from written discovery filed 8/25/22 is GRANTED IN PART. The CRD's motion to compel further discovery filed 9/1/22 is GRANTED IN PART.

The court provides the parties with general orders in the form of parameters for discovery and specific orders regarding the specific matters at issue.

TESLA'S ARGUMENT THAT THE CRD DID NOT CONDUCT PRE-CIVIL ACTION LAWSUIT INVESTIGATION

Tesla repeatedly argues that the CRD did not conduct pre-civil action investigation, that the CRD's lawsuit should be dismissed for failure to conduct the pre-filing investigation, and that CRD cannot use discovery in the civil action to compensate for its alleged failure to do pre-filing investigation. These arguments are not relevant to the issue of whether Tesla and the CRD must comply with their discovery obligations in this civil action.

If Tesla wants to file a motion for summary judgment based on the argument that the CRD did not conduct pre-civil action investigation, then Tesla can file that motion. If Tesla is not going to file the motion, then the court suggests that Tesla stop making the argument. Tesla can presumably present evidence that the CRD never asked Tesla for any documents, never asked Tesla to interview any employees, and never to its knowledge used any of the investigation tools in Govt Code 12930(g). The CRD can then put on evidence that it reviewed certain categories of documents, that it interviewed some number of persons, and that it did use the investigation tools in Govt Code 12930(g). The parties can perhaps reach some stipulation that the CRD's production of summary information in opposition to the motion is done without waiving the Evid Code 1020 official information privilege and other relevant privileges.

GENERAL ORDER - TEMPORAL SCOPE OF DISCOVERY

BACKGROUND

On 6/18/19, the Civil Rights Division (CRD) (formerly the DFEH) filed the Director's Complaint and allegedly initiated an investigation.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

On 2/9/22, the CRD filed this case as a group case. Govt Code 12961 authorizes the CRD to file a complaint on behalf of the department seeking relief for a group of persons adversely affected, in a similar manner, by an alleged unlawful practice.

PROCEDURE

The parties have a long-running disagreement about the temporal scope of discovery. The court addressed the issues in part in the order of 8/26/22 on Tesla's Demurrer and motion to strike. The court addressed the issue in part in the order of 10/4/22 clarifying the prior order. The court in an IDC response on 10/6/22 informally requested that the parties address the issue directly. The parties in an email exchange agreed to address the issue, but even then disagree on what issue the court should decide.

The immediate issue is the temporal scope of discovery. For purposes of discovery, the scope of relevance is defied by "the subject matter involved in the pending action." (CCP 2017.010.) When defining "the subject matter involved in the pending action," the court must examine the relevant statute of limitation and the potential applicability of tolling theories.

The relevant statute of limitations does not define the temporal scope of discovery, but it is a very important benchmark. As the court previously noted in the IDC response of 10/6/22, "Case law suggests that in a discrimination or harassment case that discovery frequently extends to 2 years prior to the statute of limitations period."

There are distinctions between relevance for purposes of discovery (CCP 2017.010), relevance for purposes of admissibility at trial (Evid Code 351), and the substantive statute of limitation. This order is only about the temporal scope of discovery, but it necessarily addresses the same issues as would be presented regarding the substantive statute of limitations.

Tesla's brief of 10/26/22 directly addresses the relevant statute of limitations. The CRD's brief of 10/26/22 purposefully does not address the relevant statute of limitation, but it refers to the brief filed on 9/7/22. (CRD Brief filed 10/26/22 at 4:15-18.) The court has reviewed the CRD brief filed 9/7/22 pp11 and has also reviewed the CRD brief on the demurrer filed 8/11/22 pp11-13 and CRD reply brief filed 11/8/22 at 11-15 for their discussions of the statute of limitations issue. Both parties have had a fair opportunity to brief the issue.

" THE SUBJECT MATTER INVOLVED IN THE PENDING ACTION."

The statute of limitation is a highly relevant benchmark for "the subject matter involved in the pending action." (CCP 2017.010.) The court finds for purposes of discovery in this case that the one-year state of limitation in Govt Code 12960 that was in effect in 2019 is

the relevant statute of limitations, that the CRD filed its Director's complaint on 6/18/19, that the CRD's Director's complaint is limited to alleged violations after 6/18/18, and the continuing violations doctrine will not be likely to apply at the liability stage.

