ROBERTA L. STEELE, SBN 188198 (CA)
MARCIA L. MITCHELL, SBN 18122 (WA)
JAMES H. BAKER JR, SBN 291836 (CA)
KENA C. CADOR, SBN 321094 (CA)
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA  94102
Telephone No. (650) 684-0950
Fax No. (415) 522-3425
james.baker@eeoc.gov

*Attorneys for Plaintiff EEOC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> TESLA, INC. <br><br> Defendant. | Case No.:  3:23-cv-04984-JSC <br><br> **PLAINTIFF EEOC'S OPPOSITION TO DEFENDANT TESLA'S NOTICE OF MOTION AND MOTION TO STAY ALL PROCEEDINGS** <br><br> Hearing Date: February 22, 2024 <br> Time: 10:00 AM <br> Judge: Hon. Jacqueline Scott Corey <br> Courtroom: 8 |

1

**TABLE OF CONTENTS**

2 I. INTRODUCTION ....................................................................................... 1

3   A. Procedural and Factual Background ............................................... 3

4   B. The EEOC Finds Black Workers Faced Racial Harassment and
5      Retaliation for Years at Tesla's Fremont Facilities ....................... 3

6   C. The EEOC Met All Requirements for Conducting a Statutorily
      Compliant Conciliation ................................................................... 5

7   D. Vaughn v. Tesla and CRD v. Tesla ................................................. 7

8   E. The EEOC Must Correct Tesla's One-Sided And Inaccurate Narrative ....... 8

9 II. LEGAL ANALYSIS .................................................................................. 10

10   A. *Colorado River* Doctrine Does Not Apply Because the State and
11      Federal Lawsuits Do Not Involve the Same Parties and Same Issues. ...... 11

12   B. Even if the *Colorado River* Doctrine Applies, its Factors Weigh
       Against a Stay. ............................................................................... 13

13      1. The State Cases Will Not Completely Resolve the EEOC's
14         Case (Eighth Factor). .................................................................. 14

15      2. There is No Potential for Piecemeal Litigation (Third Factor) ........ 15

16      3. The Order in Which the Forums Obtained Jurisdiction
           (Fourth Factor) Weighs Against a Stay ...................................... 16

17      4. Federal Law Provides the Rule of Decision of the Merits,
18         and Thus Weighs Against a Stay (Fifth Factor) ......................... 17

19      5. The State Court Proceedings are Inadequate to Protect
           EEOC's Rights (Sixth Factor). ................................................ 18

20      6. Jurisdiction Over Property (First Factor), Forum
21         Convenience (Second Factor), and Forum Shopping (Seventh Factor) Weigh
           Against a Stay. ........................................................................... 19

22   C. There Is No basis for a Stay because the EEOC Satisfied Its
23      Conciliation Obligations ............................................................... 19

24      1. The Supreme Court Has Determined the Allowable Scope
           of Review of the EEOC's Conciliation Efforts ......................... 19

25      2. The Commission Satisfied its Duty to Conciliate ..................... 20

26      3. Judicial Review of the EEOC's Conciliation is Narrow ............ 21

27      4. The Supreme Court Rejected Review of Whether the EEOC
28         Negotiated in "Good Faith" During Conciliation ..................... 22

1

III.   CONCLUSION .................................................................................................................... 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acuna v. Regents of University of California*
   56 Cal. App. 4th 639 (1997) ........................................................................................15

5

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
   843 F.2d 1253 (9th Cir. 1988) ....................................................................................16

6

7

*Arizona ex rel. Horne v. Geo Grp., Inc.*,
   816 F.3d 1189 (9th Cir. 2016) ................................................................................19, 20

8

9

*Brito v. New United Motor* Mfg*., Inc.*,
   No. C 06-06424-JF, 2007 WL 1345197 (N.D. Cal. May 8, 2007) ...........................13

10

*Chacon v. Express Fashion Operations LLC*,
   No. 819CV-00564JLS-DFM, 2020 WL 4004230 (C.D. Cal. Apr. 15, 2020) .........17

11

12

*Co. v. Poway Acad. of Hair Design, Inc.*,
   174 F. Supp. 3d 1231 (S.D. Cal. 2016) .....................................................................19

13

14

*Colorado River Water Conservation Dist. v. United States.*
   424 U.S. 800, 817 (1976) .......................................................................................11, 13

15

*Department of Fair Employment and Housing v. Tesla, Inc.*,
   Alameda County Superior Court No. RG22CV0006830 .............................................1

16

17

*Di'az v. Tesla*,
   598 F. Supp. 3d 809 (N.D. Cal. 2022) ........................................................................9

18

19

*E.E.O.C. v. California Psychiatric Transitions, Inc.*,
   725 F. Supp. 2d 1100 (E.D. Cal. 2010) .....................................................................21

20

*E.E.O.C. v. Frank's Nursery & Crafts, Inc.*,
   177 F.3d 448 (6th Cir. 1999) ....................................................................................15

21

22

*E.E.O.C. v. Sterling Jewelers Inc.*,
   801 F.3d 96 (2d Cir. 2015) .........................................................................................21

23

24

*EEOC v. Amsted Rail Company, Inc.*,
   169 F.Supp.3d 877 (S.D. Ill. 2016) ...........................................................................22

25

*EEOC v. Goodyear Aerospace Corp.*,
   813 F.2d 1539 (9th Cir.1987) ....................................................................................12

26

27

*EEOC v. Lawler Foods, Inc.*,
   2015 U.S. Dist. LEXIS 167178 (S.D. Tex. Dec. 4, 2015) .........................................22

28

*EEOC v. Mach Mining*,
575. U.S. 480, 494 (2015) ........................................................................ *passim*

*EEOC v. MJC, Inc.*,
400 F. Supp. 3d 1023 (D. Haw. 2019) ...............................................................22

*EEOC v. Shell Oil Co.*,
466 U.S. 54 (1984) ...................................................................................................3

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ........................................................................ *passim*

*Ernest Bock, LLC v. Steelman*,
76 F.4th 827 (9th Cir. 2023) ........................................................................ *passim*

*Flait v. N. Am. Watch Corp.*,
3 Cal. App. 4th 467, 4 Cal. Rptr. 2d 522 (1992), reh'g denied and opinion
modified (Mar. 5, 1992) ...........................................................................13

*Gallagher v. Dillon Grp.*
2003-I, No. CV-09-2135-SBA, 2010 WL 890056 (N.D. Cal. Mar. 8, 2010).........................11

*Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*,
*446 U.S. 318 (1980)* ...........................................................................................3

*Goodin v. Vendley*,
356 F. Supp. 3d 935 (N.D. Cal. 2018) ........................................................................ *passim*

*James v. San Diego Christian Coll.*,
14CV314 BEN DHB, 2015 WL 915366, at *2 (S.D. Cal. Mar. 3, 2015) ............................18

*Kremer v. Chem. Constr. Corp.*,
456 U.S. 461 (1982)...................................................................................................3, 15

*Melvin D. Berry III v. Tesla, Inc.*
*dba Tesla Motors, Inc.* Alameda County Super. Ct. RG21104057 (2021)............................10

*Montanore Minerals Corp. v. Bakie*,
867 F.3d 1160 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc*
(Oct. 18, 2017) ...........................................................................................11

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)...................................................................................................15, 17

*Nakash v. Marciano*,
882 F.2d 1411 (9th Cir. 1989) ...........................................................................11, 13

*Riley v. Bd. of Trustees of California State Univ.*,
No. 13-CV-02983-JD, 2015 WL 2198247 (N.D. Cal. May 11, 2015) ....................................17

*Riley v. City of Richmond*
  No. C-13-4752 MMC, 2014 WL 5073804 (N.D. Cal. Oct. 9, 2014)......................................18

*Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*,
  253 F. Supp. 3d 210 (D.D.C. 2017) ....................................................................................12

*Scottsdale Ins. Co. v. Parmerlee*,
  No. 19-MC-80298, 2020 WL 1332146, at *5 (N.D. Cal. Mar. 23, 2020) ..............................13

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*,
  862 F.3d 835 (9th Cir. 2017) ...........................................................................11, 13, 16, 17

*Sonoma Springs Ltd. P'ship v. Fid. & Deposit Co. of Maryland*,
  No. 318CV00021LRHVPC, 2018 WL 4038110 (D. Nev. Aug. 23, 2018)................12, 14, 15

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ..............................................................................................15

