**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

——————————

```
Equal Employment Opportunity )
Commission,                  )
                             )   No. 3:23-cv-04984-JSC
          Plaintiff,         )
                             )
          vs.                )   San Francisco, California
                             )   March 28, 2024
Tesla, Inc.,                 )   10:36 a.m.
                             )
          Defendant.         )
_____)
```

**BEFORE:  THE HONORABLE JACQUELINE SCOTT CORLEY, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TESLA, INC.'S MOTION TO STAY ALL PROCEEDINGS/**

**TESLA, INC.'S MOTION TO DISMISS EEOC'S COMPLAINT**

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                           **A-P-P-E-A-R-A-N-C-E-S**

2    For the Plaintiff:

3        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
         By:  **Mr. James Baker, Esq.**
4             **Ms. Kena Cador, Esq.**
         San Francisco District Office
5        450 Golden Gate Ave., 5th Floor West
         P.O. Box 36025
6        San Francisco, CA 94102

7

     For the Defendant:
8
         REED SMITH, LLP
9        By:  **Mr. Raymond A. Cardozo, Esq.**
         101 Second Street, Suite 1800
10       San Francisco, CA 94105-3659

11

         HOLLAND & KNIGHT, LLP
12       By:  **Mr. Thomas E. Hill, Esq.**
         400 South Hope Street, 8th Floor
13       Los Angeles, CA 90071

14

         HOLLAND & KNIGHT, LLP
15       By:  **Mr. Paul W. Matthias-Bennetch, Esq.**
         601 SW Second Ave., Ste. 1800
16       Portland, OR 97204

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1  
2          COURTROOM DEPUTY:  Calling civil action C 23-4984,

3  EEOC versus Tesla.

4          THE COURT:  Who's ever going to argue can come up.

5          All right.  Appearances, please.

6          MR. BAKER:  Yes.  Good morning, Your Honor.  My name

7  is James Baker on behalf of the Equal Employment Opportunity

8  Commission.

9          Seated at the table is my colleague Kena Cador.  And

10  if it would please the Court, my colleague will address any

11  questions or arguments concerning the second portion of Tesla's

12  motion to stay concerning the alleged failure to --

13          THE COURT:  Okay.  All right.  Thank you.

14          MR. HILL:  Good morning, Your Honor.  My name is Tom

15  Hill.  I'm with Holland & Knight.  I'm here on behalf of

16  defendant Tesla.  I'm up here because I assumed that the motion

17  to stay was what you want -- Your Honor might want to hear

18  first.

19          THE COURT:  You are exactly right, because that's what

20  we have to do first.

21          MR. HILL:  Okay.

22          THE COURT:  And who do you have with you at counsel

23  table?

24          MR. HILL:  My colleague here is Ray Cardozo with Reed

25  Smith, also here on behalf of defendant Tesla and prepared to

1    argue the motion to dismiss.

2         THE COURT:  Okay.  All right.  So let's start with the

3    stay, and there is sort of two arguments, and the first is

4    Colorado River.  And I think what we run smack into is Ernest

5    Bock, right, and the Ninth Circuit saying just last year that

6    whether -- that Colorado River's abstention, which, by the way,

7    is rare, extraordinary, presumption against, all doubts

8    resolved in favor of no stay, but it has to be that there is --

9    the state action and the federal action are sufficiently

10    parallel, such that the state action -- state proceedings will

11    fully resolve the federal case.  And I don't see that here, how

12    that would be the case.

13         MR. HILL:  Well, Your Honor, first of all, you're

14    right that the case law indicates that the Colorado River stay

15    doctrine is applied sparingly, but it is -- I mean, there are

16    numerous cases, and we've cited them, including two decisions

17    that Your Honor authored, the Goodin versus Vendley case, and

18    the Scottsdale Insurance Company versus Parmerlee case, in

19    which Colorado stays were granted, and, particularly, the

20    Goodin case, which we think is analytically very much on all

21    fours with this case.

22         But to address your specific question with regard to

23    Bock, frankly, Your Honor, we think that the EEOC has asked

24    more of the Bock case than it can possibly deliver.  Bock is

25    not dispositive of this case.  Bock makes expressly clear that

1    its holding turns on the particular facts of that case, and

2    that each Colorado River case must be evaluated pragmatically

3    based on its own particular facts.

4         Bock, for example, does not hold that the plaintiffs

5    in the parallel cases must be the same.

6         THE COURT:  No, but there must -- but tell me how --

7         MR. HILL:  Okay.

8         THE COURT:  This is my question.

9         MR. HILL:  Yes.  Sure.

10        THE COURT:  Just get to the nub of it.  Tell me how

11   the state case, a resolution of the state case in any way, any

12   resolution, will resolve this federal case with this federal

13   plaintiff.

