ROBERTA L. STEELE, SBN 188198 (CA)
MARCIA L. MITCHELL, SBN 18122 (WA)
JAMES H. BAKER JR, SBN 291836 (CA)
KENA C. CADOR, SBN 321094 (CA)
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA  94102
Telephone No. (650) 684-0950
Fax No. (415) 522-3425
james.baker@eeoc.gov

*Attorneys for Plaintiff EEOC*

THOMAS E. HILL, SBN 100861 (CA)
CHRISTINA T. TELLADO, SBN 298597 (CA)
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California  90071
Telephone(213) 896-2400
Fax No. (213) 896-2450
tom.hill@hklaw.com

*Attorneys for Defendant TESLA, INC.*

(*Additional counsel listed on next page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>            Plaintiff,<br><br>     vs.<br><br>TESLA, INC.<br><br>            Defendant. | Case No.:  3:23-cv-04984-JSC<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |

SARA A. BEGLEY (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Telephone No. (215) 252-9600
Fax No. (215) 867-6070

SAMUEL J. STONE, SBN 317013 (CA)
MARY T. VU, SBN 323088 (CA)
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone No. (213) 896-2400
Fax No. (213) 896-2450

PAUL W. MATTHIAS-BENNETCH, SBN 318545 (CA)
HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone No. (503) 243-2300
Fax No. (503) 241-8014

RAYMOND A. CARDOZO, SBN 173263 (CA)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California 94105-3659
Telephone No. (415) 543-8700
Fax No. (415) 391-8269

TYREE P. JONES JR., SBN 127631 (CA)
REED SMITH LLP
1301 K Street, N.W., Suite 1000
Washington, DC 20005-3317
Telephone No. (202) 414-9200
Fax No. (202) 414-9299

*Attorneys for Defendant TESLA, INC.*

Pursuant to Federal Rule of Civil Procedure 26(f)(2), Local Rule 16-9, and the Court's Order Re: Motion to Dismiss and Motion to Stay (ECF 43), Plaintiff U.S. Equal Employment Opportunity Commission (EEOC) and Defendant Tesla, Inc. (Tesla), (collectively, the parties), hereby submit the following Joint Case Management Conference (CMC) Statement.

**1.   Jurisdiction and Service**

On September 28, 2023, the EEOC initiated this lawsuit against Tesla. *See* ECF 1. As pled, the Court has original jurisdiction over the EEOC's claims pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is brought pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) (Title VII), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Tesla reserves the right to challenge the Court's jurisdiction over this action pursuant to Tesla's Twelfth (Failure to Meet Pre-Suit Obligations) and Fourteenth (Lack of Jurisdiction) Affirmative Defenses, and based on Tesla's position that EEOC failed to comply with its statutory pre-suit notice and investigative obligations prior to initiating this lawsuit.

The parties agree that Tesla, the only defendant in this action, has been properly served.

**2.   Summary of Claims**

   **a.   EEOC's Position**

The EEOC alleges that since May 29, 2015, Tesla has subjected Black employees at its manufacturing hub in Fremont, California (Fremont Factory) to severe or pervasive racial harassment and created and maintained a hostile work environment because of their race in a continuing violation of Title VII. The EEOC alleges that Black employees faced frequent and offensive, race-based misconduct, including racial slurs such as the N-Word, and other race-based slurs, insults, taunts, and stereotyping, as well as prevalent displays of racist imagery and graffiti. The EEOC further alleges that: 1) Tesla's management and/or human resources employees knew or should have known of the harassment and/or racially hostile work environment, 2) Tesla failed to take appropriate actions to prevent or promptly correct the harassment and/or racially hostile work environment, and 3) Tesla unlawfully retaliated against Black employees who opposed actions they perceived to constitute unlawful employment discrimination, also in violation of Title VII. These

1   unlawful employment practices caused Black employees to suffer damages, including emotional
2   distress and lost wages.

