Joint Discovery Dispute Letter

July 11, 2024

*Via ECF*

The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

**RE:** *EEOC vs. Tesla, Inc*. **Case No: 23-cv-04984-JSC**

Dear Judge Corley,

   Pursuant to the Court's Civil Standing Order and Pretrial Order No. 1 (ECF 52), Plaintiff U.S. Equal Employment Opportunity Commission (EEOC) and Defendant Tesla, Inc. respectfully submit this Joint Discovery Dispute Letter regarding their proposed additions and deletions to their draft Stipulated Protective Order (Exhibit A). The parties' counsels of record previous met and conferred about these issues several times by videoconference, including on June 25 and July 10. The parties agree regarding nearly all its provisions. The few points of disagreement are highlighted by comments, and the parties' respective positions regarding these disputed provisions are outlined below.

  **1. Sections 2.15 & 12.4**

  **EEOC's Position:** The EEOC seeks to address *ex parte* communications in the protective order—specifically to memorialize the Parties apparently shared understanding that they will not communicate with certain individuals. Based on several conversations, the Parties broadly agree that:

- Tesla should not contact:
    - individuals "whom the EEOC represents" until such individuals indicate that they do not wish for the EEOC to seek relief on their behalf.[1]

- EEOC should not contact:
    - current or former employees who Tesla's counsel represents; and
    - current or former Tesla managers concerning any information they may have obtained through privileged means.

The EEOC has defined Represented Individuals in Section 2.15 according to this understanding. Establishing clear ground rules now for communications with Represented Individuals is important. In the EEOC's experience, *ex parte* communications, including issues such as when a protected relationship is established between EEOC and putative aggrieved individuals, and to what extent the agency may contact managerial employees, etc. are frequent areas of dispute. The scope of permissible communications also affects the parties' discovery planning.

---

[1] Tesla's counsel has intermittently referred to aggrieved individuals as "individuals whom the EEOC represents," though the EEOC technically does not represent any victims in an individual capacity.

1

Courts regularly issue such orders governing *ex parte* communications in EEOC and private actions. *See e.g., E.E.O.C. v. FAPS, Inc*., No. CIV.A. 10-3095 PGS, 2013 WL 4833535, at *5 (D.N.J. Sept. 10, 2013) (prohibiting Defendant from engaging in additional *ex parte* communications with EEOC claimants and potential claimants."). Note that while the EEOC is technically the "client" in this case, Courts do recognize a protected relationship between EEOC attorneys and aggrieved individuals in its enforcement actions. *See e.g., EEOC v. Tony's Lounge, Inc*., No. 3:08-CV-677-WDS, 2010 WL 1444874, at *2 (S.D. Ill. Apr. 9, 2010) ("[When] the EEOC brings suit . . . the EEOC's attorneys are acting as de facto counsel for the employees." (cleaned up)); a*ccord E.E.O.C. v. Pioneer Hotel, Inc*., No. 2:11-CV-01588, 2014 WL 4987418, at *6 (D. Nev. Oct. 6, 2014) ("Courts have recognized an attorney-client relationship between EEOC counsel and the claimants whose interests the EEOC seeks to protect in the litigation." (collecting cases)). *See also Sarmiento v. Fresh Harvest, In*c., No. 20-CV-07974-BLF, 2022 WL 3589492, at *5 (N.D. Cal. Aug. 22, 2022) (barring defendant communications with putative class members regarding settlement); *Altamirano-Santiago v. Better Produce, Inc*., No. 19CV3964DDPFFMX, 2020 WL 5412123, at *5 (C.D. Cal. Sept. 8, 2020) (barring defendant from "any communication with any plaintiff, putative, existing, or potential, class member.').

Thus, the EEOC believes it is important to resolve and memorialize any limitations on those communications now, especially while the Parties share some understanding about these issues, to alleviate confusion and reduce disputes later.

**Tesla's Position:** The starting point for the parties' draft Protective Order is this Court's Model Stipulated Protective Order ("Model Order," *available at* https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.Feb2022.pdf). EEOC proposes to add provisions not found in the Model Order prohibiting counsel for either party from communicating *ex parte* with "Represented Individuals," who EEOC defines to include employees who worked at Tesla's Fremont facility since 2016 and self-identify as Black/African-American.

