Joint Discovery Dispute Letter

January 24, 2025

<u>Via ECF</u>

The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

**RE:** *EEOC vs. Tesla, Inc*. **Case No: 23-cv-04984-JSC**

Dear Judge Corley,

      Pursuant to the Court's January 8, 2025, Minute Entry, Plaintiff U.S. Equal Employment Opportunity Commission (EEOC) and Defendant Tesla, Inc. respectfully submit this Joint Discovery Dispute Letter regarding the Second ESI Protocol and related discovery disputes. The parties' proposed additions and deletions to the Second ESI Protocol is attached as Exhibit A.

      **Tesla's Position:** As a preliminary matter, following the January 8, 2025 Case Management Conference, Tesla sent its revisions to the ESI Protocol and a response to the EEOC's letter on January 15, 2025. Despite Tesla's subsequent follow-up on January 22, 2025, the EEOC only replied with a draft of this dispute letter right on the eve of the filing deadline, frustrating Tesla's efforts to reach an agreement on an ESI Protocol. Tesla thus responds to the EEOC's contentions in this letter while maintaining that there is no discovery dispute, so a joint discovery dispute letter is unnecessary.

      To date, the EEOC has only requested the production of deposition transcripts in other actions concerning harassment based on race (Black or African American) or retaliation for opposing it at Tesla's Fremont Factory between May 29, 2015 to the present. Tesla has produced numerous deposition transcripts and will continue to do so. As such, the only issues mentioned in this letter concern the ESI Protocol and these issues have not yet resulted in a concrete discovery dispute. Indeed, as the Court can see from the attached, the parties have reached agreement with respect to most provisions of a very detailed ESI protocol. Where there are still differences in language, most of those are a function of the current stage of discovery. Tesla believes that it is premature to litigate potential concerns or issues that are speculative and may never turn into discovery disputes. Tesla is concerned that the EEOC is converting the preparation of an ESI protocol into a predictive discovery dispute that has not arisen and that is blocking the adoption of an agreed ESI protocol.

      **EEOC's Position**: The Court originally ordered the parties to submit a Second ESI Protocol by October 30, 2024. *See* ECF 65. This protocol and the lingering, related ESI disputes are thus ripe by now for the Court's guidance as the Court determined at the January 8 Case Management Conference.

      1. **Sources of ESI**

      **EEOC's Position**: The main problem is that Tesla still has not disclosed the full scope of potentially relevant ESI sources that Tesla has preserved to date and the steps it has taken to do so, as well as the ESI sources it has not or believes it need not preserve. On January 6, after several videoconferences, the EEOC detailed to Tesla by letter the information it seeks about Tesla's ESI, including when certain ESI sources were used, what they were used for, a general description of types of information they contain, and whether Tesla used other ESI systems listed

in the EEOC's letter. The EEOC's letter and Tesla's reply are attached as Exhibits B & C, respectively. The EEOC seeks information that is both non-controversial and urgent. EEOC seeks disclosure now to facilitate effective and efficient discovery, consistent with Rule 1.

Courts routinely hold that parties are "entitled to know what kinds and categories of ESI" a party has collected and preserved. *See Cohen v. Trump*, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015). "The disclosure of information indicating [custodial and] non-custodial sources of the ESI is expected in the ordinary course of discovery." *Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 803 (N.D. Cal. 2024)(ordering defendant to disclose "what sources of ESI it preserved, when each source was preserved, when each ESI source was used, what each source was used for, and the general types of information housed or contained in each source").

The Northern District of California Rule 26(f) Checklist regarding ESI (ESI Checklist) expressly states, further, that this type of information should be provided at the Rule 26(f) Conference. The Checklist specifies for the discussion:

(1) The ranges of creation or receipt dates for any ESI to be preserved;"
(2) "The list of systems, if any, that contain ESI not associated with individual custodians and that will be preserved, such as enterprise databases;"
(3) "Whether or not to continue any interdiction of any document destruction program, such as ongoing erasures of e-mails, voicemails, and other electronically-recorded material;"
(4) The description of data from sources that are not reasonably accessible and that will not be reviewed for responsiveness or produced, but that will be preserved pursuant to Federal Rule of Civil Procedure 26(b)(2)(B)" and,
(5) Description of systems in which potentially discoverable information is stored.

