1  ROBERTA L. STEELE, SBN 188198 (CA)
   MARCIA L. MITCHELL, SBN 18122 (WA)
2  JAMES H. BAKER JR, SBN 291836 (CA)
   MARIKO M. ASHLEY, SBN 311897 (CA)
3  KENA C. CADOR, SBN 321094 (CA)
   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
4  San Francisco District Office
   450 Golden Gate Ave., 5th Floor West
5  P.O. Box 36025
   San Francisco, CA  94102
6  Telephone No. (650) 684-0950
   Fax No. (415) 522-3425
7  james.baker@eeoc.gov

8  *Attorneys for Plaintiff EEOC*

9  Christina T. Tellado (SBN 298597)
   ttellado@polsinelli.com
10 Mary Vu (SBN 323088)
   mvu@polsinelli.com
11 POLSINELLI LLP
   2049 Century Park East, Suite 2900
12 Los Angeles, CA 90067
   Telephone: 310-556-1801
13 Facsimile: 310-556-1802

15 (*Additional counsel listed on next page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No.:  3:23-cv-04984-JSC |
| Plaintiff, | **[PROPOSED]** SECOND STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION |
| vs. | |
| TESLA, INC. | |
| Defendant. | |

Sara A. Begley (*admitted pro hac vice*)
Dana E. Feinstein (*admitted pro hac vice*)
sbegley@polsinelli.com
dfeinstein@polsinelli.com
POLSINELLI
Three Logan Square 1717 Arch St, Suite 2800
Philadelphia, PA 19103
Telephone: 215-267-3001
Facsimile: 215-267-3002

Tyree P. Jones Jr., SBN 127631 (CA)
tjones@polsinelli.com
POLSINELLI
1401 I Street, N.W.,
Washington, DC 2005-3317
Telephone No. (202) 783-3300

Raymond A. Cardozo, SBN 173263 (CA)
rcardozo@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California 94105-3659
Telephone No. (415) 543-8700
Fax No. (415) 391-8269

*Attorneys for Defendant TESLA, INC.*

Pursuant to Pretrial Order No. 2, (ECF 65), Plaintiff U.S. Equal Employment Opportunity Commission (EEOC) and Defendant Tesla, Inc. (Tesla), (collectively, the parties), hereby submit the following Second Stipulated Order and Proposed Protocol Regarding Electronically Stored Information.

## I. PURPOSE

This Order will govern discovery of electronically stored information (ESI) in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, The First Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation (ECF 55), and any other applicable orders and rules.

## II. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## III. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be or will have access to those who are knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. Although this Protocol envisions the use of electronic search methodologies, *see infra*, to search for and collect potentially responsive documents, where a party knows or reasonably should know that information is relevant and responsive to a document request, it shall not withhold that document from production on the basis that its electronic search methodology did not otherwise identify the document. Unless specifically stated, nothing in this stipulation is intended to abrogate or alter the parties' obligations

with respect to preserving ESI.

1. **Relevant ESI Sources**. The parties have identified in Exhibit A (Relevant ESI Sources) some of the Email, User-Created Files, and Database Systems that they reasonably believe to contain relevant information during the Temporal Scope of Preservation (*see* below). To the extent that the parties identify additional systems for preservation and potential production, or if upon further investigation, revision to the existing system descriptions is necessary, the parties agree to identify the additional systems and/or revise existing system descriptions.

2. **Preservation of ESI**. The parties shall take reasonable steps to preserve relevant ESI that is within their possession, custody, or control.

3. **Custodians**. The parties have identified in Attachment 2 some of the types of ESI they believe should be preserved and Attachment 3 some of the general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove sources and custodians as reasonably necessary. In responding to discovery requests, the producing party shall also identify the specific custodial accounts and ESI sourced searched.

4. **Reasonably Inaccessible Data.** If a party declines to collect or search a source that it reasonably believes to be sources of unique, potentially responsive ESI on the bases that the materials are not reasonably accessible, that party must notify the other party and meet and confer in an effort to resolve any disagreements before seeking relief from the Court.