Tesla argues that there is a one-year statute of limitation. Tesla relies on Govt Code 12960(d), which at the relevant time stated: "No complaint may be filed after the expiration of one year

from the date upon which the alleged unlawful practice or refusal to cooperate occurred, …"

The CRD argues that there is no statute of limitation. The CRD argues that the CRD's claim is under Govt Code 12961, that 12960(b) concerns claims by private persons, and that the 12960(d) statute of limitation applies only to the claims by private persons. CRD also refers to several federal trial opinions holding that under the analogous federal law that "pattern or practice case is not subject to a limitations period." (E.E.O.C. v. Mitsubishi Motor Mfg. of America, Inc. (C.D. Il., 1998) 990 F.Supp. 1059, 1083-1084)

First, the court looks at the CRD's authority to bring the case. Govt Code 12960 concerns administrative complaints by the CRD. Govt Code 12960(c) states "The director or the director's authorized representative may in like manner, on that person's own motion, make, sign, and file a complaint." Therefore, section 12960 applies to administrative claims by the CRD.

Second, the court considers the CRD's argument that there is no statute of limitations that applies to the CRD's group claim under Govt Code 12961. The CRD is correct that there are several federal court opinions holding that the EEOC equivalent the Govt Code 12961 has no statute of limitation. (E.g. E.E.O.C. v. Mitsubishi Motor Mfg. of America, Inc. (C.D. Il., 1998) 990 F.Supp. 1059, 1083-1084.) But the federal case law is far from consistent. "[D]istrict courts across the country have issued divergent rulings on the issue." (U.S. E.E.O.C. v. Global Horizons, Inc. (D. Ha., 2012) 904 F.Supp.2d 1074, 1090.

The court thinks that the more persuasive federal cases hold that a pattern or practice case has the same limitations period as individual cases. (U.S. E.E.O.C. v. Global Horizons, Inc. (D. Ha., 2012) 904 F.Supp.2d 1074, 1090; E.E.O.C. v. Bloomberg L.P. (S.D. N.Y 2010) 751 F.Supp.2d 628, 645-649.)

The court is very reluctant to hold as a matter of law that a claim has no statute of limitation in the absence of express legislative direction to that effect. Where the legislature wants to have no statute of limitation, it says so expressly. (Penal Code 799.) Almost every single claim has a statute of limitation to protect defendants from "defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps." (Fox v. Ethicon Endo-Surgery, Inc. (2005) 35 Cal.4th 797, 806.)

Third, the court locates the relevant statute of limitation for the CRD's administrative claims. Govt Code 12960 applies to the filing of the administrative complaint or Director's complaint. (Romano v. Rockwell Internat., Inc. (1996) 14 Cal.4th 479, 492-492.) Govt Code 12965 applies to the filing of the subsequent civil action. They are separate and distinct. (Govt Code 12930(f)(1)[administrative investigation], (h)[civil action].)

A fair reading of the statute is that the CRD can assert claims under section 12960(c), that the CRD can assert group claims under Govt Code 12961, and that both are covered by the statute of limitations in Govt Code 12960. Section 12960 does state both "(a) This article governs the procedure …" and (d) "No complaint may be filed …"

Fourth, the court must identify the relevant version of Govt Code 12960. Govt Code 12960 had a one-year statute of limitation on 6/18/19 (when the CRD filed the Director's Complaint) and

effective 1/1/20 has a three-year statute of limitation.

Govt Code 12960(d) as of 6/18/19 stated: " "No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred, …"

Govt Code 12060(e)(5) as of 1/1/20 states: "A complaint alleging … any other violation of Article 1 (commencing with Section 12940) of Chapter 6 shall not be filed after the expiration of three years from the date upon which the unlawful practice or refusal to cooperate occurred"].)

The law in this area is settled. "Once a claim has lapsed (under the formerly applicable statute of limitations), revival of the claim is seen as a retroactive application of the law under an enlarged statute of limitations. Lapsed claims will not be considered revived without express language of revival.

(Quarry v. Doe I (2012) 53 Cal.4th 945, 957.) (See also Douglas Aircraft Co. v. Cranston (1962) 58 Cal.2d 462, 465 ["unless the statute expressly provides to the contrary any such enlargement applies to matters pending but not already barred."].)

The relevant version of Govt Code 12960 is the one-year statute of limitation on 6/18/19, but the three-year statute of limitation applies to the claims that had not lapsed before 1/1/20.