*Tarin v. Cnty. of Los Angeles*,
  123 F.3d 1259 (9th Cir. 1997) ............................................................................................13

*Thomas v. City of Beaverton*,
  379 F.3d 802 (9th Cir. 2004) ..............................................................................................13

*Travelers Indem. Co. v. Madonna*,
  914 F.2d 1364 (9th Cir. 1990) ............................................................................................18

*U.S. Equal Emp. Opportunity Comm'n v. Dimensions Healthcare Sys.*,
  188 F. Supp. 3d 517 (D. Md. 2016) .....................................................................................23

*U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*,
  306 F. Supp. 3d 1204 (D. Haw. 2018) .................................................................................23

*U.S. v. Morros*,
  268 F.3d 695 (9th Cir. 2001) ..............................................................................................16

*United States v. State Water Res. Control Bd.*,
  988 F.3d 1194 (9th Cir. 2021) ............................................................................................14

*United States v. Waupaca Cnty.*,
  No. 11-C-589, 2011 WL 6202809 (E.D. Wis. Dec. 13, 2011) ...................................16, 18, 19

*Vasquez v. Cnty. of Los Angeles*,
  349 F.3d 634 (9th Cir. 2003) ..............................................................................................13

*Vaughn, et al. v. Tesla, Inc., et. al.*,
  Alameda County Superior Court No. RG17882082 ................................................................1

**Statutes**

42 U.S.C.A. § 2000e-5(f)(1) and (f)(3) .........................................................................19

42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a) ....................................................................3

42 U.S.C. §2000e-5(b) ................................................................................. *passim*

42 U.S.C. §2000e-5(f)(1) ...............................................................................................3

42 U.S.C. § 2000e-8(b) ..................................................................................................6

California Fair Employment and Housing Act ..........................................................6, 7

Civil Rights Act of 1964 Title VII .............................................................. *passim*

**Other Authorities**

29 C.F.R. §1601.12(a)(3) ..............................................................................................6

FRCP 23 ........................................................................................................................14

1

## I.       INTRODUCTION

Tesla's Motion to Stay presents two discrete issues for resolution by this Court.  The first is whether a stay is warranted under the *Colorado River* doctrine due to pending state court actions against Tesla to which the EEOC is not a party.  The second is whether a stay is necessary to compel the parties to resume conciliation.  (ECF 22, p. 1)  The answer to each question is a resounding "no". Tesla devotes half of its 22-page pleading recounting so-called "facts" that are irrelevant because they have nothing to do with the two issues before the Court or are purely speculation. Recycling a failed playbook, scripted to smear the EEOC, Tesla has filed a groundless motion in a transparent attempt to deflect attention from the EEOC's substantive allegations and the serious racial problems that pervade its Fremont Facilities.[1]

Tesla's reliance on the *Colorado River* doctrine wholly lacks merit. Tesla conveniently ignored recent controlling and dispositive Ninth Circuit authority holding that the *Colorado River* doctrine only applies if the same parties to the federal action are also involved in the state court action and if the state court can completely resolve the federal claims.  *See, e.g., Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 840 (9th Cir. 2023) ("[T]he *Colorado River* doctrine applies *only* if there is parallel state court litigation involving *the same parties* and issues that will completely and finally resolve the issues between the parties . . . ." ) (quoting *Marcus v. Abington*, 38 F.3d 1367, 1371–72 (3d Cir. 1994)) (emphasis added).  The EEOC is not a party to either *Vaughn v. Tesla, Inc.* or *Department of Fair Employment and Housing v. Tesla Inc.*[2] (State Cases).  Those cases are pending in state superior court and raise claims under state law.  The EEOC, a federal agency, has sued in federal court for claims arising under federal law, in this case, Title VII.  The State Cases cannot completely resolve the EEOC's claims since private litigants are not and cannot be proxies for the EEOC. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).  Moreover, the private plaintiffs and CRD have not pled federal claims.  Since Tesla cannot satisfy the essential prerequisite of

---

[1] The EEOC uses the term "Fremont Facilities" to refer to Tesla's workforce in Fremont, CA. *See* ECF 1, at pg. 2.

[2] Both actions are pending in the Superior Court for Alameda County.  *Vaughn, et al. v. Tesla, Inc., et. al.*, Alameda County Superior Court No. RG17882082 and *Department of Fair Employment and Housing v. Tesla, Inc.*, Alameda County Superior Court No. RG22CV0006830.  The state agency has changed its name to the California Civil Rights Department and will be referred to as CRD.

1  establishing parallel state court actions involving the same parties, this Court is foreclosed from

2  applying the *Colorado River* doctrine.

3  Tesla's request for a stay based on the EEOC's pre-suit conciliation process is equally

4  groundless.  The EEOC has fulfilled its statutory obligation to conciliate.  The EEOC issued a Letter

5  of Determination (Determination) describing the aggrieved class of Black workers and finding

6  reasonable cause to believe that Tesla has violated Title VII at its Fremont Facilities since 2015.  The

7  EEOC invited Tesla to attempt to conciliate[3] the charge.  After Tesla accepted the invitation, the

8  EEOC communicated with Tesla for over a year in an effort to facilitate its statutorily mandated

9  settlement discussions.  The EEOC filed this lawsuit only after concluding that further conciliation

10  efforts would be futile or non-productive.  This is all the statute requires.

11  This Court should deny Tesla's motion so that the EEOC may proceed to litigate the serious

12  allegations of egregious race harassment and retaliation in its Complaint.  Black employees have

13  endured offensive harassment at Tesla: vile epithets and slurs, including Nigger, Nigga[4] monkey,

14  boy, and Black bitch, racist stereotyping, "jokes" and graffiti have infected their daily experience.

15  Tesla has adopted some EEO policies and anemically investigated some discrimination complaints.

16  More often, Tesla has failed to repair its broken workplace.  Instead, Tesla persistently discounts,

17  ignores, and derides painful accounts from workers who have endured race-based indignities while

18  simply trying to earn a living, and vilifies anyone who dares to mount a challenge.

19  Tesla has evaded accountability for systemic racial harassment and retaliation that has

20  harmed potentially thousands of Black workers for nearly a decade.  After uncovering the scope and

21  magnitude of the problem, the EEOC could not relinquish its obligation to vindicate the public

22  interests while the CRD and private litigants pursue claims under state law which cannot resolve the

23  EEOC's Title VII claims.  Nor is there any guarantee that their lawsuits will succeed, will avoid

---

24  [3] Participants' statements and actions during EEOC conciliation may not be "used as evidence in a
25  subsequent proceeding without the written consent of the persons concerned."  42 U.S.C. §2000e-
    5(b).

26  [4]  The EEOC recognizes that these terms are highly offensive and does not use them here lightly.
    However, the agency believes it is important to use the full term, at least initially, for the Court to
27  understand the gravity and impact of the words that were used at Tesla.  The EEOC will substitute
    "N****r" and "N***a" throughout the rest of the brief although Tesla workers used the fully,
28  offensive terms at the worksite.

1    falling prey to Tesla's litigious stall tactics, or even that a settlement would provide relief to the class

2    on whose behalf the EEOC sued. As the federal law enforcement agency, the EEOC is uniquely

3    poised to fulfill its Congressional mandate to enforce Title VII.

4         **A.      Procedural and Factual Background**

5         The EEOC is a federal law enforcement agency that "exists to advance the public interest in

6    preventing and remedying employment discrimination. . . ."  *Gen. Tel. Co. of the Nw. v. Equal Emp.*

7    *Opportunity Comm'n, 446 U.S. 318, 331 (1980)*. It does so by enforcing federal  statutes, including

8    Title VII of the Civil Rights Act of 1964 as amended (Title VII).  *See Kremer v. Chem. Constr.*

9    *Corp.*, 456 U.S. 461, 468 (1982) ("Congress enacted Title VII to assure equality of employment

10   opportunities without distinction with respect to race, color, religion, sex, or national origin" and

11   "[t]o this end the EEOC was created and the federal courts were entrusted with ultimate enforcement

12   responsibility.").