14        MR. HILL:  Okay.  CRD in the state case, which is now

15   set for trial in less than seven months, has proposed a two-

16   phase trial plan based on the Supreme Court's, the U.S. Supreme

17   Court's, model for litigating pattern and practice claims under

18   Title VII, under International Brotherhood of Teamsters versus

19   United States.

20        In phase one, CRD would pursue injunctive relief on

21   behalf of public interest by proving a pattern and practice of

22   race discrimination and harassment by Tesla.

23        In phase two, and assuming it prevails in phase one,

24   CRD would pursue individual relief, reinstatement, backpay,

25   compensatory and punitive damages, on behalf of victims of

1    Tesla's misconduct.

2        Assuming the process plays out the way CRD, and,

3    presumably, EEOC hopes, and the public and private interest CRD

4    represents, which are precisely the same public and private

5    interests that EEOC represents and seeks to vindicate in this

6    case, but assuming that those are vindicated in the CRD case,

7    what would be left for this Court to resolve in this case?  The

8    adjudication of any individual's right to damages in the CRD

9    case would have a preclusive effect on EEOC's right to seek

10   damages on that individual's behalf.

11       THE COURT:  Let's say CRD loses.

12       MR. HILL:  Well --

13       THE COURT:  Let's say CRD loses.  What does Ernest

14   Bock tell us about that situation?  If the state proceedings

15   will fully resolve -- and I'm not sure I agree with you anyway

16   about that even if they win -- but will fully resolve the

17   federal case only if the state rules in one of two ways,

18   Colorado River abstention is not appropriate.  So deal with

19   that.

20       MR. HILL:  Okay.  I would like -- I'm happy to do

21   that, Your Honor.  I want to make sure that you're satisfied as

22   to the resolution of anything in this court --

23       THE COURT:  I'm not.  EEOC is not bound by res

24   judicata.  They're not bound.  Maybe if an individual recovers

25   some damages, they can't double recover those damages, but

1    certainly in terms of injunctive relief or any individuals who

2    aren't -- don't recover, they could in this action, right?

3         MR. HILL:  No, Your Honor, I don't believe that's

4    true.  I think that the resolution of individual rights to

5    damages or not in the state court proceeding in phase two would

6    be preclusive with regard to EEOC's right to pursue damages on

7    behalf of those same individuals in this case.  That's the EEOC

8    versus --

9         THE COURT:  Okay.  Right.  I was saying if there are

10   different individuals.  There may be additional individuals,

11   right?

12        MR. HILL:  Correct, Your Honor, but the CRD case is

13   certainly as comprehensive -- it's actually more comprehensive

14   in scope and in terms of the individuals on whose behalf

15   individual relief would be pursued, as is this case is

16   currently --

17        THE COURT:  What about injunctive relief?

18        MR. HILL:  Okay.  So with regard to injunctive

19   relief -- and I want to get to the flip side of this, what

20   happens if Tesla prevails -- but if EEOC prevails in terms --

21   I'm sorry, if CRD prevails in its claim for injunctive relief,

22   which CRD is pursuing based on the same prosecutorial powers

23   that EEOC has --

24        THE COURT:  Different.

25        MR. HILL:  -- and pursuing the same --

1          THE COURT:  No, it's not the same.  It's from the

2    state of California as opposed to the federal government.

3          MR. HILL:  Certainly those powers are -- you know, the

4    source of the powers may be different, but the practical use of

5    the powers is the same.  And if, in the injunctive relief that

6    CRD seeks is the same injunctive relief that EEOC has requested

7    in connection with this case, if injunctive relief is granted

8    to CRD, and, again, in a case that is set to be tried in less

9    than seven months, where the state court judge has made clear

10   that's a real date and to be respected by the parties, if an

11   injunction is entered, that may not have res judicata impact on

12   this court, but it certainly would likely negate the need and

13   thus the equitable justification for an injunction being issued

14   by this court.  Why in the world would this court need to issue

15   an injunction with regard to practices and the like at Tesla's

16   Fremont plant when the state of California has already obtained

17   such an injunction.

18          Certainly the scope of the injunction entered by -- by

19   the state court in the CRD matter would influence, I would

20   anticipate, what this court believes is equitably justified --

21          THE COURT:  I don't know.

22          MR. HILL:  -- in terms of injunctive relief.

23          THE COURT:  I don't know.  I don't know.  I have an

24   independent obligation.

25          MR. HILL:  Again, Your Honor, I think it's highly

1  likely that you would consider the scope and bases for that

2  injunctive relief and why EEOC might need anything else.

3  I want to turn now to the question you asked about

4  what if Tesla prevails.  I think preclusion is likely if Tesla

5  prevails in the CRD case, given the alignment of CRD's and

6  EEOC's --

7  THE COURT:  Give me a case.  That's a pretty -- that's

8  a pretty dramatic statement.  Give me a case.

9  MR. HILL:  Okay.  Well, I --

10  THE COURT:  I -- I -- give me a case that says the

11  federal government, a separate sovereign, is precluded by what

12  the state -- by the state of California's loss in state court.