###    b.    Tesla's Position

Tesla denies EEOC's allegations of race-based discrimination, harassment and retaliation, and denies having failed to take action to prevent or correct unlawful discrimination, harassment or retaliation at its Fremont plant.  Tesla highly values the diverse workforce that it has attracted to its Fremont plant, and is proud to provide well-paying, industry-leading jobs to its Fremont workforce.   EEOC's allegation that race-based harassment and retaliation have been "pervasive" and "ongoing" at the Fremont plant since 2015 is false, and belied by the declarations of hundreds of Black employees filed in a concurrent state court action in which similarly baseless claims are alleged. Throughout the entire period covered by EEOC's Complaint, Tesla's has maintained anti-harassment and -discrimination policies that confirm Tesla's commitment to providing a workplace that is free from unlawful discrimination and harassment.  Tesla has also maintained robust systems and processes for employees to report what they perceive to be unlawful conduct, and for Tesla to respond effectively and appropriately to such reports.

### 3.    Legal Issues

####    a.    EEOC's Position

The key disputed legal issues raised by the EEOC's Complaint are whether:

   i.    Tesla violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) (Title VII).
   ii.   Tesla violated Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.
   iii.  Black employees faced race-based misconduct.
   iv.   Black employees found any such race-based misconduct offensive.
   v.    The race-based misconduct experienced by Black employees was sufficiently severe or pervasive to alter the terms and conditions of their employment with Telsa, and did so.
   vi.   Tesla's management or human resources employees knew or should have known of the harassment and/or racially hostile work environment.

vii. Tesla failed to take appropriate actions to prevent or promptly correct the harassment and/or racially hostile work environment.

viii. Black employees engaged in protected activity by opposing race-based misconduct and were subjected to adverse employment actions for engaging in such protective activity.

ix. The adversely affected Black employees suffered damages, including emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, back pay, and out-of-pocket expenses.

x. The adversely affected Black employees are entitled to affirmative relief, including but not limited to back pay, reinstatement, front pay, and interest.

xi. The EEOC is entitled to injunctive relief, including permanent injunctions enjoining Tesla from engaging in unlawful employment practices that discriminate based on race.

xii. The alleged unlawful employment practices were done with malice or in reckless indifference to the federally protected rights of the Tesla's Black employees warranting an award of punitive damages.

xiii. To what extent there is factual support for Tesla's remaining affirmative defenses.

**b.** **Tesla's Position**

In addition to what EEOC has outlined above in Section 3.a, EEOC's Complaint and Tesla's Answer raise the following key legal issues:

As to every purportedly aggrieved individual on whose behalf EEOC seeks monetary relief for a hostile work environment or retaliation on the basis of race:

i. Whether the aggrieved individual is a Tesla "employee" under Title VII.

ii. Whether Tesla took reasonable care to prevent and promptly correct any unlawful race discrimination or harassment, and whether the aggrieved individual failed to take advantage of any preventative or corrective opportunities that Tesla provided.

|   |   |   |
|---|---|---|
| | iii. | Whether the aggrieved individual engaged in a protected activity by opposing or objecting to unlawful race discrimination or harassment, and whether the individual suffered an adverse employment decision because of his or her opposition or objection to unlawful race discrimination or harassment. |
| | iv. | Whether the aggrieved individual experienced at least one instance of unlawful retaliation or race discrimination or harassment within the 300-day statutory period before the EEOC filed its Charge in May 2019 (i.e., since August 2018). |
| | v. | Whether EEOC disclosed (or Telsa reasonably had notice of) and investigated the factual predicates of the unlawful race discrimination, harassment and/or retaliation claims it alleges in the Complaint. |
| | vi. | Whether Tesla is entitled to attorney's fees as a prevailing party. |

**4.  Motions**

There are no pending motions. Tesla previously filed motions to dismiss the Complaint and to stay the lawsuit, both of which the Court denied. *See* ECF 43. The parties have met and conferred in an effort to stipulate to a Protective Order, 502(d) Order, and an initial ESI Protocol, and are continuing these efforts. The parties respectfully ask that the Court set a deadline for the parties to submit stipulated proposals on the Protective Order, 502(d) Order, and ESI Protocol or seek Court intervention within 60 days of the Court's Order on the CMC.

The parties also anticipate eventually filing motions for summary judgment and/or summary adjudication of certain issues.