EEOC's proposed prohibition on *ex parte* communications is not the proper subject of a protective order, as confirmed by the absence of this topic from the Model Order,[2] and is unnecessary and overbroad. Multiple overlapping laws and ethical rules already govern with whom attorneys in this matter may or may not communicate. *See, e.g.*, Cal. R. Prof'l Conduct 4.2; *Hernandez v. Vitamin Shoppe Industries Inc*., 174 Cal. App. 4th 1441, 1459 (articulating current rule 4.2 [former Rule of Professional Conduct 2-100]'s restrictions in the context of a conditionally certified California state class action). There is no need to attempt to incorporate these laws and rules of professional responsibility into the protective order, and the parties certainly cannot limit or expand those laws or rules by agreement.

Here, EEOC's definition of "Represented Individuals" (§ 2.15)—to include *all* self-identified Black workers at Fremont—goes beyond the applicable law. Tesla's counsel has advised EEOC's counsel that they will not contact aggrieved individuals who have asked EEOC to represent them in an attorney-client capacity in these proceedings. That said—*and contrary to EEOC's representation of Tesla's position above* —not every employee whom EEOC broadly considers a putative member of its "potential class" has an attorney-client relationship with EEOC. *See, e.g.*, *United States EEOC v. ABM Indus*., 261 F.R.D. 503, 508 (E.D. Cal. 2009) ("[W]hen the

---

[2] Notably, the Model Protective Orders of the Central and Southern District Courts in California also omit any provision regarding *ex parte* communications with represented parties. *See* CACD Model Protective Order, *available at* https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fwww.cacd.uscourts.gov%2Fsites%2Fdefault%2Ffiles%2Fdocuments%2FSHK%2FAD%2FSAMPLE%2520STIPULATED%2520PROTECTIVE%2520ORDER.doc&wdOrigin=BROWSELINK); CASD Model Protective Order (*available at* https://www.casd.uscourts.gov/forms.aspx?list=miscellaneousforms).

EEOC brings a Title VII suit, '[a]n attorney-client relationship does not exist across an entire potential class merely when the EEOC file[s] a case and identifi[es] a class'"). Moreover, EEOC has repeatedly rejected Tesla's requests that EEOC identify the aggrieved individuals on whose behalf it seeks relief. Thus, Tesla does not even have the information needed to avoid such contact, if it were required.

In short, any restrictions on attorney communications are best left to the laws and rules of professional responsibility that will independently apply regardless of the terms of this Protective Order.

## 2. Section 5.2

**Tesla's Position:** EEOC proposes that the parties designate documents as "Confidential" on a page-by-page or even paragraph-by-paragraph basis.

In a case of this magnitude, page-by-page confidentiality designations are far more burdensome than they are useful—and much more burdensome on Tesla than EEOC. Given the nature of EEOC's claims, discovery in this proceeding will likely involve tens of thousands of documents (much less the number of *pages* in those documents) consisting of personnel records, communications of hundreds of Tesla employees, and thousands of documents concerning confidential corporate policies and processes. Predictably, as the employer and custodian of these records, Telsa will bear the disproportionate burden of page-by-page confidentiality designations. Indeed, Tesla's *initial* disclosures to EEOC—due next week—are estimated to exceed 18,000 individual documents (and again, far more *pages*), including over 10,000 documents designated as "Confidential" under the *Vaughn* and *CRD* protective orders.

With discovery of this volume, there is little marginal utility in designating each page of a document as Confidential compared to the document as a whole. Under the current agreed-upon provisions of the Protective Order, EEOC can disclose documents marked confidential with all persons reasonably necessary to prosecute the case, including experts, potential witnesses, and deponents. (*See* § 7.2.) Thus, the confidentiality designations only present a genuine issue when the receiving party wishes to include a confidential document in a court filing. (*See* § 12.3.) And in those instances, the parties are not likely—as a matter of best practice—to submit only chopped-up excerpts of a single document to the Court. Rather, the parties' filings would presumably consist of *whole* documents. Thus, whether the entire document is marked as confidential, or just a portion of it, if a confidentiality designation is in dispute, the parties would ultimately need to discuss the entire document with the Court. Moreover, as experience suggests, it is unlikely that either party will seek to file in the public record more than a fraction of the tens of thousands of documents that will be produced in discovery. Requiring Tesla to apply page-by-page confidentiality designations to thousands of documents that will never be disputed is needlessly onerous.[3]

Additionally, the agreed-upon provisions of the Protective Order place no hard time limit on EEOC's ability to dispute confidentiality designations. (*See* § 6.1.) It will thus be much more efficient for the parties to discuss any page- or PII-specific confidentiality concerns when they have refined their case enough to identify the actual documents they wish to file with the court.