*Id.*; *see also* the December 1, 2015, Northern District of California Guidelines for the Discovery of Electronically Stored Information, p. 1 (NDCA Guidelines for ESI) (emphasizing "the particular importance of cooperative exchanges of information at the earliest possible stage of discovery"). The need to disclose this information early in the case is not controversial.

The Court should find unpersuasive Tesla's excuses for not providing this information already. This case is almost 16 months old. By now Tesla should know exactly what ESI sources it has already preserved, when they were preserved, the scope of information they contain, including whether the other systems the EEOC identified in its January 6 Letter are relevant. *Cf. McLaughlin vs. Tesla, Inc.*, 22-cv-07849-SVK, (NDCA Apr. 19, 2023), Order on Joint Discovery Submission. Dkt. 20 (ordering Tesla to identify relevant custodians and data sources less than five months into litigation). Thus, while some other issues concerning ESI may lack urgency, the ESI sources a party has today and will preserve during the case require immediate attention to avoid any preservation disputes or data loss that could have been avoided with earlier diligence and attention. Preservation concerns are heightened here in a case involving potentially thousands of individuals where Tesla generates significant amounts of ESI daily in the ordinary course of business. Tesla should be able to derive much of this information, from the litigation hold(s)[1] that Tesla has presumably issued for this case and in the two cases that Tesla claims are related to this one. *See* ECF 50, p. 15.

Therefore, the EEOC seeks for the Court to order Tesla to disclose the following information within seven days: (1) Tesla's sources of potentially relevant ESI; (2) Whether each

---

[1] This information is not privileged. *See In re eBay Seller Antitrust Litig.*, 07-cv-01882, 2007 WL 2852364, at *1–3 (N.D. Cal. Oct. 2, 2007) (finding that plaintiffs are entitled to a defendant's basic litigation hold information).

source was preserved and when; and, (3) What each source was used for, and the general types of information contained in each source.

**Tesla's Position:** Notwithstanding the challenge of providing a list of relevant ESI sources without knowing the specifics of the EEOC's future discovery requests, Tesla has provided a list of potentially relevant ESI anticipated to be relevant to this matter. *See* Exhibit A, Attachment 1, p.2. Despite this, the EEOC has posed numerous follow-up questions in video conferences. Tesla has worked diligently to respond to the EEOC's questions, only to be met with additional questions. *See* Exhibit B. While Tesla believes these detailed questions are not necessary for agreeing to the ESI protocol, it is actively working to provide the answers. Tesla alerted the EEOC that it would take time to answer these questions and again suggested that the parties agree to an ESI Protocol based on what is already known, without prejudice, preserving the opportunity to address any future concerns the EEOC may have regarding Tesla's relevant ESI source list. The EEOC responded with a draft of this 'discovery dispute' letter.

The EEOC notes that this case is 16 months old but fails to note that it has yet to serve Tesla with any requests for production, beyond requests for transcripts that Tesla has produced and is continuing to produce. In the meantime, Tesla will continue to cooperate and respond to reasonable questions about relevant data sources and other issues identified in the Northern District checklist and guidelines, as well as ensuring that all identified sources of potentially relevant data continue to be preserved. [2]

2. **Preservation of ESI (p. 2)**

**EEOC's Position:** The parties need an understanding of the date ranges for which ESI will be preserved going forward. *See* ESI Checklist. at p. 2 (concerning discussion of the "The sources, scope and type of ESI that has been and will be preserved [] including date ranges . . ."); *see also*, NDCA's Model Stipulated Order Re ESI in Standard Cases at p. 2 (incorporating provisions describing ". . . ESI created or received between [certain dates to] be preserved"). "An ESI protocol needs to be specific or it doesn't mean anything." *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17CV05554JSTTSH, 2019 WL 4256383, at *2 (N.D. Cal. Sept. 9, 2019). The date ranges for which ESI must be preserved going forward are wholly distinct from designating the date upon which a party's obligation to preserve evidence arose.[3] Tesla's refusal to provide this information renders this section of the ESI protocol meaningless.