V.   **SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer as needed about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

A.   **The Use of Search Terms on Unstructured Data.** If the producing party determines the use of search terms is appropriate to search and collect relevant and/or responsive ESI, the parties shall collaborate and cooperate in good faith to seek to reach an agreement on search terms to be used.

The producing party shall develop and share with the requesting party a list of proposed

search terms, including (1) overall number of documents in the document collection against which the search was conducted; (2) the "hit count" of the raw number of documents identified per search term; (3) the total number of unique documents with hits across all search terms and documents within families containing such unique documents (i.e., the review universe if all terms were to be accepted and reviewed). For any complex Boolean search strings, the report will provide information both for the search string as a whole as well as each individual component of the Boolean search string to help counsel analyze the effectiveness of search terms.

At the same time, if the producing party is using a tool other than Relativity, the producing party shall also provide information to the requesting party regarding the syntax and search capabilities and limitations of its ESI tool with respect to search terms (e.g., ordering of search terms and parentheses, what wildcard options are available, stemming capabilities, noise words, Boolean capabilities, etc.) sufficient for the requesting party to understand the search terms proposed and to offer counterproposals to them. The producing party shall provide, concurrently with the Report, sufficient information for the requesting party to propose refined search terms, such as identifying any groups of nonrelevant emails upon which the search terms are hitting. The parties agree that the process will collaborative and iterative.

1. The requesting party shall provide any revisions or additions to the producing party's proposed search terms (counterproposals), if any, within a reasonable time after receipt of proposed search terms from the producing party.

2. After receipt of the first set of revisions or additions from the requesting party (as set forth above), the producing party will identify which of the requesting party's proposed search terms the producing party agrees to use, and which terms it rejects, and shall propose alternatives, if any, to counterproposals to which it objects. The producing party shall at the same time supply a Search Terms Hit Report (STH Report), as described in subsection (4) below, for all search terms that were accepted, rejected, and all proposed alternatives. Upon request, the producing party shall confer with the requesting party concerning the producing party's reasoning behind why particular search terms are not acceptable and possible alternative search terms.

3. The parties shall reasonably repeat the process in subsection (1) and (2) in good faith

to come to a final agreement regarding search terms. The parties will meet and confer regarding disputed search terms and STH Reports as needed. The parties shall meet and confer to attempt to develop a mutually agreeable means of evaluating the effectiveness of disputed search terms in identifying responsive documents, such as a responsiveness review of a statistically significant random sample of the documents hit by a disputed term.

4. **STH Report**: STH Reports will be provided in Excel (or other format as agreed to by the parties). An STH Report should: (a) exclude from the number of hits any duplicates; (b) provide the number of documents hit by the search term, including family members; and (c) the number of unique documents hit by each search term (i.e., the number of documents hit by that search string and no others, and not previously produced in this litigation).

5. **Validation**: Once the parties have agreed to a list of search terms subject to the process outlined above, the parties shall meet and confer to attempt to develop a mutually agreed methodology to determine effectiveness of search terms in identifying responsive documents. The parties shall meet and confer regarding whether further modification to the final set of search terms is necessary.

6. The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.

7. If after finalization of search terms or other parameters a party determines in good faith that additional search terms or parameters are necessary to identify responsive information or determines that modifications to search terms or other parameters are necessary to avoid disproportionate or undue burden and expense associated with the review and production of the results of those search terms, counsel will meet and confer in an effort to agree on additional or modified terms after an initial production.

B. **Structured Database Systems**

The default form for production of database information is "fielded tables" where each row represents a database record and each column represents a single data field, such as a Microsoft Excel spreadsheet or delimited text file. The producing party will provide a description of the fields

contained in their structured databases, including any codes used. Upon review of the report, the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

### C. Custodial Mobile Device and Social Media Data

For custodians identified in Attachment 3 and employed by either party, or ordered by the Court, a producing party will take reasonable steps to identify whether any unique, responsive, discoverable communications are located on any mobile device or social media accounts in the "possession, custody, or control" (as defined under the Federal Rules and case law) of the producing party. The producing party is obligated to disclose if it takes the position that a custodian possesses a mobile device or social media account that was used for work purposes and is not within the producing party's possession, custody or control. The producing party shall provide an explanation and support for its position that a mobile device is not within the producing party's possession, custody, or control.