Fifth, the court looks at the claims that are asserted. The CRD is asserting group claims regarding alleged ongoing patterns of harassment and discrimination. A pattern or practice is an ongoing corporate action.

Sixth, the court looks at "continuous accrual" and "continuing violation" and how they apply to a pattern or practice.

There is "continuous accrual" of the claim for every day the practices continue. (Aryeh v. Canon Business Solutions, Inc. (2013) 55 Cal.4th 1185, 1198-1199.) There is a new claim for group harassment every day that the pattern or practice is in effect. Similarly,

there is a new claim for group discrimination every day that the pattern or practice of discrimination is in effect.

The continuing violation doctrine does not apply. An individual can assert a claim for a violation outside the statute of limitation period when the employer's actions should be viewed as a single, actionable course of conduct with a final action inside the statute of limitations period. (Alch v. Superior Court (2004) 122 Cal.App.4th 339, 371.) In a group claim, the analysis is different. Alch v. Superior Court (2004) 122 Cal.App.4th 339, 374-375, states:

The continuing violation theory as asserted by an individual "shows its inapplicability to claims of a companywide pattern or practice of unlawful discrimination. … However, in pattern and practice cases … no relief is sought for actions outside the limitations period. Relief is sought only for enforcement of the discriminatory policy during the limitations period. … the Richards test [for continuing violation] is entirely inapposite to a case of continuing systemic

discrimination against a class. … [That noted,] a continuing violation may be found when a corporate policy is initiated before the limitations period, but continues in effect within that period to the detriment of the employee."

[End of block quotation.]

Therefore, the CRD can assert that the pattern or practice was unlawful for any given day that is within the statute of limitation. But the CRD is barred by the statute of limitation from asserting that the pattern or practice was unlawful on days earlier than the statute of limitation.

Seventh, the court applies the law to the facts. The CRD filed the Director's Complaint on 6/18/19. When the CRD filed its administrative complaint on 6/18/19, it covered alleged continuing violations going back one year to 6/18/18. As of 6/18/19, the claims arising before 6/18/19 had lapsed. Under Quarry, 53 Cal.4th at 958, Tesla could rely on the fact that the claims arising before 6/18/19 had lapsed and could conduct it affairs accordingly.

When Govt Code Govt Code 12960(e)(5) was added on 1/1/20 it permitted claims arising after 1/1/17 except for the claims that had already lapsed. The new statute of limitations could not revive claims that had already lapsed. The new statute therefore did not revive the claims that arose from 1/1/17 through 6/18/18. Central to this analysis is that the CRD is asserting a group pattern or practice claim. Under the doctrine of "continuous accrual," with every new day there is a new claim that the alleged pattern or practice is unlawful. Similarly, with every new day the claims that arose one year and one day in the past are time barred. The later enacted longer statute of limitations cannot revive those lapsed claims.

It is immaterial that the CRD's investigation was "pending" on 1/1/20. The CRD seeks refuge in Mojica v. 4311 Wilshire, LLC (2005) 131 Cal.App.4th 1069, 1072, which states: "While [a plaintiff's] complaint [is] pending, she was entitled to catch the windfall of any liberalization of the statute of limitations." (Mojica v. 4311 Wilshire, LLC (2005) 131 Cal.App.4th 1069, 1072.) But a few sentences later Mojica states: ""[a] new statute that enlarges a statutory limitations period applies to actions that are not already barred by the original limitations period at the time the new statute goes into effect." The key point is that when the CRD's Director's complaint was filed on 6/18/19 the claims arising before 6/18/18 were already time barred.

The result is that the court finds for purposes of this discovery order that the CRD may prosecute claims arising on the days within one year of the CRD's filing of its administrative complaint on 6/18/19. This means the CRD can prosecute claims arising on the days from 6/18/18 through the present.

The above analysis is focused on the statute of limitations in 12960 for the Director to file the Director's administrative complaint. The above does not address the statute of limitations in 12965 for the Director to file the civil action. (Govt Code 12965(a)(5), with Emergency Rule 9 and other extensions.)

"RELEVANT TO" THE SUBJECT MATTER INVOLVED IN THE PENDING ACTION.