13        Title VII prohibits discrimination based on race and forbids employers from retaliating

14   against individuals who oppose unlawful employment practices, including racial harassment.  42

15   U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a).  Title VII grants the EEOC "[p]rimary responsibility for

16   enforcing Title VII," *EEOC v. Shell Oil Co.*, 466 U.S. 54, 61-62 (1984).  Before initiating an

17   enforcement action, the EEOC must: (1) receive a charge of discrimination against the employer; (2)

18   provide notice of the charge to the employer; (3) investigate the charge; (4) determine whether

19   "reasonable cause" exists "to believe the charge is true"; and, if so, (5) "endeavor to eliminate any

20   such alleged unlawful employment practice by informal methods of conference, conciliation, and

21   persuasion."  42 U.S.C. § 2000e-5(b).  If the EEOC is "unable to secure from the [employer] a

22   conciliation agreement *acceptable to the Commission,* the Commission may bring a civil action."  42

23   U.S.C. §2000e-5(f)(1)(emphasis added).

24        **B.      The EEOC Finds Black Workers Faced Racial Harassment and Retaliation for**
          **Years at Tesla's Fremont Facilities**
25

26        In March 2022, the EEOC notified Tesla that it had concluded its investigation and was

27   prepared to issue a determination. *Id.*, ¶10.  The EEOC conducted a one-hour "Pre-Determination

28   Interview" (PDI) with David Searle, Tesla's Chief Legal Counsel, Stephanie Stroup, Tesla's In-

1    House Counsel and Sara Begley, outside counsel from the law firm Holland and Knight on March

2    21, 2022.  During the PDI, EEOC's investigator summarized the investigative findings, including the

3    range of racially harassing conduct EEOC uncovered, such as use of racial slurs, verbal threats racist

4    graffiti, race-based "jokes," and race-based stereotyping.  In addition, the EEOC conveyed its

5    findings that employees who reported racial harassment faced retaliation in various forms, including,

6    but not limited to discharge, discipline, schedule changes and involuntary transfers to other

7    departments and that employees feared retaliation for reporting complaints of race-based harassment.

8    *Id.*, ¶11.

9          Issuance of a Determination after conducting a PDI is not a foregone conclusion.  Consistent

10   with agency practices, the EEOC invited Tesla to submit additional evidence or information in

11   writing to rebut the EEOC's PDI or otherwise substantiate its defenses.  *Id.*  Instead of submitting a

12   rebuttal, Tesla pressed to meet with the EEOC officials in-person.

13         On April 29, 2022, Director Sienko spoke to Tesla counsel Sara Begley by telephone at her

14   request.  She complimented the EEOC investigator's PDI and "remarkable job" presenting the facts

15   and evidence leading to the EEOC's cause finding.  Ms. Begley also asked for a meeting to have the

16   opportunity to share information with the EEOC and to "explore the pathway forward" regarding

17   this matter.  Director Sienko asked the EEOC staff to schedule the requested meeting.

18         Director Sienko, and Regional Attorney, Roberta Steele, the two highest-ranking officials in

19   the district and EEOC investigators met via Zoom with Ms. Begley and Ms. Stroup on March 24,

20   2022, for the express purpose of allowing Tesla to present any information and evidence it wished to

21   rebut the EEOC's cause finding.  *Id.*, ¶14.

22         Tesla met with EEOC for about an hour.  *Id.*

23         The EEOC listened to and gave due consideration to Tesla's presentation then granted Tesla

24   another window to supplement the evidentiary record before the EEOC finalized its investigation.

25   *Id.*  Like countless other employers, Tesla could have submitted additional documents, declarations

26   or a summary of testimony from HR representatives or managers who purportedly had information

27   supporting its defenses.  Had Tesla presented persuasive evidence, the EEOC would have continued

28   the investigation, if warranted.  *Id.*, ¶14.

1        The EEOC closed its investigation with a June 1, 2022 Letter of Determination

2    (Determination) finding "reasonable cause to believe Tesla violated Title VII of the Civil Rights Act

3    of 1964, as amended, by subjecting a class of Black employees to a hostile work environment and

4    retaliating against a class of Black employees who engaged in protected activity.  The aggrieved

5    persons include all Black employees who were employed at Respondent's Fremont, CA, facilities at

6    any time since May 29, 2015, to the present, who have been adversely affected by such unlawful

7    employment practices."  *Id.*, ¶15.  The Determination invited Tesla to join the EEOC "in collective

8    efforts toward a just resolution of this matter through informal methods of conciliation."  *Id.,* ¶16.

9        Between July 28, 2022, and June 21, 2023, the EEOC exchanged multiple email messages

10   and phone calls with Tesla to provide it ample opportunity to remedy the discriminatory practices

11   described in its Determination, including sending Tesla a conciliation proposal and attending an in-

12   person conciliation at the EEOC's offices.  *Id.*, ¶17.

13       Director Sienko concluded that further efforts in conciliation would not result in the

14   Commission securing from Defendant a conciliation agreement acceptable to the Commission and

15   issued a notice on June 21, 2023, informing Tesla that such conciliation efforts as are required by

16   law had occurred and had been unsuccessful, and that the EEOC had determined that further

17   conciliation efforts would be futile or non-productive.  *Id*., ¶ 19.

18       **C.    The EEOC Met All Requirements for Conducting a Statutorily Compliant
                Conciliation**

19

20       On May 28, 2019, Chair Burrows, then a Commissioner of the EEOC, issued a sworn

21   Commissioners' charge against Tesla (hereinafter, Commissioners' charge) alleging unlawful

22   employment practices at Tesla's Fremont manufacturing facilities.  [ECF 22-012]  The

23   Commissioners' charge alleged that she had reason to believe that Tesla "may have violated, and

24   may continue to violate, Title VII of the Civil Rights Act of 1964, as amended, by discriminating

25   against employees based on their race (black) and retaliating against employees for engaging in

26   protected activity."  *Id.*  The charge identified potentially unlawful employment practices, including:

27   (1) "[s]ubjecting black employees to an unlawful hostile work environment created by racial

28   harassment, intimidation, and discriminatory treatment because of their race; and; (2) [retaliating

1   against employees for complaining about or expressing opposition to racial harassment and race-

2   based discrimination they experienced or observed." [5]  *Id.*

3           The Commissioners' charge was dually filed with EEOC and the California Department of

4   Fair Employment and Housing (now Civil Rights Division (hereinafter CRD)) .  *Id.*  Contrary to

5   Tesla's assertion, Commissioner Burrows did not file a charge "on behalf of CRD."  She had no

6   authority to do so.  Neither the Title VII nor the worksharing agreement authorize EEOC

7   Commissioners to file a charge on behalf of CRD or any other state agencies, or to allege violations

8   of state laws.

9           Congress authorized EEOC to cooperate with state and local fair employment practices

10  agencies (FEPAs), like CRD, by entering into worksharing agreements which typically provide that

11  state agencies will initially process certain categories of charges and EEOC will initially process

12  others. 42 U.S.C. § 2000e-8(b).  Worksharing agreements do not relinquish EEOC's jurisdiction

13  over Title VII claims or invest in EEOC authority to file charges alleging violations of state law or to

14  otherwise enforce state civil rights statutes.

15          Under the EEOC-CRD worksharing agreement, the EEOC has primary responsibility for

16  resolving charges originally received by the EEOC and "[a]ll charges filed by the EEOC

17  Commissioners."  CRD's Director issued his own Complaint against Tesla alleging violations of one

18  or more bases under the California Fair Employment and Housing Act, *Kevin Kish v. Tesla*, on June

19  18, 2019.  [Ex. TK]  The Kish Complaint does not allege violations of Title VII. [6]

20

21  [5] Section 706(b) of Title VII requires minimally that a charge must be in writing under oath or
    affirmation and that it must contain "such information and be in such form as the Commission

22  requires."  42 U.S.C. §2000e-5(b).  The corresponding regulations provide, in pertinent part, that
    "[e]ach charge should contain . . . [a] clear and concise statement of the facts, including pertinent

23  dates, constituting the alleged unlawful employment practices."  29 C.F.R. §1601.12(a)(3).  The
    Commissioners' charge satisfies the statutory and regulatory requirements: she made the allegations

24  in writing and under oath; the charge includes a concise statement describing the alleged unlawful
    employment practices and identifies Black employees at Tesla's Fremont Facility as the victims of

25  the purported discrimination and retaliation.  The charge alleged that Tesla subjected Black
    employees to a racially hostile work environment and retaliated against Black employees for
    opposing discrimination in violation of Title VII.