13  Just give me a case.

14  MR. HILL:  Well, I'll cite you to EEOC versus Frank's

15  Nursery & Crafts, Inc., that's at 177 F.3d 448, the jump cite

16  is 463.  That's a Sixth Circuit case decided in 1999.  In that

17  case the court states, quote, prior proceedings may bind a

18  nonparty as a privity where the nonparty's interests were

19  adequately represented by a party with the same interests in

20  the state court proceeding.

21  In fact, in the Sonoma Springs case, to cite you

22  another case, this case is cited in the parties' briefs --

23  THE COURT:  Is the one that you just mentioned not

24  cited in your briefs, the Sixth Circuit case, because I don't

25  see it in your reply.

1          MR. HILL:  That may not be -- that may be a new case,

2     Your Honor.  That may be a case not cited in the briefs.

3          THE COURT:  So not supposed to --

4          MR. HILL:  You asked for one and I --

5          THE COURT:  Well --

6          MR. HILL:  -- I tried to --

7          THE COURT:  -- you know what the local rules of this

8     court say is that they're all supposed to be in your briefs.

9          But are you telling me, are you telling me that in the

10    Sixth Circuit the Sixth Circuit held that the EEOC was in

11    privity with the state agency and therefore bound by --

12         MR. HILL:  Your Honor, this has never happened before.

13    This is unprecedented.  When has --

14         THE COURT:  Well, I'll tell you, Rodney King.  Rodney

15    King.  The state brought charges, criminal charges against

16    those officers and they lost.  And then the federal government

17    came in and did that, right?  There is no privity, no double

18    jeopardy.  This is not criminal, I understand, civil, even less

19    serious, so not exactly unprecedented.

20         MR. HILL:  Your Honor, I'll confess, I'm not a legal

21    expert on the Rodney King case.  I just saw what I saw on

22    television.

23         THE COURT:  No, no, but you know -- maybe you don't

24    know -- that there was a state prosecution that was

25    unsuccessful, and that then the -- and then the United States

1    government came in and prosecuted the officers, the same

2    conduct, different statute.

3          MR. HILL:  Your Honor, I would, you know, suggest

4    that, more to the point, is the question when has EEOC ever

5    before filed a lawsuit that is entirely duplicative of a

6    concurrent and well advanced state court matter brought by a

7    state agency with prosecutorial powers in a public mission that

8    mirrors those of EEOC, and, again, the answer appears to be

9    never.

10         THE COURT:  I understand that your -- that Tesla

11   doesn't like that, but I'm a federal court and I have an

12   obligation to exercise my jurisdiction.  You've asked for

13   Colorado River abstention, which you agree the Ninth Circuit

14   has made clear, any doubts are resolved in favor of going

15   forward.  So you're sort of arguing the opposite, right.

16   You're saying, well, there is no precedent, hasn't happened, so

17   maybe there is a doubt, but that would -- that doesn't help me

18   in the sense -- in terms of giving me any authority to do so

19   here.

20         MR. HILL:  I don't see -- you know, in Your Honor's

21   decision in Goodin versus Vendley, Your Honor -- Your Honor

22   notes that stays are routinely granted -- routinely is Your

23   Honor's word -- in FLSA cases pending the outcome of state

24   cases based on the same alleged facts brought under state law.

25         Your Honor also --

1          THE COURT:  It was same -- same parties.  All the

2     cases you cite in your reply, all of them, are where res

3     judicata would apply.  All of them.  Of course, right, in those

4     cases the plaintiffs are actually like splitting their claims

5     between federal court and state court for some strategic

6     reason, but should they prevail or even lose, there would be

7     res judicata.  The federal action, as Bock said, would go away.

8     And so that's not this case.

9          MR. HILL:  Bock isn't this case.  Bock involved a

10    situation where the federal claims were -- where a binary

11    decision with regard to the enforceability of a guarantee

12    agreement had to be decided by the state court.  If the state

13    court decided it one way, it would moot the federal claims, but

14    if it decided it another way, the federal claims would

15    necessarily have to go forward because they hadn't been pled in

16    the state court action.

17          This case is different.  This case is, in fact, like

18    Goodin, where there is complete overlap between the federal

19    claims and the state claims and the factual allegations made in

20    support thereof, and where there is complete alignment between

21    the interest of the plaintiffs in the federal court -- of the

22    plaintiff in the federal court case and the plaintiff in the --

23    in the state court case.  They have the same public interests.

24    They represent and seek to vindicate the same public interests

25    and the same private interests.

1          Those private interests, however resolved in the state

2     court matter, will have preclusive effect as to the individuals

3     involved in connection with this -- with the federal court

4     proceeding, and a resolution of the -- of the request for

5     injunctive relief of the public interest pursued in the CRD

6     case will very much impact this Court's consideration of

7     whether an injunctive is appropriate in this case.