**5.  Amendment of Pleadings**

    **a.  EEOC's Position**

The EEOC does not currently anticipate adding or dismissing any parties or claims. But given the complexity of this case, however, the EEOC requests that the deadline to amend pleadings without a showing of good cause be set for **July 9, 2024.** The parties are also in the process of meeting and conferring concerning several of Tesla's more than 30 alleged affirmative defenses, and Tesla has thus far said it will voluntarily withdraw its Fourth (Speculative Damages), Sixteenth

(Failure to Join), and Thirty-Second (Unjust Penalties) affirmative defenses, though it has not yet amended its answer.

### b.   Tesla's Position

Tesla proposes that the parties' deadline to amend their pleadings as of right should be 21 days from entry of the Court's CMC Order. EEOC had three years to fully investigate its claims as required by Title VII prior to filing the Complaint, and since that filing EEOC has had another seven months to amend the Complaint if necessary. Tesla does not see any reason why EEOC needs more than the three-week time frame Rule 15(a) envisions to further consider amending its pleading. The parties have met and conferred regarding five Affirmative Defenses that EEOC has questioned. Tesla voluntarily agreed to withdraw three of those Affirmative Defenses (the Fourth, Sixteenth and Thirty-Second), and declined to withdraw the other two (the Twelfth and Fourteenth). EEOC has not raised any issues as to any Affirmative Defenses other than the five cited above, and Tesla's agreement to withdraw three Affirmative Defenses has no bearing on why EEOC purportedly needs an additional 60 days to amend its Complaint.

## 6.   Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information (ESI Guidelines) and plan to schedule a conference during the week of May 13 concerning the preservation of ESI that will include their E-Discovery Liaisons.  The parties have identified EEOC Assistant General Counsel (Technology), Maria Salacuse, and Holland & Knight LLP eDiscovery Senior Project Manager, Arnulfo Flores, as their respective E-Discovery Liaisons for this case.  The parties' initial ESI Protocol will focus on matters directly applicable to their Initial Disclosures, including production formatting and metadata.

## 7.   Disclosures

The parties propose to exchange Initial Disclosures within 75 days after the Court's order on the CMC, though, as discussed below, the parties are not in agreement about the scope of the Initial Disclosures.

/ / /

/ / /

**8.      Discovery**

The parties have not yet engaged in formal discovery. The parties are in the process of negotiating the protective order, as well as a 502(d) Order, and the initial ESI protocol with a goal of finalizing these documents no later than 60 days from the Court's CMC order. The parties agree that a protective order needs to be in place before they can exchange Initial Disclosures or other discovery.

As for the Discovery Plan, the parties propose to begin formal discovery after their exchange of Initial Disclosures (due 75 days after the Court's CMC order), as hereinafter proposed. Because those Initial Disclosures are anticipated to be voluminous, consisting, in part, of EEOC's three-year investigative file and relevant portions of Tesla's discovery productions in the *CRD* and *Vaughn*[1] state court actions time will be needed for the parties to review those Disclosures. After Initial Disclosures and a review period, the parties will meet and confer and propose a Discovery Plan and supplemental ESI Protocol to the Court. The parties' supplemental ESI Protocol will address issues of ESI sources, relevant custodians, document searches and review, and privilege log exclusions.

The parties do have differing proposals regarding the timing and scope of their Initial Disclosures and the timing of their presentation of a formal Discovery Plan to the Court.

     **a.      Discovery Plan Proposals**

          **i.      EEOC's Proposal**

The EEOC proposes 60 days more than Tesla for reviewing Initial Disclosures and finalizing a discovery plan. Given the voluminous records involved, Tesla's proposal of 60 days is too short. For instance, Tesla has represented that the discovery in *Vaughn* and *CRD* alone is over 20,000 records (and 80,000 pages). The EEOC sees the Initial Disclosures period as an opportunity for the parties to refine their discovery objectives and limit, to the extent possible, duplicating the discovery completed in *Vaughn* and *CRD*. To accomplish this, the EEOC will need time to consume the produced records, which may require contracting an external vendor, and to modify its discovery

---

[1] *Department of Fair Employment and Housing v. Tesla, Inc.*, Alameda County Superior Court No. 22CV006830, and *Vaughn, et al. v. Tesla, Inc.*, et al., Alameda County Superior Court No. RG 17882082.

proposal accordingly before meeting and conferring with Tesla to finalize a discovery plan. The parties may also need to meet and confer about the Initial Disclosures[2] and to negotiate a supplemental ESI protocol, including the relevant custodians and sources of ESI revealed in the Initial Disclosures. Thus, the EEOC proposes that the initial disclosure and review period be as follows:

- Initial Disclosures due 75 days following the Court's Order on the CMC[3];
- A status conference with the Court 30 days after the Initial Disclosures to monitor the status of discovery and the parties' progress towards preparing a proposed discovery plan;
- A proposed discovery plan outlining the process for formal discovery due to the Court 120 days after the Initial Disclosures.