---

[3] EEOC's reliance below on *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASX), 2020 WL 12029333 (C.D. Cal. Aug. 7, 2020) is inapposite. That other parties in other cases agreed to more particularized confidentiality designations—and that courts enforce them—does not mean that such designations are useful or appropriate here. Additionally, the dispute in *SPS Technologies* concerned documents designated as "Attorneys Eyes Only"—a much more restrictive designation than the parties contemplate here.

      Finally, and on a purely pragmatic level, if EEOC insists (and the Court agrees) that Tesla must apply new page- and PII-specific confidentiality designations across over <u>10,000</u> documents previously produced in the *CRD* and *Vaughn* cases—where such designations were not required by the state court—Tesla will not be able to meet the Court's initial disclosures deadline of July 18, 2024. In that regard, Tesla never understood the Court's prior direction that it provide copies of the *Vaughn* and *CRD* discovery productions to EEOC as part of its initial disclosures to require Tesla to modify in any way those prior productions.

      **EEOC's Position:** The Standard Model Protective Order discourages "Mass, indiscriminate, or routinized [confidentiality] designations." *See* Section 5.1. Where only part of a record contains confidential material, the parties should indicate so per the model order. *See also, SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASX), 2020 WL 12029333, at *1 (C.D. Cal. Aug. 7, 2020) ("In sum, a party may not designate an entire document as Highly Confidential merely because portions of the document warrant this designation.") (cleaned up). Protection for confidential records is not a matter-of-right—the designating party ultimately needs to show good cause for each confidential designation. *In re ConAgra Foods, Inc.*, No. CV 11-5379, 2014 WL 12577132, at *2 (C.D. Cal. July 11, 2014). There is no good cause for designating entire pages or whole documents as confidential where only a portion of the record contains confidential material. *Cf. SPS Techs, at *2* ("[A]llowing a party to shield entire pages of a deposition transcript behind a confidentiality designation merely because confidential information arbitrarily appears on the same printed page would be contrary to the "good cause" standard. . .").

      The practical problem with mass confidentiality designations is emphasized here with personally identifying information (PII). Many records in this case are personnel records, containing forms of PII that are generally deemed confidential under the proposed protective order. *See* Section 2.2. The parties agree that: "Documents that are confidential only on the basis of containing PII, may be used in discovery and filed as long as the portions containing the PII are redacted." Section 7.2. But deleting Section 5.2's language would obviate the need for Tesla to indicate when a record is confidential "only on the basis of containing PII," such as a personnel record containing a home address, and would render this helpful provision useless.

      Removing this provision would, at odds with the rules, also shift the burden from Tesla to identify and justify and justify limitations on their disclosures to the EEOC to identify and justify *nonconfidential* materials and then meet and confer about their use. The burden would certainly also fall on the Court, who would need to cull through every page of the document to determine which information is confidential, when this culling should be done in the first instance by the designating party, per the Standard Model Protective Order.

    **3. <u>Section 7.2 (First Issue)</u>**

      **EEOC's Position:** The EEOC should, subject to same rules for other permitted recipients, be able to share relevant information with counsels for plaintiffs in *Vaughn* and the California Civil Rights Department in *Department of Fair Employment and Housing v. Tesla, Inc.,* Alameda County Superior Court No. 22CV006830 (*CRD*), as may be warranted. Conferring with Vaughn and CRD counsel about these documents, which will likely concern Tesla's policies and practices, remedial efforts, and investigations would be directly relevant for the prosecution of the EEOC's case. *See* Section 7.1-2. CRD and Vaughn, moreover, already have all the confidential materials that Tesla is producing in its initial disclosures. So, this proposal merely allows the EEOC to share and discuss with that counsel documents that they already possess. Also, the Court instructed the parties to work together to limit duplicative discovery. Preventing the CRD and Vaughn counsel access to confidential materials subject to this Protective Order would frustrate the parties' discovery efforts and undermine judicial economy.