The EEOC seeks a specific date range mandating preservation that maps to our complaint and underlying charge, *i.e.*, May 29, 2015, to the present. *See* ECF 1. p. 1-2. This date range is, of course, subject to usual principles of accessibility and proportionality, and Rule 1. The agency's proposal seeks less than the than standard NDCA practice in employment cases, which assumes the relevant period commences three years before the date of the adverse action. *See* NDCA's General Order No. 71, for Initial Discovery Protocols for Employment Cases Alleging Adverse Action. The EEOC's proposal will ensure preservation of personnel files, EEO complaints, communications, etc. for aggrieved individuals who worked at Tesla as early as 2015

---

[2] Although the EEOC claims it no longer wishes to negotiate the date ESI preservation obligations arose in the protocol, it still seeks to include a specific date range for preservation. The EEOC now implies that Tesla's efforts to streamline an already detailed protocol, following Court guidance, indicates a failure to meet preservation obligations. Tesla vehemently disagrees with this misrepresentation.

[3] Heeding the Court's guidance at the January 8 CMC, the EEOC dropped discussions about when the parties' preservation obligations arose. But the EEOC needs to know what Tesla is preserving during this case.

and concerning Tesla's adoption and implementation of policies and practices during that timeframe.

Tesla's proposal for the parties to "take reasonable steps to preserve relevant ESI that is within their possession, custody, or control" merely repeats the self-evident. But it fails to define any temporal scope of this obligation and sidesteps its duty to take reasonable steps to preserve ESI even outside of a party's control. *See Painter v. Atwood*, No. 2:12-CV-01215-JCM, 2014 WL 1089694, at *5 (D. Nev. Mar. 18, 2014) (discussing duty to take reasonable steps to preserve evidence, "even if the party does not own or control [it]." (cleaned up). An ESI Protocol must do more than repeat general principles of discovery. *Hardin*, at *2. As discussed above, certain ESI dating back to May 2015 is highly relevant to the EEOC's case. The EEOC needs to confirm Tesla's understanding of its obligations to preserve this data going forward.

The EEOC's proposal specifies clears parameters within which the parties can further negotiate issues of proportionality, relevance, accessibility, etc. during discovery, and should be incorporated into the protocol.

**Tesla's Position:** As the Court indicated in the January 8, 2025 CMC, the date ranges for preservation of ESI are not the subject of an ESI Protocol. Although the EEOC has indicated it no longer wishes to negotiate when ESI preservation obligations arose, it is effectively attempting to litigate this issue through this letter. As the Court noted during the CMC, the parties do not need to resolve the date issue to agree on an ESI protocol.

Tesla maintains that its preservation obligations did not begin any earlier than when the EEOC filed its charge of discrimination on May 28, 2019. Therefore, Tesla cannot agree to the EEOC's proposal that "relevant ESI created between May 29, 2015 and the date of judgment will be preserved (Date Range for Preservation of ESI)." However, Tesla agrees with the Court's guidance that date ranges for preservation are not the focus of the ESI protocol, and thus proposes that the parties take reasonable steps to preserve relevant ESI within their possession, custody, or control.

### 3. Reasonably Inaccessible Data (p. 2)

**EEOC's Position.** Tesla has proposed treating undefined "legacy systems that they no longer have the licenses or software to search; and (iii) deleted files" as inaccessible, and not preserving these systems and files. But Tesla has resisted saying whether it has so far (16 months into the case) identified any sources that fall into these categories, in violation of NDCA guidance. *See* NDCA Guidelines for ESI, p. 2 ("The parties should discuss what ESI from sources that are not reasonably accessible will be preserved, but not searched, reviewed, or produced."); *see also*, ESI Checklist, p. 1 ("The description of data from sources that are not reasonably accessible…"). As just one example, Tesla has not said whether it considers one of its prior harassment complaint databases (Convercent) to be "inaccessible," due to a lapsed license or software issue. If any database is owned by third parties, the EEOC may need to track them down. If Tesla has no relevant but inaccessible ESI sources, it can easily say so, as the EEOC has asked that the Court order both parties to do within a reasonable amount of time.

**Tesla's Position**: The EEOC implies that Tesla is aware of relevant but potentially inaccessible sources of data that it is refusing to disclose. That is not the case.[4] Tesla simply cannot determine what legacy systems or databases or other hard to access data (if any) might be relevant to the EEOC's yet-to-be propounded discovery requests. However, if, during the process

---

[4] With regards to Convercent, Tesla has identified this database as a potential source of relevant ESI. Prior to the drafting of this letter, the EEOC had not inquired about the accessibility of Convercent data.