Information produced from mobile devices and social media may be produced as screenshots in the first instance, <u>provided</u> that requesting parties reserve the right to then request native productions of such data and/or forensic examinations if they doubt the authenticity of any such evidence or for other good cause. The parties agree to meet and confer in such instances.

## VI. PROCESSING, FILTERING AND REVIEW

The processing and review of Unstructured ESI may consist of any of the following processes selected by the producing party: (1) loading of ESI into a review platform; (2) the application of file type, date, and other metadata filters; (3) the use of search terms, as outlined *infra* in Section VI(A); (4) the use of analytics technologies, including deduplication, email threading, clustering, filtering, categorization, and technology assisted review/ predictive coding and Gen AI technology, as outlined *infra* in Sections VI(C)-(E); and (5) attorney review for responsiveness.

Parties will review the results of the above efforts for privilege or other protection from disclosure and all responsive, relevant, non-privileged ESI shall be produced in the format described below in Section VII.

**A.     The Use of Search Terms on Unstructured ESI to Filter and Review**

If the producing party finds it appropriate to apply search terms to cull the collected ESI before review, the parties shall follow the process outlined in Section V(A), *supra*.

**B.     Email Domain Exclusions**

Producing parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as retailer advertising, and newsletters or alerts from non-industry sources. Absent compelling circumstances and any message, attachment or other electronically stored information that has been identified by a spam or virus filter shall be treated as per se non-responsive and a party shall not be required to preserve, review, or produce such ESI.

**C.     Technology Assisted Review/Predictive Coding.**

The parties also recognize the availability of a variety of search tools and methodologies, including but not limited to Technology Assisted Review (TAR) and Gen AI tools. Tesla has notified plaintiff's counsel that it may use TAR and/or GEN AI tools to further analyze documents for relevance after search terms are used to narrow the starting document universe to exclude documents not likely to be relevant. If the producing party intends to use TAR, GEN AI, or similar advanced analytics as a substitute for attorney responsiveness review, the parties agree to meet and confer in good faith to attempt to reach agreement about the technology and process that a producing party proposes to use to identify responsive ESI and a statistically sound methodology to determine the recall rate and other measures of the effectiveness of the tool and processes in identifying responsive documents. The producing party shall make disclosures regarding its tools and processes necessary to make the meet and confers meaningful and for the requesting party to negotiate on an informed basis.

If, prior to commencement of negotiations over search terms, a producing party intends, or is likely, to use both search terms and TAR (or similar advanced analytics), it shall notify the requesting party prior to commencement of search term negotiations. If a producing party decides to employ TAR or similar advanced analytics during, or after the conclusion of, negotiations over search terms, it shall promptly notify the requesting party before commencing any review.

### D. Email Threading

The parties may utilize email threading technology in their review to thread email messages where the content of those messages, and any attachments, are wholly contained within a later email message in the thread (Inclusive Emails).

## VII. PRODUCTION FORMATS

The parties agree to the format for production as described herein as well as Exhibit A.

### A. Paper Documents

Hard copy documents shall be scanned to single-page TIFF Group IV format (300 DPI resolution) with corresponding searchable OCR text and be logically unitized. The file name for the TIFF image shall be the Bates/PageID Number. Scanned documents shall also be converted into searchable text using optical character recognition (OCR), extracted, and saved as a text file named with the Bates/PageID Number. The OCR shall include the Bates/PageID number for each page. The load file shall include a field for the OCR/Text file path.

### B. Email and User-Created Files

The parties will produce documents in accordance with the specifications identified in this section. ESI will generally be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level extracted text and a delimited DAT file containing the metadata fields outlined in Exhibit A.