The temporal scope of discovery can be broader than the temporal scope of the subject matter

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

because discovery includes information "relevant to" the subject matter. As noted in prior IDC responses, "Case law suggests that in a discrimination or harassment case that discovery frequently extends to 2 years prior to the statute of limitations period. (Kresefsky v. Panasonic Communs. & Sys. Co. (D.N.J., 1996) 169 F.R.D. 54, 65; Robbins v. Camden City Board of Ed, 105 FRD 49, 63 (D.N.J. 1985); Hardrick v. Legal Services Corp., 96 F.R.D. 617, 618-619.)"

On the facts of this case, the court will use a slight extension of what appears to be the standard scope of relevance in similar cases and find that discovery extends back to two and a half years before the statute of limitation to 1/1/16. A two-and-a-half year period of discovery before the statute of limitation would permit the CRD to obtain information about whether Tesla was on notice of the alleged pattern or practice of harassment before 6/18/18. That same time period for discovery would permit Tesla to establish that before 6/18/18 that it was not on notice of any prior FEHA violations, or that there were only isolated FEHA violations, or that it promptly and appropriately addressed any FEHA violations.

The CRD has presented evidence that there were incidents of racial harassment at Tesla going back to 2014. (The court takes judicial notice of the filings in Vaughn v. Tesla.) The existence of actual prior incidents is not directly relevant to the subject matter of this case, the scope of discovery, the admission of evidence, or the substantive statute of

limitation in this case. The court considers a hypothetical. The temporal scope of discovery in a CRD claim filed in 2022 for sex harassment against flight attendants at an airline is defined by the statute of limitations for that claim. The scope of discovery would not be expanded back to the 1950s even though there might be reliable publicly available information that there was sexual harassment of flight attendants at the airline in the 1950s.

CONCLUSION – TEMPORAL SCOPE

The court finds for purposes of discovery that the when the CRD filed its Director's complaint on 6/18/19, it covered alleged violations after 6/18/18 and that claims arising before 6/18/18 had lapsed and were not revived when Govt Code 12960 was amended. That is the benchmark for the analysis of temporal relevance. The court extends that back two and a half years. The temporal scope of discovery relevance is from 1/1/16 to the present.

GENERAL ORDER - GEOGRAPHIC SCOPE.

The court repeats the guidance in the IDC letter of 10/6/22, but now as an order.

Regarding the geographic scope of the subject matter, the scope of the CRD's enforcement extends to all of California but does not extend outside California. The CRD alleges a pattern of statewide violations. Given that allegation, the geographic scope of discovery is statewide.

The court ORDERS the CRD to review the information it gathered in the administrative investigation and consider whether the alleged harassment or discrimination has a geographic or departmental focus. If the case is about a statewide group pattern of promotion and compensation disparity in the marketing and sales departments, then that is one situation. But if the case is about group harassment at the Fremont factory, then that is another situation. (Estrada v. Royalty

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

Carpet Mills, Inc. (2022) 76 Cal.App.5th 685, 713 fn8 [review granted] [stating, in context of claim on behalf of the LWDA, "We encourage counsel to work with the trial courts during trial planning to define a workable group or groups of aggrieved employees for which violations can more easily be shown"].)

Regarding the geographic location of documents and workers, Tesla probably has an obligation to produce documents and workers even if they are currently located outside of California. Much of the subject matter of the case occurred before 12/1/21. An SEC filing that states: "On December 1, 2021, Tesla, Inc. relocated its corporate headquarters to Gigafactory Texas at 13101 Harold Green Road, Austin, Texas 78725." It is unlikely that a person or entity that is subject to the court's jurisdiction in one state can avoid discovery by removing a worker or documents to another state.

GENERAL ORDER – PRIVACY OF TESLA EMPLOYEES.

The parties state that they will enter into a protective order. This will presumably restrict the use and disclosure of confidential information. (Moorer v. Noble L.A. Events, Inc. (2019) 32 Cal.App.5th 736, 743 ["Moorer can obtain the other aggrieved employees' contact information pursuant to a protective order, which would safeguard their privacy rights"].)

Regarding contact information, the contact information of workers assigned to any Tesla place of business is relevant and not particularly private. (Williams v. Sup Ct (2017) 3 Cal.5th 531, 544.) (See also Form Interrogatory 12.0 et seq.) (See also Puerto v. Superior Court (2008) 158 Cal.App.4th 1242, 1255 [noting limited "dangers of being 'outed' as individuals who work at a grocery store"].) The court orders that Tesla must disclose the names and contact information of workers, whether employed directly or through staffing agencies. A Belaire-West notice is not required to protect the privacy of workers regarding their names and contact information. (See IDC of 7/20/22 and IDC response of 9/14/22.)