26  [6] Tesla's assertion that "EEOC and DFEH rarely, if ever, filed overlapping Director's Complaints
    and Commissioners' Charges covering the same alleged allegation" is pure speculation.  The EEOC

27  investigations are confidential.  The EEOC is statutorily prohibited from disclosing the existence of

28  a charge or any information about investigations pursuant to the confidentiality provisions of Title

1    Consistent with the worksharing agreement between the EEOC and CRD, the EEOC

2  investigated the Commissioners' charge.  WSA ¶III(A)(1)(TK) [Tesla Ex. H]; Declaration of Nancy

3  Sienko (hereinafter, Sienko Dec.), ¶8.  The EEOC investigation was thorough and fair.  *Id.*, ¶9.  The

4  EEOC requested and reviewed information produced by Tesla.  *Id.*  The EEOC also collected

5  relevant and persuasive evidence from sources other than Tesla by collecting accounts from Black

6  workers employed by Tesla, and reviewing sworn declarations depositions, trial and arbitration

7  testimony of current and former employees including managers and human resources

8  representatives.  *Id.*  After three years, the EEOC had amassed ample evidence to assess the merits of

9  the allegations in the Commissioner's charge.  *Id.*

10    **D.    Vaughn v. Tesla and CRD v. Tesla.**

11    The EEOC filed this Title VII lawsuit in its own name and in the public interest and on

12  behalf of the class of Black employees described in the Determination on September 28, 2023.  [ECF

13  1]  *See* E*EOC v. Waffle House, Inc*., 534 U.S. 279, 291-92 (2002)(EEOC has "the authority to

14  evaluate the strength of the public interest at stake" and "to determine whether public resources

15  should be committed to the recovery of victim-specific relief.").  The lawsuit alleges that Tesla

16  violated Title VII by racially harassing and retaliating against Black employees and seeks monetary

17  and injunctive relief.  The EEOC is the sole Plaintiff in this case.  It is not a "proxy" for other

18  litigants and does not "stand in the employee's shoes."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279,

19  297 (2002).  The EEOC also did not allege any violations of California law.

20    *Vaughn v. Tesla, Inc.* and *CRD v. Tesla, Inc.* both allege that Tesla violated the California

21  Fair Employment and Housing Act.  *See* ECF 022-010 (Tesla Mtn to Stay Exh D_DFEH 1st Amd

22  Comp); 022-009 (Mtn to Stay Exh C_Vaughn 2nd Amd Compl). Neither lawsuit alleges violations

23  of federal law. *Id*. The EEOC is not a party or participant in either case, and only the EEOC has

24  statutory authority to enforce federal law.

25    In addition, the putative classes in each case are different. The EEOC seeks relief on behalf

26  of Black workers employed at the Fremont Facilities from 2015 to present.  The *Vaughn* putative

27  _____

28  VII and the other statutes it enforces.  In fact, any disclosure in violation of law may result in a fine
   or imprisonment.

1    class, if certified, will cover "Black and/or African Americans who were employed on the

2    production floor at the Tesla Factory at any time from November 9, 2016, to the final disposition of

3    this action, who were not subject to an arbitration agreement for all relief sought for the entire period

4    of their employment at Tesla" and a subset of workers employed at Tesla through staffing agencies.

5    Unlike private litigants, like *Vaughn*, the EEOC is not restricted by the arbitration agreements Tesla

6    has required its employees to sign and can therefore represent their interests of employees subject to

7    arbitration agreement, which Tesla increasingly demanded in the light of publicly-filed litigation.

8    *Waffle House*, 534 U.S. at 297 (arbitration agreement does not bar the EEOC from pursuing victim-

9    specific judicial relief and does not limit the remedies available to the EEOC).

10         CRD's complaint asserts thirteen (13) causes of action at Tesla facilities throughout

11   California dating back to 2012, including unlawful race harassment; race discrimination in terms and

12   condition of employment (including assignment, compensation, discipline, promotion, termination,

13   constructive discharge); retaliation; failure to prevent discrimination, harassment, and retaliation;

14   unequal pay; waiver of rights, forums, or procedures and release of claims; and recordkeeping

15   violations. The breadth of CRD's claims adds to the complexity of the litigation and diminishes the

16   opportunity for an efficient and expeditious result.

17         **E.    The EEOC Must Correct Tesla's One-Sided And Inaccurate Narrative**

18         Tesla is an untrustworthy narrator.  Tesla has selectively curated information and arguments

19   to craft a one-sided and often incomplete narrative purporting to chronicle the EEOC's investigation

20   and motives for filing this lawsuit and exaggerating its own EEO track record.  Although not

21   relevant to this Court's resolution of the Motion to Stay, the EEOC cannot leave unrefuted Tesla's

22   unseemly recitation of its so-called "facts" in an obvious attempt to persuade the Court about the

23   merits of the underlying claims and the EEOC's motivation for filing suit, which is not appropriate.

24   This misinformation campaign must be corrected.

25         Tesla waved its EEO policies, an unsupported reference to hundreds of "Happy Camper"

26

27

28

1   declarations[7] and the arbitration decision in *Lambert v. Tesla* as evidence that it is a model, diverse

2   workplace, devoid of racial hostility or racism.  In an effort to prejudice this Court, Tesla

3   conveniently omitted any reference to adverse evidence, verdicts and judicial findings condemning

4   the company and its actions.

5          Tesla advanced a misleading version of the CRD investigation and steps leading to its

6   lawsuit.  Reprising a state court argument, Tesla asserted that CRD's lawsuit should have been

7   stayed, *inter alia*, because CRD rushed to file its lawsuit after a "sham mediation" that violated its

8   statutorily mandated obligations.  [Brief, p. 9:20-10:5]  Tesla concealed a key, but adverse fact: the

9   state court ruled that the mediation was not a sham, rejected Tesla's characterization of events and

10   denied its motion for a stay.[8]

11          In its moving brief, Tesla flaunted its EEO policies as proof that it adopted systems to

12   prevent discrimination, see ECF 022-11,[9] but it failed to disclose that a federal jury deemed Tesla's

13   policies and procedures so wanting that it awarded a former Black employee $130[10] million in

14   punitive damages after hearing six days of testimony about Tesla's racial harassment. *See Di'az v.*

15   *Tesla*, 598 F. Supp. 3d 809, 841 (N.D. Cal. 2022), motion to certify appeal denied, No. 17-CV-

16   06748-WHO, 2022 WL 2046827 (N.D. Cal. June 7, 2022).  Post-trial, the Honorable William H.

17   Orrick remarked: "The evidence was disturbing. The jury heard that the Tesla factory was saturated

18   with racism;" "[Diaz's] supervisors, and Tesla's broader management structure, did little or nothing

19   to respond [to racial harassment.]"  *Id.* at 816.  And, responding to Tesla's arguments that it should

---

20   [7] Courts often give little weight to "Happy Camper" declarations from current employees because
21   they are inherently suspect given employees may fear for their jobs if they do not comply the
     employer's wishes. Even if true, their experience does not erase the harm suffered by others.

22   [8] [Order re Hearing on Motion to Stay Proceedings, p. 2-3, 06/08/2022] ("The court will not stay the
23   case so that the DFEH can comply with its mandatory dispute resolution process.  First, it appears
     that the DFEH has complied with its mandatory dispute resolution process.  Second, the filing of the
24   civil action does preclude the parties from engaging in the DFEH's dispute resolution process. . .
     Third, if Tesla or the DFEH thinks that a mandatory settlement conference presided over by a
25   judicial officer would be useful, then they can ask the court to set a settlement conference.  (CRC
     3.1380.)

26   [9] It is unclear when these policies were adopted or implemented since most are undated.

27   [10] The jury awarded $6.9 million in compensatory damages and $130 million in punitive damages.
     The Court reduced the award to $1.5 million in compensatory damages and $13.5 million in punitive
     damages on remitter.  *Id.* at 845.  After a second trial on damages only, another jury imposed a fine
28   of $3 million in punitive damages and awarded Di'Az $175,000 for emotional distress.

---

be insulated from liability because of its antidiscrimination policies, Judge Orrick observed:

> Having a policy on paper and effectively protecting employees from known racial harassment are different.  Not only does the evidence support a finding of recklessness or indifference to Diaz's health and safety, it supports a finding that Tesla intentionally built an employment structure that allowed it to take advantage of Diaz's (and others') labor for its benefit while attempting to avoid any of the obligations and responsibilities that employers owe employees. . . . Despite Tesla's attempts to characterize it any other way, its treatment of Diaz—and the treatment of its supervisors and employees (or contractors)—falls high on the reprehensibility scale. . ."

Tesla also failed to disclose adverse arbitration decision awarding a former Black employee over $1 million.  *See Melvin D. Berry III v. Tesla, Inc. dba Tesla Motors, Inc*. Alameda County Super. Ct. RG21104057 (2021) (confirming arbitration award of $1,020,000).