8          THE COURT:  Okay.  Let me -- let me now hear from

9     Mr. Baker.

10          MR. BAKER:  I think Bock is pretty straightforward

11     that you have to be done here, should the Court issue a stay,

12     and not need to return.  In Bock there were only one or two

13     scenarios where that would be the case.  There is so much

14     uncertainty in the state cases, most importantly, the fact that

15     the EEOC is not a party to either, that there is no resolution

16     in the CRD or Bock case that would necessarily resolve the

17     EEOC's case, at least none that is apparent at this stage in

18     the lawsuit.

19          And there are a lot more ways that those two state

20     cases could resolve themselves than was present in Bock.  I

21     mean, ruling for one entity not the other; a ruling on the

22     class action; a motion to certify the class; individual

23     adjudication of claims and separate phase, et cetera, et

24     cetera, none of which necessarily resolves the EEOC's case.

25          Now, to be clear, there could be some impact in terms

1    of damages of an individual level after the EEOC has

2    established liability, but there is no res judicata.  The EEOC

3    would not be named in any judgment, and that alone is not

4    enough to eventually abstain from hearing the federal

5    government's case in the only forum that the federal government

6    has sought to enforce its rights against Tesla in.

7            THE COURT:  Okay.

8            MR. HILL:  Your Honor, I just want to, you know,

9    again, and as Your Honor states yourself in the Goodin

10   decision, you know, Colorado River cases are to be decided in a

11   pragmatic and flexible way.  There is no off/on switch.  There

12   is no black and white issue that resolves a Colorado River stay

13   motion.

14           There are no Ninth Circuit cases, or cases within the

15   Ninth Circuit that say a state court -- the resolution of the

16   state court matter must result in res judicata preclusion in

17   the federal case --

18           THE COURT:  What Bock says is parallelism is necessary

19   but not sufficient to counsel in favor of abstention.

20   Parallelism doesn't exist here and parallelism in Bock is

21   necessary.

22           MR. HILL:  I think that what Bock says expressly is

23   that exact parallelism is not required, that the parties and

24   that the claims need not be exactly the same.  And what Bock

25   clearly does not say is that the resolution of the state court

1    proceeding must have res judicata impact on the federal court

2    proceeding or a Colorado River stay is inappropriate.  Bock

3    does not say anything --

4         THE COURT:  Doesn't say res judicata but it says it

5    must fully resolve it.  And you conceded if Tesla wins --

6    even -- even if I accept your arguments about if CRD wins, all

7    of them, even if I accept all of that, if Tesla wins, it

8    doesn't resolve this case at all, and the EEOC can proceed on

9    behalf of the same individuals on everything.  And that's

10   exactly where Bock was, where there was one outcome that would

11   fully resolve it, and one outcome that would not.  And the

12   Ninth Circuit said, therefore, Colorado River abstention was

13   not appropriate.

14        MR. HILL:  I think that, Your Honor, I have not said

15   that the EEOC case can proceed if Tesla is -- is successful in

16   the state court matter.  That's something that depends on the

17   resolution of the state court matter.  Certainly there --

18        THE COURT:  Okay.  Okay.  Stop.  Stop.  We'll just

19   stop.  I think I have heard enough.  I think -- I understand

20   the argument.  I think it runs square into -- square into Bock,

21   square into Bock.

22        So let's move to the second argument, and I don't know

23   if you're going to do that one as well or one of your

24   colleagues.

25        MR. HILL:  Mr. Cardozo is --

1          THE COURT:  Not the dismiss, the second argument you

2    had for the stay.

3          MR. HILL:  Oh, that's right, Your Honor.  Thank you.

4          THE COURT:  Good morning.  There I think you're

5    running into another case, which is that the Supreme Court in

6    Mach -- is it Mach Mining -- Mach Mining, said there is no good

7    faith requirement with respect -- now I'm not saying that EEOC

8    is met in bad faith, but that is almost essentially what you're

9    arguing -- that there is no good faith requirement for that

10   pre-litigation process, right?

11         MR. HILL:  I don't think that we've argued that there

12   needs to be -- I don't think we've made a good faith argument.

13   I think what Mach Mining makes clear is that the EEOC's

14   pre-conciliation obligation is more than a perfunctory, go

15   through the motions, check the box administrative piffle.  At

16   minimum, EEOC must provide an employer it accuses of

17   discrimination information sufficient to give the employer an

18   opportunity to remedy the discriminatory practice.  That's

19   right from Mach Mining.

20         This means that EEOC must tell the employer what's --

21   what it has done wrong and who it has harmed.  EEOC never gave

22   Tesla this information.  It refused to do so despite Tesla's

23   repeated request.  Instead EEOC simply provided Tesla

24   conclusory and fact-free findings of --

25         THE COURT:  Let me stop you for one second.  You just

17

argued to me that there is nearly complete overlap between the state and federal cases and the state case is going to trial in seven months.  So as Tesla sits here today, it knows the EEOC's case, because you told me there is nearly complete overlap, so much so that resolving that state case will resolve this case, so Tesla actually knows.