The EEOC also proposes that the parties disclose the following information and records in their Initial Disclosures:

**(1)   EEOC's Disclosures**

Non-privileged[4] records (facts) from the investigative file, including:

i. List of respondents to survey/questionnaire that EEOC issued during its investigation.

ii. Contact information of individuals interviewed by the EEOC during its investigation, to the extent this information was maintained in the ordinary course of business within the EEOC's investigative files, and excluding individuals who have asked the EEOC to provide them with legal advice and assistance or to seek relief for them in connection with this lawsuit.[5]

---

[2] Tesla proposes producing portions of discovery from *Vaughn* and *CRD* that it deems to be "relevant" (*see infra*, at p. 14), but so far has not detailed with any specificity which records it believes are relevant or irrelevant. Consequently, the EEOC has no way to assess the volume or content of information Tesla will produce.

[3] This assumes that a protective order will be in place by this time to cover these documents.

[4] Privileged records include those protected by attorney-client, attorney-work product, governmental deliberative process, and conciliation (42 U.S.C. § 2000e-5(b)) privileges.

[5] The parties are negotiating a protective order concerning *ex parte* communications with any of these individuals.

|   |   |      |
|---|---|------|
| 1 |   | iii. Copies of responses to any survey/questionnaire that EEOC sent to any current or former Tesla employees during its investigation. |
| 3 |   | iv. EEOC Investigator notes of witness interviews. |
| 4 |   | v. Policies, personnel files, investigative records, and emails obtained from Tesla. |
| 6 |   | vi. discovery responses, trial and arbitration briefs and exhibits, deposition and trial and/or arbitration testimony, declarations, affidavits, and statements. |

**(2) Tesla's Disclosures**

All discovery produced by Tesla in *Vaughn* and *CRD*, including copies of:

    i. Written discovery requests and responses propounded or received by Tesla, including Requests for Production, Requests for Admission, and Interrogatories.

    ii. Signed declarations, affidavits, and other statements from witnesses in *Vaughn* and *CRD*, excluding formal, signed, and unfiled declarations and affidavits and related drafts.

    iii. Copies of deposition transcripts from any witnesses deposed in *CRD/Vaughn*.

    iv. Race harassment and retaliation complaints and related investigation records concerning Black employees working at Fremont facilities from May 29, 2015, to the present, if any.

    v. List of Black Employees at Fremont facilities employed from January 1, 2015, to the present, including names, last-known contact information, job title(s), department(s), dates of employment, supervisor(s), reason for separation, if any.

The EEOC proposes producing virtually all the evidence it collected during its investigation of Tesla. The EEOC therefore objects to Tesla's proposal that the EEOC, in the form of a "disclosure" create detailed, factual summaries "for every purported aggrieved employee." *See*, *infra* at p. 11. This request is excessive, unnecessary, and unwarranted particularly at the Initial Disclosures phase of this case. For instance, hundreds of individuals have already submitted

declarations in *Vaughn* alone attesting to their exposure to Tesla's hostile work environment. *See* ECF 22-7 (Exh A to Tesla's Motion to Stay) p. 50. A compendium of victim accounts would be premature, excessive, and objectionable even as a contention interrogatory in discovery. *See e.g, Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) ("Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories.") (internal citations omitted); *see also, Amgen Inc. v. Sandoz Inc.*, No. 14-CV-04741-RS (MEJ), 2016 WL 1039029, at *3 (N.D. Cal. Mar. 15, 2016) (burden of justification on propounding party "who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed.") (internal citations omitted).