Nothing, significantly, in this protective order limits Tesla's ability to seek further protections on a document-by-document basis here, or in the state cases. But outright banning CRD and Vaughn counsels' access to such materials is an unnecessarily broad restriction to address a narrow scenario, especially where Tesla has designated a large volume of records as confidential.[4] Thus, the EEOC respectfully requests that the Court approve the EEOC's proposed additions to Section 7.2.

**Tesla's Position:** EEOC seeks to add the *Vaughn* plaintiffs' counsel and the California Civil Rights Department to the list of persons to whom it may disclose Tesla's confidential information in this litigation. (*See* § 7.2(j).) Tesla sees no reason for this gaping exception to the model Protective Order's baseline provision that confidential material will only be disclosed and used as reasonably necessary *for the prosecution of this litigation*. (*See* §§ 7.1, 7.2.)

Tesla understands that the *Vaughn* plaintiffs' counsel will likely represent potential witnesses and aggrieved individuals involved in to this litigation. Under the agreed-upon provisions of this Protective Order, EEOC may disclose protected material to *Vaughn* counsel as may be needed for purposes of *this* litigation. (*See* § 7.2(f)–(h).) But Tesla sees no reason why EEOC should disclose Tesla's confidential material to *Vaughn* counsel regarding workers who have opted out of the *Vaughn* class and are not represented by class counsel. The same is true as to CRD.

### 4. Section 7.2 (Second Issue)

**Tesla's Position:** Relatedly, Tesla seeks to add language at the end of § 7.2 making clear that CRD and *Vaughn* counsel should not in any case use EEOC's discovery in this proceeding to bypass or contravene state court orders protecting identical Tesla materials from disclosure in their own cases. The risk of contradictory discovery orders between the state actions and this proceeding is quite real given the high volume of disputed discovery—it is unlikely that both courts arrive at identical conclusions on every dispute. If CRD and *Vaughn* counsel want to bypass civil discovery in their actions and seek Tesla's materials from the EEOC, they should at least agree not to use materials that the state court has protected from disclosure in their own cases. Moreover, the onus of complying with this provision is entirely on the CRD and *Vaughn* counsel—who are well aware of the discovery orders in their respective actions—rather than on EEOC, on whom this proposed provision does not impose any duties whatsoever.

**EEOC's Position:** Whether a document is "identical" to another document is an ambiguity that invites dispute. What is "identical" is not defined. The EEOC is also unfamiliar with the protective orders, and related rulings, conferrals, and discussions in *CRD* and *Vaughn*, such that the Commission cannot know when this provision might apply. While Tesla focuses on Vaughn and CRD counsel, this provision would also task unrepresented witnesses and laypersons with the same deciphering burden. Tesla can seek additional protections regarding its confidential materials on a case-by-case basis, from this court or the state court, to address any concerns about Vaughn's and CRD's counsel potentially circumventing state court orders. The parties, including the Court, will be better positioned to address this issue if it actually arises. For now, Tesla is only producing documents that it already produced in *CRD* and *Vaughn* and nothing more.

/ / /
/ / /
/ / /

---

[4] The EEOC has received indications that anywhere from 50% to 90% documents produced in Vaughn were designated confidential.

Dated: July 11, 2024

| | |
|---|---|
| ROBERTA STEELE<br>Regional Attorney | KARLA GILBRIDE<br>General Counsel |
| MARCIA L. MITCHELL<br>Assistant Regional Trial Attorney | CHRISTOPHER LAGE<br>Deputy General Counsel<br>Office of the General Counsel |
| JAMES H. BAKER<br>Senior Trial Attorney | 131 M Street, N.E.<br>Washington, D.C. 20507 |
| KENA C. CADOR<br>Trial Attorney | |

BY:  /s/ James H. Baker
James H. Baker
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA 94102
Telephone (650) 684-0950
james.baker@eeoc.gov

*Attorneys for Plaintiff EEOC*

BY:  /s/ Thomas E. Hill
Thomas E. Hill
thomas.hill@hklaw.com
Christina T. Tellado
christina.tellado@hklaw.com
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450

*Attorneys for Defendant Tesla Inc.*

## LOCAL RULE 5-1(i)(3) ATTESTATION

I, James H. Baker, am the ECF User whose ID and password are being used to file the Joint Case Management Conference Statement. In compliance with Local Rule 5-1(i)(3), I hereby attest that Thomas E. Hill concurs in this filing.

Dated: July 11, 2024        /s/ James H. Baker
                                          James H. Baker, Senior Trial Attorney