4

of identifying and collecting relevant information, it is found that backup tapes, legacy systems, or other hard-to-access sources likely contain unique relevant information, the parties will notify each other and confer on whether it is reasonable and proportional to collect data from these systems. This allows the parties to agree upon the course of conduct *if* this becomes an issue. This is the proper role of an ESI protocol. There is no reason to try to pre-litigate an accessibility dispute which has not arisen and may never arise.

### 4. The Use of Search Terms on Unstructured Data (p. 3)

**The EEOC's Position:** EEOC seeks to include basic information the parties should provide in an ESI protocol when using search terms, including a hit term report. At a minimum, a search term report is a necessary predicate for any negotiations over the appropriate scope of proposed search terms. *See e.g., Wren v. Transamerica Life Ins*. Co., No. 5:21-CV-00178-JGB-SPX, 2024 WL 5317297, at *5 (C.D. Cal. Nov. 13, 2024) (involving a typical search term dispute and the centrality of a search term report). Tesla's proposal, in contrast, would not commit the parties to much of anything. A protocol with actual guidance is preferable to one that does not obligate the parties to any specifics. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig*., at *5 (incorporating "Plaintiffs' proposed search term and hit report language [which] provides more definite guidance on what is to be expected in hit reports as compared to Defendants' holistic approach.").

**Tesla's Position:** Tesla has agreed to meet and confer with the EEOC about search terms to help identify relevant discovery information. Beyond that Tesla does not agree to the imposition of numerous obligations on the producing party that are not required by discovery rules and are not typically imposed in litigation—particularly the EEOC's proposed additional two pages of onerous and unnecessary details (added to what is already a detailed ESI protocol) governing search term negotiations and review. In addition to exceeding any discovery response requirements set forth in the Rules, those details would invite undue interference in a producing party's discovery process in violation of Sedona Principle 6, which provide that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."[5]

It is also impractical to set timeframes before knowing the data volume and the time needed for collection and review. Tesla is committed to cooperating with the EEOC in good faith and does not anticipate these details becoming an issue. However, if they do, the parties should address the issue then or seek Court guidance when appropriate. Therefore, Tesla asks the Court to reject the EEOC's proposed language.

### 5. Structured Database Systems (p. 5)

**EEOC's Position:** As with search terms, EEOC seeks to incorporate information about structured databases the parties should exchange to facilitate discussions about what needs to be produced from them. *Cf. In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig*., at *11 (requiring producing party to provide reports about responsive information stored in structured databases and the format in which it needs to be provided.) Tesla's proposal, repeated in other sections, does not offer any guidance, parameters or understanding for how the parties will discuss productions from structured databases, or what information might guide the discussion.

---

[5] *See* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018).

**Tesla's Position:** The inclusion of specific parameters for production from structured databases is best determined after the parties have identified what databases have responsive information and the most practical and reasonable ways to produce the relevant data. Tesla has already identified databases that it believes contain responsive information and may identify additional databases in response to future discovery requests from the EEOC. Tesla has agreed to work with the EEOC to determine the most appropriate way to produce requested information from each database and does not presently have any reason to anticipate that any problems will arise in that regard. Pending those further discussions, and without even knowing what information might be requested from which databases, it is premature to include in the ESI protocol overly detailed and specific parameters about database production formats.

Dated:  January 24, 2025

ROBERTA STEELE
Regional Attorney

MARCIA L. MITCHELL
Assistant Regional Trial Attorney

JAMES H. BAKER
Senior Trial Attorney

KENA C. CADOR
Trial Attorney

BY:  /s/ James H. Baker
James H. Baker
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA 94102
Telephone (650) 684-0950
james.baker@eeoc.gov

*Attorneys for Plaintiff EEOC*

BY:  /s/ Tyree P. Jones
POLSINELLI
1401 I Street, N.W.,
Washington, DC 2005-3317
Telephone No. (202) 783-3300
tjones@polsinelli.com

*Attorneys for Defendant Tesla Inc.*

Joint Discovery Dispute Letter

## **LOCAL RULE 5-1(i)(3) ATTESTATION**

    I, James H. Baker, am the ECF User whose ID and password are being used to file the Joint Discovery Dispute Letter. In compliance with Local Rule 5-1(i)(3), I hereby attest that Tyree P. Jones concurs in this filing.

Dated: January 24, 2024                                    */s/ James H. Baker*
                                                                                 James H. Baker, Senior Trial Attorney