8. All spreadsheet and presentation files (e.g., Excel, PowerPoint) shall be produced in native format with an associated placeholder image, and a native file path contained in the DAT file to the native file.

9. All hidden text (e.g., track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.

10. All embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file—excepting automatically generated signature graphics and logos to the extent they can be isolated and excluded—shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

11. The parties agree to take reasonable steps based on industry standards to open password-protected or encrypted files, including using commercially accessible software as well as requesting passwords from those individuals which the Parties represent. If there are likely responsive encrypted or password protected documents, which the producing party has been unable to, after reasonable efforts, to locate the password or decrypt, the parties shall meet and confer. If a party believes that removing password protection is unduly burdensome, the parties shall meet and confer.

12. The producing party shall disclose any substantive gaps, errors, or exceptions in the collected or processed ESI.

### C.   Family Relationships and Modern Attachments

Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and its attachments will be produced as responsive, except any attachments withheld and logged based on privilege. Withheld documents should be replaced with slip sheets. The parties agree to meet and confer if either party proposes to redact any documents on any basis other than privilege.

The producing party shall use available Microsoft O365 tools to produce hyperlinked documents and "Modern attachments" contained within emails or other Unstructured Data in a reasonably usable form that will identify the connection between the "parent" message (the originating message containing the modern attachment) and the modern attachment, to the extent the producing party's internal systems reasonably allow for automated collection and identification of such Modern attachments. The producing party shall meet and confer with the requesting party to discuss proposed formats of production for modern attachments. To the extent that a unique modern attachments points to a drive, folder, or other ESI that is not an individual file, parties shall meet and confer to discuss production.

### D. Short Messages

Short Messages, including text, Microsoft Teams, WhatsApp, and Slack messages, if any, shall be produced in a searchable format that reasonably preserves presentational features of the original messages, such as emojis, images, video files, animations, and the like. In general, Short Messages should be produced in the same format as that in which they were exported for purposes of collection, search, or review.

### E. Custodial Mobile Device Data

Prior to any production of responsive data from mobile devices of custodians, e.g., party employees, the producing party shall discuss the potential export formats and the method and tool used for extraction.

### F. Redacted Documents

Documents that contain redactions, including any associated family members, will be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level extracted text and a delimited DAT file containing the metadata fields outlined in Exhibit A to the extent that such metadata fields are not part of the redaction. Documents produced with redactions shall identify in some manner (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information. To the extent a party deems production of redacted TIFF images of Excel spreadsheets significantly degrades the usability of the document, the parties agree to meet and confer regarding alternate production methodologies of the redacted information.

## VIII. PHASING

The parties will meet and confer as may be necessary regarding additional phasing discovery.

## IX. DOCUMENTS PROTECTED FROM DISCOVERY

A. The following categories of documents need not be included on a privilege log:

1. Attorney-client privilege:

   a. Communications only between or amongst Tesla's in-house and outside counsel that post-date the filing of the Commissioner's Charge;

      b.   Communications only between or amongst EEOC Enforcement Unit and Legal Unit that post-date the filing of the Commissioner's Charge.

      c.   Communications between EEOC Legal Unit and potentially aggrieved individuals that post-date the Letter of Determination, unless the EEOC may rely on such communications to support its claims.

2. Attorney work product:

      a.   Documents created by Tesla's in-house or outside counsels that post-date the filing of the Commissioner's Charge, unless Tesla may rely on such documents to support its defenses; and,

      b.   Documents created by EEOC legal unit or enforcement unit personnel that post-date the filing of the Commissioner's Charge; unless EEOC may rely on such documents to support its claims.

**B.    Privilege Logs**

The parties agree that any privilege logs required to be produced in accordance with Section F of the Court's Civil Standing Orders shall be due within 45 days after the underlying discovery responses are due, absent stipulation or Court order. The log shall be produced in an electronic and easily searchable and manipulable format (such as a CSV file).