The CRD has identified various statutes and regulations that require Tesla to report and to maintain certain employment information. Where the statutes and regulations require Tesla to report information to any public entity (e.g., Govt Code 12299), the court orders that Tesla must produce the reports to CRD.

Regarding personnel records, the personnel records of workers assigned to any Tesla place of business are more private than the contact information.

Where the statutes and regulations require Tesla to simply maintain information (e.g., Govt Code 12946, 2 CCR 11013(c)), the court's analysis of privacy, relevance, and burden will vary with the information at issue and the nature of the claim asserted.

Tesla must produce de-identified data about employee classifications, promotions, compensation, and similar matters. The de-identification would protect the privacy interests of the works while permitting an evaluation of any unlawful pattern or practice. (CCP 1985.6(h).) This information is relevant to the discrimination claims.

The court has considered Rich v. Martin Marietta Corp. (10th Cir., 1975) 522 F.2d 333, 242-345,

where the court considered the case law on discovery in EEOC cases in evaluating whether the defendant was required to produce statistical information. The court then stated, "The plaintiffs' requested information as to hiring, firing, promotion and demotion of blacks, Hispanos and women on a plant-wide basis and within individual departments was relevant in either an individual or class action. Particularly in light of the contention of the defendant and the findings of the court that the circumstantial evidence was ambiguous, it became the more necessary for the plant-wide statistics and facts to be obtained and presented, for they very likely would prove crucial to the establishing or failure to establish a prima facie case."

Tesla must produce all records of complaints and investigations, but that Tesla can withhold other employment information until the CRD gets privacy waivers from individual workers either (1) through individual requests or (2) a Belaire-West letter with an opt-out process or (3) compliance with the CCP 1985.6 subpoena process. The court finds that an opt-out process is adequate because the CCP 1985.6 subpoena process for employment records places the burden on the employee to object to production. This information is relevant to the harassment claims.

The court has considered U.S. E.E.O.C. v. ABM Industries Inc. (E.D. Cal., 2008) 2008 WL 5385618, which concerned claims of sexual harassment by a supervisor. The EEOC sought "all documents pertaining to complaints of sexual harassment made to Defendants in California, i.e., pertaining to the California operations of Defendants." The federal trial judge held that the information was relevant but limited it to complaints against management employees in a limited geographic area. (Id at *13.)

For all employment records, there are variations in the relevance and privacy interest of the information in the records. This is a race harassment and discrimination case, so it is unclear why RPD 4 seeks information about birthdate, gender, or visa status. For those items, the balance between relevance and privacy suggests that they not be disclosed.

GENERAL ORDER – PRIVILEGE.

If Tesla is asserting privilege, the Tesla must produce a privilege log as to all withheld documents. (Local Rule 3.31.) The purpose of a privilege log is to substantiate an assertion of privilege and to provide a specific factual description of the withheld documents to permit a judicial evaluation of the claim of work product protection. (CCP 2031.240(b); Catalina Island Yacht Club v. Superior Court (2015) 242 Cal.App.4th 1116, 1125; Best Products, Inc. v. Superior Court (2004) 119 Cal. App. 4th 1181, 1188-1189; Hernandez v. Superior Court (2003) 112 Cal. App. 4th 285, 292.)

GENERAL ORDER – BURDEN

The CRD is asserting harassment and discrimination companywide. Tesla is asserting burden because the CRD is seeking the records for 147,672 employees who were employed companywide since 2014. The court orders the parties meet and confer to develop a sampling protocol that permits the CRD to get reliable and admissible evidence relating to the alleged pattern or practice while limiting the burden on Tesla of producing data and employee files.

SAMPLING

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

Sampling can limit burden. If, as alleged by the CRD, the discrimination and harassment is a pattern or practice, then it should show up in a representative sample.