Finally, Tesla attempts to impugn the motives of the EEOC and CRD for filing suit against Tesla.  Tesla asserts that these two lawsuits against it were simply the result of an unseemly turf war between the two agencies relying on scant documents it culled from the docket of *EEOC v. Activision Blizzard, Inc., et al., in United States District Court* (C.D. Cal), No. 2:21-CV-07682. Tesla was not a party to that case and Activision has no bearing on the EEOC's case against Tesla. The EEOC has requested that this Court deny Tesla's request for judicial notice of the Activision documents.

## II.   LEGAL ANALYSIS

The Court should reject Tesla's motion asking the Court to stay an EEOC enforcement action brought in the first instance against Tesla. The U.S. Supreme Court's *Colorado River* holding does not permit a federal court otherwise imbued with jurisdiction over the EEOC's case to essentially kick the EEOC out of court, because of different litigation, by private individuals and a state agency, in state court. Controlling Ninth Circuit precedent holds that the Colorado River doctrine is wholly inapplicable where the federal and state cases lack the same parties and same issues.

Granting a stay of the EEOC's case because of state actions by private plaintiffs and a state enforcement agency would effectively preempt federal government enforcement actions whenever a state or private actor sued a defendant first for overlapping unlawful conduct. Nothing suggests that the Supreme Court or Congress intended federal courts to surrender their jurisdiction out of such

1   deference. The Court should reject Tesla's motion.

2      **A.    *Colorado River* Doctrine Does Not Apply Because the State and Federal Lawsuits
        Do Not Involve the Same Parties and Same Issues.**
3

4          The Ninth Circuit unequivocally held that "the Colorado River doctrine applies only if there

5   is parallel state court litigation involving the same parties and issues that will completely and finally

6   resolve the issues between the parties. *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 840 (9th Cir.

7   2023) (quotations omitted) (emphasis added).  Ernest Bock is dispositive. Tesla has failed to show

8   that the EEOC lawsuit and the State Cases are parallel actions, i.e. involve the same parties and the

9   same claims, a threshold question under Colorado River Water Conservation Dist. v. United States.

10   424 U.S. 800, 817 (1976). Thus, the Court must deny the stay. The pendency of state proceedings

11   does not bar proceedings in federal court concerning the same matter absent "exceptional

12   circumstances where the order to the parties to repair to the state court would clearly serve an

13   important countervailing interest." *Seneca Ins. Co., Inc. v. Strange Land, Inc*., 862 F.3d 835, 845

14   (9th Cir. 2017) (citations omitted)(emphasis added). Federal courts have a "virtually unflagging

15   obligation . . . to exercise jurisdiction given to them." Id. at 817. The EEOC's lawsuit cannot be

16   stayed because this threshold inquiry is not met.

17          The Ninth Circuit requires that the parties to the federal case also be parties to another state

18   case for that case to be considered parallel actions.  If the parties are not the same, the stay will not

19   issue. *See Ernest Bock, LLC* at 833 (plaintiff filed suit against the defendants first in state court and

20   later in federal court); *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1170 (9th Cir. 2017), *as*

21   *amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017) ("The state and federal proceedings []

22   both . . . name the same pertinent parties. . ."); *Nakash v. Marciano*, 882 F.2d 1411, 1426 (9th Cir.

23   1989) ("The present parties are all named in the California suit . . ."); *Goodin v. Vendley*, 356 F.

24   Supp. 3d 935, 944 (N.D. Cal. 2018) (Plaintiffs brought claims against defendant in state and federal

25   courts); *Gallagher v. Dillon Grp*. 2003-I, No. CV-09-2135-SBA, 2010 WL 890056, at *1 (N.D. Cal.

26

27

28

1    Mar. 8, 2010) (same).[11]

2         The EEOC lawsuit and State Cases all involve different parties. *See* ECF 022-010 (Tesla Mtn

3    to Stay Exh D_DFEH 1st Amd Comp); 022-009 (Mtn to Stay Exh C_Vaughn 2nd Amd Compl).

4    And, the EEOC is not a party to either of the State Cases, which involve two, separate and unrelated

5    plaintiffs. Nor is the EEOC a mere stand-in for Tesla's victims in *Vaughn* or the CRD, which are

6    litigating in state court. The EEOC's right of action is independent of any employee's private action

7    rights. *See EEOC v. Goodyear Aerospace Corp*., 813 F.2d 1539, 1542 (9th Cir.1987)*.* When the

8    EEOC files suit it does so in its own name "to vindicate the public interest in preventing

9    employment discrimination." *See EEOC v. Waffle House, Inc*., 534 U.S. 279, 299 (2002). The EEOC

10   filed suit against Tesla after initiating a Commissioner's Charge and investigating the allegations. As

11   the primary enforcer of Title VII, the EEOC's authority to file suit does not derive from or is limited

12   by the suit rights of the victims for whom the EEOC may seek relief. *See Waffle House, Inc*., at 297–

13   98 (2002).

14        Tesla ignores the Ninth Circuit's mandate that the federal and state cases must have the

15   "same parties" to be considered parallel actions. *See* ECF 22 at pg. 13-16. It instead attempts to show

16   other similarities of the EEOC lawsuit and State Cases notwithstanding the different parties. *Id*.[12]

17   While the federal and state proceedings need not be identical in all aspects for them to be considered

18   parallel,[13] *Ernest Bock* and other courts within the Ninth Circuit make clear that *Colorado River*

19   anticipates that the doctrine will only apply when the same parties are concurrently litigating in a

20   parallel state action to stay the federal action. *Ernest Bock*, at 840 (9th Cir. 2023); *see also*, *Sonoma*

21   *Springs Ltd. P'ship v. Fid. & Deposit Co. of Maryland*, No. 318CV00021LRHVPC, 2018 WL

22

23   [11] *See also, Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc*., 253 F. Supp. 3d 210, 220
     (D.D.C. 2017) (confirming that Third, Fourth, Sixth, Eighth, Tenth and Eleventh Circuits all have
24   similar party requirements ).

25   [12] The EEOC also disagrees that its case is parallel to the State Cases. In addition to having different
     plaintiffs, the cases involve different state and federal laws, different temporal scopes, different
26   geographical scopes, different relief sought, different scopes of individuals covered, and different
     administrative prerequisites for filing suit. But none of these differences or similarities can overcome
27   the lack of any other parallel action involving the EEOC.

     [13]*See Ernest Bock* at 840 ("[E]xact parallelism ... is not required. [and] it is enough if the two
28   proceedings are substantially similar.")

4038110, at *4 (D. Nev. Aug. 23, 2018) (same).

Tesla did not cite a single case in the Ninth Circuit granting a stay under the circumstances presented here -- where the federal plaintiff is not also a party to the allegedly parallel state court action. Indeed, all of the *Colorado River* cases Tesla cites involve the same parties litigating in both the federal and state forums. *See Nakash,* 882 F.2d at 1416—17 (same parties); *Scottsdale Ins. Co. v. Parmerlee*, No. 19-MC-80298, 2020 WL 1332146, at *5 (N.D. Cal. Mar. 23, 2020) (same parties); *Goodin*, 356 F. Supp. 3d 935, 944 (N.D.Cal. 2018) (same parties); *Brito v. New United Motor* Mfg*., Inc*., No. C 06-06424-JF, 2007 WL 1345197, at *4 (N.D. Cal. May 8, 2007) (same parties).[14] The logic behind this is fundamental: a *Colorado River* stay is essentially an court order directing the parties to return the state court. *See Seneca Ins. Co*., at 841 (9th Cir. 2017). The EEOC's absence from the State Cases precludes Tesla from establishing that the federal case and State Cases are parallel actions under the Colorado River doctrine.  The Court's inquiry should end here and deny Tesla's motion to stay. *See Ernest Bock,* 76 F.4th at 838 ("Parallelism is a threshold requirement . . .").