MR. HILL:  The Mach Mining decision and the conciliation obligation is a pre-suit obligation.

THE COURT:  Okay.  That's fine.  I just want to make it clear then.  This is not Tesla actually claiming we actually don't know.  We do know.  We do know.  We just want you to, what, dismiss and then have them re-file?  I mean, if we're talking about practical -- I want to figure out exactly what Tesla is asking me to do, have them dismiss, have them meet and something that -- no resolution will come, because you -- Tesla actually knows what they're claiming now, and it's the same as the state case, and there has been no resolution -- just so they could file again and will be here again in three months? Is that it?

MR. HILL:  No, Your Honor.

THE COURT:  Okay.

MR. HILL:  I think Tesla wants exactly what the Supreme Court granted the employer in Mach Mining, which is a stay of the proceedings to allow the EEOC to comply with the legal obligation that it had before filing this lawsuit, which

was to conciliate with Tesla and give Tesla the opportunity to

remediate the issues that EEOC believes to exist once EEOC has

identified those issues, the wrongdoing, and the victims.

THE COURT:  Let me hear from the EEOC then.

MS. CADOR:  Sure.  So Mach Mining does direct that the

EEOC need to inform the employer of the allegation, identify

which employees or class of employees have been harmed, and

engage in discussion with the employer.  And the EEOC in this

case most certainly did all of those things.

Regarding the information of the allegation, EEOC

complied by expressly notifying Tesla through its

predetermination interview and letter of determination that the

EEOC had uncovered evidence of Tesla's violation of Title VII,

specifically, that Tesla subjected a class of black employees

to a hostile work environment, and retaliated against a class

of black employees who engaged in protected activity at the

Fremont facility.

Regarding the class of employees who suffered, EEOC

complied with this factor when it explicitly identified black

employees who were employed at Tesla's Fremont facilities at

anytime from May 29th, 2015.  And regarding the engagement and

discussion with Tesla, EEOC complied with this factor first

when it unambiguously invited Tesla to participate in the

informal conciliation with the EEOC; and, second, when it did,

in fact, participate in those conciliation efforts, which

1    included a seven-hour in-person conciliation and a proposal for

2    resolution of the matter.

3         THE COURT:  The EEOC made a proposal for resolution?

4         MS. CADOR:  We did.

5         MR. HILL:  Your Honor, this is what the EEOC told

6    Tesla:  You've discriminated and harassed black employees at

7    your Fremont plant since at least 2015.  The victims of your

8    discrimination and harassment are the employees who have

9    experienced discrimination and harassment.  Fix the

10   unidentified problem and make the unidentified victims whole.

11   Go.

12        THE COURT:  Am I supposed to have a trial, right, as

13   to like -- what is the standard here on this -- this

14   requirement, right?  I mean, we're sort of getting into the

15   weeds.  Am I supposed to -- and there is no good faith

16   requirement.  You're arguing that they -- that it wasn't in

17   good faith.  I mean --

18        MR. HILL:  Your Honor.

19        THE COURT:  -- there is no good faith requirement.

20        MR. HILL:  The requirement is -- is, I think, clearly

21   articulated in Mach Mining, and that is that information

22   sufficient to give the employer an opportunity to remedy the

23   discriminatory practices must be provided pre-suit.

24        EEOC failed to identify any specific victims or

25   perpetrators of discrimination or harassment, or specific dates

1    of such misconduct within an eight-year period, or the specific

2    departments or other work locations where the misconduct

3    allegedly occurred.  Without that information, how could Tesla

4    possibly have had the pre-suit opportunity to remedy its

5    alleged discriminatory practice.

6            THE COURT:  And the case you're relying on is Mach

7    Mining?

8            MR. HILL:  Correct.

9            THE COURT:  Okay.  All right.  That's fine.

10           Did you want to say anything further?

11           MS. CADOR:  Just to add that it appears that Tesla

12   might be conflating the mandate to provide employers with

13   specific allegations with the proviso of specific details

14   underlying the allegation.  The EEOC did, in fact, lay out the

15   specific allegations, the violation of Title VII, by

16   maintaining a workplace that was -- created a hostile work

17   environment for black employees at the Fremont facility.

18           THE COURT:  Okay.  All right.  Thank you.

19           MR. HILL:  Your Honor, I'll just say that I'm not

20   playing games with anything.  The language I quoted to Your

21   Honor comes right out of the Mach Mining decision.

22           THE COURT:  No, no, no, I understand, but because as I

23   was looking again at your reply, there are no cases, pretty

24   much just Mach Mining, so you're relying on Mach Mining?

25           MR. HILL:  We are relying on Mach Mining, which we

think is, in fact, as dispositive on this issue as Your Honor,

apparently, feels Bock is on the first issue.

THE COURT:  I'll go back and look again.  All right.

Thank you.

MS. CADOR:  Thank you, Your Honor.