Lastly, EEOC objects to Tesla's refusal to disclose "witness statements" in *Vaughn* and *CRD* to the extent this phrase contemplates anything other than signed and unfiled formal declarations and affidavits and related drafts. *See, infra*, at p. 15. While unfiled, formal declarations and affidavits and related drafts may be attorney work-product, other "witness statements," which could plausibly encompass statements obtained during the course of EEO investigations or even informal email harassment complaints from percipient witnesses to Human Resources, are discoverable.

b. **Tesla's Proposal**

As noted, the parties agree that an Initial Disclosures period during which formal discovery is stayed would benefit both sides and result in a more efficient discovery process.

Tesla proposes the following Initial Disclosures and review timeline:

- Initial Disclosures due within 75 days of the Court's CMC Order;
- A proposed Discovery Plan and stipulated supplemental ESI Protocol due to the Court 60 days after the Initial Disclosures cut-off date;
- A follow-on case management conference with the Court to address any issues regarding the parties' proposed Discovery Plan[s]; and
- Formal discovery stayed until the Court enters a discovery scheduling order and stipulated supplemental ESI Protocol pursuant to the parties' proposed Discovery Plan[s].

Tesla believes EEOC's proposed 120-day review and conferral period after the parties'

exchange of Disclosures to be excessive and unnecessary. The parties need not undertake a granular analysis of the other side's Initial Disclosures in order to formulate a formal Discovery Plan for the Court's consideration. Moreover, EEOC purportedly conducted a three-year investigation of Tesla's Fremont plant prior to filing this lawsuit, and so presumably now has much (if not most) of what it believes it needs to prove its case. Finally, with the assistance of existing e-discovery technology, 60 days is adequate time for the parties to review and meet and confer regarding even a voluminous number of documents.

Tesla further proposes that the parties share the following information and records in their Initial Disclosures:

**(1)     EEOC's Disclosures**

i. Identity and contact information of purportedly aggrieved employees on whose behalf EEOC currently purports to be seeking individual relief, although EEOC need not provide contact information for those purportedly aggrieved employees whom EEOC has agreed to represent in this proceeding;

ii. Identity and contact information of all persons EEOC interviewed as part of its investigation, and any facts gathered during those interviews;

iii. Copies of responses to any survey/questionnaire that EEOC sent to any current or former Tesla employees during its investigation, including the name and contact information of the survey respondent;

iv. Identity of all purportedly quoted speakers in the Complaint and their corresponding quotes;

v. To the extent not captured in the above (a)–(d), a summary of factual particulars of the grievances of each purportedly aggrieved employee that EEOC has currently identified, including facts sufficient for Tesla to ascertain for each aggrieved employee, insofar as it is currently known by EEOC: (1) the location and approximate date of the harassment or retaliation; (2) specific nature of the harassment or retaliation; (3) position and race or ethnic background of the alleged harasser or retaliator; (4) witnesses to the

|   |       |                                                                                                                                                                                                                                                                   |
|---|-------|----|

harassment or retaliation, including any supervisors or managers; (5) whether the purportedly aggrieved employee made a formal or informal complaint, and the identity of any HR or ER personnel who were purportedly made aware of the complaint; (6) how the purportedly aggrieved employee's complaint (if any) was handled or resolved by Tesla.

    vi.    Identity and contact information of all current and former Tesla employees whom EEOC contacted regarding its survey/questionnaire or a potential interview, and who did not respond to the survey or participate in an interview;

    vii.    Policies, personnel files, investigative records, and emails obtained from Tesla;

    viii.    Communications between the Parties relating to EEOC's investigation;

    ix.    Discovery responses, trial and arbitration briefs and exhibits, deposition and trial testimony, declarations, affidavits, and statements.