**X.    MODIFICATION**

This Stipulated Order may also be modified by another Stipulated Order of the parties or by the Court. If the parties are unable to agree, need further clarification on any issue relating to the preservation, collection, or production of electronically stored information, or seek modification of this Order, the parties agree to promptly pursue informal discovery dispute resolution procedures in accordance with Section F of the Court's Civil Standing Orders. Entering into this Stipulated Order does not prejudice the parties' rights to seek modification(s) of this Stipulated Order or additional ESI related orders.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: February 7, 2025

| | |
|---|---|
| ROBERTA STEELE<br>Regional Attorney | KARLA GILBRIDE<br>General Counsel |
| MARCIA L. MITCHELL<br>Assistant Regional Trial Attorney | CHRISTOPHER LAGE<br>Deputy General Counsel |
| JAMES H. BAKER<br>Senior Trial Attorney | Office of the General Counsel<br>131 M Street, N.E.<br>Washington, D.C. 20507 |
| MARIKO ASHLEY<br>Senior Trial Attorney | |
| KENA C. CADOR<br>Senior Trial Attorney | |

BY:  /s/ James H. Baker
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA 94102
Telephone (650) 684-0950
james.baker@eeoc.gov

*Attorneys for Plaintiff EEOC*

BY:  /s/ Tyree P. Jones, Jr.
Tyree P. Jones Jr., SBN 127631 (CA)
POLSINELLI
1401 I Street, N.W.,
Washington, DC 2005-3317
Telephone No. (202) 783-3300

*Attorneys for Defendant Tesla Inc.*

**IT IS SO ORDERED** that the forgoing Stipulation is approved.

Dated: February 7, 2025

HON. JACQUELIN S. CORLEY
UNITED STATES DISTRICT JUDGE

**LOCAL RULE 5-1(i)(3) ATTESTATION**

I, James H. Baker, am the ECF User whose ID and password are being used to file the ESI Protocol. In compliance with Local Rule 5-1(i)(3), I hereby attest that Tyree Jones concurs in this filing.

Dated: February 7, 2025  /s/ James H. Baker
James H. Baker, Senior Trial Attorney

II. **Relevant ESI Sources for Defendant:**
   A. **Unstructured Data**
      1. **Email:** Tesla's email is maintained on Microsoft Office Outlook system.
      2. **Teams:** Teams messages are maintained on Tesla's Microsoft Office System. However, Microsoft Teams was launched at Tesla in 2018. Email and Teams messages are maintained in the same .pst file for each user.
      3. **User-Created Files:** User files were occasionally maintained on a network server and are sometimes uploaded and shared via OneDrive.
      4. **Devices**: Some Tesla employees are issued laptops and cellular phones. However, Production Associates are generally not issued laptops or cellular phones. Eligible employees can elect to use their personal cellphone or be subject to an approval process to have one issued by Tesla.
   B. **Structured Database Systems**
      1. Potentially relevant employee information is currently maintained in MySQL database. Employment documents are in an internal storage called DMS. Both are data sources for the Inside Tesla application.
      2. Internal complaints or issues raised by employees are maintained in Convercent [since mid-2017] and, more recently, CaseIQ [since mid-2023].

**Attachment 2**

**RELEVANT ESI CUSTODIANS**

I. **Relevant Custodians for Defendant:**

1. Human Resources and Employee Relations Personnel of Potential Aggrieved Individuals at the Fremont Factory.

2. Supervisors of Potential Aggrieved Individuals at the Fremont Factory.

3. Any specific Tesla employee who is alleged by the EEOC to have participated in any improper or illegal acts. Tesla hereby requests that the EEOC identify any or all such individuals as soon as practicable.

4. Decision-makers regarding the discipline and/or termination of any Potential Aggrieved Individuals at the Fremont Factory.

5. Decision-makers regarding the implementation of EEO policies, practices, and procedures at the Fremont Factory.

II. **Relevant Custodians for EEOC**

1. EEOC Investigative Personnel

2. Unrepresented PAIs whom the EEOC will rely upon as witnesses or declarants in their case against Tesla.