At the hearing on 11/15/22, the CRD stated that sampling was not appropriate for a law enforcement claim by the CRD. The court cannot dismiss the CRD's claim on the basis that it is not manageable. (Estrada v. Royalty Carpet Mills, Inc. (2022) 76 Cal.App.5th 685, 709-714 [review granted].) The court can, however, limit the CRD to discovery that is not unduly burdensome and can require the use of discovery tools that are less burdensome. (CCP 2017.020 and 2019.030.) The United States Secretary of Labor has presented cases at trial using representative testimony. (Reich v. Southern New Eng. Telcoms. Corp. (1st Cir. 1997) 121 F.3d 58, 66-68; Reich v. Southern Maryland (4th Cir. 1995) 43 F.3d 949, 951.) If the Secretary of Labor can take case to trial with representative testimony, then the CRD can do the same.

Relevant to the ability of the CRD to prosecute wide-ranging claims through a potentially unmanageable trial, the California Supreme Court will soon consider the issue of "Do trial courts have inherent authority to ensure that claims under the Private Attorneys General Act (Lab. Code, § 2698 et seq.) will be manageable at trial, and to strike or narrow such claims if they cannot be managed?" (Estrada v. Royalty Mills, S274340.) Claims asserted on behalf of the LWDA under the PAGA are claims on behalf of the State of California. (ZB, N.A. v. Superior Court of San Diego County (2019) 8 Cal.5th 175, 185.) Therefore, the Supreme Court will implicitly, if not expressly, be deciding whether courts can limit the scope of law enforcement trials in the interest of case and trial management.

The use of sampling in discovery is inextricably intertwined with the use of sampling in the presentation of evidence. At trial the CRD will presumably need to present evidence regarding company-wide practices through representative testimony from an adequate number of randomly selected employees. (Duran v. U.S. Bank Nat, Assn (2014) 59 Cal.4th 1, 42-45.)

In Duran, the California Supreme Court suggested that expert analysis might be required to determine an adequate number of randomly selected employees. The Court stated that the trial court "chose a sample size of 20, plus the two named plaintiffs. It did so without input from either side's statistical experts." (59 Cal.4th at 42.) The Supreme Court stated, "With input from the parties' experts, the court must determine that a chosen sample size is statistically appropriate and capable of producing valid results within a reasonable margin of error." (59 Cal.4th at 42.) The Court criticized the trial court, stating, "the trial court invented its own sampling methodology, without input from the parties' experts." (59 Cal.4th at 49.)

In Duran, the Court indicated that the parties could agree on a sampling approach. Duran states, "By agreeing on a sampling approach, both sides could expedite resolution while preserving their competing interests in calculating damages." (59 Cal.4th at 40, fn 34.)

Some unpublished federal trial court opinions have found that the use of 10% samples is appropriate. (Brum v. MarketSource, Inc. (E.D. Cal., 2018) 2018 WL 3861558 at *5 ["As for wage statements, defendants' offer to produce only a one percent sampling of the approximately 7,400 putative class members is unreasonable. … The court finds that a 10 percent sample is an adequate sample size to allow plaintiffs to assess commonality and typicality while limiting

defendants' burden of production."]; (Talavera v. Sun Maid Growers of California (E.D. Cal., 2017) 2017 WL 495635 at *4 ["Defendants states that this request covers more than 5,000 employees during the relevant time period and is enormously burdensome" and court concluded "Considering the factors identified by Rule 26 in seeking class certification in this action, the Court finds that a ten percent random sampling is proportional to the needs of the case"]; Romo v. GMRI, Inc. (C.D. Cal., 2013) 2013 WL 11310656 at *5 ["a more reasonable limit on discovery as to whether there is an illegal company-wide policy and/or whether class treatment is appropriate would be the production of documents from a 20 percent random sample of the Olive Garden locations in the state of California"]; Kaminske v. JP Morgan Chase Bank N.A. (C.D. Cal., 2010) 2010 WL 5782995 at *5 ["Defendant shall produce information for a random sample of ten percent of the putative class members, which the Court understands number approximately 1,700"].)

The federal decisions appear to concern sampling for class certification purposes and not for trial purposes. Furthermore, the federal decisions appear to be based on either negotiation between the parties or non-expert analysis by the court. The federal decisions do not appear to be based on the expert statistical opinions that Duran suggested were required to support sampling at trial in the absence of agreement among the parties.

SELECTION OF SAMPLE. The court orders the parties to select a sample that appears adequate. The parties must define the group to be sampled. The sample can be a sample of all California workers, or there could be one sample for management, one sample for engineering and design, one sample for the Fremont factory, and so forth. Or the parties may retain experts on statistics to develop a sampling plan.