### B.    Even if the *Colorado River* Doctrine Applies, its Factors Weigh Against a Stay.

Courts in the Ninth Circuit consider the following eight *Colorado River* factors only if they determine the defendant met the initial threshold of parallelism:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Ernest Bock,* 76 F.4th at 836. "*Any doubt*" as to whether the requirements for a stay under *Colorado River* have been met "*should be resolved against a stay*, not in favor of one." *Id.* at 837, quoting

---

[14] Or they involve cases that support only that courts refer to Title VII when analyzing FEHA claims at summary judgment and do not address the Colorado River doctrine at all.  *See e.g*., *Thomas v. City of Beaverton*, 379 F.3d 802, 813 (9th Cir. 2004); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634 (9th Cir. 2003), as amended (Jan. 2, 2004); *Tarin v. Cnty. of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997) supers. by statute on other grounds; *Flait v. N. Am. Watch Corp*., 3 Cal. App. 4th 467, 4 Cal. Rptr. 2d 522 (1992), reh'g denied and opinion modified (Mar. 5, 1992).

1    *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (emphasis added). Built into

2    each of these factors is the assumption that the parties share another forum Because parallelism

3    between the EEOC case and the State cases does not exist, the Court should not consider the Ninth

4    Circuit's eight factor test for issuing a stay.  But if considered, these factors weigh heavily against

5    granting a stay.

**1.    The State Cases Will Not Completely Resolve the EEOC's Case (Eighth Factor).**

8    Because the eight factor is determinative, the EEOC addresses it first. *See United States v.*

9    *State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) ("The eighth factor—whether the

10   state court proceedings will resolve all issues before the federal court [] controls the outcome.")

11   (citations omitted). *Colorado River* stays "necessarily [contemplate] that the federal court will have

12   nothing further to do in resolving any substantive part of the case." *Ernest Bock*, 76 F.4th at 841,

13   quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)

14   (emphasis added);  Accordingly, the Ninth Circuit held "it would be a serious abuse of discretion" to

15   grant a stay if there is "any substantial doubt" as to whether state court litigation "will be an

16   adequate vehicle for the *complete and prompt* resolution of the issues between the parties." *Id.* at

17   838.

18   A stay is precluded here because neither State Case can completely resolve the EEOC's

19   claims. *See Sonoma Springs Ltd. P'ship*, 2018 WL 4038110, at *4 (D. Nev. Aug. 23, 2018). The

20   EEOC's Title VII claims are not even before the court in either State Case. The EEOC's claims, as

21   explained earlier, are not merely derivative of the claims of plaintiffs or victims in the State Cases.

22   *See Waffle House, Inc.*, 534 U.S. 279 297–98 (2002). The State Cases could be disposed of in ways

23   that are irrelevant to the EEOC's claims. The State Cases could be dismissed on state legal,

24   procedural, or administrative grounds that have no bearing on the EEOC's claims. For instance,

25   Tesla seeks to defeat class action in the *Vaughn* case, whereas the EEOC has not brought a class

26   action under FRCP 23. The courts in the State Cases could issue other rulings modifying the cases in

27   unnumberable ways, such dismissing certain claims or limiting the temporal and geographic scope,

28   all of which are certain not to affect or end the EEOC's lawsuit. *Cf. Sonoma Springs Ltd. P'ship v.*

*Fid. & Deposit Co. of Maryland*, No. 318CV00021LRHVPC, 2018 WL 4038110, at *4 (D. Nev. Aug. 23, 2018) (no stay where "[t]he parties are not the same in the two actions and there are potential outcomes which may have no significant relevance to the action before this court: dismissal, settlement, affirmative defenses and other potential results unrelated to the issues before this court.").

Importantly, *res judicata*, normally key in resolving a subsequent lawsuit, bars only "relitigation of the same cause of action in a second suit between the *same parties or parties in privity with them*." *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 927 (9th Cir. 2006) (emphasis added); *see also*, *E.E.O.C. v. Frank's Nursery & Crafts, Inc*., 177 F.3d 448, 462 (6th Cir. 1999) (citations omitted) (emphasis added). The EEOC has not previously pursued its claims against Tesla in any other forum and is not in privity with any litigants in the State Cases. *Acuna v. Regents of* University *of California* and *Kremer v. Chem. Const. Corp*., cited by Tesla, involved individual plaintiffs who were barred by *res judicata* from re-litigating in a second forum after failing in the first, and are readily distinguishable on that basis. *Acuna v. Regents of University of California* 56 Cal. App. 4th 639, 649 (1997); *Kremer*, 456 U.S. at 465. Any argument by Tesla that the State Cases *might* have *some* collateral effects on some part of the EEOC's case, weighs against a stay because the state court proceedings then would not have "resolve[d] the entire case before the federal court." *Ernest Bock, LLC*, 76 F.4th 827, 840 (9th Cir. 2023) (citations omitted). As such, *res judicata* principles are no guarantor that this Court will have "nothing further to do" after staying this case. *See Moses H. Cone*., 460 U.S. 1, 28.

Since this factor is dispositive, the Court should deny the stay on this basis alone, though other non-dispositive factors also weigh against at stay.

## 2.    There is No Potential for Piecemeal Litigation (Third Factor)

Tesla failed to meet its burden of showing special or exceptional issues about piecemeal litigation that can justify a stay where the parties are not the same. Only "exceptional circumstances" that would be "particularly problematic" will justify a stay when the parties are the same, because staying any case under *Colorado River* "will inevitably involve the possibility of 'conflicting results, piecemeal litigation, and some duplication of judicial efforts,' which are the 'unavoidable price of

1    preserving access to . . . federal relief.'" *Seneca Ins. Co., Inc.*, 862 F.3d at 842 (9th Cir. 2017).

2    Exceptional circumstances occur, as they did  in *Colorado River,* only where there is evidence of a

3    strong federal policy that all claims should be tried in the state courts. *U.S. v. Morros*, 268 F.3d 695,

4    706 (9th Cir. 2001) (finding this factor was met only where "Congress has passed a law expressing a

5    preference for unified state adjudication such that there is evidence of a strong federal policy that all

6    claims should be tried in the state courts.") (citations omitted).

7        Tesla cites to no federal policy or law stating a preference that the EEOC adjudicate its

8    claims in state court. Instead, Congress authorized federal courts to hear EEOC actions, which is

9    where the EEOC brought this action. In the absence of such a policy or law, Tesla seeks a stay based

10   on mere "duplicative motions, discovery requests and court rulings" issued in the State Cases. Tesla

11   does point to any specific rulings nor explain how they are relevant to the EEOC's Title VII claims

12   or Tesla's defenses against the EEOC's claims . *See also infra*, p. 17.  A stay based on Tesla's broad,

13   unsupported argument  would obliterate Congressional intent that the EEOC to represent an interest

14   broader than that of private litigants, and for EEOC to take the lead enforcing Title VII to vindicate

15   the public interest. *See United States v. Waupaca Cnty.*, No. 11-C-589, 2011 WL 6202809 (E.D.

16   Wis. Dec. 13, 2011) (in employment discrimination action, finding that the government, as

17   representative of the citizens, must have wide leeway to pursue its policy goals).  This factor thus

18   does not support a stay.

19              **3.    The Order in Which the Forums Obtained Jurisdiction (Fourth Factor)**

20                     **Weighs Against a Stay**

21        This Court is the first and only court with jurisdiction over the EEOC's Title VII claims

22   against Tesla.  The court in the State Cases have not obtained jurisdiction over the EEOC's Title VII

23   claims or any other Title VII claims because the parties have not pled such claims. *See Goodin*, 946

24   (N.D. Cal. 2018). As such, this case is wholly distinguishable from those in which courts have found

25   that a party "should also be bound by its initial choice of the state forum, given the substantial

26   progress that has occurred in the state court litigation." *Am. Int'l Underwriters (Philippines), Inc. v.*

27   *Cont'l Ins. Co*., 843 F.2d 1253, 1259 (9th Cir. 1988). This court is the *initial* forum for the EEOC. So

28   this factor weighs in favor of the EEOC.

1   Moreover, no important legal questions have been resolved concerning the EEOC's case in

2   any forum that could result in contradictory outcomes against the EEOC. "The touchstone of this

3   [factor] is whether the state court has already decided important legal issues." *See Chacon v. Express*

4   *Fashion Operations LLC*, No. 819CV-00564JLS-DFM, 2020 WL 4004230, at *4 (C.D. Cal. Apr.

5   15, 2020). The EEOC has not participated in any of the discovery, contested or made any motions,

6   or adjudicated *its* claims or Tesla's defenses to *its* claims in the State Cases. Tesla refers to activity

7   in the State Cases dockets, none of which the EEOC has participated in, without identifying any

8   "important legal issues" decided that might affect the EEOC's case.[15] *Cf. Seneca Ins. Co., Inc.*, at

9   843 (9th Cir. 2017) ("There was significant activity in each case by the time the district court

10  reviewed the abstention motion, but neither court had resolved any foundational legal claims."). The

11  *Vaughn* court has yet to decide whether plaintiffs can certify a class action, and if so, which

12  individuals may form the class, let alone litigate the substantive issue of harassment on the merits.