THE COURT:  Okay.  Motion to dismiss.

MR. CARDOZO:  Thank you, Your Honor.  Ray Cardozo from

Reed Smith.

The fundamental problem with the lack of specificity

in this complaint is very similar and related to the problem

you were just hearing argument about.  And I want to start with

what a fundamental perversion it is of what the statute seeks

to accomplish.

If the goal is to solve the problem without litigation

first in the administrative process by giving Tesla particulars

so it can figure out is there someone -- because Tesla's

terminating people for misconduct throughout all of this.  Do

we still have a problem?  Are there particular hotspots at the

factories?  What is the nature of the problem here?  You've

heard our argument about why that didn't happen, didn't even

come close to happening.

But now we get a pleading and we still don't get it.

This pleading literally says it's everywhere in the factory

going back to 2015 and it involves everyone.

Now, as Your Honor pointed out, we have a case going

1    in state court to trial in seven months.  We know unequivocally

2    that that's not true because we have hundreds of declarations

3    in that case from people who have said they have experienced

4    nothing of the sort and they're thriving at Tesla.  So how in

5    the world can Tesla take this complaint and understand what

6    it's being charged with, whether there are particular problems

7    that need rectifying or so on?  There is a lot of flexibility

8    on the pleading standard for an EEOC pattern and practice case,

9    obviously, a lot.  And the cases we cite sort out the

10   difference of what makes the grade and what doesn't.  What this

11   does, it goes beyond anything that's ever passed muster, and

12   clearly flunks the test of those that have dismissed pattern

13   and practice cases.

14           THE COURT:  Do you have an appellate case to support

15   your argument?

16           MR. CARDOZO:  We don't.  And this case is one of a

17   kind.  I have never seen a complaint like this that says

18   everything, everywhere, all at once, the whole thing.  There is

19   no case that's analyzed --

20           THE COURT:  So why is that implausible?

21           MR. CARDOZO:  Why is that implausible?  Well --

22           THE COURT:  Why is that implausible?  I mean, it says

23   it's essentially pervasive.  You're not going to argue it's not

24   severe.  You're not going to argue based on these allegations

25   it's not severe, and it says it's pervasive throughout the

1    facility and has been since 2015.  That's the allegation that I

2    accept as true.  Why is that not plausible, because that's the

3    standard I'm applying, 12(b)(6), Iqbal/Twombly.

4            MR. CARDOZO:  And notice and sufficiency.

5            THE COURT:  Why is that not plausible?

6            MR. CARDOZO:  Well, I think it is plausible that every

7    single person the whole time everywhere that it happened, how

8    would the company survive since 2015 if that were true?

9            THE COURT:  You want me to draw inferences in Tesla's

10   favor then?

11           MR. CARDOZO:  No.  Iqbal and Croft, they both say

12   plausibility does have its part of it in assessment of the

13   plausibility of what's being alleged.  And you -- when you have

14   an allegation that's just as over the top as that, that's where

15   Iqbal and Twombly changed the prior law and said, yeah, you can

16   apply a plausibility lens.

17           THE COURT:  It is over the top.  It does allege pretty

18   extreme hostile environment.  Why is that implausible?  As a

19   matter of law, why can't I accept those allegations as true?

20           MR. CARDOZO:  I think because you just apply the plain

21   definition of plausibility.  And when someone is saying that

22   every single person, none of the race, in 20 -- from 2015 to

23   2024, discriminated against every single person --

24           THE COURT:  That's not what it's saying.

25           MR. CARDOZO:  It comes pretty close to saying that.

1          THE COURT:  That's not what it's saying.  It's saying

2    that this racism, the use of the N word, was ubiquitous

3    throughout the facility, not every minute, every time, but it

4    was ubiquitous, such that it created a hostile environment for

5    the black workers in the facility.  That's how I interpret the

6    allegations of the complaint.  Now, may be untrue, right, may

7    be untrue, this is just the allegations, but what I don't know

8    is why that doesn't state a claim.

9          MR. CARDOZO:  Because the plausibility element has to

10   also meet the sufficiency and the -- some factual particulars.

11   Because how can we even say if that's plausible or not if we

12   don't have a single -- there is not a single person, place, or

13   time identified.  There is not a single individual --

14         THE COURT:  There is time.

15         MR. CARDOZO:  There is a time, it's 2015 --

16         THE COURT:  There are lots of cases that say the EEOC,

17   when they're bringing in the complaint in their own name and

18   not on behalf of an individual, do not have to name an

19   individual, right.  There are lots of cases that do that.

20         A lot of the cases that you cite involve issues like,

21   hey, they're not -- they're being brought on behalf of an

22   individual, or they involve issues like statute of limitations

23   problems or other things like that that there were specific

24   ones.

25         What's your best case?  Tell me the case you want

1    me -- we're only talking about district court cases, so best,

2    it's persuasive.