**(2)  Tesla's Disclosures**

    i.    Copies of (1) all documents Tesla produced and Tesla's responses to requests for production of documents, (2) Tesla's responses to requests for admission; (3) Tesla's responses to interrogatories, (4) deposition transcripts, and (5) signed employee witness declarations that Tesla has filed in the *Vaughn*/*CRD* cases, to the extent those materials are relevant to EEOC's allegations of race-based harassment and retaliation, and assuming the parties agree to a stipulated protective order that permits the disclosure of information covered by protective orders in the *Vaughn*/*CRD* cases;

    ii.    Race harassment and retaliation complaints and related non-privileged investigation records concerning Black employees working at Fremont facilities since January 1, 2016, as reasonably up-to-date as practicable in light of how Tesla maintains the constituent information in the ordinary course of business;

    iii.  List of current and former employees at the Fremont factory since January 1, 2016, who identify as Black or African American, including their names, last-known contact information, job title(s), and dates of employment, as reasonably up-to-date as practicable in light of how Tesla maintains the constituent information in the ordinary course of business; and

    iv.  Communications between the Parties relating to EEOC's investigation.

Tesla opposes EEOC's requests that Tesla produce signed witness statements in the *Vaughn/CRD* cases that Tesla has not included in litigation filings or otherwise publicly disclosed. Undisclosed signed witness statements that a party gathers in the course of litigation fall squarely within the protections of the work product doctrine. *See, e.g.*, *In re Convergent Techs. Second Half 1984 Sec. Litig.*, 122 F.R.D. 555, 558 (N.D. Cal. 1988) (relying on *Hickman v. Taylor*, 329 U.S. 495 (1947)).

As to EEOC's claim that Tesla unreasonably requests "detailed, factual summaries" for "every aggrieved employee," EEOC either misreads or mischaracterizes Tesla's proposal. What Tesla requests is basic factual information (who?, what?, when?, where?, why?) relating to individual claims of harassment and/or retaliation by "aggrieved employees" upon whose behalf EEOC seeks relief in this action. To the extent this information is included in documents that EEOC agrees to produce, no additional summary is requested. But to the extent this factual information is contained in a document that EEOC considers privileged and withholds from disclosure, Tesla seeks a summary of the non-privileged, factual information previously discussed and specified in Section 8a.iv.(1)(e). Moreover, this is not—as EEOC frames it—a premature "contention interrogatory." Tesla only seeks relevant facts that EEOC gathered during its administrative investigation, not "all facts" that support EEOC's claims in this lawsuit.

### 9. Class Actions

This case is not a class action and the Procedural Guidance for Class Action Settlements is inapplicable.

/ / /

/ / /

10. **Related Cases**

    a. **EEOC's Position**

    The EEOC does not believe that any cases meet the standard for a related case under Local Rule 3-12(a), which requires the related case to contain "substantially the same parties, property, transaction, or event." The parties and the Court are, of course, aware of the *Vaughn* and *CRD* cases and the EEOC will endeavor to avoid duplicating discovery in those cases to the extent it can.

    b. **Tesla's Position**

    Under Local Rule 3-12(a)'s definition, the following are related cases to this action: (1) *Department of Fair Employment and Housing v. Tesla, Inc.*, Alameda County Superior Court No. 22CV006830; and (2) *Vaughn, et al. v. Tesla, Inc., et al.*, Alameda County Superior Court No. RG 17882082.

11. **Relief**

    a. **EEOC's Position**

    The EEOC detailed the relief it seeks in its Complaint. *See* ECF 1, pg. 8-9. The relief includes permanent injunctions against further discrimination, an order for Tesla to institute and implement policies, practices, and programs as may be necessary to afford equal employment opportunities for Black employees and to eradicate any prior discrimination. *Id.* The EEOC also seeks monetary damages, including for back pay and pecuniary and non-pecuniary losses, such as emotional distress for aggrieved individuals and punitive damages. *Id*. While the exact computation of monetary damages is currently uncertain, Title VII claims are subject to a $300,000 statutory cap on compensatory and punitive damages per aggrieved individual. *See* 42 U.S.C. § 1981a(b).

    b. **Tesla's Position**

    Tesla believes that EEOC is not entitled to any relief and reserves the right to seek costs and fees from the EEOC, *see* 42 U.S.C. § 2000e-5(k). Given the vague nature of EEOC's allegations, and the failure to identify any particularized facts regarding any identified employees, Tesla cannot provide a description of the bases for any potential damages calculations at this time.

12. **Settlement and ADR**

    The parties previously engaged in confidential, conciliation negotiations prior to the filing of

this lawsuit, pursuant to 42 U.S.C. § 2000e-5(b).