SIZE OF SAMPLE. The court orders the parties to select a sample of appropriate size so that it is statistically relevant. The parties must determine the size of the sample. It can be as simple as Defendant may make an alphabetical list of the employees and selected every fifth or tenth or twentieth or fiftieth person.

STIPULATION IN ANY AGREED SAMPLE

To obtain the discovery required to prepare for trial, a plaintiff can reasonably seek (1) broad discovery, from which they can then identify an adequate number of randomly selected employees or (2) more focused discovery relating to a certain number of randomly selected employees, based on a stipulation with the defendant that the "certain number" with an agreed sampling protocol is a Duran-compliant adequate number of randomly selected employees.

If the parties cannot agree that (1) the random sample complies with the Duran due process requirements for the use of sampling and (2) both parties will be limited to that data set, then the court would be inclined to order (1) that plaintiff is entitled to the contact information and data for all relevant employees or (2) that the court appoint an expert to consider the number and attributes of the employees and propose a sampling plan to the court or (3) that a party file a motion supported by expert opinion on sampling, the other side can oppose it, and the court will issue an order based on the competing expert declarations.

If after the completion of sampling one or the other of the parties wants to conduct an additional

round of sampling, then they can make a motion for additional sampling. If the first round of sampling shows no pattern or practice of unlawful activity then there might be little to no reasonable basis for the CRD to seek additional sampling. On the other hand, if the first round of sampling shows a clear pattern or practice of unlawful activity then there might be little to no reasonable basis for Tesla to seek additional sampling. But if the sampling shows equivocal results, then it might be appropriate to enlarge the sampling to see if a larger sample shows clearer results.

MOTION OF CRD TO COMPEL DISCOVERY

The CRD's motion to compel further discovery filed 9/1/22 is GRANTED IN PART.

ALL. All the orders are "GRANTED IN PART" because all discovery is temporally limited from 1/1/16 to the present and all discovery is geographically limited to persons working for Tesla in California.

RFP 1. All payroll information for 2014-present. GRANTED IN PART. The information is relevant. Regarding burden, the court orders the parties to discuss sampling. If the parties cannot agree on a sampling protocol, then the court should agree on how they want to present the proposals and disagreements to the court in a motion and then a party should file a motion.

RFP 2. Applicant information for 2014-present. GRANTED IN PART. See #1.

RFP 3. Promotions information for 2014-present. GRANTED IN PART. See #1.

RFP 4. Employee information for 2014-present. GRANTED IN PART. See #1.

RFP 5. Data dictionaries that explain what data is in what databases. GRANTED. Tesla must produce.

RFP 6. Information reported on W-2 boxes 1,5, 12, 14. DENIED. Employee W-2s are private. (Brown v. Superior Court (1977) 71 Cal.App.3d 141, 143-144.) "The implied taxpayer privilege precludes the forced disclosure of tax returns and of the information contained in those returns." (Siri v. Sutter Home Winery, Inc. (2019) 31 Cal.App.5th 598, 605.) The phrase "and of the information" means what it says. The information on Forms W-2 is private.

RFP 7. Employee information for 2014-present. GRANTED IN PART. See #1.

RFP 8. Documents relating to representation rates by race and job title/position. GRANTED IN PART. Tesla must produce all documents showing representation rates by race and job title/position. All documents "relating to" is overbroad.

RFP 9. Staffing agency documents. GRANTED IN PART. Tesla must produce the agreements with the staffing agency/ies. Tesla is not required to produce "all documents."

RFP 10. Staffing agency worker information for 2014-present. GRANTED IN PART. See RPD #1.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
Rene C. Davidson Courthouse

RFP 11. Staffing agency communications. DENIED without prejudice to CRD seeking at later time. Marginal relevance and significant burden.

RFP 12. Documents about preparation statements made to the press and/or in social media regarding the DFEH's investigation. DENIED. Not relevant to the merits of this case.

RFP 13. Documents about preparation of February 9, 2022 blog posting to website titled, "The DFEH's Misguided Lawsuit." DENIED. Not relevant to the merits of this case.

RFP 14. Communications about preparation of February 9, 2022 blog posting to website titled, "The DFEH's Misguided Lawsuit." DENIED. Not relevant to the merits of this case.

RFP 15. Identities of persons who prepared communications about preparation of February 9, 2022 blog posting to website titled, "The DFEH's Misguided Lawsuit." DENIED. Not relevant to the merits of this case.