13  *See* Exh. A to Tesla's Motion (a copy of the court docket in the Vaughn Case, at pg. 71-21. The

14  *CRD* case, filed early last year, has also not progressed to litigation of the substantive discrimination

15  issues. Other than Tesla's motion for a stay and related appeals, which were apparently denied, the

16  docket is replete with discovery disputes and related hearings and case management conferences. *See*

17  Exh. B to Tesla's Motion (a copy of the court docket in the *CRD* Case). These are hardly the

18  "foundational legal claims" required to tilt this factor in favor a stay.

19
20      **4.   Federal Law Provides the Rule of Decision of the Merits, and Thus
             Weighs Against a Stay (Fifth Factor).**

21      The EEOC's claims are filed under Title VII, a federal law.  "[T]he presence of federal-law

22  issues must always be a major consideration weighing against surrender [of jurisdiction]."  *Moses H.*

23  *Cone Mem'l Hosp.*., 460 U.S. at 26; *Goodin*, at 946 (N.D. Cal. 2018) (citations omitted).  It is

24  undisputed that federal law provides the rule of decision for all of the EEOC's claims. *See* Tesla

25  Motion, at 18-19. In fact, federal law predominates because the EEOC has only raised federal claims

26

27  [15]  *See also, Riley v. Bd. of Trustees of California State Univ.*, No. 13-CV-02983-JD, 2015 WL
          2198247, at *5 (N.D. Cal. May 11, 2015) (Court need not "root through" party papers to find
28        supporting arguments.)

1  and only in the federal court.  As such, the two cases Tesla relies on, *James v. San Diego Christian*

2  *Coll. and Riley v. City of Richmond*, are of no help because both courts concluded that the plaintiffs'

3  Title VII claims weighed against a stay.  *See*, *James v. San Diego Christian Coll.*, 14CV314 BEN

4  DHB, 2015 WL 915366, at *2 (S.D. Cal. Mar. 3, 2015) (Title VII claims weigh against stay); and

5  R*iley v. City of Richmond* No. C-13-4752 MMC, 2014 WL 5073804, at *3 (N.D. Cal. Oct. 9, 2014)

6  (same).

7  ### 5.  The State Court Proceedings are Inadequate to Protect EEOC's Rights (Sixth Factor).

8

9  Under *Colorado River*, courts consider "whether the state court proceedings can adequately

10  protect the rights of the federal *litigants*."  *Seneca Ins.* Co., at 845 (9th Cir. 2017) (emphasis added).

Notably, this factor is more important when it weighs in favor of federal jurisdiction. *Travelers Ins.*,

11  914 F.2d at 1370; *Goodin*, 356 F. Supp. 3d at 947 ("factor is more relevant when it counsels against

12  abstention.").

13  It bears repeating; the EEOC is not a party in the State Cases. Therefore, neither State Case

14  can protect any of the EEOC's federal rights.  In arguing otherwise, Tesla glosses over the crux of

15  the rights of EEOC as a federal law enforcement agency to focus exclusively on the potential

16  benefits available to individual victims under state law.  Importantly, the EEOC is not just any

17  litigant.  As the agency with a congressional mandate to enforce Title VII, the EEOC is not merely a

18  proxy for Tesla's victims.  *See* supra at pg. 2.  Issuing a stay would deprive the EEOC of the only

19  forum in which it is litigating.  "[T]he fact that the United States itself has decided to bring this

20  lawsuit changes things significantly.  As the representative of the entire citizenry, the government

21  must have wide leeway to pursue its policy goals through litigation of this nature." *United States v.*

22  *Waupaca Cnty.*, 2011 WL 6202809, at *3 (E.D. Wis. Dec. 13, 2011)[16].  Therefore, courts "should be

23  wary about depriving the executive branch of its avenue of choice for pursuing remedial action,

24  particularly under the guise of a rarely-used doctrine like abstention."  *Id.* at *2.  This factor,

25  therefore, weighs decisively against a stay.

26

27  _____

[16] In *Waupaca Cnty*, the U.S. Department of Justice filed a Title VII lawsuit after the individual

28  employee pursued claims through discrimination claims in a state forum.

1

### 6.  Jurisdiction Over Property (First Factor), Forum Convenience (Second Factor), and Forum Shopping (Seventh Factor) Weigh Against a Stay.

2      The first two factors (jurisdiction over property and forum convenience) are neutral because

3 the parties agree they are irrelevant.   The EEOC's case does not involve property and both the

4 federal and state forums are located in the San Francisco Bay Area. *See* ECF 22 at pg. 13, fn 5. Tesla

5 did not address the seventh factor (forum shopping).  Even still, Tesla cannot claim EEOC shopped

6 for its forum since the EEOC's choice of forum is grounded in Title VII. *See* 42 U.S.C.A. § 2000e-

7 5(f)(1) and (f)(3). *See also, Co. v. Poway Acad. of Hair Design, Inc*., 174 F. Supp. 3d 1231, 1237-38

8 (S.D. Cal. 2016) (factor weighs against a stay where nothing suggests litigant sought advantage of

9 federal forum).

10      For all the reasons stated above, this Court should deny the request for a stay.

11     **C.    There Is No basis for a Stay because the EEOC Satisfied Its Conciliation**
       **Obligations**
12

13     **1.    The Supreme Court Has Determined the Allowable Scope of Review of**
              **the EEOC's Conciliation Efforts**

14      Title VII directs the EEOC to engage in mandatory conciliation negotiations before filing

15 suit. 42 U.S.C. § 2000e-5(b).  The Supreme Court has articulated a clear standard for the EEOC to

16 comply with this obligation.  The EEOC must do three things: (1) inform the employer of the

17 allegation; (2) identify which employees or class of employees have suffered; and (3) engage in a

18 discussion, written or oral, giving the employer the opportunity to remedy the discriminatory

19 practice.  *EEOC v. Mach Mining*, 575. U.S. 480, 494 (2015); *see also Arizona ex rel. Horne v. Geo*

20 *Grp., Inc.*, 816 F.3d 1189, 1198-99 (9th Cir. 2016) (*Mach Mining* conciliation requirement satisfied

21 by issuing defendant a reasonable cause determination describing the discrimination claims, inviting

22 defendant to conciliate, and making a conciliation proposal describing the relief sought for an

23 unnamed class harmed by the discrimination).  It is undisputed that the EEOC took these three steps.

24 *See* Sienko Decl at ¶ 11-17. Tesla does not provide any credible evidence to the contrary.

25      The EEOC is afforded wide latitude in conducting conciliation.  It is the EEOC, not the

26 employer, that determines how and when to seek voluntary compliance with Title VII.  While

27 statutorily obligated to attempt conciliation, the EEOC's efforts "need not involve any specific steps

28 or measures." *Mach Mining,* 575 U.S. at 492.  The EEOC can exercise its discretion regarding "the

kind and extent of discussions appropriate in a given case," and "the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief." *Id.,* at 483, 492; *see also, Geo Grp., Inc.*, 816 F.3d at 1199-00.  Indeed, "[e]very aspect of Title VII's conciliation provision smacks of flexibility…[and] the Commission may use in each case whatever 'informal' means of 'conference, conciliation, and persuasion' it deems appropriate." *Mach Mining*, 575 U.S. at 492.  This broad discretion authorizes the EEOC, and the EEOC alone, to make strategic decisions during conciliation, including whether to make an agreement "acceptable *to the Commission*" or resort to litigation. *Id*. at 492 (emphasis in original).

## 2.   The Commission Satisfied its Duty to Conciliate

The EEOC conciliated the Commissioner's Charge as required by Title VII by informing Tesla about the specific allegations against it, identifying the class of employees harmed, and engaging in conciliation discussions.  The EEOC expressly notified Tesla through its PDI and Letter of Determination that the EEOC uncovered evidence that Tesla had violated Title VII by "subjecting a class of Black employees to a hostile work environment and retaliating against a class of Black employees who engaged in protected activity" at its Fremont Facility.  (ECF 22-019.)  The Determination identified the persons aggrieved as "all Black employees who were employed at Tesla's Fremont, CA facilities at any time since May 29, 2015, to the present."  The Determination also invited Tesla to participate in informal methods of conciliation with the EEOC, which Tesla accepted.