3            MR. CARDOZO:  The best case, pattern and practice

4    case, is a case called Cazorla versus Koch Foods.  And I would

5    actually recommend the EEOC versus JBS USA case, which we cited

6    in our papers, because it does an analysis and it explains the

7    difference between Cazorla, which says it's not sufficient, and

8    an EEOC versus UPS case which is sufficient in a pattern and

9    practice not sufficiently particularized.  It contrasts the

10   two.

11           And if you look at what they say is the difference,

12   what -- why one was sufficient and one wasn't, Cazorla is

13   talking about this case, absent any particularized facts, the

14   complaint failed to state a claim for a hostile work

15   environment or retaliation, as the 111 newly added class

16   members was too generic -- a case that passed muster -- the

17   EEOC's complaint alleged specific facts with respect to two

18   identified charging parties, and then it said it's similar for

19   the rest of the class.  So you had a model, a template about

20   two individuals in there.

21           The case goes on to talk about things that make it

22   qualify that are missing from Cazorla:  The names of the

23   aggrieved parties.  There are no names in this; the basis upon

24   which the aggrieved parties were alleged to have discriminate,

25   the types of conduct; the identity of the alleged perpetrators.

1    The things that the case law talks about, what makes it

2    sufficient from not sufficient, pattern and practice EEOC

3    claim, we don't have here.

4         THE COURT:  Okay.  So tell me, Mr. Baker, about this

5    case from Mississippi, Cazorla, and the case from Colorado,

6    JBS, those are the two you're referring to, is that right,

7    those are the two best cases you said I should follow?

8         MR. CARDOZO:  Yeah.  I'll throw in the Hannah case

9    from the District of Hawaii, 2021 -- 2012, I'm sorry.

10        THE COURT:  Well, the Hawaii one was the one where

11   they needed allegations because there was a different

12   defendant, and the timing was important as to whether there was

13   a plausible claim against that defendant, right?

14        MR. CARDOZO:  Yeah.  I'm referring to the part of the

15   decision that says the complaint offers little information

16   regarding the identity of the alleged hassles.  The complaint

17   refers collectively to defendant employers.

18        THE COURT:  Okay.  I can read it.  I can read it.

19        MR. CARDOZO:  So it's the collective references and

20   the lack of names.

21        THE COURT:  All right.  It is the one I thought.

22        Mr. Baker.

23        MR. BAKER:  Interesting about Cazorla is that the

24   Court decided the motion to dismiss several years into the case

25   after the parties had engaged in discovery.  In fact, in one of

1    the scheduling orders the Court had ordered the EEOC to

2    identify victims, which the EEOC did and amended its complaint,

3    and then the defendant moved to dismiss there.

4          Cazorla does not stand for the idea that the

5    commission needs to do all these things before discovery to

6    survive a 12(b)(6) motion.  If anything, it says, yeah, at some

7    point Tesla is going to have the right to test the sufficiency

8    of the allegations to identify the victims.  That's what

9    discovery is for.  Nothing in Cazorla says that happens at the

10   onset of the lawsuit.  And I think in Cazorla it was three

11   years in since the -- since the case was filed.

12         And JBS USA, I think -- the other case my counterpart

13   named -- the Court entertained a motion to dismiss and a motion

14   for judgment on the pleadings after discovery and trial was

15   held in phase one of the EEOC's case, which makes sense.  They

16   discovered victims and claimants and narrowed the theory of

17   liability for the trial.  And this was before phase two.

18         None of this suggests that the commission needs to do

19   that at the onset of the case to put Tesla, which is something

20   of a legal fiction here, on notice of the allegations against

21   it.  And the complaint as pled right now alleges more than

22   enough facts to raise, as Twombly says, an expectation that

23   discovery will reveal the evidence of the necessary claims or

24   elements.  That's all in the complaint.

25         Naming one more, two more individuals, notwithstanding

1    the fact that we are bringing the case on our own initiative,

2    does not make the case more or less meaningfully plausible with

3    respect to the nature of the allegations here.  It would be an

4    exercise that has no practical utility.

5            Tesla is on notice of the allegations from the

6    complaint.  It's sufficient.  We need to get to discovery

7    where, you know, we meet and confer about victims, their first

8    rog is identify victims, et cetera, et cetera.  The 12(b)(6)

9    process is not to stop a complaint like this, that is, as

10   sufficient as this one is.

11           THE COURT:  All right.  He's right about Cazorla.  The

12   decision came three years after the case was filed.

13           MR. CARDOZO:  Yes, but the case says it's applying

14   Rule 12(b)(6) --

15           THE COURT:  And it's only as persuasive as it is

16   persuasive, because, as you conceded, there is no appellate

17   authority, right, that you're relying on.  You're relying

18   solely on district court cases, and so they're only as

19   persuasive and they're persuasive.

20           And, in this case, as you pointed out, and as your

21   colleague said, there is complete overlap with the state case.

22   So it is a little bit of the fiction.  Tesla isn't complaining

23   that they actually don't know what they're talking about.  You

24   just showed me the complaint and have them amend to allege.