The parties believe that additional discovery and/or motions practice is needed before conducting additional ADR or proposing an ADR plan in accordance with ADR L.R. 3-5. Therefore, the parties request that the Court set November 9, 2024, as the deadline for the parties to revisit selection of an ADR process and, if appropriate, to propose an appropriate deadline for completion of ADR.

**13.    Other References**

This case is not suitable for referral to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.    Stipulated Narrowing of Any Issues**

Please see the parties' proposals regarding the Discovery Plan, at Section 8(a), *supra*.

**15.    Scheduling**

Please see the parties' proposals regarding the Discovery Plan, at Section 8(a), *supra*.

**16.    Trial**

The parties believe that it is currently premature to determine the length of a trial on any of the issues in this case. The parties anticipate that they will be able to further inform the Court about the timing of a trial when they present their Discovery Plan[s]. *See supra,* Section 8.

**17.    Disclosure of Non-Party Interested Entities or Persons**

The EEOC is not subject to the disclosure requirements of L.R. 3-15(a). Tesla filed its disclosure statement on December 26, 2023 (ECF 25) and will file any updated disclosures by May 2, 2024.

**18.    Professional Conduct**

    **a.    EEOC**

The EEOC confirms that its attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

    **b.    Tesla**

Tesla confirms that its attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19.     Such other matters as may facilitate the just, speedy, and inexpensive disposition of this matter**

    **a.     Privilege**

The parties are negotiating whether certain categories of documents need not be included on a privilege log.

    **b.     Electronic Service**

The parties stipulate to electronic service, with documents being deemed timely served if they are emailed to the parties' attorneys of record and to their respective email lists (below) on or before the date that the documents would otherwise be due to be served.

    i.     EEOC's Current Email List:

        (a)     James.baker@eeoc.gov

        (b)     Kena.cador@eeoc.gov

        (c)     Roberta.steele@eeoc.gov

        (d)     Marcia.mitchell@eeoc.gov

        (e)     SFDO_tesla@eeoc.gov

    ii.     Tesla Email List:

        (a)     Tom.hill@hklaw.com

        (b)     Sara.begley@hklaw.com

        (c)     Christina.tellado@hklaw.com

        (d)     Rcardozo@reedsmith.com

        (e)     Paul.bennetch@hklaw.com

        (f)     Billy.sahachartsiri@hklaw.com

        (g)     Deborah.rzepela-auch@hklaw.com

/ / /

/ / /

/ / /

/ / /

/ / /

Dated:  May 2, 2024

| | |
|---|---|
| ROBERTA STEELE<br>Regional Attorney | KARLA GILBRIDE<br>General Counsel |
| MARCIA L. MITCHELL<br>Assistant Regional Trial Attorney | CHRISTOPHER LAGE<br>Deputy General Counsel |
| JAMES H. BAKER<br>Senior Trial Attorney | Office of the General Counsel<br>131 M Street, N.E.<br>Washington, D.C. 20507 |
| KENA C. CADOR<br>Trial Attorney | |

BY:  /s/ *James H. Baker*
     James H. Baker
     U.S. EQUAL EMPLOYMENT
     OPPORTUNITY COMMISSION
     San Francisco District Office
     450 Golden Gate Ave., 5th Floor West
     P.O. Box 36025
     San Francisco, CA 94102
     Telephone (650) 684-0950
     james.baker@eeoc.gov

*Attorneys for Plaintiff EEOC*

BY:  /s/      *Thomas E. Hill*
     Thomas E. Hill
     thomas.hill@hklaw.com
     Christina T. Tellado
     christina.tellado@hklaw.com
     HOLLAND & KNIGHT LLP
     400 South Hope Street, 8th Floor
     Los Angeles, California 90071
     Telephone: (213) 896-2400
     Facsimile: (213) 896-2450

*Attorneys for Defendant Tesla Inc.*

### LOCAL RULE 5-1(i)(3) ATTESTATION

I, James H. Baker, am the ECF User whose ID and password are being used to file the Joint Case Management Conference Statement. In compliance with Local Rule 5-1(i)(3), I hereby attest that Thomas E. Hill concurs in this filing.

Dated: May 2, 2024          /s/ *James H. Baker*
                            James H. Baker, Senior Trial Attorney