RFP 16. Documents about guidance to personnel related to statements to the press and/or social media about the DFEH's investigation or the complaint. GRANTED IN PART. The information is relevant if it effectively states to employees the Tesla policy on harassment or discrimination. Tesla must produce any widely distributed guidance to workers, defined as a distribution to 5 or more persons who are not employed with press or public relations responsibility. Tesla is not required to produce any individualized guidance or information about its press or public relations.

RFP 17. Documents consulted in answering the interrogatories in DFEH's Special Interrogatories, Set One. DENIED. Would tend to reveal attorney work product.

SI 1. Persons who prepared the responses. GRANTED.

SI 2. Identity of persons at each workplace locations in California from January 1, 2014 to the present with employment information. GRANTED IN PART. The production of contact information is limited by the temporal scope. Within the temporal scope, Tesla

must produce the names and contact information of all persons at each workplace locations in California.

SI 3. Identity of staffing agencies. GRANTED. Relevant and not burdensome. Tesla must produce.

SI 4. Identity of persons sent by staffing agencies and information. GRANTED IN PART. The production of contact information is limited by the temporal scope. Within the temporal scope, Tesla must produce the names and contact information of all persons at each workplace locations in California.

SI 5. Identity of persons who prepared the February 9, 2022 blog posting to website titled, "The DFEH's Misguided Lawsuit." DENIED. Not relevant to merits of case.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

SI 6. Identity of communications about the February 9, 2022 blog posting to website titled, "The DFEH's Misguided Lawsuit." DENIED. Not relevant to merits of case.

SI 7. Describe systems for storing personnel information. GRANTED IN PART. Tesla must identify the relevant systems or databases and provide information on what they keep.

SI 8. Describe each Human Resource Information System (HRIS). GRANTED IN PART. Tesla must identify the relevant systems or databases and provide information on what they keep.

SI 9. For each HRIS, describe the way in which each HRIS is organized and maintained. GRANTED IN PART. Tesla must identify the relevant systems or databases and provide information on what they keep.

SI 10. For each HRIS, state dates in use. GRANTED IN PART. Tesla must respond.

SI 11. Identify and describe all HRIS's that pre-date the one currently in use, with information on data migration. GRANTED IN PART. Tesla must respond.

SI 12. For each HRIS, provide an estimate of the number of records in each HRIS and its components. GRANTED IN PART. Tesla must respond.

SI 13. For each HRIS, provide a description of the categories of any PERSONNEL excluded from the HRIS. GRANTED IN PART. Tesla must respond.

SI 14. For each HRIS, provide the name and commonly understood description of each table, data field or variable. GRANTED IN PART. Tesla must respond.

SI 15. For each HRIS, provide the definition of all codes used in the HRIS. GRANTED IN PART. Tesla must respond.

SI 16. For each HRIS, identify the persons responsible for maintaining and updating. GRANTED IN PART. Tesla must respond.

SI 17. For each HRIS where the data is not in a comma delimited file (".csv"), or other commonly used data files, provide file documentation. DENIED. This is an RPD, not an SI. The court would order a response if it were an RPD, so the court encourages Tesla to provide the documentation.

SI 18. Describe your system for collecting and storing complaints about discrimination, harassment, retaliation. GRANTED IN PART. Tesla must respond.

SI 19. Describe the way in which complaint files are organized and maintained. GRANTED IN PART. Tesla must respond.

SI 20. Identify the persons responsible for complaint files. GRANTED IN PART. Tesla must respond.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

MOTION OF TESLA FOR PROTECTIVE ORDER

The Motion of Tesla for protective order from written discovery filed 8/25/22 is GRANTED IN PART. This is the mirror image of the CRD motion.

TIMING OF PRODUCTION

On or before 12/16/22, Tesla must produce to the CRD the responses ordered above. This deadline does not apply to completion of any sampling of employee records.

At the next CMC, the parties are to report on (1) whether Tesla will file a motion for summary judgment based on its evidence that the CRD did not investigate before filing the civil action; (2) whether the CRD has narrowed the geographic or departmental focus of the case, (3) whether the CRD has narrowed the claims at locations or departments to harassment or discrimination, and (4) whether the parties have agreed to a sampling protocol for the employees where the CRD will be seeking employee records that disclose the identity of the employee.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated: 11/18/2022

*[signature]*

Evelio Grillo / Judge