Thereafter, between June 1, 2022, and June 21, 2023, the EEOC communicated with Tesla to provide it the opportunity to remedy the discriminatory practices described in the Determination, including sending Tesla a conciliation proposal and attending a lengthy, in-person conciliation session.  Sienko Decl., ¶ 17.  Despite these efforts, on June 21, 2023, the EEOC concluded that further conciliation efforts would not enable the EEOC to secure an acceptable agreement and issued a notice to that effect.  *See* Sienko Decl., ¶ 19.  The EEOC carried out its statutory mandate by taking these steps.  Defendant's contention that the EEOC "refused to provide Tesla any specific facts or evidence from its investigation" is inaccurate.  Tesla's attempt to disregard  oral and written discussions in the PDI, Determination and at conciliation is at best disingenuous and at worst

1   dishonest.  *See* ECF No 22-019.

2   ### 3. Judicial Review of the EEOC's Conciliation is Narrow

3   The Supreme Court held that Title VII affords only "bare bones" judicial scrutiny into the

4   sufficiency of the EEOC's conciliation efforts.  To that end, the Court's limited judicial review must

5   focus on the process of engagement and avoid delving into the substantive discussions.  *Mach*

6   *Mining*, 575 U.S at 494 (Courts can only review "whether the EEOC attempted to confer about a

7   charge, and not to what happened (i.e., statements made or positions taken) during those

8   discussions.").  Examination of the substance of the EEOC's conciliation "flouts" Title VII's

9   nondisclosure provision and undermines the conciliation process by impeding candid discussions.

10  *See* 42 U.S.C. §2000e-5(b)("Nothing said or done during and as a part of such informal endeavors

11  may be made public by the Commission… or used as evidence in a subsequent proceeding without

12  the written consent of the persons concerned"); *Mach Mining*, 575 U.S. at 493.

13  Tesla claims the EEOC's conciliation was deficient because the EEOC did not provide the

14  factual details it requested.  The Supreme Court explicitly dismissed the employer's arguments that

15  the EEOC was required to "lay out 'the factual and legal basis for' all its positions." *Id*. at 491.

16  (citations omitted). Tesla conflates the statutory mandate to notify employers of "specific

17  allegations" with a proviso of its own creation to provide "specific details" underlying an allegation.

18  The EEOC laid out its specific allegations during the PDI and in the Determination.[17]

19  Tesla does not cite any authority for its claim that the EEOC should have provided more

20  information about its findings to satisfy its conciliation requirements.  Contrary to Tesla's assertion,

21  courts have held that the amount of detail to provide an employer rests squarely within the discretion

22  of the Commission.  *EEOC v. MJC, Inc.*, 400 F. Supp. 3d 1023, 1043 (D. Haw. 2019)("The EEOC

23  was not required to provide Defendants with a list of all its factual allegations during the conciliation

24  _____

25  [17] Tesla also suggests that purported deficiencies in the EEOC's investigation warrant a finding that the Commission failed its conciliation obligations.  However, the sufficiency of the EEOC's investigation is not reviewable.  The "sole question for judicial review is whether the EEOC

26  conducted an investigation."  *E.E.O.C. v. Sterling Jewelers Inc.,* 801 F.3d 96, 101, 103 (2d Cir. 2015)("'the nature and extent of an EEOC investigation into a discrimination claim is a matter

27  within the discretion of that agency,'" (citation omitted); *E.E.O.C. v. California Psychiatric Transitions, Inc*., 725 F. Supp. 2d 1100, 1114 (E.D. Cal. 2010) ("Whether the EEOC could or should

28  do more is within the discretion of the EEOC.").

1  process."); *EEOC v. Amsted Rail Company, Inc.*, 169 F.Supp.3d 877, 884 (S.D. Ill. 2016)(rejecting

2  argument that the EEOC failed to satisfy its conciliation obligation because it did not explain its

3  reasons for believing the defendant's practices were unlawful); *EEOC v. Lawler Foods, Inc.*, 2015

4  U.S. Dist. LEXIS 167178, **7-8 (S.D. Tex. Dec. 4, 2015) (recognizing that *Mach Mining* does not

5  require the EEOC to present specific evidence supporting its allegations, but to simply notify the

6  defendant-employer of the allegedly unlawful practices).  These courts recognized that dictating the

7  extent to which the EEOC must chronicle its evidence and analysis  would "conflict with the latitude

8  Title VII gives the Commission" since "Congress left to the EEOC such strategic decisions as

9  whether to lay all its cards on the table."  *Id.* at 492.  Director Sienko's declaration outlining for the

10  EEOC's efforts to conciliate the Commissioner's charge is enough to end this Court's review.  *Mach*

11  *Mining*, 575 U.S. at 494 ("A sworn affidavit from the EEOC stating that it has performed the

12  obligations [required by this decision] but that its efforts have failed will usually suffice to show that

13  it has met the conciliation requirement.").

14         **4.**     <u>**The Supreme Court Rejected Review of Whether the EEOC Negotiated**</u>

15                    <u>**in "Good Faith" During Conciliation**</u>

16        Controlling law forecloses Tesla's argument that the EEOC allegedly lacked good faith

17  during conciliation negotiations.  The Supreme Court expressly rejected imposing scrutiny of a

18  "good faith" requirement on the EEOC's conciliation efforts, stating "[s]uch judicial review extends

19  too far."  *Mach Mining* 575 U.S. at 490-492. The Court reasoned that reviewing whether the EEOC

20  acted in good faith would run afoul of confidentiality and evidentiary restrictions in Section 706(b)

21  and would abrogate the broad discretion afforded the EEOC as to the conciliation process and the

22  remedies required to bring an employer into compliance with the statute.  *Id.* at 491-94 (the

23  "proposed code of conduct conflicts with the latitude Title VII gives the Commission to pursue

24  voluntary compliance with the law's commands").

25        Despite Tesla's insistence to the contrary, this Court is precluded from reviewing whether the

26  EEOC satisfied a good faith standard.  *See e.g., U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*,

27  306 F. Supp. 3d 1204 (D. Haw. 2018)("The EEOC is not subject to a "good faith" bargaining

28  requirement" and citing *Mach Mining*)*; U.S. Equal Emp. Opportunity Comm'n v. Dimensions*

1   *Healthcare Sys.*, 188 F. Supp. 3d 517, 520 (D. Md. 2016) (recognizing the Supreme Court rejection

2   of employer's argument that a reviewing court be required to inquire into whether the Commission

3   engaged in "good faith" conciliation efforts, and citing *Mach Mining*).  This Court should reject as a

4   matter of law Tesla's invitation to ignore *Mach Mining*.  The Court should deny the Motion to Stay

5   for failure to conciliate.

6   **III.**　　**CONCLUSION**

7       Tesla has not satisfied the requirements for a stay under the *Colorado River* doctrine. The

8   State Cases, which involve neither the EEOC nor Title VII claims, are not parallel to the EEOC's

9   federal lawsuit. Even if they were, no exceptional circumstances exist to justify the federal court

10  depriving the EEOC of its mandate and ability to enforce Title VII in the public's interest, and in the

11  only forum in which it has filed suit.  The EEOC, furthermore, has fulfilled its straightforward

12  obligations to conciliate under *EEOC v. Mach Mining*, 575. U.S. 480, 494 (2015). The Court should

13  rebuff Tesla's efforts to impose further conditions or obligations beyond those prescribed by the U.S.

14  Supreme Court and deny Tesla's attempts to further shirk answering for its unlawful employment

15  practices.

16  Dated:  January 3, 2024

17   ROBERTA STEELE                  KARLA GILBRIDE
    Regional Attorney                  General Counsel
18

19   MARCIA L. MITCHELL            CHRISTOPHER LAGE
    Assistant Regional Trial Attorney     Deputy General Counsel

20   JAMES H. BAKER                 Office of the General Counsel
    Senior Trial Attorney               131 M Street, N.E.
21                                     Washington, D.C. 20507
    KENA C. CADOR
22   Trial Attorney

23   BY:　_/s/ James H. Baker_____
      JAMES H. BAKER
24      U.S. EQUAL EMPLOYMENT
      OPPORTUNITY COMMISSION
25      San Francisco District Office
      450 Golden Gate Ave., 5th Floor West
26      P.O. Box 36025
      San Francisco, CA 94102
27

                    *Attorneys for Plaintiff EEOC*
28