25   And you may -- you know, the question is it is plausible or not

1    but --

2         MR. CARDOZO:  Well, I'll come back to -- the EEOC is,

3    unlike other private plaintiffs, the EEOC is required by

4    statute before they even come to this court to give notice,

5    investigate, and conciliate.  So the idea that we're early,

6    they're supposed to have done a lot before they got here, and

7    they can't tell us one fact.  And --

8         THE COURT:  They told you a lot of facts.  They gave

9    specific examples of the conduct that they allege -- that they

10   allege is occurring throughout the facility and has been.

11   They're not just saying discrimination.  They're saying -- and

12   they're actually saying specifically what it is -- what is the

13   conduct that created the hostile environment.  It's based

14   primarily on the use of language and words, or a particular

15   word throughout the facility.  That's what it is.  That's what

16   the notice is.  So you even know exactly what is the type of

17   the hostile work environment.  It's not even like they're --

18   it's not saying what that is.  It is saying what it is.

19        MR. CARDOZO:  Well, I'll say a couple of things.  The

20   appellate cases made very clear that there is certain standards

21   that Rule 12(b)(6) has to have.  So that's established.

22        These district court cases are the only ones that

23   address this very odd circumstance where complaints are

24   unusually generic.  And the standards -- the few cases that

25   have applied to sift what makes it sufficient from what

1    doesn't, they all talk about things that just aren't present in

2    this complaint:  Who the perpetrators are, names, who the

3    victims are, and other specifics.

4         Because if you think about what the statute is

5    supposed to accomplish, particularly if you didn't get that in

6    the administrative process either, this is so far from what

7    Title VII is contemplating --

8         THE COURT:  But look at paragraph 22.  That is a very

9    specific allegation, which in and of itself supports a claim of

10   a hostile work environment for that employee, that you don't

11   know his name doesn't mean it's not plausible.  Just do your

12   interrogatory and get it.

13        MR. CARDOZO:  We don't know, not only the name, but

14   whether this has happened in 2015 or 2024, which I --

15        THE COURT:  Why does it matter?  Why does --

16        MR. CARDOZO:  Because one might be a problem that

17   requires correction, one might be a one-off, one might be one

18   where the person got fired.  All of these things we need to

19   know.

20        THE COURT:  That's what discovery is for.  The

21   question is does it state a claim?  The question is does is

22   state a claim?  You said it was generic.  I'm looking at

23   paragraph 22.  There is nothing generic about that allegation.

24        MR. CARDOZO:  But the allegation in this complaint is

25   not about one worker.  They're saying it's happening

1    everywhere.  And then they throw in one worker --

2        THE COURT:  I understand.  I understand.  I'm not

3    persuaded at all, I have to say -- I don't think that's a

4    secret -- and, you know, there isn't really a lot of support

5    for it.

6        Look, if they don't give you discovery, then come

7    complain, but they'll give it to you.  You'll get it.  You'll

8    know, and the evidence will --

9        MR. CARDOZO:  But they didn't give it before we came

10   to court and they're required by law to do that.

11       THE COURT:  This is not helpful.  It's not helpful and

12   it's not persuasive.

13       All right.  We're dealing with the motion to dismiss,

14   and I'll address the one that your colleague made.  All right.

15   And I apply the law and I'll do it faithfully here so -- and

16   I'll issue a written order.  You can go back and look at that.

17       So I will do -- we don't have a CMC date, so I want to

18   set the date for May 9th, and then you'll need to meet and

19   confer.

20       One thing, I do want to try to reduce the burden of

21   discovery as much as possible in light of the state court

22   proceedings.  One way to start, which you should discuss, is

23   Tesla just produce what it's already produced, that you review

24   that, and then only if there is additional things that you need

25   or have been withheld, that you do that to reduce the burden.

1    That would be my suggestion as a good way of starting.

2           I don't think it's probably too late to coordinate

3    depositions or things like that, and it may be that the parties

4    won't.  I don't know.  To the extent you can do that, that's

5    also something to explore as well.

6           Again, we have to be mindful of Rule 1, which is to

7    try to be as efficient and inexpensive as possible.  So those

8    are things you should discuss when you have your Rule 26

9    colloquy.

10          All right.  So that would be May 9th, by video is how

11   I do the CMCs.  They'll be 1:30.  And your joint statement is

12   due May 2nd.

13          All right.  Thank you.

14          MR. CARDOZO:  All right.  Thank you, Your Honor.

15          (Proceedings concluded at 11:22 a.m.)

16                    *         *         *

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, CHRISTINE M. COALY, do hereby certify that I am

4   duly appointed and qualified to act as Official Court Reporter

5   for the United States District Court for the District of

6   Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8   a full, true, and accurate transcript of all of that portion of

9   the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 22nd day of April,

13  2024.

14

15

16                    /s/ Christine M. Coaly
17                    Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25